JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
CHRISTINA TUSAN (SBN 192203)
ctusan@hammondlawpc.com
POLINA BRANDLER (SBN 269086)
pbrandler@hammondlawpc.com
ADRIAN BARNES (SBN 253131)
abarnes@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@hammondlawpc.com
HAMMONDLAW, PC
1201 Pacific Ave, Suite 600
Tacoma, WA 98402
[Tel.] (310) 601-6766
[Fax] (310) 295-2385

*Attorneys for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE BETTERHELP, INC. DATA DISCLOSURE CASES<br><br>This Document Related To: All Actions | Master File No. 3:23-cv-01033-RS<br><br>Hon. Richard Seeborg<br><br>**APPLICATION FOR APPOINTMENT OF HAMMONDLAW, P.C. AS INTERIM LEAD CLASS COUNSEL UNDER FED. R. CIV. P. 23(g)(3)** |

## INTRODUCTION

The Hammond Team combines formidable expertise in complex consumer protection class actions and enforcement cases with a lean, efficient proposed leadership structure, and a demonstrated ability to effectively work on the putative class's behalf. Under any individual Rule 23(g) factor, the Hammond Team stands out.

All the firms that are seeking appointment to a leadership position are excellent firms. But the Hammond Team's efficient leadership structure, its expertise in the anticipated areas of dispute (including issues concerning arbitration, the previous FTC enforcement action, and privacy issues), and its commitment to diversity, set it apart from the others. Additionally, HammondLaw should be selected because it was first to file a class action case against the Defendant, it has retained two experts to assist with the investigation of this matter, and it has conducted investigative and legal work on dispositive issues that will be critical to the putative class's ability to prevail in this matter. The Court should appoint the Hammond Team as interim lead class counsel, or, in the alternative, co-lead counsel.

## STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(a)(3))

Whether the Court should appoint HammondLaw to serve as interim lead class counsel and/or co-lead counsel, pursuant to Federal Rule of Civil Procedure 23(g)(3).

## BACKGROUND

Defendant BetterHelp, Inc. is a mental health platform that offers online counseling and therapy services through several websites, which it operates under different names, and its network of over 30,000 licensed therapists. (Case No. 23CV412521, Dkt. No. 1-2 (FAC ¶¶ 2-3)). On March 13, 2023, the Federal Trade Commission ("FTC") published a notice in the federal register seeking comments for a 30-day period regarding its proposed Consent Order with Defendant[1] after which time the Order could become final. The Consent Order includes terms that, among other things: (1) required Defendant to pay the FTC $7.8 million to be used for

[1] BetterHelp, Inc.; Analysis of Proposed Consent Order to Aid Public Comment, 88 Fed. Reg. 15715 (Mar. 14, 2023).

consumer redress[2]; (2) required Defendant not to disclose to a third party for the purposes of advertising, marketing, promoting, offering, offering for sale, or selling any product or service: (a) Treatment Information; and (b) Covered Information for the purpose of targeting the consumer to which the disclosed information pertains[3]; and, (3) prohibited Defendant from making misrepresentations about the privacy of Covered Information.[4]

The FTC's Complaint, which the Consent Order resolved, alleged that from 2013 to December 2020, Defendant continually broke these privacy promises, monetizing consumers' health information to target them and others with advertisements for Defendant's online counseling service (the "Service"). The FTC alleged that Defendant used consumers' email addresses and the fact that they had previously been in therapy to instruct Facebook to identify similar consumers and target them with advertisements for the Service. The FTC further alleged that in signing up to be a paid user (costing between $60-$90 per week), users had to complete a patient intake form, and that the answers to questions on that form were disclosed to third-party marketers in violation of promises Defendant made in its privacy policy, and in violation of representations Defendant made to users on its website.

The class consists of approximately 2 million consumers of the Service. In 2020 alone, the Defendant generated $345 million in revenue, which more than doubled in 2021 to $720 million.

Following the announcement by the FTC of the proposed Consent Order on March 2, 2023, via a news release, Plaintiff Jane Doe I (represented by HammondLaw) sued BetterHelp in California state court on March 3, 2023, on behalf of a California class of individuals whose personal information, including personal identifiers, including email and IP addresses, and medical and health information, had been disclosed to Meta. (Case No. 23CV412521, Dkt. No. 1-1.) Plaintiff Doe I subsequently amended her complaint, on April 3, 2023, to add Plaintiff Jane Doe II, to add claims on behalf of a nationwide class, and to add two causes of action for breach

---

[2] In the Matter of BetterHelp, Inc., FTC File No. 2023169 (Nov. 21, 2022) (Agreement Containing Consent Order) (https://www.ftc.gov/system/files/ftc_gov/pdf/202_3169-betterhelp-consent.pdf), Decision and Order at p. 15.
[3] *Id.* at p. 6.
[4] *Id.* at p. 7.

of contract and breach of implied contract, in the alternative. (Case No. 23CV412521, Dkt. 1-2.) Shortly after Plaintiffs Doe I and Doe II filed their complaint, five other plaintiffs represented by other law firms filed cases raising essentially identical issues against BetterHelp. The Court consolidated Plaintiffs' case with the five other cases on May 23, 2023. (Dkt. No. 30)

The same day as the Court's consolidation Order was entered, without conferring with Plaintiffs' counsel, L.M. Plaintiffs filed a Motion for Appointment of Maureen M. Brady as Co-Lead Counsel and for Appointment of the "Brady Slate." (Dkt. No. 45). On May 18, HammondLaw advised John Nelson from Milberg Coleman Bryson Phillips Grossman, PLLC, that it intended to seek appointment as lead counsel. Decl. of Julian Hammond ISO App. for Appointment of HammondLaw, P.C. as Interim Lead Class Counsel (Hammond Decl.) ¶¶ 13, at p. 5. Doe I and II Plaintiffs now file the instant Motion for the appointment of HammondLaw as interim lead class counsel, or, in the alternative, interim co-lead counsel.

**The Hammond Team Has Performed Substantial Work Investigating and Litigating the Claims to Date**

The "work counsel has done in identifying or investigating potential claims in the action," Fed. R. Civ. P. 23(g)(1)(A)(i), favors the Hammond team. HammondLaw was the first to file a complaint in this matter and has invested substantial time and resources into researching and investigating the claims at issue. Hammond Decl., ¶¶ 3-7. This Action followed an FTC investigation, which the FTC noted in its Complaint began in February 2020. HammondLaw has identified and begun working on a number of issues, including but not limited to: the issues of arbitration, tolling, and the appropriate amount of redress available to consumers in relation to the redress that will be available pursuant to the FTC's Consent Order. Hammond Decl.,¶ 4. HammondLaw has also retained two leading experts in the field, one who has identified the historical use of cookies and pixels dating back prior to 2020, and another who is prepared to analyze historical versions of Defendant's apps. Id. ¶ 5.

In addition to identifying old versions of Defendant's website containing the cookies and pixels, HammondLaw has downloaded and analyzed historical versions of BetterHelp's privacy

policy, terms and conditions, arbitration agreement, and web pages, and different versions of its app. HammondLaw has also identified and researched the following issues that will become central to the case (prior to addressing any question of liability) including: (1) the formation, scope, enforceability, and validity of Defendant's arbitration agreement; (2) the extent to which tolling will apply; and (3) the extent, effect, and impact of any potential FTC consumer redress on the putative class recovery. Hammond Decl., ¶ 7.

That level of extensive investigative work and legal analysis supports the Hammond Team's appointment. *See Dependable Component Supply Corp. v. Murata Mfg. Co.*, No. 5:18-CV-00198-EJD, 2018 WL 3388548, at *2 (N.D. Cal. Apr. 27, 2018) (Davila, J.) (appointing firms as interim co-lead class counsel due in large part to "the efforts expended by [the firms] to promptly identify and investigate the claims"); *In re Qualcomm Antitrust Litig.*, No. 17-MD-02773-LHK, 2017 WL 2222531, at *1 (N.D. Cal. May 15, 2017) (appointing Susman Godfrey interim co-lead class counsel because it had "performed considerable work in identifying or investigating potential claims in this action").

**Extensive Class Action and Complex Litigation Expertise**

"Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," as well as "counsel's knowledge of the applicable law" further supports the Hammond Team's appointment. Fed. R. Civ. P. 23(g)(1)(A)(ii), (iii). Attorneys from the Hammond Team have served in leadership positions in other data-breach and privacy class actions, some involving the same statutes at issue here. This experience weighs in favor of appointing HammondLaw. *In re Apple & AT & TM Antitrust Litig.*, No. C 07-05152 JW, 2008 WL 1766761, at *2 (N.D. Cal. Apr. 15, 2008) (appointing firm with substantial experience in the type of class action at issue).

HammondLaw should be selected as interim lead class counsel because putative class members should be represented by interim counsel that will obtain the best possible results for them. See Fed. R. Civ. P. 23(g)(1)(A)(ii). HammondLaw includes attorneys who have consistently won excellent and unprecedented recoveries for consumers and obtained crucial

injunctive relief, including obtaining orders that have required changes in business/industry practices that have ensured consumer protection for both class members and other consumers for years to come.[5]

Additionally, HammondLaw has the depth of investigative and legal expertise necessary to enable it to get the best results for the putative class. HammondLaw has recently been successful in opposing two motions to compel arbitration, including successfully opposing one on May 25, 2023, in a data privacy class action. (See *Nicholas Smith-Washington v. TaxAct*, Case No. 3:23-CV-00830-VC (N.D. Cal., May 25, 2023) (Dkt. No. 44) and *Fisher v. MoneyGram Int'l*, No. RG19009280, 2019 Cal. Super LEXIS 73401 (Aug. 16, 2019) (affirmed on appeal by the California Court of Appeal, 66 Cal. App. 5th 1084 (2021))). HammondLaw also has extensive experience directly litigating issues concerning FTC enforcement actions, with Ms. Tusan having investigated and litigated several matters while at the FTC, as well as Hammond Law's experience with follow-on class actions. HammondLaw has also served as co-lead counsel in a case representing consumers in a follow-on case against MoneyGram. Hammond Decl., ¶ 12. Importantly, Ms. Tusan has expertise in conducting complex consumer protection investigations—like the one conducted here by the FTC—based on her years of experience at the FTC, California Attorney General's Office, and LA City Attorney. *Id.* ¶ 9, pp. 2-3. She is familiar with how to successfully seek, obtain, and locate critical evidence, including ESI, from defendants like BetterHelp. Ms. Tusan herself has issued Civil Investigative Demands while at the FTC, which are typically used by the FTC prior to filing to obtain information[6] like that obtained in the BetterHelp case. *Id.* ¶ 9, pp. 2-3. While at the California Attorney General's Office, she also successfully obtained critical evidence that she used to establish violations of California's consumer protection laws. *Id.* ¶ 9, pp. 2-3. Ms. Tusan can draw upon her investigative and litigation expertise to ensure that Plaintiffs are able to strategically request the

[5] See Hammond Decl., ¶¶ 9, 14, Ex. A (HammondLaw Firm Resume).

[6] Federal Trade Commission, So You Received a CID: FAQs for Small Businesses, Jan. 19, 2018, https://www.ftc.gov/business-guidance/blog/2018/01/so-you-received-cid-faqs-small-businesses ("A CID is a kind of subpoena – a legal document enforceable in court that seeks documents or other information related to an FTC investigation. The FTC sends CIDs to get information from companies it thinks may have violated the law.")

most relevant information in a way that best limits unnecessary expenses for the putative class.

**The HammondLaw Team**

**Christina Tusan**, who will be the lead attorney on the case, is a nationally recognized consumer protection litigator. She has directly litigated and led teams of attorneys in the litigation of complex consumer protection cases at federal, state and local consumer protection agencies over the past 25 years. While at the FTC for seven years, Ms. Tusan successfully led multiple complex consumer protection cases resulting in judgments of over $578 million. She received the FTC Director's Award for co-leading the FTC team that obtained a $478 million summary judgment, which was the largest litigated judgment in an FTC matter at that time (and constituted full restitution for every dollar that defendants had collected in that case). Ms. Tusan also received the FTC Director's Award for successfully leading a large team of attorneys and staff in a case that was litigated against DeVry University and resulted in a $100 million settlement, which was the largest litigated settlement against a for-profit university at the time. All of the $100 million order in that judgment was for restitution that was returned to consumers either through direct payments or through loan forgiveness. While at the California Attorney General's Office, Ms. Tusan obtained judgments valued at over $60 million, which also included strong consumer redress and preliminary and permanent injunctions. She also successfully led a large team of lawyers at the LA City Attorney's Office where she obtained judgments worth hundreds of millions of dollars. Ms. Tusan has received multiple awards for her ground-breaking work, including three awards from the FTC and the California Attorney General's Award for Excellence. Hammond Dec., ¶ 9 at p. 2.

**Polina Brandler** has over 11 years of complex class action experience. Ms. Brandler has a wealth of litigation experience, having litigating over 30 class actions, and worked on every stage of litigation, from expert discovery to depositions, through to mandatory settlement conferences and mediations, and recently successfully second chaired a class action trial against the University of San Francisco. Additionally, Ms. Brandler brings her formidable briefing skills to the table, being responsible for numerous motions and oppositions, including oppositions to

motions to compel, and recent appellate briefs, in which HammondLaw was successful. As a first-generation American from the former Soviet Union, Ms. Brandler not only adds to the diversity of HammondLaw, but adds formidable firepower to the team. Hammond Decl., ¶ 9 at p. 3.

**Julian Hammond** has twenty plus years of experience in commercial and complex class litigation. Having been a Barrister in Australia, representing GlaxoSmithKline in the then-largest commercial litigation in Australia's history, Mr. Hammond transitioned his practice to California in 2010, and has since become a leading California class action attorney, with over 40 class action settlements and judgments over just the past 3 years securing over $50 million in settlements for employees and consumers (and close to $100 million since 2010). Included among these was Mr. Hammond's success, with Ms. Brandler as second chair, securing judgment in a class action against the University of San Francisco in 2020, and his successful defense of that judgment before the Appellate Court in 2023. Also, notable was securing a $16.5 million settlement for 4 million consumers against Apple in relation to its automatic renewal policies. Recently, Mr. Hammond has begun representing consumers and patients in various data privacy cases including a class action against TaxAct, Inc. in which Mr. Hammond led the team which defeated TaxAct's motion to compel arbitration (Mr. Hammond determined the strategy and headed the briefing; Ms. Tusan argued before the District Court). That case involves TaxAct's alleged disclosure of its consumers' identities and tax information through the Meta Pixel. Mr. Hammond has also filed a case against Cerebral, Inc. for disclosing its patients' medical information to Meta through the Pixel. Hammond Decl., ¶ 9 at pp. 3-4.

**Adrian Barnes** is a recognized consumer protection and employment law attorney who has over 12 years of experience fighting for union, employee, and consumer rights. Mr. Barnes has represented clients in arbitration, before the NLRB, and has litigated class actions to the Supreme Court. He has also obtained favorable settlements in over 20 multi-million-dollar class actions under California's wage and hour laws.  Mr. Barnes has significant experience with both consumer privacy and cybersecurity investigations and litigation. Adrian is currently pursuing

litigation against several leading financial and healthcare companies for their unauthorized disclosure of their customers' personal financial and medical information. Besides his impressive legal career, Mr. Barnes spent four years as an associate at a leading hedge fund where he built and maintained financial models and investigated potential investments. Thus, Mr. Barnes has a unique financial skill set that enables him to understand the financial considerations and issues that are often present in complex cases. Hammond Decl., ¶ 9 at p. 4.

**Ari Cherniak** has been with HammondLaw since 2010, and has extensive class action litigation experience. Mr. Cherniak's assists in managing all aspects of the class action litigation at HammondLaw, ensuring the smooth operation of the cases from inception through to final approval. Mr. Cherniak has been appointed along with other members of the HammondLaw Team as class counsel in over 70 class actions since 2010. Hammond Decl., ¶ 9 at p. 5.

**The Competing Leadership Structures Are Less Efficient**

The other leadership proposals do not match the Hammond Team's efficiency. The Hammond Team proposes a leadership structure of only one lead counsel, with no steering committees, layers of firms, or work farmed out to the different firms who have filed cases. Those larger structures lead to less focus and efficiency and yield excessive attorney fees and excessive costs incurred, with a larger share of proceeds diverted from the class to the lawyers.

The Hammond Team has proposed a number of measures to ensure efficiency. Specific tasks will be assigned to a single attorney when appropriate. Only one attorney from the firm will attend fact depositions unless a junior attorney has been assigned a leading role. And no more than one lawyer from the firm will bill for attending discovery hearings unless a junior lawyer is taking the lead. Fewer lawyers and firms means less duplicated or wasted work and less time billed. *See, e.g.*, *Kjessler v. Zaappaaz, Inc.*, No. 4:17-CV-3064, 2018 WL 8755737, at *5 n.14 (S.D. Tex. Aug. 31, 2018) ("Committees of counsel can sometimes lead to substantially increased costs, and they should try to avoid unnecessary duplication of efforts and control fees and expenses.") (citing Manual For Complex Litigation (Fourth) § 10.221 (2004)).

The Brady Slate proposes a cumbersome and bloated structure of more than 5 firms, consisting of two co-lead counsel, a Liaison Counsel, and two firms on the Executive Committee. Courts in this district have denied requests to appoint leadership structures involving multiple firms and committees for this very reason when plaintiffs cannot show that the structure best serves the interests of efficiency and economy. *See Aberin v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2017 WL 3641793, at *3 (N.D. Cal. Aug. 24, 2017) (denying request for a three-firm executive committee when the plaintiffs "failed to demonstrate that the interests of efficiency and economy are best served by appointing a three-firm executive counsel"). Additionally, the class size here—2 million people—does not justify the appointment of more than five firms. None of the other proposals justify why such a large structure serves the classes' interests, and they do not match the Hammond Team's efficiency.

**The Hammond Team is Diverse**

All firms seeking appointment are accomplished and experienced. The Hammond team is, however, also uniquely qualified to be interim lead counsel because of the firm's commitment to diverse leadership. *See* Fed. R. Civ. P. 23(g)(1)(B) (the court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class"). The Hammond Team's diverse leadership slate includes two diverse women—with one who is a senior attorney and one who is a junior attorney--who will be leading this case. Hammond Decl., ¶ 9 at p. 3. These women, as well as the rest of the team, bring a variety of experiences that would benefit the class. This Court has recognized the benefits that diverse leadership can provide. *See Hightower v. Celestron Acquisition, LLC*, No. 5:20-cv-03639-EJD, Dkt. No. 101 at 22 (N.D. Cal., Sept. 30, 2020) (Davila, J.) ("One thing that you know that my colleagues in the Northern District seek to, what we aspire to in these cases, and particularly in the firms, is to have a broader reach on the leadership teams of individuals who previously, for whatever reason, haven't had that opportunity or haven't made those appearances."). Moreover, appointing class leadership with newer practitioners helps alleviate the "repeat player" problem in class counsel appointments. *See In re Robinhood Outage Litigation*, No. 20-CV-01626-JD, 2020 WL 7330596, at *2 (N.D.

Cal. July 14, 2020) (denying a motion for appointment as interim class counsel due to a lack of diversity and explaining that "the proposed counsel appear to be lawyers and law firms that have enjoyed a number of leadership appointments in other cases," highlighting "the 'repeat player' problem in class counsel appointments that has burdened class action litigation and MDL proceedings"). This quality also sets the Hammond Team apart.

**HammondLaw Has the Resources to Most Effectively Lead the Litigation**

Finally, when it comes to the "resources that counsel will commit to representing the class," Fed. R. Civ. P. 23(g)(1)(A)(iv), the Hammond Team again stands out. The team is formed by attorneys with decades of experience from established and successful plaintiffs' firms and respected governmental consumer protection agencies. Hammond Decl., ¶ 9 at pp. 2-5. HammondLaw also advances all the funds necessary for litigation costs and is not reliant on outside resources for financing. *Id.* ¶ 11, p. 5. And where the putative class faces well-financed adversaries, it should be represented by counsel with similar resources. *See Dependable Component Supply Corp. v. Murata Mfg. Co.*, No. 5:18-CV-00198-EJD, 2018 WL 3388548, at *2 (N.D. Cal. Apr. 27, 2018) (appointing firms as co-lead interim class counsel due in part to "the extensive amount of resources which they have available to expend on this case").

**IV. Conclusion**

The Court should deny all of the other motions for appointment as interim co-lead class counsel. For the reasons stated above and in the Hammond Team's motion, the Court should appoint HammondLaw as interim lead class counsel.

Dated: May 30, 2023

CHRISTINA TUSAN
POLINA BRANDLER
HAMMONDLAW, P.C.

*/s/ Christina Tusan*

Christina Tusan