Gary. M. Klinger (pro hac vice)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: 866.252.0878
Email: gklinger@milberg.com

*Plaintiffs' Co-Lead Interim Class Counsel*

Maureen M. Brady (pro hac vice)
MCSHANE AND BRADY LLC
1656 Washington
Suite 120
Kansas City, MO 64108
816-888-8010
Email: mbrady@mcshanebradylaw.com

*Plaintiffs' Co-Lead Interim Class Counsel*

Christina Tusan (SBN 192203)
ctusan@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, Suite 600
Tacoma, WA 98402
[Tel:] (310) 601-6766
[Fax] (310) 295-2385

*Plaintiffs' Co-Lead Interim Class Counsel*

Alan M. Mansfield (SBN: 125998)
amansfield@whatleykallas.com
WHATLEY KALLAS LLP
1 Sansome Street, 35th Floor
PMB #131
San Francisco, CA 94104 /
16870 West Bernardo Drive, Ste 400, San Diego, CA 92127
Phone: (619) 308-5034
Fax: (888) 341-5048

*Plaintiffs' Liaison Counsel*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**IN RE BETTERHELP, INC. DATA DISCLOSURE CASES**

This Document Relates To: All Actions

**Master File No. 3:23-cv-01033-RS**

Hon. Richard Seeborg

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BETTERHELP, INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

Hearing Date: May 30, 2024
Time: 3:30 p.m.
Courtroom: 3
Judge: Hon. Richard Seeborg

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..... ii

STATEMENT OF ISSUES TO BE DECIDED ..... viii

I. INTRODUCTION ..... 1

II. SUMMARY OF FACTUAL ALLEGATIONS FROM THE CC ..... 2

III. LEGAL STANDARDS APPLICABLE TO THIS MOTION ..... 4

IV. ARGUMENT ..... 6

A. PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS ..... 6

1. Plaintiffs Have Standing to Seek Injunctive Relief ..... 6

2. Plaintiffs Have Standin to Assert Statutory Claims ..... 7

B. PLAINTIFFS MEET THE 12(b)(6) REQUIREMENTS FOR ALLEGING ALL THE CLAIMS ASSERTED IN THE CC ..... 8

1. Plaintiffs State Claims for Invasion of Privacy ..... 8

2. Plaintiffs State a Claim for Violation of the CMIA ..... 11

3. Plaintiffs State a Claim for Violation of CIPA ..... 13

4. Plaintiffs State a Claim under the ECPA ..... 16

5. Plaintiffs State a Claim for Violation of the CCPA ..... 17

6. Plaintiffs State a Claim for Violation of CDAFA ..... 18

7. Plaintiffs State a Claim for Breach of Confidence ..... 20

8. Plaintiffs State a Claim for Violation of the UCL ..... 21

9. Plaintiffs State a Claim Under the FAL ..... 22

10. Plaintiffs State a Claim Under the CLRA ..... 23

11. Plaintiffs State a Claim for Negligence and Negligence *Per Se* ..... 24

12. Plaintiffs State Claims for Breach of Contract and Implied Contract ..... 25

13. Plaintiffs State a Claim for Unjust Enrichment ..... 25

**TABLE OF AUTHORITIES**

**Cases**

*Allen v. Novant Health, Inc.*,
2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) ........ 11

*Astiana v. Hain Celestial Group, Inc.*,
783 F.3d 753 (9th Cir. 2015) ........ 25

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ........ 17

*Barbour v. John Muir Health*,
2023 WL 2618967 (Cal. Super. Ct. Jan 5, 2023) ........ 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 5

*Berkla v. Corel Corp.*,
302 F.3d 909 (9th Cir. 2002) ........ 20

*Bivens v. Six Unknown Fed. Narcotics Agents*,
403 U.S. 388 (1971) ........ 8

*Brown v. Google LLC*,
Case No. 22-cv-03580-WHO, 2023 WL 5029899 (N.D. Cal. Dec. 22, 2022) ..... 13, 19, 20

*Brown v. Google, LLC*,
525 F.Supp. 3d 1049 (N.D. Cal. 2021) ........ 10, 11

*Brown v. Google, LLC*,
No. 20-cv-03664-LHK, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ........ 7

*Calhoun v. Google LLC*,
526 F.Supp.3d 605 (N.D. Cal. 2021) ........ 7, 11

*Cappello v. Walmart, Inc.*,
394 F.Supp.3d 1015 (N.D. Cal. 2019) ........ 7

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........ 6

*Clausing v. San Francisco Unified Sch. Dist.*,
221 Cal.App.3d 1224 (1990) ........ 8

*Colucci v. ZonePerfect Nutrition Co.*,
2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) ........ 21

*Cottle v. Plaid Inc.*,
536 F.Supp. 3d 461 (N.D. Cal. 2021) .......... 9

*Cousin v. Sharp Healthcare*,
681 F.Supp. 3d 1117 (2023) .......... 9

*Cousin v. Sharp Healthcare*,
Case No.: 22-cv-2040-MMA-DDL, 2023 WL 8007350, (S.D. Cal. Nov. 17, 2023) .......... 12

*Debono v. Cerebral, Inc.*,
Case No.: 22-cv-03378-AGT, 2023 WL 300141 (N.D. Cal. Jan. 18, 2023) .......... 23

*Doe v. Meta Platforms, Inc.*,
2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) .......... 5, 10, 13, 16

*Doe v. Regents of Univ. of California*,
672 F.Supp.3d 813 (2023) .......... 10, 13

*Effinger v. Ancient Organics LLC*,
657 F.Supp. 3d 1290 (N.D. Cal. 2023) .......... 22, 23

*Esparza v. Kohl's, Inc.*,
2024 WL 1152732 (S.D. Cal. Mar. 18, 2024) .......... 19

*Freeman v. Indochino Apparel, Inc.*,
443 F.Supp.3d 1107 (N.D. Cal. 2020) .......... 21

*Ghazarian v. Magellan Health, Inc.*,
53 Cal.App.5th 171 (2020) .......... 21

*Greenley v. Kochava, Inc.*,
Case No. 22-cv-01327-BAS-AHG, 2023 WL 4833466 (S.D. Cal. July 27, 2023) .......... 19

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 8

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) .......... 9

*Huynh v. Quora, Inc.*,
508 F.Supp. 3d 633 (N.D. Cal. 2020) .......... 24

*In re Cap. One Consumer Data Sec. Breach Litig.*,
488 F.Supp. 3d 374 (E.D. Va. 2020) .......... 24

*In re Carrier IQ*, 78
F.Supp.3d 1051 (N.D. Cal. 2015) .......... 19

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)

*cert. denied sub nom. Facebook, Inc. v. Davis*,
141 S. Ct. 1684 (U.S. Mar. 22, 2021) .......... passim

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F.Supp. 3d 767 (N.D. Cal. 2019) .......... 25

*In re Google Inc. Cookie Placement*,
806 F.3d 125 (3rd Cir. 2015) .......... 13

*In re Google RTB Consumer Priv. Litig.*,
606 F.Supp. 3d 935 (N.D. Cal. 2022) .......... passim

*In re Group Health Plan Litig.*,
Case No. 23-cv-267 (JWB/DJF), 2023 WL 8850243 (D. Minn Dec. 21, 2023) .......... 17

*In re Meta Pixel Healthcare Litig.*,
647 F.Supp. 3d 778 (2022) .......... passim

*In re Solara Med. Supplies, LLC Customer Data Security Breach Litig.*,
613 F.Supp.3d 1284 (S.D. Cal. 2020) .......... 7, 12

*In re Vizio, Inc., Consumer Privacy Litigation*,
238 F.Supp. 3d 1204 (C.D. Cal. 2017) .......... 25

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015) .......... 16

*In re Zappos.com, Inc.*,
888 F.3d 1020 (9th Cir. 2018) .......... 6

*In re: Lenovo Adware Litig.*,
Case No. 15-MD-02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) .......... 14

*In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*,
313 F.Supp. 3d 1113 (N.D. Cal. 2018) .......... 24

*J'Aire Corp. v. Gregory*,
24 Cal. 3d 799 (1979) .......... 24

*Javier v. Assurance IQ, LLC*,
Case No.: 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) .......... 9, 13

*Kane v. Univ. Rochester*,
Case No.: 23-cv-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .......... 17

*Katzberg v. Regents of Univ. of Calif.*,
29 Cal.4th 300 (2002) .......... 8

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F.Supp. 3rd 928 (N.D. Cal. 2023) .......... 9, 21

*Klein v. Facebook, Inc.*,
580 F.Supp. 3d 743 (N.D. Cal. 2022) ........ 7

*Kurowski v. Rush Sys. for Health*,
Case No.: 22-c-5380, 2023 WL 8544084, (N.D. Ill. Dec. 11, 2023)........ 17

*Kurowski v. Rush System for Health*,
9 F.Supp. 3d 931 (N.D. Ill. 2023) ........ 11

*Kwikset v. Superior Court*,
51 Cal.4th 310 (2011) ........ 8

*Licea v. American Eagles Outfitters*,
659 F.Supp.3d 1072 (2023) ........ 14

*Lit'l Pepper Gourmet, Inc. v. Airgas USA, LLC*,
Case No.: 19CV837-LAB(AGS), 2019 WL 6218780 (S.D. Cal. Nov. 21, 2019)........ 23

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ........ 5

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)........ 5

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ........ 5

*Mehta v. Robinhood Fin. LLC*,
Case No.: 21-CV-01013-SVK, 2021 WL 6882377 (N.D. Cal. May 6, 2021)........ 25

*Mekhail v. North Memorial Health Care*,
Case No. 23-cv-00440 (KMM/TNL), 2024 WL 1332260 (D. Minn. Mar. 28, 2024)...... 17

*Moore v. Rodriguez*,
2021 WL 2222590 (S.D. Cal. June 2, 2021)........ 8

*Noel v. Hall*,
568 F.3d 743 (9th Cir. 2009) ........ 15

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998)........ 11

*Norwest Mortg., Inc. v. Super. Ct.*,
72 Cal.App.4th 214 (1999) ........ 22

*Oman v. Delta Air Lines, Inc.*,
889 F.3d 1075 (9th Cir. 2018), *certified question accepted sub nom.*
*Oman v. Delta Air Lines*, No. S248726, 2018 WL 10809386 (Cal. July 11, 2018),
*and certified question answered*, 9 Cal. 5th 762 (2020) ........ 16

*Opperman v. Path, Inc.*,
205 F.Supp. 3d 1064 (N.D. Cal. 2016) .................................................................. 10

*Pioneer Electronics (USA), Inc. v. Sup. Court,*
40 Cal.4th 360 (2007) ................................................................................................ 9

*Regents of Univ. of California v. Sup. Ct.*,
220 Cal. App. 4th 549 (2013) ................................................................................. 13

*Revitch v. New Moosejaw, LLC*,
Case No.: 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)............. 14, 15

*Rex v. Chase Home Fin. LLC*,
905 F.Supp. 2d 1111 (C.D. Cal. 2012) ...................................................................... 7

*Rodriguez v. Google LLC*,
Case No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021)................ 11, 19

*Saleh v. Nike, Inc.*,
562 F.Supp.3d 503 (C.D. Cal. 2021) ........................................................................ 14

*Sanders v. Am. Broad. Companies, Inc.*,
20 Cal.4th 907 (1999) ............................................................................................. 10

*Schmitt v. SN Servicing Corp.*,
Case No. 21-cv-03355-WHO, 2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) .................. 16

*Smallman v. MGM Resorts International*,
68 F.Supp.3d 1175 (2022) ..................................................................................... 7, 24

*SocialApps, LLC v. Zynga, Inc.*,
Case No.: 11-cv-4910-YGR, 2012 WL 381216 (N.D. Cal. Feb 6, 2012) ........................ 21

*Stasi v. Inmediata Health Grp. Corp.*,
501 F.Supp. 3d 898 (S.D. Cal. 2020)........................................................................ 18

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ................................................................................. 16

*Toy v. Lifeline Screening of American*,
2024 WL 1701263 (N.D. Cal. Mar. 19, 2024)............................................................ 13

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .................................................................................. 19

*Valentine v. NebuAd, Inc.*,
804 F.Supp. 2d 1022 (N.D. Cal. 2011) ..................................................................... 16

*Warren v. Pomona Valley*,
No. 23 STCV 05324 (Cal. Sup. Ct. Oct. 25, 2023) ...................................................... 15

*Warth v. Seldin*,
422 U.S. 490 (1975) .......... 5

*Yockey v. Salesforce, Inc.*,
2023 WL 5519323 (N.D. Cal. Aug. 25, 2023) .......... 9

**Statutes**

18 U.S.C. § 2511(2)(d) .......... 16

Cal. Civ. Code § 1761(e) .......... 23

Cal. Civ. Code § 1770(a) .......... 23

Cal. Civ. Code § 1798.150(a)(1) .......... 18

Cal. Civ. Code § 1798.81.5(d)(1)(A) .......... 18

Cal. Civ. Code §1798.150 .......... 17

Cal. Civ. Code §1798.82 .......... 17

Cal. Pen. Code § 502(c)(1)(B) .......... 19

Cal. Pen. Code § 502(c)(2) .......... 19

Cal. Pen. Code § 631(a) .......... 13

Cal. Pen. Code §502(c)(13) .......... 19

Cal. Pen. Code §502(c)(6) .......... 19

Cal. Pen. Code §502(c)(7) .......... 19

California Constitution, Art. I, Sec. 1 .......... 8

**Other Authorities**

Restatement of Torts (Second) § 892A (1979) .......... 10

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 4

Fed. R. Civ. P. 12(b)(6) .......... 5

Fed. R. Civ. P. 8(d)(2) .......... 24

**Regulations**

45 C.F.R § 164.508 .......... 7

## STATEMENT OF ISSUES TO BE DECIDED

1. Do plaintiffs allege sufficient facts to support their allegations of standing to assert the claims they raise in the Consolidated Class Action Complaint?

2. Do plaintiffs properly allege the requisite elements for their statutory claims based on violations of for California's Confidentiality of Medical Information Act ("CMIA"), California Civil Code § 56.101 and § 56.10; the California Invasion of Privacy Act ("CIPA"), California Penal Code §§ 630, *et seq*.; the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.140 *et seq*.; California's Business & Professions Code § 17200 and 17500, *et seq*. ("UCL"); The California Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*. ("CLRA"); the Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502 ("CDAFA"); and the Electronic Communications Privacy Act, 18 U.S. Code § 2510 *et seq*.?

3. Do plaintiffs also properly allege the requisite elements for their claims for state law claims for breach of confidence, negligence and negligence *per se*, invasion of privacy under California Constitution, Art. 1, § 1 and the common law; unjust enrichment; and breach of contract, or in the alternative, breach of implied contract?

4. To the extent any of these claims are found to need additional support in terms of how they are pled, should the Court grant plaintiffs leave to file an amended complaint?

## I. INTRODUCTION

Defendant BetterHelp, Inc. is an extremely profitable online mental health services provider whose sole business is to offer virtual counseling and therapy services through its network of over 30,000 licensed clinicians to individuals seeking assistance for their mental health issues. Consolidated Class Action Complaint ("CC") ¶¶1-3. Knowing BetterHelp has a special duty to protect its patients' PHI as an entity that claimed to be "HIPAA certified," BetterHelp publicly represented it would keep Plaintiffs' and Class Members' personal information private.

Unbeknownst to Plaintiffs and Class Members, however, BetterHelp used pixels and trackers on its websites to send confidential and highly sensitive personally identifiable information ("PII") and Protected Health Information ("PHI") (collectively, "Private Information") to undisclosed internet marketing companies such as Meta Platforms, Inc. ("Facebook" or "Meta"), SnapChat, Criteo, and Pinterest, and others, without first obtaining Plaintiffs' or Class Members' authorization or consent. Defendants' implementation of these tracking tools allowed those third parties to intercept Plaintiffs' and Class Members' communications made while seeking BetterHelp's mental health services and information provided to BetterHelp about their health and need for services on their Intake Questionnaire forms (including whether they had received prior mental health services) and their financial condition. The tracking tools also allowed unauthorized third parties to learn that Plaintiffs and Class Members were prospective or actual patients of BetterHelp – a company whose sole business is providing mental health services. BetterHelp intentionally disclosed the highly confidential PII and PHI of Plaintiffs and Class Members to increase its subscriber base and its own profit. Plaintiffs allege this not only betrayed consumer's reasonable expectations, but also violated state and federal privacy and consumer protection laws.

Defendant's Motion to Dismiss ("Mot.") ignores and misrepresents the allegations in the CC. This Court should follow the rulings of numerous courts nationwide that have found that similar allegations were sufficient to support these causes action  and deny Defendant's Motion to Dismiss.

## II. SUMMARY OF FACTUAL ALLEGATIONS FROM THE CC

Plaintiffs' CC sets forth in detail how BetterHelp through its various websites[1] failed to protect its visitors and clients' sensitive PII and PHI, including details of their status as mental health and therapy patients, their mental health treatment and therapy, and prior medical history.

Even before Plaintiffs and other customers signed up for services through BetterHelp's websites they were required to provide personal information and details of their mental health history, and upon completing its questionnaire they were required to create a paid account and provide BetterHelp financial information. CC ¶¶5, 43, 45, 88, 89, 92, 93, 264. This Private Information provided in connection with their use of BetterHelp's online mental health platform included names, dates of birth, email addresses, IP addresses, their health status and histories, mental health conditions, their symptoms, sexual orientation, the fact that they are seeking therapy to assist with their then-current mental health issues, whether they previously were in therapy, as well as the fact they had enrolled in BetterHelp's services – all of which qualifies as PHI. CC ¶¶1, 6, 40, 41, 42, 43, 89, 90, 91. The protection of such sensitive information is material and important not only to Plaintiffs but also to all Class Members. CC ¶¶19, 20, 21, 24-31.

BetterHelp failed to preserve the confidentiality of the Personal Information it was duty-bound to protect. CC ¶¶127-128. Despite being well-aware of the sensitivity of this Personal Information, beginning in 2013 BetterHelp secretly and unlawfully disclosed Plaintiffs' and Class Members' Private Information, PHI, and personal identifiers. CC ¶¶8, 62, 63. It illegally released this information and aided and abetted the interception of this information by unauthorized third parties such as Meta, Criteo, Pinterest and Snapchat through its use of on-line tracking technology such as Meta pixels, trackers, cookies, web beacons, tags and other tracking devices BetterHelp intentionally placed on key pages of its websites. CC ¶¶12, 74, 75, 77, 85, 86, 95, 96. By continually interacting with BetterHelp's California-based servers and websites, such data could then be combined by companies such as Meta with additional details to help build detailed consumer marketing profiles. CC ¶¶76, 78, 79, 80, 81, 82, 83, 84, 88, 97. This was the result of

[1] CC ¶ 4, 32 (BetterHelp, Inc. operated directly and was also doing business during the relevant time period as Compile, Inc.; MyTherapist; Teen Counseling; Faithful Counseling; Pride Counseling; iCounseling; ReGain; and Terappeuta, operating through various websites including www.BetterHelp.com, www.regain.us, and www.teencounseling.com).

willful and intentional actions by BetterHelp employees inadequately trained in the protection of such data, who embedded these tracking tools throughout its platform, including the Intake Questionnaire, and transmitted the answers visitors provided regarding their mental health histories and concerns. CC ¶¶1, 5, 6, 10, 72, 158, 368. This allowed third parties to intercept confidential communications of Class Members without their consent. CC ¶¶70, 71, 72, 87.

BetterHelp used and permitted others to use Plaintiffs' and Class Members' Private Information, including the fact they had been in therapy, to build individual consumer profiles to more precisely target them with advertisements, including by sharing millions of email and/or IP addresses with Meta, Snapchat, Pinterest and Criteo without having authorization to do so. CC ¶¶10, 64, 65, 67, 68, 69, 92, 93, 94. BetterHelp unlawfully configured its websites to transmit to unauthorized third parties Personal Information in order to (1) drive consumers to their services and increase market share and profits through the identification of new potential patients and the recapture/retention of prior patients, and (2) cultivate and maintain relationships with various social media sites to promote BetterHelp's brand awareness. CC ¶¶8, 9, 11, 66, 96.

BetterHelp separately misled consumers by promising to keep their PHI private and use it only for non-advertising purposes, claiming it would only engage in limited sharing to facilitate consumers' mental health therapy with therapists "you can trust". CC ¶¶39, 46, 52, 53, 54. Better Help claimed on its websites and privacy policies that it was "HIPAA compliant" and protecting such information under the auspices of HIPAA. CC ¶¶41-43, 48, 49, 50, 51, 56-61 61, 186, 295, 364. It even included meaningless "HIPAA seals" on its platform to reassure consumers it would not share their PHI. CC ¶¶1-3, 48-50, 178. From August 2013 to at least June 2021, it also claimed it was only using tracking tools for limited purposes, which did not include the use or disclosure of users' PHI for third party advertising purposes. CC ¶61.

In fact, BetterHelp was acting in violation of numerous U.S Department of Health and Human Services ("HHS") and Federal Trade Commission ("FTC") bulletins and directives. CC ¶¶7, 14, 15, 16, 47, 126. Such conduct also violated numerous provisions of California and federal laws, including HIPAA and HITECH. CC ¶¶17, 18, 22, 98, 99-125. Both the HHS") and the FTC have concluded that tracking technologies on healthcare websites like the ones BetterHelp used

impermissibly share PHI, and such entities may not use those technologies to disclose or share PHI with third parties without first obtaining express authorizations to do so.[2] Plaintiffs allege in the CC BetterHelp failed to do so. BetterHelp's conduct was found so egregious that in March 2023 the FTC entered into a Consent Order stopping BetterHelp from engaging in illegal practices and ordered millions of dollars in penalties and refunds. CC ¶13.

BetterHelp has been extremely successful as a result of commoditizing user PHI; as of December 2022 it had revenues of over $1 billion and over 420,000 users. CC ¶¶3, 37, 38. The data gathered, bartered and/or sold by BetterHelp also has significant value in the hundreds of dollars per individual consumer in which Plaintiffs and Class members have a vested interest, and its compromise diminished that value. CC ¶¶129-135. In addition, Better Help shared up to 7 million visitors' IP addresses and email addresses and used these consumers' identifying information and the fact they had previously been in therapy to target them with advertisements for BetterHelp's and others' services and to identify and target similar consumers, bringing in hundreds of thousands of new paying users and hundreds of millions of dollars in revenue as a result. CC ¶¶38, 64, 96. Plaintiffs and millions of BetterHelp users signed up for BetterHelp services and paid monies they would not have paid to BetterHelp if it had disclosed its illegal eavesdropping, reasonably relying on its claims to the contrary. CC ¶¶24-31, 46, 55.

Because of BetterHelp's significant contacts with California, California law applies to all Class Members. CC ¶¶32, 150-154. As a result of BetterHelp's failure to disclose and actively conceal its illegal conduct, all applicable statutes of limitation have been tolled such that Class Members can seek relief from when BetterHelp started such practices. CC ¶¶136-140.

## III. LEGAL STANDARDS APPLICABLE TO THIS MOTION

For purposes of ruling on a motion to dismiss for lack of standing under Fed. R. Civ. P. 12(b)(1), the court "must accept as true all material allegations in the complaint and must construe

[2] *See, e.g.*, Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates, U.S. Health & Hum. Servs. https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last visited May 1, 2024); FTC-HHS Joint Letter re: Use of Online Tracking Technologies, https://www.ftc.gov/system/files/ftc.gov/pdf/FTC -OCR -Letter-Third-Party-Trackers-07-20-2023.pdf (last visited May 1, 2024))

the complaint in favor of the complaining party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). "At the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice, for on a motion to dismiss [the court must] presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted). Under Fed. R. Civ. P. 12(b)(6), the claims asserted in a Complaint withstand dismissal for failure to state a claim where Plaintiffs plead "enough facts to state a claim [for] relief that is plausible on its face." *In re Google RTB Consumer Priv. Litig.*, 606 F.Supp.3d 935, 942 (N.D. Cal. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) ("*Google RTB*"). "In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff." *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, *2 (N.D. Cal. Sept. 7, 2023). "If the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id.* (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

Despite its statement that it "accepts the well-pleaded allegations in the Complaint" (Mot. at 2), BetterHelp cites specific Complaint paragraphs as making factual assertions that are simply not what Plaintiffs allege. Paragraph 37 of the CC does not say anything about BetterHelp "making therapy more accessible, convenient, and affordable" - it alleges BetterHelp spends millions of dollars in advertising. Paragraphs 65-97 of the CC do not allege BetterHelp "used third-party services to operationalize and market its services", nor do they allege BetterHelp shared "limited, anonymous website activity to optimize BetterHelp's consumer outreach." Those paragraphs, in fact, allege the opposite – that BetterHelp wrongfully shared users and patients' Private Information with unauthorized third parties, all without the users' authorization. And Paragraphs 57-60 of the CC do not "admit" BetterHelp expressly disclosed its use of tracking technologies -- to the contrary, those paragraphs describe how BetterHelp's shifting privacy policies consistently *failed* to disclose BetterHelp's practice of engaging in the unlawful sharing of Private Information with third parties, and how for many years BetterHelp never made *any* disclosures about its use of

Private Information for advertising purposes. Those paragraphs also allege how the disclosure BetterHelp started using in September 2019 was insufficient as it failed to disclose its practice of sharing information with third parties that could be used for advertising purposes -- a practice that far exceeded the limited purposes stated in BetterHelp's Privacy Policies. These policies never constitute consent to the disclosure of HIPAA-related PHI, which required BetterHelp obtain specific advance consent. CC ¶¶98-128. Plaintiffs also allege that BetterHelp affirmatively promised that it would keep their information confidential and not share it with anyone else, and that they did not discover these unlawful disclosures until the FTC's announcement. CC ¶¶24-31, 46-61. BetterHelp, however, did not keep this information private and instead disclosed it to third parties, which resulted in Plaintiffs receiving targeted ads for mental health services and therapists that they reasonably believe directly resulted from their use of the BetterHelp platform. CC ¶¶24-31, 85-97. The Court must accept the CC's allegations as stated as true, not BetterHelp's spin or gross misrepresentations about them.

## IV. <u>ARGUMENT</u>

### A. PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS

#### 1. <u>Plaintiffs Have Standing To Seek Injunctive Relief.</u>

Plaintiffs adequately allege standing to seek injunctive and declaratory relief because they have a continuing interest in ensuring that their Private Information and PHI is not disclosed in the future and is destroyed by BetterHelp or the third parties to whom it was wrongfully disclosed. CC ¶¶267, 375-76. Several Plaintiffs allege they have been and are getting BetterHelp and other associated advertisements even if they are no longer using its service. See, CC ¶¶25-31. As the companies to whom Defendant provided Plaintiffs' PHI continue to maintain and use that information without restriction, the injury to Plaintiffs and Class Members continue to inure.

Standing may be established through allegations that there is a "substantial risk" of injury. *Clapper v. Amnesty Int'l* USA, 568 U.S. 398, 414 n.5 (2013). The Ninth Circuit has held such a substantial risk of future harm is sufficient to support standing for injunctive relief where the information obtained by unauthorized third parties is highly sensitive. *See, e.g., In re Zappos.com, Inc.*, 888 F.3d 1020, 1027 (9th Cir. 2018) (allegations that sensitive personal information was

obtained in data breach constitute injury in fact supporting standing). Under HIPAA, patients have the exclusive right to determine how their PHI is used and to make informed decisions concerning the disclosure of their PHI. *See* 45 C.F.R § 164.508. Plaintiffs have alleged the information BetterHelp and these unauthorized third parties have in their possession is highly sensitive. CC ¶¶19, 20, 21, 24-31. Because there is a substantial risk as to the misuse of that information, Plaintiffs have standing to seek injunctive relief.

**2. Plaintiffs Have Standing To Assert Statutory Claims**

BetterHelp's argument that unauthorized access to Plaintiffs' PHI does not constitute "lost money or property" for standing purposes to assert claims under the UCL, FAL and CLRA repeatedly has been rejected by courts in the Ninth Circuit. *See, e.g., In re Solara Med. Supplies, LLC Customer Data Security Breach Litig.*, 613 F.Supp.3d 1284, 1301 (S.D. Cal. 2020) (finding plaintiffs who lost control of their medical information had lost money or property for purposes of the UCL); *Cappello v. Walmart, Inc.*, 394 F.Supp.3d 1015, 1020 (N.D. Cal. 2019) ("So long as Plaintiffs have adequately alleged Walmart breached the terms of its privacy agreement, therefore, Plaintiffs have standing under the UCL."); *Brown v. Google, LLC*, No. 20-cv-03664-LHK, 2021 WL 6064009, at *17 (N.D. Cal. Dec. 22, 2021) ("*Brown I*")(plaintiffs lost money when Google took "valuable data" and plaintiff "received no money in return"); *Calhoun v. Google LLC*, 526 F.Supp.3d 605, 635 (N.D. Cal. 2021)(same, and summarizing cases).[3] Plaintiffs allege they suffered an injury in fact and lost money or property as a result of BetterHelp's practice of disclosing their Private Information and PHI to third parties without consent and Plaintiffs further allege that they paid more for BetterHelp's services than they otherwise would have, if at all, had they known BetterHelp was disclosing their Private Information to unauthorized third parties in violation of its legal obligations and reasonable consumer expectations. CC ¶¶24-31, 46, 55, 370-

[3] *See also, e.g., Klein v. Facebook, Inc.*, 580 F.Supp. 3d 743, 804 (N.D. Cal. 2022) ("[T]here is ample support for Consumers' argument that lost information and attention has material value."); *Rex v. Chase Home Fin. LLC*, 905 F.Supp. 2d 1111, 1145 (C.D. Cal. 2012) (noting that UCL standing does not require a tangible monetary expenditure), *Smallman v. MGM Resorts International*, 68 F.Supp. 3d 1175, 1190 (2022) (collecting cases, noting that the assertion "that Plaintiffs must establish both the existence of a market for their PII and an impairment of their ability to participate in that market, is not supported by Ninth Circuit precedent and other district courts in this Circuit have rejected them.").

372. Plaintiffs describe the extensive market for health data comprised of brokers who compile the data from providers and other health care organizations and sell it to buyers. CC ¶¶129-135. By obtaining Plaintiffs' sensitive data and bartering or selling it to Facebook and other third parties, BetterHelp "diminished" Plaintiffs' "future property interest." This is sufficient to have statutory standing. *Kwikset v. Superior Court*, 51 Cal.4th 310, 323 (2011).[4]

## B. PLAINTIFFS MEET THE 12(b)(6) REQUIREMENTS FOR ALLEGING ALL THE CLAIMS ASSERTED IN THE CC

### 1. Plaintiffs State Claims for Invasion of Privacy

The causes of action for invasion of privacy (Counts II and XI) state a claim upon which relief can be granted. As described in the CC, BetterHelp placed hidden tracking tools on its websites and in an Intake Questionnaire that forced Plaintiffs' web browsers to send data transmissions to third parties "much like a traditional wiretap." CC ¶¶12, 74, 75, 77, 82, 84, 95. Plaintiffs also described their reasonable expectations their communications with BetterHelp would be kept private. CC ¶¶19, 20, 21, 24-31. The first claim (intrusion on seclusion) requires Plaintiffs to allege facts showing that (1) defendant "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy"; and (2) the intrusion "occur[red] in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). The second claim (right to privacy under the California Constitution, Art. I, Sec. 1) requires Plaintiffs to allege (1) "a legally protected privacy interest"; (2) a reasonable expectation of privacy; and (3) an intrusion "constitut[ing] an egregious breach of the social norms" that is "highly offensive." *Id.* at 287. Given the similarity of these theories, "courts consider the claims together when both are invoked and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook,*

[4] Plaintiffs also have standing to pursue injunctive relief in connection with their invasion of privacy claims. BetterHelp cites *Moore v. Rodriguez*, 2021 WL 2222590, * 20 (S.D. Cal. June 2, 2021), for the proposition that damages are not permitted for an invasion of privacy claim under the California Constitution. *Moore* at *20 cites only to *Clausing v. San Francisco Unified Sch. Dist.*, 221 Cal.App.3d 1224, 1236-37 (1990). However, *Clausing* was decided before the California Supreme Court's decision in *Katzberg v. Regents of Univ. of Calif.*, 29 Cal.4th 300, 313 n.13, 317 (2002), which held whether an invasion of privacy claim under the California Constitution permits the recovery of damages was an open question The constitutional tort analysis adopted by *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), and its progeny suggests damages are available.

*Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) *cert. denied sub nom. Facebook, Inc. v. Davis*, 141 S. Ct. 1684 (Mar. 22, 2021). Violation of either of these claims involves resolving mixed questions of law and fact. *Pioneer Electronics (USA), Inc. v. Sup. Court*, 40 Cal.4th 360, 370 (2007) (citing *Hill v. Nat'l Collegiate Athletic Assn*., 7 Cal. 4th 1, 26, 40 (1994)). Only if the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Pioneer Electronics*, 40 Cal.4th at 370 (citing *Hill*, 7 Cal.4th at 26, 40).

It should be undisputed that the conduct alleged here (disclosure of highly sensitive PI about consumers' use of mental health services and disclosures about their conditions) involves the disclosure of highly sensitive information. *See, e.g., Katz-Lacabe v. Oracle Am., Inc.*, 668 F.Supp.3d 928, 942-43 (N.D. Cal. 2023) (allegation defendant collected "sensitive health and personal safety information" was sufficient to plead an invasion of privacy claim since "Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is."(citing cases)); *Yockey v. Salesforce, Inc.*, 2023 WL 5519323, at *6 (N.D. Cal. Aug. 25, 2023) (rejecting defendant's argument that "plaintiffs had no reasonable expectation of privacy because the communications occurred over the internet"); *Javier v. Assurance IQ, LLC,* 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) (plaintiff stated valid claim by alleging that he provided "demographic information and medical history" via forms filled out on insurance company website); *Cousin v. Sharp Healthcare*, 681 F.Supp.3d 1117, 1126 (2023) ("disclosure of [plaintiffs'] sensitive health information on [healthcare provider's] appointment scheduling page is 'highly offensive' sufficient to withstand dismissal). Courts have further held that whether a defendant's "alleged conduct 'could highly offend a reasonable individual,' is . . . 'an issue that cannot be resolved at the pleading stage.'" *Cottle v. Plaid Inc.*, 536 F.Supp.3d 461, 491 (N.D. Cal. 2021) (citing *In re Facebook* , 956 F.3d at 606). The question "[w]hether the conduct was highly offensive can rarely be resolved at the pleading stage." *Google RTB*, 606 F.Supp. 3d at 946, 948 (citing *In re Facebook* , 956 F.3d at 606)(denying motion to dismiss where plaintiffs alleged that "health data such as whether someone suffers from depression or eating disorders" was disclosed without their consent).

Disclosure of medical information is highly offensive and infringes upon Plaintiffs' and Class Members' right to privacy. Plaintiffs have thus alleged facts sufficient for a court or jury to conclude such sensitive data was disclosed by BetterHelp to third parties, used by those third parties, that Plaintiffs have suffered injury, and that they have standing to pursue monetary and injunctive relief. Courts have routinely upheld such claims. See, e.g., *Meta Platforms, Inc*., 2023 WL 5837443; *Doe v. Regents of Univ. of California*, 672 F.Supp.3d 813 (2023).

BetterHelp challenges Plaintiffs' invasion of privacy claims as to the unauthorized interception and disclosure of Plaintiffs' Private Information to third-party marketing companies on the grounds doing so was "voluntary" or consensual. Mot. at 8. While truly effective consent may impact the intrusion upon seclusion claim (see *Opperman v. Path, Inc*., 205 F.Supp.3d 1064, 1072 (N.D. Cal. 2016) (citing Restatement of Torts (Second) § 892A (1979)), the allegations of the CC at ¶¶24-31, 46, and 55 aver such sharing was neither voluntary nor consensual. In addition, the California Supreme Court has said that "privacy, for purposes of the intrusion tort, is not a binary, all-or-nothing characteristic…. There are degrees and nuances to societal recognition of our expectations of privacy: the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law." *Sanders v. Am. Broad. Companies, Inc.*, 20 Cal.4th 907, 916 (1999). Plaintiffs did not agree to let BetterHelp commandeer their web browsers and send confidential communications about their mental health to social media companies; rather, they had a reasonable expectation of privacy in their communications and did not consent to BetterHelp's disclosure of their private communications to third parties. *See Brown v. Google, LLC*, 525 F.Supp.3d 1049, 1063-67 (N.D. Cal. 2021) ("*Brown II*") (rejecting consent defense in denying motion to dismiss invasion of privacy claims).

*In re Meta Pixel Healthcare Litig.* is instructive. 647 F.Supp.3d 778, 793, 801 (2022). There, the court recognized that the disclosure of information sufficient to "establish that a user is about to log in to a healthcare provider's website" is "highly offensive" because "patient status and medical-related communications between patients and their medical providers are protected by federal law," that "health-related communications with a medical provider are almost uniquely personal," and that therefore plaintiffs had a reasonable expectation of privacy that their

communications with medical providers were confidential. In addition, California courts recognize that medical information is particularly sensitive. *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998) ("One can think of few subject areas more personal and more likely to implicate privacy interests than that of one's health or genetic make-up."). And a host of recent cases applying California law have held that similar allegations of surreptitious data collection meet the "highly offensive" requirement. *See, e.g.*, *Rodriguez v. Google LLC*, Case No. 20-cv-04688-RS, 2021 WL 2026726, at *8 (N.D. Cal. May 21, 2021) (following *In re Facebook*); *Brown II*, 525 F.Supp.3d at 1080; *Calhoun*, 526 F.Supp.at 631.[5] Plaintiffs' allegations that they had a reasonable expectation of privacy in such data and that the disclosure and sharing of such data would be "highly offensive" to the reasonable consumer (CC ¶¶19, 20, 21, 24-31, 46, 55) are more than sufficient to survive this Motion.

### 2. Plaintiffs State a Claim for Violation of the CMIA

BetterHelp seeks dismissal of Count XII for violation of the CMIA by contending it is not a "provider of healthcare" or a "recipient of medical information." Mot. at 9-10. BetterHelp's argument would require this Court to rely on facts that are directly inconsistent with the allegations in the CC, which allege BetterHelp is a "covered entity" under HIPAA and the HITECH Act (¶¶103-104) and that Defendant repeatedly made false statements and claims that (1) it was "HIPAA certified" (and throughout the class period had a HIPAA logo at the bottom of each of its webpages); and (2) it would not use or disclose PHI for advertising purposes (¶¶46-61). At the motion to dismiss stage, the Court must accept these allegations as true.

BetterHelp also ignores the CC's detailed allegations that Plaintiffs' medical information from the Intake Questionnaire was disclosed to known entities such as Facebook, Snapchat, Criteo, and Pinterest and were secretly intercepted by and/or disclosed to various third parties without consent to do so. CC ¶¶10, 62-63, 72, 87-95 ("Defendant's marketing team …made the decision to employ tracking software that allowed companies like Facebook to intercept the

---

[5] *Kurowski v. Rush System for Health*, 9 F.Supp. 3d 931 (N.D. Ill. 2023), and *Allen v. Novant Health, Inc.*, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023), cited by BetterHelp are distinguishable. Neither was decided under California law. And none of the cases cited by BetterHelp for its contention that its disclosures were not "highly offensive" as a matter of law (Mot. at 9) involved sensitive and statutorily-protected PHI regarding mental health services.

communications of Plaintiffs and Class Members with BetterHelp in real time, including the Private Information transmitted through the Intake Questionnaire.") The CC at ¶¶41 and 45 further alleges the Intake Questionnaire "asks a series of sensitive questions about mental health symptoms and the reasons why the individual is seeking therapy (e.g., feelings of depression, anxiety, grief, etc.), including if the customer is "experiencing overwhelming sadness, grief, or depression" or has been having thoughts that the customer "would be better off dead or hurting yourself in some way," and that "as a condition of using the Service, Plaintiffs and other Class Members were required by Defendant to enter confidential, private, and sensitive personal and health information into the respective website or app." That BetterHelp's tracking tools sent Intake Questionnaire responses to third parties at the same time as it was sent to BetterHelp does not mean that Plaintiffs fail to allege this information was in the possession of BetterHelp; in fact, they allege this information was intended to be provided only to BetterHelp and not shared.

Finally, Plaintiffs properly allege that the PHI disclosed to third parties by BetterHelp was viewed by specific third parties and was "actively viewed, examined, analyzed, curated, and used" by Facebook. CC ¶¶129, 213, 258, 267, 332, 375-76. Each Plaintiff also alleges that he or she received targeted advertisements regarding mental health and therapy following their use of the website and completion of the Intake Questionnaire (CC ¶¶24-31), leading to the reasonable conclusion that such information was viewed by third parties. Otherwise, how would those third parties know to send each Plaintiff specifically-targeted advertisements without having first "viewed" the information it intercepted to know what those advertisements should be about and to whom they should be sent? Such allegations are sufficient to assert a CMIA claim. *See, e.g., Cousin v. Sharp Healthcare*, Case No.: 22-cv-2040-MMA-DDL, 2023 WL 8007350, at *3-5 (S.D. Cal. Nov. 17, 2023) (vacated on other grounds, see ECF No. 65 at 15) (whether Meta viewed and accessed information using algorithms and "whether Meta as an entity and not a human being can 'view' information for CMIA purposes" were "question[s] the Court cannot answer on Defendant's motion to dismiss."); *In re Solara Med. Supplies*, 613 F.Supp.3d at 1299 (plaintiffs alleged facts sufficient to show their information had been accessed by a third party where plaintiffs alleged an "increase in medical-related spam emails and phone calls following the data

breach."); *Regents of Univ. of California v. Sup. Ct.*, 220 Cal. App. 4th 549, 566 (2013).

**3. Plaintiffs State a Claim for Violation of CIPA**

Section 631(a) of CIPA (Count VIII) prohibits any person from using electronic means to "learn the contents or meaning" of any "communication" "without consent" or in an "unauthorized manner." *In re Facebook* , 956 F.3d at 601 (quoting Cal. Pen. Code § 631(a)). It also applies to a person "who aids, agrees with, employs, or conspires with any person or persons to lawfully do, or permit" the interception. *Id.*

BetterHelp's first challenge to Plaintiffs' CIPA claim ignores numerous Ninth Circuit decisions holding CIPA applies to internet communications. *See, e.g., Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who "reads, or attempts to read, or to learn the contents" of a communication "without the consent of all parties to the communication."); *In re Google Inc. Cookie Placement*, 806 F.3d 125, 139 (3rd Cir. 2015) ("post-domain name portions of the URL are designed to communicate to the visited website which webpage content to send the user."); *Brown v. Google LLC*, Case No. 22-cv-03580-WHO, 2023 WL 5029899, *15 (N.D. Cal. Dec. 22, 2022) ("*Brown III*") (URLs constitute "contents" under CIPA because "Google collects the type of search queries the Ninth Circuit thought could be content in *Zynga Privacy*."); *Google RTB*, 606 F.Supp.3d at 948-49 (discussing application of CIPA to websites). Courts have also repeatedly sustained CIPA claims based on allegations that companies used tracking technologies on their websites to intercept communications. *See, e.g., Toy v. Lifeline Screening of American*, 2024 WL 1701263, *1 (N.D. Cal. Mar. 19, 2024) (allegations Defendant installed trackers to optimize marketing and tracking were sufficient to plead that it "aid[ed], agree[d] with, employ[ed], or conspire[d] with" Facebook and/or Google to intercept Toy's information in violation of CIPA.); *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *3 (denying motion to dismiss CIPA claims where plaintiffs alleged that users entered their personal medical information into forms provided by hospital websites); *Doe v. Regents of Univ. of California*, 672 F.Supp. 3d at 816 (denying motion to dismiss where plaintiff alleged that hospital system "intentionally incorporated Meta Pixel on the UCSF website and password protected MyChart portal"); *Revitch*

*v. New Moosejaw, LLC*, Case No.: 18-CV-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (complaint adequately alleged that defendant violated Section 631 by enabling another's wrongdoing in connection with website); *Saleh v. Nike, Inc.*, 562 F.Supp.3d 503, 520-21 (C.D. Cal. 2021) (allegations that defendant's "voluntarily embedding [interceptor's] software code on its website" facilitated the interception sufficiently stated a claim for violation of § 631(a)."); *In re: Lenovo Adware Litig.*, Case No. 15-MD-02624-RMW, 2016 WL 6277245, at *8 (N.D. Cal. Oct. 27, 2016) (same).

BetterHelp's second and third arguments fare no better. The entire purpose of the Meta pixel is to allow Facebook and others to surreptitiously intercept the contents of a user's communications with a website where it is embedded to be used for retargeting. CC ¶¶12, 74, 75, 77, 85, 86, 95, and 96. The cases cited by BetterHelp involved "session replay" software, a completely different technology that merely records a website user's interactions (including mouse movements and clicks) for later review by the company. Not even Facebook disputes that a Pixel operates as an intentional interception. *See In re Meta Pixel*, 647 F.Supp.3d at 795 ("Meta does not dispute that the intentional or interception elements are met" under CIPA). The information BetterHelp intentionally shared with third parties included PHI that is statutorily protected from unauthorized disclosure to third parties absent the patient's consent. CC ¶¶8, 62, 63. Based on the design of these tools and BetterHelp's intentional incorporation of them into its websites, it not only knew this would result in the interception of Plaintiffs' and Class Members' Private Information but also that such information would be used for marketing and advertising purposes rather than internal data analysis fed back to only to BetterHelp. CC ¶¶70, 71, 72, 87.

Defendant's argument that no interception "in transit" occurred under CIPA should also be given short shrift. As noted above, even Facebook does not dispute that an interception in transit occurs, and the CC contains allegations regarding how these tracking tools work to intercept communications in transit. CC ¶¶82-83, 259-63.[6] Defendant attempts to distinguish the cases it

[6] *Licea v. American Eagles Outfitters*, 659 F.Supp. 3d 1072 (2023), is distinguishable because unlike the CC it did not contain such allegations.

admits in a footnote[7] support Plaintiffs' allegations of a violation based on the use of Pixels by claiming that the CC somehow differs by alleging "duplication" instead of interception. In fact, the CC at ¶82 alleges the Pixel acts "like a traditional wiretap", not that it is a duplicative communication. In addition, the CC repeatedly alleges the interception of Plaintiffs' and Class Members' communications in a manner that are consistent with a traditional wiretap. CC ¶¶8, 10, 55, 63, 72, 82-83, 85, 87, 151, 190, 238, 240, 259-63, 356.

The "interception" requirement is not a literal one. Rather, it occurs "when the contents of a wire communication are captured or re-directed in any way." *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009) (examining analogous federal Wiretap Act); *In re Meta Pixel*, 647 F.Supp.3d at 795 ("[T]he Ninth Circuit has construed the term [intercept] according to its ordinary meaning as the "act of acquiring, or coming into possession of"). Interception of an electronic communication includes the simultaneous transmission of communications. *In re Facebook* , 956 F.3d at 608 ("Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule."); *Revitch*, 2019 WL 5485330, at *2.[8]

Finally, in arguing CIPA does not apply extraterritorially, BetterHelp again ignores both case law and the allegations of the CC. Plaintiffs allege that the conduct at issue originated in and emanated from California because that is where BetterHelp: (1) made decisions to include the tracking tools on its websites and where its servers are located, (2) made the misrepresentations at issue, and (3) aided and allowed the third parties such as Facebook to receive and intercept the

---

[7] Mot at 13, n. 12 (admitting that "some courts have disagreed on the transit point" but claiming that "These cases do not control the outcome here, where Plaintiffs explicitly allege that their information was shared with Meta through a separate, "duplicate" communication. CC ¶ 82." That is simply false, as that paragraph (nor any other paragraph) does not make such a claim.

[8] BetterHelp cites a state superior court ruling, *Barbour v. John Muir Health*, 2023 WL 2618967 (Cal. Super. Ct. Jan 5, 2023) in support of its "in transit" argument, but fails to note the *Barbour* court subsequently *upheld* plaintiffs' CIPA claims following amendment to specifically allege the process of simultaneous duplication and forwarding of plaintiffs' communications. See Tusan_Decl., Exhibit A. Plaintiffs also submit *Barbour* was wrongly decided, at least initially. Meta is a corporate entity that can only act through its employees. Whether those employees look at information with their human eyes or by writing computer code to process and analyze the information, the corporate entity itself has still "viewed" the information. *Warren v. Pomona Valley*, No. 23 STCV 05324 (Cal. Sup. Ct. Oct. 25, 2023), attached to the Tusan Decl. as Exhibit B, held allegations that Facebook "viewed, processed, and analyzed Plaintiffs' and Class Members' Private Information" sufficient at the pleading stage to state a claim under the CMIA.

data. CC ¶¶32, 150-154. Courts have recognized such allegations sufficient at the pleading stage to apply CIPA nationwide. *See Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *6 (denying motion to dismiss CIPA claim based on extraterritoriality argument). *See also, e.g., Schmitt v. SN Servicing Corp.*, Case No. 21-cv-03355-WHO, 2021 WL 3493754, at *3 (N.D. Cal. Aug. 9, 2021) (data breach allegations regarding defendant who operated out of California "sufficient to allow out-of-state plaintiffs to seek recovery under California law"); *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018), *certified question accepted sub nom. Oman v. Delta Air Lines*, No. S248726, 2018 WL 10809386 (Cal. July 11, 2018), *and certified question answered*, 9 Cal. 5th 762 (2020) ("If the conduct that 'creates liability' occurs in California, California law governs that conduct."). This conclusion should not be disturbed, as Defendant suggests, merely because CIPA is intended to "'‘protect the right of privacy of the people of this state.'" as Defendant suggests (Mot. at 13-14, quoting *In re Yahoo Mail Litig.*, 308 F.R.D. 577 (N.D. Cal. 2015)). *Valentine v. NebuAd, Inc.*, 804 F.Supp. 2d 1022, 1028 (N.D. Cal. 2011) ("[a] legislative purpose that articulates an interest in protecting those within California is not inconsistent with also allowing non-Californians to pursue claims against California residents. To conclude otherwise would mean the California Legislature intended to allow California residents to violate the CIPA … with impunity with respect to out-of-state individuals and entities, a result this Court declines to reach.")

**4. <u>Plaintiffs State a Claim under the ECPA</u>**

Defendant next challenges Plaintiffs' claim under Count VII for violation of the ECPA based on the "party exception," which states, "[i]t shall not be unlawful under this chapter for a person . . . to intercept a wire, oral, or electronic communication where such person is a party to the communication." 18 U.S.C. § 2511(2)(d). Plaintiffs properly allege an ECPA claim, as this exception does not apply if the "communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State." *Id.* The crime-tort exception thus focuses on whether "the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (quotation marks and citation omitted).

Defendant's conduct falls within this exception because it intended to violate various tort and criminal laws through the interception of Plaintiffs' and Class Members' communications, including HIPAA's criminal prohibitions against disclosing "individually identifiable health information" without authorization. CC ¶¶1, 15, 55-56, 59-60, 65, 92, 106-07, 113, 138, 140-44, 219-22. Multiple courts have found substantially identical allegations sufficient to trigger this exception. *In re Meta Pixel*, 647 F.Supp.3d at 797 ("plaintiffs may be able to show that the crime-tort exception applies" based on allegations "that the use of patient data for advertising in the absence of express written consent is criminal and tortious"); *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) (finding allegations "sufficient to invoke the HIPAA exception-to-the-party-exception . . . [and that the complaint] plausibly state[d] a claim for relief under the Wiretap Act"); *In re Group Health Plan Litig.*, Case No. 23-cv-267 (JWB/DJF), 2023 WL 8850243, *8 (D. Minn Dec. 21, 2023)(same); *Kane v. Univ. Rochester*, Case No.: 23-cv-6027-FPG, 2024 WL 1178340, *7 (W.D.N.Y. Mar. 19, 2024)(same); *Mekhail v. North Memorial Health Care*, Case No. 23-cv-00440 (KMM/TNL), 2024 WL 1332260, *5 (D. Minn. Mar. 28, 2024)(finding plaintiff's alleged violations of HIPAA's disclosure rule, among other state law violations, sufficient to invoke the crime-tort exception); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (crime-tort exception applied to allegations that defendant intercepted communications regarding "requests to refill prescriptions and appointment scheduling inquires" in "violation of various state tort claims and state and federal laws"). And for the reasons set forth in Section B.3 *supra*, discussing the elements of CIPA, Plaintiffs properly allege these communications were intercepted in transit.

**5. <u>Plaintiffs State a Claim for Violation of the CCPA</u>**

The CCPA (Count XIII), through Cal. Civ. Code §1798.150 read in conjunction with Cal. Civ. Code §1798.82, gives California residents the right to seek statutory damages ranging between $100 and $750 per consumer if they can allege that "nonencrypted and nonredacted personal information . . . [was] subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the

personal information." Cal. Civ. Code § 1798.150(a)(1). The CCPA defines "consumer" as a "natural person who is a California resident . . . however identified, including by any unique identifier", which BetterHelp cannot dispute for Plaintiffs R.S., Jane Doe III, and T.R. CC ¶¶28, 30, 31. The consumers' information must also be nonencrypted, nonredacted, and personal and pursuant to § 1798.81.5(d)(1)(A) include the consumer's first name (or first initial) and last name in combination with at least one of the following (for purposes of this Count): (3) account number or credit/debit card number along with any security code, access code, or password, (4) medical information, or (5) health insurance information. See § 1798.150(a)(1) (citing "personal information" defined under § 1798.81.5(d)(1)(A)). The CC ¶¶1, 6, 40, 41, 42, 43, 89, 90, 91, and 347-349 includes such allegations.[9] While BetterHelp asserts there must be evidence of a data breach to assert such a claim, so long as Plaintiffs allege the disclosure of personal information was due to the business's violation of its duty to implement and maintain "reasonable security procedures and practices," a business such as BetterHelp violates the CCPA when it shares a consumer's personal information with a third party without the consumer's consent, even absent evidence of some data breach. The CC at ¶¶10, 64, 65, 67, 68, 69, 92, 93, 94 and 347 includes such allegations. Otherwise, the "or" in the language "unauthorized access and exfiltration, theft, **or** disclosure" would be disregarded. As the CC alleges there has been unauthorized access and exfiltration, and disclosure to third parties, either of which is all that is required to assert a claim under the CCPA. *Stasi v. Inmediata Health Grp. Corp.*, 501 F.Supp.3d 898, 924 (S.D. Cal. 2020) (denying motion to dismiss CCPA claim, concluding "Moreover, Inmediata does not point to any authority requiring Plaintiffs to plead theft or unauthorized access in order to plead a plausible violation of the CCPA.").

**6. <u>Plaintiffs State a Claim for Violation of CDAFA</u>**

BetterHelp argues CDAFA "does not apply because the statute addresses computer hacking, not data disclosure" and that it did not introduce a "computer contaminant." (Mot. at 16).

[9] The CC alleges at ¶¶ 349-350 that consumers gave Defendant the required notice to cure the violations within 30 days prior to asserting its a claim and that it was ignored. And while PHI is covered by the CMIA, BetterHelp is claiming it is not covered by the CMIA as it is not a provider of health care. The CC also alleges BetterHelp failed to protect both PHI and PII.

Both arguments are wrong. Courts have held the use of information obtained through the use of tracking pixels or other types of code on publicly accessible websites or search engines consumers voluntarily visited, like those alleged in the CC at ¶¶8-10, 15, 18, 22, 24-28, 30-31, 61-63, 65-69, 73-89, 91-96, 260, 262 and 353-35, can establish a violation of CDAFA. *In re. Internet Tracking*., 956 F.3d at 599–601; *Brown III*, at *18-19 (N.D. Cal. Aug. 7, 2023) (CDAFA violation adequately plead where embedded code directed users' browsers to send "GET" requests to Google servers); *Greenley v. Kochava, Inc*., Case No. 22-cv-01327-BAS-AHG, 2023 WL 4833466, at *14 (S.D. Cal. July 27, 2023)(same); *Rodriguez,* 2021 WL 2026726 at *8.

BetterHelp also argues Plaintiffs have not adequately alleged that it acted knowingly and without permission to violate Cal. Pen. Code §§ 502(c)(1)(B), (c)(2), (c)(6), (c)(7), and (c)(13). It ignores the fact Plaintiffs specifically and repeatedly allege BetterHelp knowingly and intentionally embedded various tracking tools "without permission" and without Plaintiffs' knowledge in order to collect and send their PHI to unauthorized third-party companies. CC ¶¶8-10, 15, 18, 22, 24-28, 30-31, 61-63, 65-69, 76, 77, 82-85, 87, 88, 91-96, 260 and 353-356. Courts have held that a company's use of hidden code, such as contained in a pixel code, can establish a violation of CDAFA by taking computer data from users without their permission. *In re Facebook*., 956 F.3d at 599–601; *Brown III*, 2023 WL 5029899 at *19; *Greenley*, 2023 WL 4833466, at *14 ("the phrase 'without permission' is not limited to conduct that circumvents a device barrier or 'hacks' a computer system. . . [it] does not require the circumvention of computer barriers. Code hidden in embedded software may plausibly use or take computer data 'without permission.'"); *see also In re Carrier IQ*, 78 F.Supp.3d 1051, 1099 (N.D. Cal. 2015); *Esparza v. Kohl's, Inc.*, 2024 WL 1152732, at *7 (S.D. Cal. Mar. 18, 2024); *Rodriguez*, 2021 WL 2026726, at *7 (authorized access can turn "unlawful [when] ... the person 'without permission takes, copies, or makes use of' [the] data" in question. (citing *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015)).

Finally, based on similar facts as alleged here, the Ninth Circuit in *In re Facebook*, 956 F.3d at 599, expressly rejected BetterHelp's argument (Mot. at 11) that Plaintiffs have not alleged damage. In *In re Facebook,* the Ninth Circuit held that because Plaintiffs may be entitled to the unjustly earned profits Facebook obtained through collecting and misappropriating their browsing

data, they had "sufficiently alleged a state law interest whose violation constitutes an injury sufficient to establish standing to bring their claims for CDAFA violations . . ." *Id.* at 601. The court in *Brown III*, 2023 WL 5029899, at *19, found this ruling "stands for the proposition that plaintiffs can state an economic injury for their misappropriated data. . . under CDAFA." Plaintiffs allege BetterHelp benefited monetarily and increased its revenue by causing the unauthorized access and disclosure of Class Members' Private Information and were unjustly enriched thereby. CC ¶170, 172 180, 219-222. As Plaintiffs also allege "advertisers view this type of data as being of particularly high value," that there is a market for this data, that Plaintiffs suffered a diminution of its value, and that BetterHelp unjustly profited from disclosing their data (CC ¶¶20, 96, 129-135, 170, 220, 279), Plaintiffs plead a valid claim under the CDAFA.

**7. <u>Plaintiffs State a Claim for Breach of Confidence</u>**

To plead a claim for breach of confidence under California law (Count V), a plaintiff must allege that: "(1) the plaintiff conveyed confidential and novel information to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the defendant and the plaintiff that the confidence be maintained; and (4) there was a disclosure or use in violation of the understanding." *Berkla v. Corel Corp.*, 302 F.3d 909, 917 (9th Cir. 2002); *Google RTB*, 606 F.Supp.3d at 947–48.

Despite BetterHelp's citations to cases discussing "offers of payment" (Mot. at 18), an expectation of receiving compensation (as opposed to an expectation that the information would be kept confidential) is not an element of a breach of confidence claim. Plaintiffs allege they were required to (and did) communicate sensitive and confidential information to BetterHelp, including sensitive information about their mental health and their PHI, and reasonably expected BetterHelp would keep that information confidential. CC ¶¶5, 25-32, 43, 45, 88, 89, 92, 93, 264. BetterHelp made repeated promises as part of the Intake Questionnaire as well as through the use of false "HIPPA certified" statements and seals and claims that it was seeking "anonymous" information that it took patients privacy seriously and would keep their information confidential. CC ¶¶48, 49, 50, 51, 56, 57, 58, 59, 60. BetterHelp thus knew this sensitive information was being disclosed with the expectation it would remain confidential. Finally, it should be undisputed an individual's

PHI such as at issue here is novel. *See Google RTB*, 606 F.Supp.3d at 948 (denying motion to dismiss breach of confidence claim where plaintiffs alleged they shared, *inter alia*, "health data such as whether someone suffers from depression or eating disorders."). Plaintiffs also properly allege BetterHelp disclosed their confidential information and that they were damaged, including being deprived of control of their valuable property. CC ¶357.

As Plaintiffs can plead this claim in the alternative, the fact they allege BetterHelp breached an express or implied contract does not foreclose it. *Google RTB*, 606 F.Supp.3d at 948 (breach of confidence and contract claims can be pled in the alternative.); *SocialApps, LLC v. Zynga, Inc.*, Case No.: 11-cv-4910-YGR, 2012 WL 381216, at *3 (N.D. Cal. Feb 6, 2012)(same).

**8. <u>Plaintiffs State a Claim for Violation of the UCL</u>**

BetterHelp first contends that Plaintiffs cannot seek relief under the UCL (Count XV) because they do not allege they lack an adequate remedy at law. Mot. at 19. However, Plaintiffs explicitly allege that in the alternative they do not have an adequate remedy at law and that injunctive relief is necessary to correct BetterHelp's unlawful conduct. CC ¶¶226, 267, 359, 375. Monetary damages cannot prevent BetterHelp from continuing to surreptitiously track, collect, and disclose Plaintiffs' and Class Members' sensitive information to unauthorized third parties. *In re Meta Pixel*, 647 F.Supp.3d at 802 (ongoing risk to plaintiffs' medical information "is precisely the kind of intangible injury that cannot be remedied by damages.").

Plaintiffs can alternatively pursue equitable and legal claims at the pleadings stage. *See, e.g., Katz-Lacabe*, 668 F.Supp.3d at 949-50; *Freeman v. Indochino Apparel, Inc.*, 443 F.Supp.3d 1107, 1114 (N.D. Cal. 2020) ("Plaintiff may allege claims in the alternative at the pleading stage. The equitable remedies afforded by the UCL and CLRA are expressly stated to be in addition to other available remedies at law."); *Colucci v. ZonePerfect Nutrition Co.*, 2012 WL 6737800 at *10 (N.D. Cal. Dec. 28, 2012) ("[C]laims for restitution or unjust enrichment may survive the pleadings stage when pled as an alternative avenue of relief, though the claims, as alternatives, may not afford relief if other claims do."); *Ghazarian v. Magellan Health, Inc.*, 53 Cal.App.5th 171, 194 (2020) (rejecting defendant's "adequate remedy at law" argument because "[i]f the [medical necessity] guidelines are found to be unreasonable, damages may be inadequate.").

BetterHelp next contends Plaintiffs fail to allege it engaged in "unlawful" or "unfair" business practices. Mot. at 19-20. The CC describes in detail how BetterHelp violated no fewer than eleven (11) federal and state statutes and regulations, *inter alia*, HIPAA, the ECPA, and numerous California statutes in connection with disclosing and aiding the interception of patients' sensitive PII and PHI to unauthorized third parties. *See generally* Complaint, and specifically ¶366. The CC at ¶¶367-69 and Ex. A also set forth how BetterHelp's conduct violates various standards of unfairness and violates public policies and moral norms regarding the need to protect the confidentiality of sensitive information and PHI in general and in particular information about consumers' mental health. BetterHelp's cavalier claim that "merely sharing limited information for business purposes and as outlined in its privacy policy" does not constitute an immoral, unethical, or substantially injurious practice (Mot. at 20 n. 10), is not a defense; rather it evidences BetterHelp still does not understand the true nature of its illegal conduct.

Finally, as alleged in the CC ¶¶32, 150-154, 273, all of BetterHelp's wrongful conduct occurred in or emanated from California. As a result, the UCL applies to the claims of all Class Members. *See, e.g., Effinger v. Ancient Organics LLC*, 657 F.Supp.3d 1290, 1301 (N.D. Cal. 2023) ("California courts have concluded that '[the UCL, FAL, and CLRA] may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California.'").[10]

**9. <u>Plaintiffs State a Claim Under the FAL</u>**

BetterHelp's challenge to Plaintiffs' FAL claim (Count IX) also fails. The FAL's express language applies to out of state residents when the complained of conduct occurred in emanates from California: "It is unlawful for any person, firm, corporation or association … with intent directly or indirectly … to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, *or to make or disseminate or cause to be made or disseminated from this state before the public in any state…*"

[10] BetterHelp cites *Norwest Mortg., Inc. v. Super. Ct.*, 72 Cal.App.4th 214, 224-25 (1999) to supports its argument that the UCL does not apply extraterritorially. As noted in *Effinger*, however, the *Norwest* court held at p. 25 that the UCL and similar statutes ***do*** apply to out-of-state residents harmed by conduct that emanated from or occurred in California, as alleged in the CC.

(emphasis added). Even BetterHelp's cited cases recognize this distinction. *See, e.g., Debono v. Cerebral, Inc.*, Case No.: 22-cv-03378-AGT, 2023 WL 300141, at *2 (N.D. Cal. Jan. 18, 2023) ("[T]o invoke California's consumer protection statutes [including the FAL], [plaintiffs] must allege that they were harmed by wrongful conduct occurring in California. They haven't done so."). Here, Plaintiffs allege the conduct occurred in California. CC ¶¶32, 150-154, 273.

Additionally, Plaintiffs have adequately alleged the elements of an FAL claim. The CC at ¶¶274-278, 290, 296, 297, 300 alleges Better Help "marketed, advertised, and promoted the privacy and integrity of its platform and induced Plaintiffs and Class Members to rely on those representations to their detriment" even though Defendant "knew or should have known that its representations and advertisements about the nature of its privacy practices were false or misleading and were likely to deceive a reasonable consumer". The cases BetterHelp cites to the contrary are distinguishable as they involve contractual terms and conditions or "letters, a nurse's statements to providers, telling employees not to check whether Plaintiff had been designated as the hospitalist" that were clearly not advertisements. *Lit'l Pepper Gourmet, Inc. v. Airgas USA, LLC*, Case No.: 19CV837-LAB(AGS), 2019 WL 6218780, at *5 (S.D. Cal. Nov. 21, 2019).

**10. <u>Plaintiffs State a Claim Under the CLRA</u>**

The CLRA (like the UCL and FAL) applies to all Class Members where the CC alleges that the wrongful conduct occurred in and emanated from California. *See Effinger*, F.Supp.3d at 1301. BetterHelp's cited cases on this point do not hold to the contrary but merely dismiss claims where the Complaints did not contain allegations that the conduct occurred in California.

BetterHelp also seeks to dismiss Plaintiff L.M.'s CLRA claim because she paid with a promotional coupon (Mot. at 22-23). Under Cal. Civ. Code § 1770(a) "the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person *in a transaction intended to result or which results in the sale or lease of goods or services* to any consumer are unlawful" (emphasis added). The relevant question is not the definition of "goods" and "services" under the CLRA, as money is neither a good or a service. Rather, the relevant term is "transaction", which is defined in Cal. Civ. Code § 1761(e) as "an agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action,

*and includes the making of, and the performance pursuant to, that agreement*." (emphasis added) Nowhere does the CLRA state what form of compensation must be used in connection with making or performing a transaction. The question is whether that transaction result in the "sale" of a "service" – which BetterHelp does not dispute. BetterHelp's challenge to the CLRA fails.

**11. <u>Plaintiffs State a Claim for Negligence and Negligence *Per Se*</u>**

BetterHelp next insists that Plaintiffs' claim for negligence and negligence *per se* (Count I) must fail because Plaintiffs' breach of contract allegations preclude a claim for negligence; that Plaintiffs do not allege a "special relationship" existed between the parties; that the economic loss doctrine bars Plaintiffs' negligence claim; and that BetterHelp owed no duty of care to Plaintiffs and Class Members. Mot. at 23-24. First, as set forth above Plaintiffs may plead alternative claims under Fed. R. Civ. P. 8(d)(2). *Google RTB*, 606 F.Supp.3d at 948.

Second, under the "special relationship" doctrine, economic damages are recoverable in tort if a defendant violates its duty considering: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm.. *See J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979). As alleged in the CC at ¶¶155-159 and throughout the CC, Class Members' dependence on BetterHelp safeguarding their Personal Information, the foreseeability of disclosure as the result of BetterHelp's use of tracking tools, the confidential relationship between consumers seeking mental health counseling and BetterHelp, and California's public policy concerning the privacy of health information as expressed in numerous statutes all weigh in favor of the special relationship doctrine's application. *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F.Supp.3d 374, 395 (E.D. Va. 2020) (citing *In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F.Supp.3d 1113, 1133 (N.D. Cal. 2018)); *Huynh v. Quora, Inc.*, 508 F.Supp.3d 633, 658 (N.D. Cal. 2020).

Third, the "economic loss" doctrine does not apply because Plaintiffs allege non-economic damages, including the loss of their property rights in protecting PII and PHI. CC ¶¶19, 20, 21, 24-31. *Smallman*, 638 F.Supp.3d at 1191 (individual's loss of control over private information

constitutes non-economic harm because "past and potential future misuse of Plaintiffs' PII impairs their ability to participate in the economic marketplace"); *Mehta v. Robinhood Fin. LLC,* Case No.: 21-CV-01013-SVK, 2021 WL 6882377, at *6 (N.D. Cal. May 6, 2021) (impairment of privacy interests and loss of control over personal information proper negligence damages).

Finally, the CC ¶¶158-162 details why BetterHelp owed a duty to Plaintiffs and Class Members and what those duties were. The negligence *per se* claim also arises from BetterHelp's violation of Plaintiffs' reasonable expectations of confidentiality and privacy and BetterHelp's violation of numerous state statutes, including the CIPA, the CCPA and the CMIA, all of which are designed to protect Plaintiffs from disclosure of their PII and PHI. CC ¶167.

**12. <u>Plaintiffs State Claims for Breach of Contract and Implied Contract</u>**

The CC at ¶¶53-55 alleges that BetterHelp made numerous promises and privacy assurances when Plaintiffs and Class Members responded to the Intake Questionnaire. While users were not required to read or assent to BetterHelp's Privacy Policy, that Policy promised, consistent with its promises made on the Intake Questionnaire, that it would maintain users' privacy and keep their medical and health information confidential and not disclose it to third parties for advertising purposes. *Id.,* ¶56-61. Those allegations are sufficient to assert claims for breach of express and alternatively implied contract (Counts III and IV).

**13. <u>Plaintiffs State a Claim for Unjust Enrichment</u>**

Finally, BetterHelp's challenge to Plaintiffs' unjust enrichment/quasi contract claim (Count VI) fails. Plaintiffs allege this Count "is pleaded in the alternative to all other Counts herein." CC ¶218. Under California law, "plaintiffs are permitted to plead claims for breach of contract and unjust enrichment in the alternative." *In re Facebook, Inc., Consumer Priv. User Profile Litig.,* 402 F.Supp.3d 767, 803 (N.D. Cal. 2019); *In re Facebook*, 956 F.3d at 611; *In re Vizio, Inc., Consumer Privacy Litigation*, 238 F.Supp.3d 1204, 1233 (C.D. Cal. 2017). And as discussed *supra* in connection with Plaintiffs' UCL claim, Plaintiffs also allege they have no adequate remedy at law. This Count is properly plead under the elements set forth by the Ninth Circuit in *Astiana v. Hain Celestial Group, Inc.,* 783 F.3d 753, 762 (9th Cir. 2015).

Dated: May 2, 2024

*<u>/s/ Gary M. Klinger</u>*

Gary. M. Klinger (pro hac vice)
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: 866.252.0878
Email: gklinger@milberg.com
gabramson@milberg.com
ahoneycutt@milberg.com
rnelson@milberg.com

*Plaintiffs' Co-Lead Interim Class Counsel*

*/s/ Christina Tusan*
Christina Tusan (SBN 192203)
ctusan@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, Suite 600
Tacoma, WA 98402
[Tel:] (310) 601-6766
[Fax] (310) 295-2385

*Plaintiffs' Co-Lead Interim Class Counsel*

*Maureen M. Brady*
Maureen M. Brady
McShane AND Brady LLC
1656 Washington
Suite 140
Kansas City, MO 64108
816-888-8010
Email: mbrady@mcshanebradylaw.com

*Plaintiffs' Co-Lead Interim Class Counsel*

*/s/ Alan M. Mansfield*
Alan M. Mansfield (SBN: 125998)
amansfield@whatleykallas.com
WHATLEY KALLAS LLP
1 Sansome Street, 35th Floor
PMB #131
San Francisco, CA 94104 /
16870 West Bernardo Drive, Ste 400, San Diego, CA 92127
Phone: (619) 308-5034
Fax: (888) 341-5048

*Plaintiffs' Liaison Counsel*