1   Gary. M. Klinger (pro hac vice)         Maureen M. Brady (pro hac vice)
    MILBERG COLEMAN BRYSON              MCSHANE AND BRADY LLC
2   PHILLIPS GROSSMAN, PLLC              1656 Washington
    227 W. Monroe Street, Suite 2100       Suite 120
3   Chicago, Illinois 60606               Kansas City, MO 64108
    Telephone: 866.252.0878              816-888-8010
4   Email: gklinger@milberg.com          Email: mbrady@mcshanebradylaw.com

5   *Plaintiffs' Co-Lead Interim Class Counsel*   *Plaintiffs' Co-Lead Interim Class Counsel*

6   Christina Tusan (SBN 192203)         Alan M. Mansfield (SBN: 125998)
    ctusan@hammondlawpc.com            amansfield@whatleykallas.com
7   HAMMONDLAW, P.C.                  WHATLEY KALLAS LLP
    1201 Pacific Ave, Suite 600           1 Sansome Street, 35th Floor
8   Tacoma, WA 98402                  PMB #131
    [Tel:] (310) 601-6766                San Francisco, CA 94104 /
9   [Fax] (310) 295-2385                16870 West Bernardo Drive, Ste 400, San
                                       Diego, CA 92127
10  *Plaintiffs' Co-Lead Interim Class Counsel*   Phone: (619) 308-5034
                                       Fax: (888) 341-5048
11

12                                      *Plaintiffs' Liaison Counsel*

13              UNITED STATES DISTRICT COURT

14          FOR THE NORTHERN DISTRICT OF CALIFORNIA

15

16  **IN RE BETTERHELP, INC. DATA**     **Master File No. 3:23-cv-01033-RS**
    **DISCLOSURE CASES**
17

18  This Document Relates To: All Actions   **PLAINTIFFS' MEMORANDUM OF**
                                       **POINTS AND AUTHORITIES IN**
19                                      **OPPOSITION TO DEFENDANT**
                                       **BETTERHELP, INC.'S MOTION TO**
20                                      **DISMISS PLAINTIFFS' FIRST**
                                       **AMENDED CONSOLIDATED CLASS**
21                                      **ACTION COMPLAINT (F.R.C.P.**
                                       **12(b)(1) & 12(b)(6))**
22
                                       Hearing Date:    October 17, 2024
23                                      Time:            1:30 p.m.
                                       Courtroom:       3
24                                      Judge:           Hon. Richard Seeborg

25

26

27

28

1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

STATEMENT OF ISSUES TO BE DECIDED .................................................................. v

I.      INTRODUCTION ..................................................................................................... 1

II.     PLAINTIFFS' AMENDED COMPLAINT FULLY ADDRESSES
        THE ISSUES RAISED IN THE COURT'S JULY 15 ORDER ......................................... 2

        1.      Additional Allegations Addressing Standing ................................................ 2

        2.      Additional Allegations Establishing a Violation of the CMIA ................... 3

        3.      Additional Facts Supporting Plaintiffs' Breach of Implied
                Contract Claim .............................................................................................. 4

        4.      Additional Allegations Supporting Plaintiffs' Cause of Action For
                Violation of the SCA ..................................................................................... 5

III.    LEGAL STANDARDS APPLICABLE TO THIS MOTION ........................................... 5

IV.     ARGUMENT .......................................................................................................... 6

        A.      DEFENDANTS' MOTION IS PARTIALLY BASED ON
                MISCHARACTERIZATIONS OF THE ALLEGATIONS CONTAINED
                IN THE FACC ................................................................................................. 6

        B.      PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS UNDER
                THE UCL AND CLRA (Counts VII and XIII) ......................................... 7

        C.      BETTERHELP IS SUBJECT TO THE CMIA (Count IX) ................................. 12

        D.      PLAINTIFFS HAVE PROPERLY PLED THE ELEMENTS OF A CLAIM
                FOR BREACH OF IMPLIED CONTRACT (Count II) ...................................... 17

        E.      PLAINTIFFS HAVE PROPERLY PLED A CLAIM UNDER THE SCA
                (Count V) .................................................................................................... 19

V.      CONCLUSION ...................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Acri v. Varian Assocs., Inc.*,
    121 F.3d 714 (9th Cir. 1997) ........................................................................ 18

*Beilser v. CIR*,
    814 F.2d 1304 (9th Cir. 1987) ..................................................................... 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................... 5

*Blaustein v. Burton*,
    9 Cal. App. 3d 161 (1970) ........................................................................... 17

*Bower v. AT&T Mobility, LLC*,
    127 Cal. Rptr. 3d 569 (Cal. Ct. App. 2011) .................................................. 8

*Brown v. Van's*,
    No. 22-cv-00001-WHO, 2022 WL 1471454 (N.D. Cal. May 10, 2022) ..................... 7, 11

*C. Montana Elec. Power Co-op., Inc. v. Adminstr. of Bonneville Power Admin.*,
    840 F.2d 1472 (9th Cir. 1988) ..................................................................... 13

*Castillo v. Seagate Tech., LLC*,
    No. 16-CV-01958-RS, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ................ 8, 17, 18

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ................................................. 9, 11

*Corona v. Sony Picture Entertainment Inc.*,
    No. 14-cv-09600-RGK, 2015 WL 3916744 (N.D. Cal. June 15, 2015) ...................... 17

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ................................................................... 10, 11

*Doe v. Meta Platforms, Inc.*,
    No. 22-cv-03580-WHO, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) ...................... 6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ....................................................................................... 7

*Guerra v. KIND, LLC*,
    No. 22-CV-06654-RS, 2023 WL 3436093 (N.D. Cal. May 11, 2023) ..................... 7, 11

*In re Adobe Sys., Inc. Privacy Litig.*,
    66 F.Supp.3d 1197 (N.D.Cal.2014) .............................................................. 9

*In re Anthem, Inc. Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016) ....................................................... 9, 17

*In re Google RTB Consumer Priv. Litig.*,
    606 F. Supp. 3d 935 (N.D. Cal. 2022) ........................................................... 5

*In re LinkedIn User Privacy Litig.*,
    2014 WL 1323713 (N.D. Cal. Mar. 28, 2014) ................................................ 9

*In re Solara Med. Supplies, LLC Customer Data Security Breach Litig.*,
    613 F.Supp.3d 1284 (S.D. Cal. 2020) ................................................................ 8

*In re Target Corp. Data Sec. Breach Litig.*,
    66 F. Supp. 3d 1154 (D. Minn. 2014) ............................................................... 18

*In re United States for an Ord. Pursuant to 18 U.S.C. §2703(d)*,
    No. MC 17-2682 (BAH) ("*Royal Caribbean*"),
    2018 WL 1521772 (D.D.C. Mar. 8, 2018) .................................................. 19, 20

*In re United States for an Ord. Pursuant to 18 U.S.C. §2705(d)*,
    389 F. Supp. 3d 201, 209-10 (D.D.C. 2018) .................................................... 20

*In re Zappos.com, Inc.*,
    888 F.3d 1020 (9th Cir. 2018) .......................................................................... 10

*J.M. v. Illuminate Education Inc.*,
    103 Cal. App. 5th 1125, 323 Cal. Rptr. 3d 605 (issued July 25, 2024) ........... 16

*Kutza v. Williams-Sonoma, Inc.*,
    No. 18-CV-03534-RS, 2018 WL 5886611 (N.D. Cal. Nov. 9, 2018) .............. 11

*Kwikset Corp. v. Superior Ct.*,
    51 Cal. 4th 310 (2011) ....................................................................................... 9

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ............................................................................ 6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................ 5

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ............................................................................ 5

*Meyer v. Sprint Spectrum L.P.*,
    45 Cal.4th 634 (2009) ......................................................................................... 9

*Morgan v. Apple Inc.*,
    No. 17-CV-05277-RS, 2018 WL 2234537 (N.D. Cal. May 16, 2018) .............. 11

*Moskal v. United States*,
    498 U.S. 103 (1990) .......................................................................................... 13

*Peterson v. Cellco Partnership*,
    80 Cal. Rptr. 316 (Cal. Ct. App. 2008) .......................................................... 8, 9

*Quon v. Arch Wireless Operating Co., Inc.*,
    529 F.3d 892 (9th Cir. 2008), *cert. denied in relevant part*,
    558 U.S. 1090, 130 S. Ct. 1011 (2009) ............................................................ 20

*Reichert v. Gen. Ins. Co. of Am.*,
    68 Cal. 2d 822 (1968) ....................................................................................... 17

*Richards v. United States*,
    369 U.S. 1 (1962) .............................................................................................. 13

iii

*Sanchez v. Nurture, Inc.*,
  No. 5:21-CV-08566-EJD, 2023 WL 6391487 (N.D. Cal. Sept. 29, 2023).......................10

*SEC v. McCarthy*,
  322 F. 3d 650 (9th Cir. 2003)..................................................................................14

*Spencer Enterprises, Inc. v. U.S.*,
  345 F. 3d 683 (9th Cir. 2003)..................................................................................14

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009).................................................................................................9

*T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*,
  83 F. Supp. 3d 855 (N.D. Cal. 2015).......................................................................17

*United States v. Menache*,
  348 U.S. 528 (1955)...............................................................................................13

*United States v. Turkette*,
  452 U.S. 576 (1981)...............................................................................................13

*Warth v. Seldin*,
  422 U.S. 490 (1975).................................................................................................5

**Statutes**

Cal Civ. Code Section 56.10 *et seq*................................................................. passim

Cal. Bus. & Prof. Code Section 17200 *et seq*. ....................................................7, 8, 9

Cal. Civ. Code § 1621..............................................................................................17

Cal. Civ. Code Section 1750 *et seq*...........................................................................7, 9

Cal. Code Civ. Proc. § 1859 .....................................................................................15

**Rules**

Fed. R. Civ. P. 12(b)(1).............................................................................................5

Fed. R. Civ. P. 12(b)(6).............................................................................................5

**Regulations**

45 C.F.R. § 164.308(a)(1)..........................................................................................3

45 C.F.R. § 164.402..................................................................................................3

45 C.F.R. § 164.404 *et seq*........................................................................................2

45 C.F.R. § 164.406..................................................................................................2

**Other Authorities**

California Bill Analysis, S.B. 1903 Third Sen. Report dated 8/29/2000................13, 15

## **STATEMENT OF ISSUES TO BE DECIDED**

1.      Do plaintiffs allege sufficient facts to support their allegations of having standing to assert claims for violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code Section 17200 *et seq*. (Count XI) and the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code Section 1750 *et seq*. (Count VII)?

2.      Do plaintiffs allege sufficient facts to support their allegations to assert claims for violation of the Confidentiality of Medical Information Act ("CMIA"), Cal Civ. Code Section 56.10 *et seq*. (Count IX)?

3.      Do plaintiffs allege sufficient facts to support their allegations to assert claims for breach of implied contract (Count II)?

4.      Do plaintiffs allege the requisite elements for their statutory claims based on violations of the federal Stored Communications Act ("SCA"), 18 U.S. Code § 2702 *et seq*. (Count V)?

5.      To the extent any of these claims are found to need additional support in terms of how they are pled, should the Court grant plaintiffs leave to file an amended complaint?

## I.   **INTRODUCTION**

Plaintiffs previously detailed to this Court how, despite numerous representations on its various websites promising the contrary[1], BetterHelp failed to protect and, in fact, affirmatively disclosed to third parties its visitors' and patients' sensitive Personally Identifying Information ("PII") and Protected Health Information ("PHI"). This sensitive information included users' names, email addresses, IP addresses, the details of their status as mental health and therapy patients, details of their mental health treatment and therapy, and other highly sensitive personal medical and mental health information. First Amended Consolidated Class Action Complaint ("FACC"), ECF 114 ¶¶ 1, 68-77, 94-101. As the general substance of Plaintiffs' allegations regarding BetterHelp's misconduct and violations of law underlying Plaintiffs' claims has not changed, Plaintiffs do not repeat their summary of those allegations here but rather incorporate that summary by reference. *See* Plaintiffs' Opposition to Better Help's First Motion to Dismiss dated March 11, 2024 (ECF 102), at pp. 1-4 (summarizing factual basis for Plaintiffs' claims).

On August 5, 2024, Plaintiffs filed a FACC that included amended allegations directly addressing the issues raised by BetterHelp and the Court's July 15, 2024 Order (ECF 113). In an effort to focus on the key violations of law by BetterHelp, the FACC now contains four fewer counts than the original Consolidated Complaint. Plaintiffs amended the FACC to allege sufficient facts to show specifically how they "lost money or property" and "suffered damage" to allege standing to assert claims for violation of the UCL and CLRA. Plaintiffs also explain how BetterHelp is liable under numerous aspects of the CMIA, including as a recipient of medical information and as a corporation specifically prohibited from sharing or using Plaintiffs' and Class members' medical information for its own purposes, and how the legislative history of the CMIA supports, rather than refutes, such a conclusion. The amended allegations also establish the basis for Plaintiffs' claims for breach of implied contract by setting forth in detail the nature of that implied contractual agreement to protect Plaintiffs' and Class members' PHI and PII. Finally, Plaintiffs allege the requisite elements for their statutory claims based on violations of the SCA,

---

[1] ECF 114 ¶¶ 4, 32 (listing websites BetterHelp, Inc. operated directly and also doing business during the relevant time period as Compile, Inc.; MyTherapist; Teen Counseling; Faithful Counseling; Pride Counseling; iCounseling; ReGain; and Terappeuta) (collectively "Sites"); ECF 114 ¶ 60.

consistent with the prior findings of this Court.

For the reasons set forth below, the Court should deny BetterHelp's Second Motion to Dismiss in its entirety.

## II.  PLAINTIFFS' AMENDED COMPLAINT FULLY ADDRESSES THE ISSUES RAISED IN THE COURT'S JULY 15 ORDER

### 1.  Additional Allegations Addressing Standing

Plaintiffs' summary of facts focuses on the allegations in the FACC that addressed the Court's findings in its July 15, 2024 Order and the claims challenged by BetterHelp in its Second Motion to Dismiss.

With respect Plaintiffs' standing to assert UCL and CLRA claims, each Plaintiff alleges how they suffered a cognizable injury by purchasing services from BetterHelp and paying more than they would have otherwise paid had BetterHelp disclosed the truth about their practices. See ECF 114 ¶¶ 25-31, 32, 132-138, 268-271, and 319. The FACC further alleges a "sufficient factual basis to show the requisite ongoing or future harm exists notwithstanding the existence of the injunctive relief obtained by the FTC." See ECF 113 at p. 3. The FACC alleges in detail how BetterHelp has its own duties and obligations to Plaintiffs and Class Members to redress the ongoing or future harm that exists as a result of its failure to comply with numerous state and federal statutes, rules and regulations, and how Plaintiffs and Class Members continue to be harmed because BetterHelp continues to fail to meet those legal obligations. These obligations include:

- Defendant has failed to disclose to each affected individual the nature of the PII and PHI it has disclosed to third parties and to whom it was disclosed, as required by 45 C.F.R. § 164.404 *et seq.* (ECF 114 ¶¶ 15, 33-34, 121, 127-128, 249);

- Defendant has failed to notify the Secretary of the Department of Health and Human Services ("HHS") and the media about the information that was disclosed, as required by 45 C.F.R. § 164.406 (ECF 114 ¶¶ 127-128, 249, 288);

- Defendant has failed to comply with its legal obligations to make required disclosures to notify consumers and the California Attorney General as set forth in 45 C.F.R. § 164.402,

the CMIA, California Civ. Code § 1798.82(a) and California Civ. Code § 1798.82(f) (ECF 114 ¶¶ 127-128, 323);

- Defendant has failed to comply with its obligations to implement policies and procedures based on its unlawful disclosure of HIPAA protected information, in violation of 45 C.F.R. § 164.308(a)(1) (ECF 114 ¶¶ 34, 127-128); and

- Defendant has failed to take affirmative steps to fully and accurately advise third parties that Defendant disclosed information and that such information should be deleted as required by the FTC's Order dated July 7, 2023 —a legal obligation the FACC alleges Defendant has still not complied with (ECF 114 ¶¶ 127, and at Ex. B p. 109).[2]

Better Help's failure to do so has resulted in the following: (i) third parties continue to possess and use Plaintiffs' and Class Members' PHI for future unsolicited advertising without authorization or consent; (ii) government agencies who are entitled to receive this information have not received such information such that they may be aware of the facts to take action to protect the consumers whose confidential information was improperly disclosed; and (iii) Plaintiffs and Class Members have been prevented from learning specific details regarding what was disclosed about them so they can attempt to take affirmative steps themselves to prevent further disclosure and use of their PII and PHI. ECF 114 ¶¶ 33, 34. Finally, the FACC alleges that because patients cannot rely on BetterHelp to comply with its promises to keep their information confidential, they cannot continue to use the services of its therapists to whom they were connected by and through BetterHelp's websites, for fear of having their information disclosed again, even if they may want to do so. ECF 114 ¶ 35.

### 2. Additional Allegations Establishing a Violation of the CMIA

The Court found that Plaintiffs' prior complaint did not adequately state a cause of action under the CMIA because it failed to adequately state facts sufficient to establish that Defendant was covered by that Act. The FACC now sets forth how Defendant is liable for violating CMIA section 56.10 (d) because it is a corporation that violated its obligation not to "intentionally share,

---

[2] The day before this Opposition was filed, BetterHelp finally produced to Plaintiffs some information relevant to this last issue. Suffice it to say Plaintiffs believe that new information raises more questions than it resolves.

PLAINTIFFS' MPA IN OPP TO MOT. TO DISMISS                    Master File No. 3:23-cv-01033-RS

1   sell, use for marketing, or otherwise use medical information for a purpose not necessary to provide

2   health care services to the patient." ECF 114 ¶¶ 292-300, 302. The FACC additionally alleges that

3   Defendant is a corporation (ECF 114, ¶¶ 36, 200, 294, 299); that Plaintiffs and Class Members

4   meet the CMIA definition of patients (*id.* ¶ 292); that Defendant is a "recipient of medical

5   information" (*id.* ¶¶ 1, 5-7, 11, 25-33, 230); that Defendant intentionally shared, sold, used for

6   marketing or otherwise used Plaintiffs' and Class Members' medical information for a purpose not

7   necessary to provide health care services- namely for, *inter alia*, its own marketing purposes (*id.*

8   ¶¶ 9, 11-12, 61, 68, 102, 183, 293, 296-298, 300-303); that Plaintiffs and Class Members were

9   injured and received targeted advertising (*id.* ¶¶ 25-33, 90, 103-104, 132-138, 319, 301-03); and

10  that no exception applies to their conduct (*id.* ¶ 299).

### 3.   Additional Facts Supporting Plaintiffs' Breach of Implied Contract Claim

13          The FACC further alleges that BetterHelp and Plaintiffs and Class Members all understood

14  and agreed to enter into an implied contract wherein Plaintiffs and Class Members provided their

15  Private Information to BetterHelp (which was a required condition of seeking mental health

16  services) based on their understanding of Defendant's agreement to keep that information

17  confidential and not to disclose it to any unauthorized third parties. ECF 114 ¶¶ 6-9, 51-67, 168-

18  70. Plaintiffs allege that as a manifestation of its understanding of these terms of the implied

19  contract, Defendant recognized that it would keep email addresses communicated during the

20  course of visiting, accessing or using the Sites strictly confidential and not share or disclose them

21  to anyone, even one's treating therapist (ECF 114, ¶ 60); that Defendant claimed it was certified

22  as "compliant" with HIPAA and, therefore, would keep users' PHI and PII, and the fact that they

23  were seeking help for mental health issues confidential (*id.* ¶¶ 51-67); and that Defendant would

24  keep users' information confidential, including information provided to Defendant about their

25  background and use of the services and information supplied through the initial intake form (*id.* ¶¶

26  51-67, 168, 170-75). In addition, Plaintiffs allege that they suffered injury in that, had they known

27  their PHI and PII would be disclosed to third parties, they "would not have spent time signing up

28  for the Service, would not have entered their Private Information into Defendant's Sites, and/or

1  would not have paid for the Service at all or would have paid significantly less therefor." *Id.* at ¶¶

2  175-178.

3

4  ### 4. Additional Allegations Supporting Plaintiffs' Cause of Action For Violation of the SCA

5  The FACC further alleges that Defendant acted as a conduit between Plaintiffs and Class

6  Members and their therapists and electronically stored those communications. ECF 114, ¶¶ 4, 44,

7  219, 220, 222-223; *see also id.* at Ex. A ¶¶ 49, 52-53, 55. The FACC also alleges that Defendant

8  solicited information from consumers, including PII and PHI such as email addresses, and stored

9  that information on its internal electronic storage networks. *Id.* ¶¶ 220, 222-23. Finally, Plaintiffs

10  allege that Defendant subsequently disclosed this electronically stored confidential information to

11  third parties without Plaintiffs' and Class Members' consent, and without meeting any of the

12  exceptions set forth in the SCA. *Id.* ¶¶ 228-233.

13  ## III. LEGAL STANDARDS APPLICABLE TO THIS MOTION

14  For purposes of ruling on a motion to dismiss for lack of standing under Fed. R. Civ. P.

15  12(b)(1), the court "must accept as true all material allegations in the complaint and must construe

16  the complaint in favor of the complaining party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th

17  Cir. 2011) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). "At the pleading stage, general

18  factual allegations of injury resulting from defendant's conduct may suffice, for on a motion to

19  dismiss [the court must] presume that general allegations embrace those specific facts that are

20  necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations

21  omitted).

22  Under Fed. R. Civ. P. 12(b)(6), the claims asserted in a Complaint withstand dismissal for

23  failure to state a claim where Plaintiffs plead "enough facts to state a claim [for] relief that is

24  plausible on its face." *In re Google RTB Consumer Priv. Litig.*, 606 F.Supp.3d 935, 942 (N.D. Cal.

25  2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In deciding whether the

26  plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's

27  allegations as true and draws all reasonable inferences in favor of the plaintiff." *Doe v. Meta*

28  *Platforms, Inc.,* No. 22-cv-03580-WHO, 2023 WL 5837443, *2 (N.D. Cal. Sept. 7, 2023). "If the

1  court dismisses the complaint, it 'should grant leave to amend even if no request to amend the

2  pleading was made, unless it determines that the pleading could not possibly be cured by the

3  allegation of other facts.'" *Id.* (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## IV.    ARGUMENT

### A.    DEFENDANTS' MOTION IS PARTIALLY BASED ON MISCHARACTERIZATIONS OF THE ALLEGATIONS CONTAINED IN THE FACC

In its Second Motion to Dismiss, BetterHelp has repeatedly mischaracterized the facts

alleged in the FACC and has, in some instances, addressed purported factual allegations that do

not even appear in the FACC. For example, Defendant contends that Plaintiffs' FACC alleges

"that they have suffered 'emotional distress' since learning that BetterHelp allegedly shared some

of their Private Information." ECF 117 at p. 4 (citing ECF 114, ¶ 1). But in response to BetterHelp's

request that such allegations be deleted, Plaintiffs no longer allege how BetterHelp's disclosures

caused emotional distress. *Id*. The FACC thus neither includes the phrase "emotional distress"

(including in the paragraph cited by BetterHelp) nor contains any allegations that Plaintiffs

suffered emotional distress. ECF No. 114.

Defendant also claims that the FACC alleges that Defendant "expressly discloses both its

use of third-party 'cookies and web beacons' in its Privacy Policies, and that certain anonymous

information is shared with third parties through these technologies." ECF 117 at p. 3. In fact, the

FACC alleges the opposite, averring that the use of such tools was limited to the platform's

functionality and that the limited purposes set forth in BetterHelp's privacy policy *did not include

the use or disclosure of users' Private Information for BetterHelp's and the third parties'

advertising purposes*. ECF No. 114 ¶ 67. The FACC also alleges that Defendant shared Plaintiffs'

and Class Members' PII and PHI, which is defined collectively as "Private Information", and that

the data shared is *not* "anonymized," as Defendant claims. ECF No. 114 ¶ 1 ("Private Information

disclosed by BetterHelp includes, but is not limited to, Plaintiffs' and Class Members' names,

email addresses, IP addresses"), ¶¶ 11-13, 25-33, 61, 67-76, 78, 91-96, 101 ("Put simply, when

Plaintiffs or other Class Members used Defendant's Sites to obtain the Service from Defendant,

their Private Information, including their identities, unique identifiers, and protected health

information was disclosed to Facebook/Meta and other third parties."), ¶¶ 102-104, 131, 158.[3]

Finally, BetterHelp claims that the FACC alleges that "optimizing its digital marketing" results in "the provision of mental health therapy resulting in the provision of therapy and counseling to thousands of individuals that otherwise might not be aware the service exists." ECF 117, at p. 3. This is simply false as the FACC makes no such allegation.

## B.   PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS UNDER THE UCL AND CLRA (Counts VII and XII)

In its ruling on BetterHelp's first motion to dismiss, the Court granted Plaintiffs leave to amend Counts VII and XII to detail how they had standing to assert claims under those statutes, as well to explain what ongoing harms they suffered for purposes of seeking injunctive relief. Plaintiffs agree they must allege they have standing for each remedy they seek. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). Considering substantively similar cases, this Court has previously disposed of the arguments raised in Defendant's Second Motion to Dismiss regarding Plaintiffs' standing to pursue claims under the UCL and CLRA, which require Plaintiffs plead a "loss of money or property" for UCL purposes and that they "suffered damage" for CLRA purposes. This Court has held that, where the Complaint specifically alleges a monetary or economic injury attributable to a defendant's conduct, Plaintiffs have standing to assert such claims. *Guerra v. KIND, LLC,* No. 22-CV-06654-RS, 2023 WL 3436093, at *8 (N.D. Cal. May 11, 2023) (denying motion to dismiss and holding "Plaintiff has alleged a cognizable injury where he pleads that he either purchased the products or paid more money for them than he otherwise would have, absent the mislabeling.") (citing *Brown v. Van's*, No. 22-cv-00001-WHO, 2022 WL 1471454, at *9 (N.D. Cal. May 10, 2022)). *See also In re Solara Med. Supplies, LLC Customer Data Security Breach Litig.*, 613 F.Supp.3d 1284, 1301 (S.D. Cal. 2020) (plaintiffs who lost control of their medical information had "lost money or

---

[3] *See also* ECF No. 114 ¶ 158: "Defendant's secret disclosure of Plaintiffs' and other Class Members' Private Information, including each Class Member's email address, IP address, [Facebook ID], and other individually identifying information, and information about their medical history, mental and physical condition, and treatment (including that they were seeking or receiving mental health treatment), constitutes an intentional intrusion upon Plaintiffs' and Class Members' private matters that were intended to stay private from third parties."

PLAINTIFFS' MPA IN OPP TO MOT. TO DISMISS                    Master File No. 3:23-cv-01033-RS

property" for purposes of the UCL). The FACC ¶¶ 25-31, 32, 132-138, 268-271, and 319 makes such allegations sufficient to address the Court's previous questions. *See e.g.,* ECF 114, ¶ 25 (which allegations are similarly made by the other Plaintiffs in ¶¶ 26-31) ("Ultimately, Plaintiff C.M. signed up for BetterHelp's services for which she paid BetterHelp approximately $60-$90 monthly. Had Plaintiff C.M. known that Defendant would not keep her Private Information confidential, she would not have completed the questionnaire and would not have paid for the Service or would have paid significantly less for that Service and thus lost money or property as a result of BetterHelp's unlawful conduct.")

In *Castillo v. Seagate Tech., LLC*, No. 16-CV-01958-RS, 2016 WL 9280242, at *8 (N.D. Cal. Sept. 14, 2016), a UCL claim involving losses attributable to a data breach, this Court found that "restitution is unavailable because plaintiffs do not allege that Seagate obtained from them any money or other financial benefit." Here, however, the FACC expressly contains such allegations—Plaintiffs and Class Members did pay Defendant directly for its services. ECF 114 ¶¶ 5, 6, 25-32. Thus, BetterHelp's claim that false advertising or labeling cases somehow are subject to a different standing analysis based on the presence of such allegations is incorrect. In addition, the FACC at ¶ 315 specifically alleges BetterHelp violated the False Advertising Law as a predicate "unlawful" business practice in violation of the UCL. Other portions of the FACC also clearly allege that Defendant made misrepresentations regarding HIPAA compliance and about the privacy protection and confidentiality promised by Defendant in order to induce Plaintiffs to purchase their services. ECF 114 ¶¶ 25-32, 57-61 (HIPAA misrepresentations); ¶ 62 ("Moreover, prominently displayed on the BetterHelp landing page was a representation that "[a]ll counselors are licensed, accredited professionals. BetterHelp allows you to connect with them in a safe and private online environment. Anything you share is confidential." ); ¶¶ 63-65.

Defendant attempts to rely on *Bower v. AT&T Mobility, LLC*, 127 Cal. Rptr. 3d 569, 579 (Cal. Ct. App. 2011) and *Peterson v. Cellco Partnership*, 80 Cal. Rptr. 316, 321 (Cal. Ct. App. 2008) to assert that there is no "injury in fact" where a plaintiff does not allege she could have obtained a product at a lower price from another source. These attempts are, however, directly contrary to *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 325 (2011), which specifically

discussed the rationale of *Peterson* and rejected the argument that one needs to show they could have obtained a better price for the same product to have standing to assert a UCL claim: "If a party has alleged or proven a personal, individualized loss of money or property in any nontrivial amount, he or she has also alleged or proven injury in fact." *Id.* at 325. As the Court in *Kwikset* concluded: "While Proposition 64 clearly was intended to abolish the portions of the UCL and false advertising law that made suing under them easier than under other comparable statutory and common law torts, it was not intended to make their standing requirements comparatively more onerous." *Id.* at 335. *See also Meyer v. Sprint Spectrum L.P.*, 45 Cal.4th 634, 640-41, n. 1 (2009) (recognizing standing under CLRA, Civ. Code § 1780(a), for consumers who have suffered damage "as a result of" a violation and observing that "'any damage' may encompass harms other than pecuniary damages, such as certain types of transaction costs and opportunity costs.")

Defendant's Second Motion to Dismiss also ignores the fact that, as the Court recognized in *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 985 (N.D. Cal. 2016), "more recent case law within the data breach context confirms that benefit of the bargain damages represent economic injury for purposes of the UCL. *See In re Adobe Sys., Inc. Privacy Litig.*, 66 F.Supp.3d 1197, 1224 (N.D.Cal.2014) (finding standing under the UCL because "[f]our of the six [p]laintiffs allege they personally spent more on Adobe products than they would had they known Adobe was not providing the reasonable security Adobe represented it was providing."); *In re LinkedIn User Privacy Litig.*, 2014 WL 1323713, *4 (N.D. Cal. Mar. 28, 2014) (finding that benefit of the bargain losses are "sufficient to confer...statutory standing under the UCL."). Taken together, *Kwikset, In re Adobe,* and *In re LinkedIn* demonstrate that benefit of the bargain losses, as alleged in the consolidated amended complaint, constitute economic injury cognizable under the UCL." The FACC makes such allegations throughout, including at ECF 114 ¶ 25-32.

To allege they have standing to obtain injunctive relief, a plaintiff must allege the threat of an injury that must be "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)) (additional citation omitted) ("To have standing to obtain injunctive relief, a plaintiff must allege that a 'real or immediate threat' exists that he will be wronged again."). Throughout the FACC,

Plaintiffs allege: (1) their data is still currently available to unauthorized third parties and is being used by them, establishing a legitimate threat of future harm; (2) there is significant question regarding whether BetterHelp has complied with its legal obligations to ensure the destruction of such data; (3) Plaintiffs would still consider using BetterHelp if it would in fact fix the issues that resulted in the unauthorized sharing of such data, and (4) Plaintiffs have been and are still getting BetterHelp and other associated advertisements even if they are no longer using its service. *See*, Section II.A.1., *supra*, ECF 114, ¶¶ 25-31, 33-35, 104.

In addition, because the companies to whom Defendant provided Plaintiffs' PII and PHI continue to maintain and use that information without restriction based on the inactions of BetterHelp, the injury to Plaintiffs and Class Members continues to inure. An individual has standing to seek injunctive relief, particularly where the information obtained by unauthorized third parties is highly sensitive. *See, e.g., In re Zappos.com, Inc*., 888 F.3d 1020, 1027 (9th Cir. 2018) (allegations that sensitive personal information was obtained in data breach constitute injury in fact supporting standing). Plaintiffs seek an Order from this Court that would require Defendant to provide required notice to third parties, government agencies, and consumers regarding these unauthorized disclosures, and require BetterHelp to take steps to ensure that third parties delete any information that remains in these third parties' possession. The fact that the FTC has ordered similar—but more narrow—injunctive relief with which Plaintiffs allege BetterHelp has failed to comply, does not limit this Court's ability to enter the broader relief requested here (see ECF 114, Ex. B at p. 109 ¶ B).

Courts in this District have consistently held similar allegations of a threat of impending future harm entitle Plaintiffs to seek injunctive relief. For example, in *Sanchez v. Nurture, Inc.,* No. 5:21-CV-08566-EJD, 2023 WL 6391487, at *9–10 (N.D. Cal. Sept. 29, 2023), the Court rejected the argument that a plaintiff cannot be deceived in the future because they are now on notice of the misdeeds of the defendant, finding that argument "has been squarely rejected by the Ninth Circuit's decision in *Davidson v. Kimberly-Clark Corp*., 889 F.3d 956, 969 (9th Cir. 2018) ('We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising

1  was false at the time of the original purchase.')." *See also Davidson*, 889 F. 3d at 969-71

2  (explaining that "future harm" may be that the consumer "will not purchase the product although

3  she would like to," because "she will be unable to rely on the product's advertising or labeling,"

4  or "that she might purchase the product in the future, despite the fact it was once marred by false

5  advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved,"

6  and that "[The Ninth Circuit] recognizes a history of lawsuits based on similar informational

7  injuries.").

8       This Court has also consistently held such allegations are sufficient for purposes of seeking

9  injunctive relief for violations of the UCL. *See Kutza v. Williams-Sonoma, Inc.*, No. 18-CV-03534-

10 RS, 2018 WL 5886611, at *4 (N.D. Cal. Nov. 9, 2018) ("*Davidson* stands as clear authority that a

11 plaintiff may seek injunctive relief based on the future harm of not being able to rely on the labeling

12 when trying to make an informed choice, regardless of whether the product is reformulated or

13 not."); *Morgan v. Apple Inc.,* No. 17-CV-05277-RS, 2018 WL 2234537, at *9–10 (N.D. Cal. May

14 16, 2018) (denying motion to dismiss challenging similar allegations); *Guerra v. KIND, LLC*,

15 *supra,* 2023 WL 3436093, at *8 ("Plaintiff satisfies these requirements because he has pleaded

16 that he continues to desire to purchase KIND products, would likely purchase them again in the

17 future if they were 'reformulated or relabeled' to contain the protein represented on the labels,

18 regularly visits stores where the products are sold, and absent an injunction preventing the

19 mislabeling, would be unable to rely on Defendant's labels when shopping in the future.

20 Defendant's arguments about standing for injunctive relief are therefore rejected for the same

21 reason that they were rejected in *Brown* [*v. Van's, supra,* 2022 WL 1471454].")

22       In addition, "[w]here standing is premised on the threat of repeated injury, a plaintiff must

23 show 'a sufficient likelihood that he will again be wronged in a similar way.'" *Davidson*, *supra*,

24 889 F.3d at 967 (quoting *City of Los Angeles v. Lyons*, supra, 461 U.S. 95, 111). Plaintiffs'

25 allegations in the FACC referenced above and at ¶¶ 33-35 detail why there is a real and immediate

26 threat of such an injury, as the data in question is still available and actively used by third parties

27 and plaintiffs and government agencies still have not received notice about what information was

28 unlawfully shared and with whom it was shared. Such allegations support standing to seek

injunctive relief. Despite BetterHelp's claims to the contrary, Plaintiffs do not need to detail the precise form of the relief they seek. They simply need to allege the Court would be able to issue some form of relief that could redress plaintiffs' alleged injury. *Lentz v. Sanderson Farms, Inc.*, No. 19-CV-06570-RS, 2020 WL 12656231, at *9–10 (N.D. Cal. Feb. 10, 2020). The FACC does so. FACC ¶¶ 33-35, 321-323. This is sufficient for the Court to find Plaintiffs have standing to obtain injunctive relief.

## C.     BETTERHELP IS SUBJECT TO THE CMIA (Count IX)

BetterHelp next seeks dismissal of Plaintiffs' claim for violation of the CMIA (Count IX) by still arguing it is not subject to the provisions of that statute. ECF 117 at pp. 6-8. Mindful of the Court's finding that Plaintiffs' Consolidated Class Action Complaint failed to establish that Defendant falls within the scope of the CMIA as a "provider of healthcare," Plaintiffs plead facts in the FACC establishing that Defendant falls within the scope of the CMIA as a "corporation" within the meaning of Cal. Civ. Code § 56.10(d), and as a recipient of medical information within the meaning of Cal. Civ. Code§ 56.13. ECF 114 ¶¶ 1, 5-7, 11, 25-33, 44-50, 130-131, 230, 297. Defendant asserts that this exceeds the leave granted by the Court to Plaintiffs to amend their CMIA claim, without making any claim of prejudice. To the contrary, however, as the Court permitted, Plaintiffs have amended the FACC to include facts placing BetterHelp within the scope of the statute, as well as to be consistent with a recent Court of Appeal decision referenced *infra*. ECF 113 at p. 6.

In 2001, the California Legislature amended § 56.10(d) to apply to "corporations" in addition to the other categories of entities that were already listed. Prior to January 1, 2001, § 56.10(d) read:

> Except to the extent expressly authorized by the patient or enrollee or subscriber or as provided by subdivisions (b) and (c), no provider of health care, health care service plan, or contractor shall intentionally share, sell, or otherwise use any medical information for any purpose not necessary to provide health care services to the patient.

Cal. Civ. Code § 56.10 (2000) . It was amended, effective January 1, 2001, to read:

> Except to the extent expressly authorized by the patient or enrollee or subscriber or as provided by subdivisions (b) and (c), no provider of health care,  health  care  service  plan  contractor,  **or  corporation  and  its**

> **subsidiaries and affiliates** shall intentionally share, sell, or otherwise use any medical information for any purpose not necessary to provide health care services to the patient.

Cal. Civ. Code § 56.10 (2001) (emphasis added). In amending § 56.10(d), the Legislature intended to: "Make[] the provisions in the [CMIA] which prohibit providers and contractors from sharing or selling a patient's medical information for any purpose other than providing health care to the patient applicable to corporations and their subsidiaries and affiliates." See California Bill Analysis, S.B. 1903 Third Sen. Report dated 8/29/2000 (Ex. 1 to the Request for Judicial Notice, filed concurrently herewith).

BetterHelp does not dispute Plaintiffs' allegation that it is a corporation. ECF 114 ¶¶ 294, 299. Rather, Defendant asserts that the term "corporation" in § 56.10(d)  means only "those corporations that are also providers of health care." ECF 117, p. 8. Not only is this contrary to the legislative history referenced above, but it also makes no sense. When interpreting a statute, courts should "'look first to its language' [*United States v. Turkette*, 452 U.S. 576, 580 (1981)], giving the 'words used' their 'ordinary meaning,' [*Richards v. United States*, 369 U.S. 1, 9 (1962)]." *Moskal v. United States*, 498 U.S. 103, 108 (1990). The ordinary meaning of "corporation" is not limited only to those corporations that qualify as a "provider of health care" as that term is defined in the CMIA.

Defendant's suggestion that § 56.10(d)  simply provides a list of types of health care providers to whom it applies (ECF 117, p. 7) is similarly flawed. If "corporation" means only "a provider of health care" the Legislature would have had no reason to include the term "corporation" in a list that already includes the term "provider of health care"; its inclusion of that word would be superfluous. *See C. Montana Elec. Power Co-op., Inc. v. Adminstr. of Bonneville Power Admin.*, 840 F.2d 1472, 1478 (9th Cir. 1988) ("We avoid any statutory interpretation that renders any section superfluous and does not give effect to all of the words used by [the Legislature]." (citing *Beiler v. CIR*, 814 F.2d 1304, 1307 (9th Cir. 1987))); *United States v. Menache*, 348 U.S. 528, 538-39 (1955) (a court should "give effect, if possible, to every clause and word of a statute." (internal quotation omitted)). Furthermore, §§ 56.10(a) and 56.10(b)

already apply to "[a] provider of health care, health care service plan, **or** contractor" and "[a] provider of health care, a health care service plan, **or** a contractor," respectively (emphasis added). It is illogical and against the canons of statutory construction (and the legislative history cited above) to argue the Legislature added the phrase "corporations and their subsidiaries and affiliates" to § 56.10(d) but really meant to limit that section to the same entities listed in §§ 56.10(a) and (b). *Spencer Enterprises, Inc. v. U.S.*, 345 F. 3d 683, 689 (9th Cir. 2003) (noting the "'well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that [the Legislature] intended to convey a different meaning for those words.'") (citing *SEC v. McCarthy*, 322 F. 3d 650, 656 (9th Cir. 2003)).

Defendant's argument is not redeemed by its suggestion that the CMIA should be contorted such that the term "corporation" should be read with "the modifier 'health care' at the beginning of the list ('health care service plan, contractor, or corporation . . .')." ECF 117, p. 7. The phrase "health care" is **not** actually at the beginning of the list of entities. *See* § 56.10(d) (applying to " . . . **a provider of health care**, health care service plan, contractor **or** corporation and its subsidiaries and affiliates . . .") (emphasis added). It is implausible both as a matter of statutory construction and of grammar to imagine that the modifier "health care" would apply to only the second, third, and fourth terms in the list of entities, but not the first. If the Legislature intended what Defendant suggests, it could have written "…a provider of health care **or** a health care service plan, contractor, or corporation and its subsidiaries and affiliates . . ." It did not do so, and the legislative history referenced above shows this was intentional. Defendant's proposed reading also ignores the fact that "health care service plan" is a defined term (*see* § 56.05(g)), such that "health care" is not being used as a modifier of "service plan" and therefore cannot somehow also modify "contractor" and "corporation". Moreover, a "contractor" is also a defined term, and is defined to **exclude** any "health care service plan or provider of health care," § 56.05. As a result, applying the modifier "health care" to "contractor" is wrong. In sum, even if "health care" could be read as a modifier, which it cannot, it would have to somehow skip "contractor" and only modify "corporation."

The Legislature intentionally chose to add the term "corporation and its subsidiaries and affiliates" to an already existing list of entities. The notion that it chose to do so without intending

to expand the types of entities covered by § 56.10(d) must be rejected, and the Court cannot accept such an awkward and unnatural interpretation of §56.10(d). *See* Cal. Code Civ. Proc. § 1859 ("In the construction of a statute the intention of the Legislature, and in the construction of the instrument the intention of the parties, is to be pursued, if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it.")

Defendant next argues that it would be "absurd" for § 56.10(d) to cover "a sweepingly broad but undefined category of (non-health care) 'corporations,' contrary to the rest of the statute." ECF 117, pp. 7-8. Not so. First, the statute says what it says, and it does so because, as the legislative history shows, the Legislature explicitly chose to add the word "corporations" to § 56.10(d) for a specified reason. Second, as a practical matter, the majority of corporations will not possess medical information such that they could even potentially violate § 56.10(d) . And third, there is nothing "absurd" about prohibiting any corporation that does possess medical information from "intentionally shar[ing], sell[ing], us[ing] for marketing, or otherwise us[ing it] for a purpose not necessary to provide health care services to the patient." Indeed, if the intent is to protect such information from being shared without authorization, that is precisely what the Legislature intended to achieve when it amended this statutory provision to cover a broader category of entities. *See,* Request for Judicial Notice, referenced *supra*.

Finally, Defendant suggests that the CMIA is "clearly intended to impose specific requirements on a specific class of entities – health care providers," and that, therefore, the term "corporation" in § 56.10(d) cannot mean anything other than "provider of health care." ECF 117, pp. 7-8. Once again, Defendant arrives at this narrow vision of the purpose of the CMIA without any citation to canons of statutory interpretation, to legislative history, or to any authority whatsoever. It simply notes that the CMIA applies to providers of health care and defines who falls into that category and then concludes that this means the CMIA was "intended to apply solely to contractors and corporations that are *health care providers*, not *any* or *all* contractors and corporations." ECF 117, p. 8. But even in making this statement, Defendant ignores the structure and language of the CMIA, which prohibits such a reading. As noted above, "contractor" is defined

as "a person or entity that is [one of a list of types of entities] and is not a . . . provider of health care." § 56.05(d) . And it is perfectly reasonable for part of an act designed to protect the confidentiality of medical information to apply to only certain entities while another part of the act restricts a broader group of entities from different, albeit related, actions. And as the California Court of Appeal recently held, the CMIA is to be broadly, not narrowly, construed, to apply beyond just medical providers. *J.M. v. Illuminate Education Inc.* 103 Cal. App. 5th 1125, 323 Cal. Rptr. 3d 605, 611 (issued July 25, 2024) ("The Confidentiality of Medical Information Act (CMIA) protects confidential medical information. *Here we decide its reach extends beyond medical providers*.")(emphasis added) After engaging in an extensive statutory and legislative analysis the Court in *J.M.* concluded:

> The CMIA also applies to "[a] recipient of medical information" (§ 56.13) and to a "provider of health care, health care service plan, pharmaceutical company, contractor, or any other entity" that seeks an authorization for "disclosure of protected health information." (§ 56.11, subd. (c), italics added.) The CMIA is a remedial statute. "Remedial and protective statutes will be liberally interpreted to advance their clear purposes." (*Fitch v. Pacific Fidelity Life Ins. Co.* (1975) 54 Cal.App.3d 140, 148.) Consistent with this broad scope of coverage, Illuminate falls within the definitions of "any other entity" in section 56.11, subdivision (c); a "recipient of medical information" under section 56.13; and "any business" under section 56.06, subdivisions (a) and (b). J.M. alleged Illuminate possessed the medical information with the understanding that it would safeguard its confidentiality, thus making it a "recipient of medical information." "Statutes should be given a construction consistent with the legislative purpose . . . ." (*Silberman v. Swoap* (1975) 50 Cal.App.3d 568, 571.) *The CMIA's purpose is to protect the confidentiality of medical records.* (*Regents of University, supra,* 220 Cal.App.4th at p. 553.) Illuminate's position eliminates that protection for school children. Such a result undermines the purpose of the CMIA." (emphasis added).).

*Id.*

The CMIA was titled the "Confidentiality of **Medical Information** Act" for a reason. Applying the CMIA to BetterHelp for this purpose is consistent with the plain language of § 56.10(d) and 56.13, the language of § 56.10 as a whole and the legislative history of § 56.10(d). The focus on "providers of health care" suggested by Defendant is inconsistent with each of these features of the CMIA, the indicia of legislative intent, the plain language in the statute, and a recent Court of Appeal decision that directly rejected Defendant's argument to the contrary.

### D.  PLAINTIFFS HAVE PROPERLY PLED THE ELEMENTS OF A CLAIM FOR BREACH OF IMPLIED CONTRACT (Count II)

In its ruling on BetterHelp's First Motion to Dismiss, the Court granted Plaintiffs leave to amend its Breach of Contract claim (Count II in the FACC) to better define the nature of the alleged implied contract. ECF 113, pp. 9-10. As this Court held in the context of upholding a claim for breach of implied contract in *Castillo v. Seagate Tech., LLC*, *supra,* 2016 WL 9280242, at *8–9, "'An implied contract is one, the existence and terms of which are manifested by conduct.' Cal. Civ. Code § 1621. To plead breach of an implied contract, a plaintiff must allege: '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff.'" (*Id.*, citing *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968)) "An implied-in-fact contract requires proof of the same elements necessary to evidence an express contract: mutual assent or offer and acceptance, consideration, legal capacity and lawful subject matter." *Corona v. Sony Picture Entertainment Inc.*, No. 14-cv-09600-RGK, 2015 WL 3916744, at *6 (N.D. Cal. June 15, 2015). "While an implied contract requires that both parties agree to its terms and have a 'meeting of the minds' the creation of an implied contract can be manifested by conduct rather than words." *See T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 872 (N.D. Cal. 2015) (citing *Blaustein v. Burton*, 9 Cal. App. 3d 161, 179 (1970)).

Contrary to BetterHelp's assertions in its Second Motion to Dismiss (ECF 117 at pp. 10-11), in response to the Court's July 15 Order the FACC specifically describes the nature of the implied contract manifested by both Better Help's conduct and words (ECF 114 ¶¶ 7, 8, 51-67, 168-174); performance of the terms by Plaintiffs by providing their Private Information and paying BetterHelp for the services at issue (*id.* ¶¶ 25-31, 175-176); breach of this implied contract by BetterHelp in disclosing Plaintiffs' Private Information to unauthorized third parties (*id.* ¶¶ 61, 68-78, 131, 177); and the resulting damages (*id.* ¶¶ 25-32, 178-179).

This Court in *Castillo*, 2016 WL 9280242, at *9, found similar allegations were sufficient to state a claim for breach of implied contract: "Plaintiffs here have alleged more than their *Anthem* counterparts; they have alleged an implied contract term that Seagate would take 'adequate

measures' and make 'reasonable efforts' to 'properly safeguard[ ]' its employees personal identifying information. Defendants have identified no authority requiring more specificity, and it is difficult to imagine how plaintiffs, who are not assumed to be experts in the field of data protection, could have formed highly particular expectations about the measures that would be taken to protect their information." *See also In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1176 (D. Minn. 2014) (plaintiffs had sufficiently pled "an implied contract in which Plaintiffs agreed to use their credit or debit cards to purchase goods at Target and Target agreed to safeguard Plaintiffs' personal and financial information."). Relevant for purposes of this Motion, this Court in *Castillo* further observed:

> "Moreover, to require a specifically pleaded scope of data protection for an implied breach of contract claim would operate to preclude such a claim between all but the most sophisticated and familiar parties. Even if the party sharing his or her data had very specific expectations about the measures that would be taken to protect it, it would be exceedingly difficult to show the recipient assented to those precise protective measures. Plaintiffs' claim is a far more realistic reflection of the mutual agreement that occurs in most data-sharing transactions: *When a person hands over sensitive information, in addition to receiving a job, good, or service, they presumably expect to receive an implicit assurance that the information will be protected*…. Plaintiffs allege that Seagate implicitly agreed to take "adequate measures" and make "reasonable efforts" to "properly safeguard[ ]" the personal information of employees. *This is adequate to plead a claim of implied breach of contract for former employees*."

*Id.* at *9 (emphasis added). This same conclusion applies with equal, if not more, force here, particularly considering the highly sensitive PII and PHI BetterHelp was provided by Plaintiffs and Class Members, and that it both implicitly and explicitly represented that it would protect such information from unauthorized sharing with third parties.

It is ultimately for a factfinder to determine the scope and extent of the implied contract between Plaintiffs and Class Members and BetterHelp. *Id.* at *9. *See also Acri v. Varian Assocs., Inc.*, 121 F.3d 714 (9th Cir. 1997) (existence of an implied contract is an issue of fact). The Court should deny BetterHelp's attempt to dismiss a claim it has permitted to proceed in a similar context.

1

2

### E. PLAINTIFFS HAVE PROPERLY PLED A CLAIM UNDER THE SCA (Count V)

3

BetterHelp finally challenges Plaintiffs' new Count V for violation of the SCA. The SCA

4 defines "electronic communication service" as "any service which provides the users thereof the

5 ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Courts

6 construe this language broadly to encompass entities that provide two-way messaging platforms

7 that allow users to communicate with each other. *See e.g., In re United States for an Ord. Pursuant*

8 *to 18 U.S.C. §2703(d),* No. MC 17-2682 (BAH) ("*Royal Caribbean*"), 2018 WL 1521772, at *5

9 (D.D.C. Mar. 8, 2018) (cruise line that hosted its own network to allow passengers to communicate

10 with each other over the network was an electronic communications service).

11

Defendant's Sites and patient portal provide Plaintiffs and Class members exactly that—

12 the ability to send to and receive communications from their healthcare providers such as therapists

13 that have been referred to and connected through BetterHelp. *See, e.g.*, ECF 114 ¶ 4 (describing

14 how BetterHelp facilitates counseling and therapy between account holders and therapists through

15 the Service offered on the Sites); *id.*, ¶ 44 ("Defendant markets its services by offering consumers

16 online communications with licensed therapists 'who you can trust.'"); and *id.*, ¶ 219

17 ("Defendant's Sites qualify as an Electronic Communication Service because it allows its users to

18 communicate with their therapist *through the Sites* to coordinate mental health services and

19 treatment") (emphasis added). Indeed, this is the primary purpose of Defendant's Sites, as

20 BetterHelp does not merely match a potential patient with a therapist and then have no involvement

21 in future communications between the two. To the contrary, as alleged at ECF 114, ¶¶ 4-5, 11, 30,

22 44-50, and 58, Defendant interposes itself between Class Members and therapists for most if not

23 all communications, including scheduling of and billing for therapy sessions and the actual

24 sessions themselves.

25

The FACC thus adequately alleges that BetterHelp was an electronic communications

26 service because it facilitated communications between patients and therapists and served as a

27 conduit between users of the BetterHelp service and their therapists. As courts have consistently

28 held, the SCA "captures any service that stands as a 'conduit' for the transmission of wire or

electronic communications from one user to another." *Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892, 902 (9th Cir. 2008), *cert. denied in relevant part*, 558 U.S. 1090, 130 S. Ct. 1011 (2009); *Royal Caribbean,* 2018 WL 1521772, at *5 (cruise line provided customers with a system to send and receive messages to each other and therefore was an electronic communications service "regardless of whether its primary business function is the provision of ECS."); *In re United States for an Ord. Pursuant to 18 U.S.C. §2705(d)*, 389 F. Supp. 3d 201, 209-10 (D.D.C. 2018) (Airbnb messaging system that allowed users to communicate with each other and not just with Airbnb itself constituted electronic communications service). The cases cited by BetterHelp in its Second Motion to Dismiss at pp. 12-13 to the contrary are distinguishable since, in each of those cases, the defendant merely communicated with its own customers through the website; it did not serve as a conduit to facilitate communications between users and others such as therapists, as BetterHelp does here through the Sites. ECF 114 ¶¶ 4-5, 30.

BetterHelp also challenges in its Second Motion to Dismiss the sufficiency of Plaintiffs' allegations that it "stored" the information before disclosing it to third parties. In doing so, BetterHelp ignores the allegations in the FACC and in the FTC Complaint referenced and incorporated by reference into the FACC. And contrary to Defendant's contention, there is nothing inconsistent about the allegations that BetterHelp both aided the contemporaneous interception of communications in transit and also stored communications before uploading them to companies such as Facebook. The FACC and FTC Complaint allege that BetterHelp sent lists of email addresses to third parties such as Facebook, Snapchat, Criteo, and Pinterest. *See* ECF 114 ¶ 71 ("Defendant uploaded the email addresses of all of their current and former users – nearly 2 million in total – to Meta, targeting them all with advertisements to refer their Facebook friends to the Service"), ¶¶ 72-75, 97-101; ECF 114, Ex. A at ¶¶ 49, 52). The FACC includes allegations that millions of BetterHelp's customers' and users' emails were sent to third parties contemporaneously when they were uploaded to Facebook and other third parties, which information was sufficient to identify them as people who were seeking mental health treatment. ECF 114 ¶¶ 71, 77, 95. Among other information, this included information from the intake questionnaire as alleged at ECF 114 ¶ 78. Both the FACC and the FTC Complaint attached thereto

distinguish between the emails BetterHelp sent to Facebook (*see* ECF 114 ¶¶ 71-75; Ex. A ¶52) and "Events" sent to Facebook (via the use of Meta Pixels) when visitors filled out the questionnaire or took other actions on the Sites (*see* ECF 114 ¶¶ 71-75, 97-101; Ex. A ¶ 53).

By definition, BetterHelp had to have stored these email addresses (even if temporarily) in order to be able to subsequently upload and then later disclose them to third parties. And it defies credulity for BetterHelp to suggest it transferred 6 million email addresses it happened to not have stored anywhere on its servers, as part of a series of such transfers. See ECF 114 ¶ 73; Ex. A at ¶ 55. Similarly, BetterHelp must have stored communications related to these IP addresses and email addresses before sending them all at once to Snapchat in January 2019. *Id.* Based on these allegations, the FACC ¶¶ 220, 222 specifically and plausibly alleges Defendant stored Plaintiffs' and Class Members' Private Information and thereafter disclosed that information to third parties such as Facebook and Snapchat without having first obtained authorization or consent to do so. Plaintiffs thus properly state a claim under the SCA.

## V.   **CONCLUSION**

It is now time for BetterHelp to get past the pleadings, as it knows exactly what issues are framed by the FACC and what the claims are against it. The Court should direct BetterHelp to file an Answer to the FACC, or grant Plaintiffs leave to amend to address any remaining issues the Court may identify.

Dated: September 17, 2024

> */s/ Gary M. Klinger*
> Gary. M. Klinger (pro hac vice)
> MILBERG COLEMAN BRYSON PHILLIPS
> GROSSMAN, PLLC
> 227 W. Monroe Street, Suite 2100
> Chicago, Illinois 60606
> Telephone: 866.252.0878
> Email: gklinger@milberg.com
> gabramson@milberg.com
> ahoneycutt@milberg.com
> rnelson@milberg.com
>
> *Plaintiffs' Co-Lead Interim Class Counsel*
>
> */s/ Christina Tusan*
> Christina Tusan (SBN 192203)
> ctusan@hammondlawpc.com
> HAMMONDLAW, P.C.

1201 Pacific Ave, Suite 600
Tacoma, WA 98402
[Tel:] (310) 601-6766
[Fax] (310) 295-2385

*Plaintiffs' Co-Lead Interim Class Counsel*

.
*Maureen M. Brady*
Maureen M. Brady
McShane AND Brady LLC
1656 Washington
Suite 140
Kansas City, MO 64108
816-888-8010
Email: mbrady@mcshanebradylaw.com

*Plaintiffs' Co-Lead Interim Class Counsel*

*/s/ Alan M. Mansfield*
Alan M. Mansfield (SBN: 125998)
amansfield@whatleykallas.com
WHATLEY KALLAS LLP
1 Sansome Street, 35th Floor
PMB #131
San Francisco, CA 94104 /
16870 West Bernardo Drive, Ste 400, San
Diego, CA 92127
Phone: (619) 308-5034
Fax: (888) 341-5048

*Plaintiffs' Liaison Counsel*