LIVIA M. KISER (SBN 285411)
lkiser@kslaw.com
JEFFREY HAMMER (SBN 264232)
jhammer@kslaw.com
CRAIG H. BESSENGER (SBN 245787)
cbessenger@kslaw.com
JAMES A. UNGER (SBN 325115)
junger@kslaw.com
**KING & SPALDING LLP**
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071
Telephone: +1 (213) 443-4355
Facsimile: +1 (213) 443-4310

Attorneys for Defendant
BETTERHELP, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE BETTERHELP, INC. DATA DISCLOSURE CASES**<br><br>This Document Relates To:<br><br>All Cases/ | Case No. 3:23-cv-01033-RS<br><br>**DEFENDANT BETTERHELP'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT (FRCP 12(b)(1) & 12(b)(6))**<br><br>Date: October 17, 2024<br>Time: 1:30 P.M.<br>Courtroom: 3<br>Judge: Hon. Richard J. Seeborg |

**TABLE OF CONTENTS**

I. INTRODUCTION ...............................................................................................................1

    A. Plaintiffs Fail to State a Claim Under the CMIA (Count IX) ............................................2

    B. Plaintiffs Fail to State a Claim Under the SCA (Count V) ................................................5

    C. Plaintiffs Lack Standing Under the UCL and CLRA (Counts XI, VII)............................6

    D. Plaintiffs' Fail to State a Claim for Breach of Implied Contract (Count II) .....................8

    E. Plaintiffs Lack Standing for Injunctive and Declaratory Relief (Counts IV, VI, VII, IX, XI) …........................................................................................................................9

II. CONCLUSION..................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ables v. Brooks Bros. Grp. Inc.*,
  No. 17-cv-4309-DMG (Ex), 2018 WL 8806667 (C.D. Cal. June 7, 2018) ..........................7, 8

*In re Anthem, Inc. Data Breach Litig.*,
  162 F. Supp. 3d 953 (N.D. Cal. 2016) .......................................................................7, 8, 9

*Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*,
  793 F.3d 822 (8th Cir. 2015) .......................................................................................6

*California Mfrs. Ass'n. v. Pub. Util. Comm.*,
  598 P.2d 836 (Cal. 1979) ............................................................................................4

*Castillo v. Seagate Tech., LLC*,
  No. 16-cv-01958-RS, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016).........................9

*Cousin v. Sharp Healthcare*,
  681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......................................................................8

*Crispin v. Christian Audigier, Inc.*,
  717 F. Supp. 2d 965 (C.D. Cal. 2010) .........................................................................6

*Crowley v. CyberSource Corp.*,
  166 F. Supp. 2d 1263 (N.D. Cal. 2001) .......................................................................6

*Doe v. DaVita Inc.*,
  No. 23-cv-01424-AJB-BLM, 2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) .............8

*Erhart v. BofI Holding, Inc.*,
  269 F. Supp. 3d 1059 (S.D. Cal. 2017) ........................................................................3

*Guerra v. KIND, LLC*,
  No. 22-cv-06654-RS, 2023 WL 3436093 (N.D. Cal. May 11, 2023) ......................10

*J.M. v. Illuminate Educ., Inc.*,
  323 Cal. Rptr. 3d 605 (Cal. Ct. App. 2024) ................................................................3

*In re JetBlue Airways Corp. Priv. Litig.*,
  379 F. Supp. 2d 299 (E.D.N.Y. 2005) .........................................................................6

*Lewert v. P.F. Chang's China Bistro*,
  819 F.3d 963 (7th Cir. 2016) .......................................................................................7

*Loew's v. Byram*,
  82 P.2d 1 (Cal. 1938) ...................................................................................................3

*Netbula, LLC v. BindView Dev. Corp.*,
   516 F. Supp. 2d 1137 (N.D. Cal. 2007) ....................................................................................9

*Pac. Intermountain Exp. v. Nat'l Union Fire Ins. Co.*,
   198 Cal. Rptr. 897 (Cal. Ct. App. 1984) ...................................................................................3

*People v. Weitzel*,
   255 P. 792 (Cal. 1927) ..............................................................................................................3

*Pica v. Delta Air Lines, Inc.*,
   No. CV 18-2876-MWF (Ex), 2019 WL 1598761 (C.D. Cal. Feb. 14, 2019) ............................5

*Regents of the Univ. of Cal. v. Super. Ct.*,
   163 Cal. Rptr. 3d 205 (Cal. Ct. App. 2013) ..............................................................................2

*Steve Jackson Games, Inc. v. U.S. Secret Serv.*,
   36 F.3d 457 (5th Cir. 1994) ......................................................................................................5

*Util. Air Regul. Grp. v. E.P.A.*,
   573 U.S. 302 (2014) ..................................................................................................................2

*Walker v. Coffey*,
   956 F.3d 163 (3d Cir. 2020) ......................................................................................................6

*In re Zappos.com. Inc.*,
   888 F.3d 1020 (9th Cir. 2018) .................................................................................................10

*In re Zappos.com, Inc.*,
   108 F. Supp. 3d 949 (D. Nev. 2015) .........................................................................................8

**Statutes**

18 U.S.C. § 2510 ................................................................................................................................6

18 U.S.C. § 2701 ...........................................................................................................................5, 6

18 U.S.C. § 2702 ................................................................................................................................5

Cal. Civ. Code § 56.05 ......................................................................................................................2

Cal. Civ. Code § 56.06 ......................................................................................................................3

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In their Opposition, Plaintiffs double down on their flawed efforts to plead around the Court's previous dismissal of four of their claims, and even add an entirely new but equally flawed claim. For the following reasons, BetterHelp's Motion to Dismiss should be granted:

***First***, Plaintiffs' claim under section 56.10(d) of the Confidentiality of Medical Information Act ("CMIA") fails because, prior to the 2023 Amendment (and during the relevant time period here), the CMIA did not apply to "mental health digital services" such as BetterHelp. Plaintiffs' assertion that the statute applied to *all* corporations, even before the 2023 Amendment, misreads the statute, ignores the legislative history, and overlooks that, because BetterHelp was not a "provider of health care" until after the amendment took effect, Plaintiffs' information is not "medical information" under the statute.

***Second***, Plaintiffs' claim under the Stored Communications Act ("SCA") fails because it applies only to entities such as email and internet service providers who provide service "to the public"—which (as is clear from the allegations in the amended pleading) BetterHelp does not do.

***Third***, Plaintiffs' breach of implied contract claim fails because Plaintiffs fail to allege they read or relied upon any specific representations made by BetterHelp.

***Fourth***, Plaintiffs still fail to establish that they have standing under the UCL and CLRA because they continue to assert an assortment of faulty standing theories, including the discredited theory that some unspecified measure of confidentiality was part of the benefit of their bargain, without identifying any agreement that a portion of what they paid was to provide data security.

***Finally***, the Court should reject Plaintiffs' request for an injunction because it is duplicative of the relief already required under the FTC Consent Order and premised upon the conduct of third parties whom BetterHelp has no right or duty to control.

In the order granting BetterHelp's first motion to dismiss, the Court provided Plaintiffs with clear instructions to guide any attempts to amend their claims. Plaintiffs ignored the Court's instructions and even added an additional flawed claim to their scattershot complaint. Accordingly, the Court should dismiss with prejudice Plaintiffs' claims that are the subject of this Motion.

### A. Plaintiffs Fail to State a Claim Under the CMIA (Count IX)

In dismissing Plaintiffs' claim under the CMIA, the Court permitted Plaintiffs to amend only if they could allege "facts placing BetterHelp within the statutory definitions" of the CMIA. Order[1] at 6. Rather than do so, Plaintiffs ginned up a flawed legal argument, now contending that *all* corporations—including mental health digital services such as BetterHelp—have been subject to the CMIA since 2000. But this latest argument is unsupported by the CMIA's text and legislative history, and would significantly and improperly expand the scope of the CMIA.

The CMIA "prohibits health care providers and related entities from disclosing medical information regarding a patient without authorization except in certain specified instances." *Regents of the Univ. of Cal. v. Super. Ct.*, 163 Cal. Rptr. 3d 205, 207 (Cal. Ct. App. 2013). Thus, the CMIA specifically defines health care providers, Cal. Civ. Code § 56.05(p), and other related health care entities that are subject to the CMIA. *See, e.g., id.* § 56.05(d) (medical groups, independent practice associations, pharmaceutical benefits manager, medical service organizations); *id.* §§ 56.06(a)–(e) (describing specific types of businesses). Consistent with these defined terms, the legislature amended section 56.10(d) to make clear that a "corporation and its subsidiaries and affiliates" that provide "health care" are prohibited from using "medical information for a purpose not necessary to provide health care services to the patient." *Id.* Read in the context of section 56.10(d) and the CMIA as a whole, it is clear that the legislature did not intend to make *every* corporation—regardless of the business it conducts—subject to the CMIA. *See Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 320 (2014) (a "fundamental canon of statutory construction [is] that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme").

Section 56.10(d) (and the rest of the CMIA) does not apply to BetterHelp for the additional reason that Plaintiffs cannot plausibly allege that BetterHelp improperly used Plaintiffs' "medical information." *See* Mot. at 6–8. Medical information is defined as certain health information "in possession of or derived from a provider of health care, health care service plan, pharmaceutical

---

[1] Unless otherwise specified, all definitions in this Reply are as defined in BetterHelp's opening Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion") at ECF 117.

company, or contractor . . . ." Cal. Civ. Code § 56.06(j).  Because BetterHelp is not "a provider of health care, health care service plan, pharmaceutical company, or contractor," *see* Order at 5, and did not "derive" Plaintiffs' information from one of these types of entities—but rather allegedly received Plaintiffs' information directly from Plaintiffs, FAC ¶ 56 ("Plaintiffs . . . provided their Private Information to BetterHelp")—the information that BetterHelp allegedly disclosed is not "medical information" under the CMIA.  *Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1078 (S.D. Cal. 2017) (CMIA claim fails where defendant did not receive "medical information" "derived from a provider of health care").

*J.M. v. Illuminate Education, Inc.*, 323 Cal. Rptr. 3d 605 (Cal. Ct. App. 2024), does not support Plaintiffs' argument.  *See* Opp. at 16.  In *Illuminate*, the court held that the defendant—a company that maintained students' medical information to assist the school district in monitoring education progress—was a "business organized for the purpose of maintaining medical information." *Illuminate Educ.*, 323 Cal. Rptr. at 609.  Illuminate was thus subject to the CMIA as a "provider of health care" under section 56.06(a) and the information in its possession was necessarily "medical information" under section 56.06(j).  *Id.*  The court did not address section 56.10(d), let alone adopt the expansive interpretation of "corporations" urged by Plaintiffs.

The legislative history confirms that "mental health digital service providers" such as BetterHelp were not covered by the CMIA prior to the 2023 Amendment (Assembly Bill 2089 which took effect on January 1, 2023).  "The very fact that the prior act is amended demonstrates the intent to change the pre-existing law, and the presumption must be that it was intended to change the statute in all the particulars touching which we find a material change in the language of the act.'"  *People v. Weitzel*, 255 P. 792, 793 (Cal. 1927); *see also Pac. Intermountain Exp. v. Nat'l Union Fire Ins. Co.*, 198 Cal. Rptr. 897, 902 (Cal. Ct. App. 1984) (where no evidence of "intent to clarify" appears in legislative history, amendment presumed to be a change in law); *Loew's v. Byram*, 82 P.2d 1, 3 (Cal. 1938) ("Where changes have been introduced by amendment . . . usually an intent to change the law is inferred."); *California Mfrs. Ass'n. v. Pub. Util. Comm.*, 598 P.2d 836, 844 (Cal. 1979) ("[B]oth the legislative history of the statute and the wider historical circumstances of its enactment are legitimate and valuable aids in divining the statutory purpose.")

The Analysis of the California Assembly Committee on Health, in summarizing the proposed 2023 Amendment, stated that under [e]xisting privacy laws . . . "[m]edical information appears to come under HIPAA and CMIA when the information is in *possession or derived from a health care provider*." BetterHelp's Request for Judicial Notice ("RJN"), Exh. 1 at 5. Likewise, the Floor Analysis of the California State Senate Rules Committee acknowledged that "mental health digital services" (such as BetterHelp) did not fit within the existing ambit of CMIA: "CMIA protects 'medical information,' and restricts its disclosure by 'providers of health care' and 'health care service plans,' as defined and specified . . . This bill deems the information [transmitted by mental health digital services] as medical information and the businesses offering these digital services as providers of health care, **bringing them within** the protective ambit of CMIA." RJN, Exh. 2 at 4. Such a change was one of the features of 2023 Amendment: "[T]his bill also deems a business that offers such digital services . . . a provider of health care and therefore subject to CMIA." *Id.* at 5.

The Analysis of the California Assembly Committee on Privacy and Consumer Protection similarly recognized that, prior to the 2023 Amendment, "the data collected and generated as consumers use mental health apps [were] . . . generally classified as consumer information under the law, rather than medical information . . . ." RJN, Exh. 3 at 3–4. Assembly Member Rebecca Bauer Kahan, who introduced the assembly bill, declared that there was a "glaring loophole of patient privacy" in which mental health digital services at the time "legally [did not] have to operate under health care law." RJN, Exh. 4; *see also*, RJN, Exh. 5 (text of AB 2089).

The legislative history reflects that interest groups advocating for the 2023 Amendment, like the legislature itself, recognized that the Amendment was designed to cover entities that had not, until then, been within the ambit of CMIA, including *BetterHelp specifically*. In the Senate Rules Committee analysis, ACLU California Action wrote that: "Current privacy laws do not adequately protect the sensitive information collected by mental healthcare apps" because neither HIPAA nor the CMIA "contemplate personal health information generated by technology outside the traditional care setting." RJN, Exh. 2 at 6. "Combined, these two laws only protect sensitive health information that is generated by healthcare providers, insurers and health plans,

pharmaceutical companies, healthcare clearinghouses and businesses organized for the purpose of maintaining medical information. *The information created by new health technologies, such as mental health apps, do not fall cleanly into this rubric. . . .*" *Id.* (emphasis added); *see also id.* at 7 (specifically referring to "BetterHelp").

Because there is no support for Plaintiffs' claim that BetterHelp was subject to the CMIA at the relevant time, and the language and history of the CMIA foreclose any further efforts to plead to the contrary, Plaintiffs' claim under the CMIA should be dismissed with prejudice.

### B. Plaintiffs Fail to State a Claim Under the SCA (Count V)

Plaintiffs' cursory analysis of their SCA claim fails to pass muster, ignoring that a claim under the ECPA "requires understanding and applying its many technical terms as defined by the Act, as well as engaging in painstaking, methodical analysis." *See Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 461 (5th Cir. 1994). Plaintiffs' claim under section 2702 of the SCA covers "entit[ies] providing an electronic communication service ['ECS'] **to the public**." 18 U.S.C. § 2702(a)(1) (emphasis added). The cases on which Plaintiffs rely all involve *other* provisions of the ECPA that *do not* require that the ECS be provided *to the public*. *See* Opp. at 19–20 (citing cases). But the ECPA's many provisions define ECS differently,[2] and courts' application of the particular statutes vary accordingly. *See, e.g.*, *Pica v. Delta Air Lines, Inc.*, No. CV 18-2876-MWF (Ex), 2019 WL 1598761, at *6 (C.D. Cal. Feb. 14, 2019), *aff'd*, 812 F. App'x 591, 592–93 (9th Cir. 2020) (distinguishing the definitions of ECS under various ECPA provisions) (citing *United States v. Mullins*, 992 F.2d 1472 (9th Cir. 1993)).

Courts consistently hold that ECPA provisions like section 2702 of the SCA, which cover ECSs provided "to the public," apply *only* to entities that are "in the business of providing electronic communications services," such as email and internet service providers. *See Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1271 (N.D. Cal. 2001) (holding that Amazon does not provide electronic communication services to the public); *In re JetBlue Airways Corp.*

---

[2] *Compare* 18 U.S.C. § 2701(a)(1) (criminalizing unauthorized access to "a facility through which an [ECS] is provided") *with* 18 U.S.C. § 2702(a)(1) (prohibiting an entity "providing an [ECS] to the public" from divulg[ing] the contents of any communication").

*Priv. Litig.*, 379 F. Supp. 2d 299, 307 (E.D.N.Y. 2005) (same); *see also Walker v. Coffey*, 956 F.3d 163, 170 (3d Cir. 2020) (holding that SCA restrictions only apply to an ECS providing services to "the community at large"). Plaintiffs have not alleged that BetterHelp is "in the business of providing electronic communications services." Nor could they.

Moreover, even if the Court had determined that BetterHelp is an ECS under the SCA (which it did not), Plaintiffs' argument would still fail, because they do not allege that BetterHelp divulged "[their] communications . . . while in electronic storage." 18 U.S.C. § 2701(a)(1). As BetterHelp explained in its Motion (p. 13), "The definition of 'electronic storage' is much narrower than its name suggests." *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 839 (8th Cir. 2015). The ECPA defines "electronic storage" as either the "[1] ***temporary, intermediate storage*** of a wire or electronic communication incidental to the electronic transmission thereof" or "[2] any storage of such communication by an electronic communication service ***for purposes of backup protection*** of such communication." 18 U.S.C. § 2510(17) (emphasis added). Neither the allegations related to BetterHelp's use of pixels (*see* Mot. at 13), nor the allegations related to email uploads (on which the Opposition focuses), nor any other allegations in the FAC suggest that BetterHelp divulged information that was stored in "temporary, intermediate storage" or stored "for the purposes of backup protection." *See generally*, *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 983–84 (C.D. Cal. 2010) (explaining the narrow interpretation of these two types of "electronic storage"). "The SCA is not a catch-all statute designed to protect the privacy of stored Internet communications." *Anzaldua*, 793 F.3d at 839. The Court should dismiss this claim with prejudice.

      **C.**      **Plaintiffs Lack Standing Under the UCL and CLRA (Counts XI, VII)**

As to standing, Plaintiffs have failed to present "any other basis they may have to support the requisite economic injury," Order at 4, other than what was previously alleged—and rejected—by the Court for standing purposes. Instead, Plaintiffs continue to assert that loss of control of information creates standing under the UCL, Opp. at 7–8, despite the Court's holding that "the mere appropriation of personal information does not establish compensable damages." Order at 3–4 (quoting *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943. (N.D. Cal. 2023)). Plaintiffs'

retread of their benefit-of-a-bargain theory is incorrect and unconvincing.[3] Plaintiffs contend they have standing under false advertising cases based on a conclusory allegation (*see* FAC ¶ 315) but are not bringing any claim for false advertising.  And even if Plaintiffs' false advertising theory could be credited, an underlying defect in the product itself would still be required but is not present here.  *See Ables v. Brooks Bros. Grp. Inc.*, No. 17-cv-4309-DMG (Ex), 2018 WL 8806667, at *7 (C.D. Cal. June 7, 2018) ("This theory of standing is cognizable only where a consumer purchases defective or falsely advertised products . . . ."); *Lewert v. P.F. Chang's China Bistro*, 819 F.3d 963, 968 (7th Cir. 2016) ("Plaintiffs claim that the cost of their meals is an injury because they would not have dined at P.F. Chang's had they known of its poor data security . . . . [S]uch arguments have been adopted by courts only where the product itself is defective or dangerous and consumers claim they would not have bought it (or paid a premium for it) had they known of the defect.").

Plaintiffs' reliance on data breach cases is also unavailing.  Opp. at 8–9 (citing *Castillo v. Seagate Tech., LLC*, No. 16-cv-01958-RS, 2016 WL 9280242, at *1 (N.D. Cal. Sept. 14, 2016); *In re LinkedIn User Priv. Litig.*, No. 5:12-CV-03088-EJD, 2014 WL 1323713, at *1 (N.D. Cal. Mar. 28, 2014); *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1206 (N.D. Cal. 2014); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 985–86 (N.D. Cal. 2016)).  *Anthem* specifically tied the plaintiffs' UCL standing to the defendants' alleged "failure to implement the security measures required by the contracts." *Id.* at 985.  In that case, plaintiffs did not receive the benefit of their bargain because they had relied on the defendants' unfulfilled "promise[] to undertake reasonable data security measures." *Id.*  That scenario does not apply here, given there are no contractually mandated security measures and the BetterHelp Privacy Policies disclose of third parties' access to user data.  Unlike the *Anthem* plaintiffs, Plaintiffs here fail to make the required showing (applicable in data breach cases) that BetterHelp represented "that the cost of security [was] subsumed within the cost of the goods." *Ables*, 2018 WL 8806667, at *7; *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015) (no standing where plaintiffs failed

---

[3] BetterHelp's inadvertent reference to Plaintiffs' "emotional distress" in the background section of the motion to dismiss is immaterial and not related to any specific arguments BetterHelp asserted in its Motion.  *See* Opp. at 6.  The other purported "mischaracterizations," *see id.* at 6–7, do not require a response, as they accurately address the allegations and issues in this dispute.

to "allege facts showing how the price they paid for such goods incorporated some particular sum that was understood by both parties to be allocated towards the protection of customer data"). Because Plaintiffs again fail to adequately plead that they have statutory standing under the UCL and CLRA, the Court should dismiss these claims with prejudice.

### D.   Plaintiffs' Fail to State a Claim for Breach of Implied Contract (Count II)

As explained in BetterHelp's Motion, no named Plaintiffs allege that they read or relied on any specific representation by BetterHelp. Mot. at 11 (citing FAC ¶¶ 25–31). Instead, each Plaintiff makes the same vague, boilerplate allegation: they "read and relied on BetterHelp's representations concerning its commitment to keep the information [he or she] provided confidential." FAC ¶¶ 25–31. But Plaintiffs do not specify the information they provided or what "keeping this [unidentified] information . . . confidential" would entail. These threadbare allegations are "devoid of any factual support" and are thus insufficient to state a claim. *See Doe v. DaVita Inc.*, No. 23-cv-01424-AJB-BLM, 2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) (dismissing plaintiffs' claims against defendant healthcare corporation related to its use of the Meta Pixel and other tracking tools because the "allegations [were] devoid of any facts supporting their contention[s]"); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (dismissing plaintiffs' claims against defendant hospital network because "[p]laintiffs fail[ed] to factually explain their personal participation in" defendant's alleged "shar[ing] [of] information" with Meta").

While the FAC alleges a variety of representations that BetterHelp made on its website and apps, *see* FAC at ¶¶ 51–67, 171, simply alleging these generalized representations does not plausibly suggest mutual assent between BetterHelp and Plaintiffs to any set of terms that would form a contract. *See Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007) ("Contract formation . . . requires that the parties[] reach mutual assent or consent on definite or complete terms . . . . Mutual assent is accomplished when a specific offer is communicated to the offeree, and an acceptance is subsequently communicated to the offeror.").

Plaintiffs rely principally on *Castillo*, 2016 WL 9280242, at *8, to suggest that Plaintiffs need not "specifically plead[] [the] scope of data protection for an implied breach of contract claim." Opp. at 18. But this reliance on *Castillo* is misguided. Plaintiffs here do not plead *any*

*specific information* to which a "scope of data protection" could even apply.  In *Castillo*, by contrast, plaintiffs alleged that the defendant shared its employees' W-2 forms (which included "addresses, salary and benefit information, names, and Social Security numbers," among other things) with hackers.  *Castillo*, 2016 WL 9280242 at *2, 9.  Here, the named Plaintiffs only vaguely allege that "the [unidentified] information [they] provided" BetterHelp would remain confidential.  FAC ¶¶ 25–31.  Plaintiffs here more closely resemble the plaintiffs in *Anthem*, who supported their implied contract claim with "only one line in the . . . original complaint," a circumstance the *Castillo* opinion explicitly distinguished.  2016 WL 9280242 at *9 (citing *In re Anthem*, 162 F. Supp. 3d at 983).  Accordingly, Plaintiffs fail to state the "definite or complete terms" required to bring an implied contract claim.  *See Netbula*, 516 F. Supp. 2d at 1155.  The Court should dismiss this claim with prejudice.

### E. Plaintiffs Lack Standing for Injunctive and Declaratory Relief (Counts IV, VI, VII, IX, XI)

The Court granted Plaintiffs leave to amend their Complaint to show:  (1) "some right or duty on [BetterHelp's] part to control the conduct of third parties," and (2) "a sufficient factual basis to show the requisite ongoing or future harm exists notwithstanding the existence of the injunctive relief obtained by the FTC."  Order at 3.  Plaintiffs have shown neither.

As to the first requirement, Plaintiffs do not even attempt to show that BetterHelp has "some right or duty" to control the third parties' conduct.  But without that right or duty, the mere fact that third parties may continue to possess Plaintiffs' information after receiving deletion requests does not entitle Plaintiffs to an injunction against *BetterHelp*.  *In re Zappos.com. Inc.*, 888 F.3d 1020, 1023 (9th Cir. 2018), does not support Plaintiffs' position.  *See* Opp. at 10.  There, plaintiffs alleged that the theft of their account numbers, passwords, and credit and debit card information placed them at "imminent risk of identity theft" and requested "at least some" injunctive relief be addressed towards the defendant, *not* towards third parties, to "limit the extent of the threatened injury."  *In re Zappos.com*, 888 F.3d at 1023.  Here, Plaintiffs seek relief entirely premised on the conduct of third parties but fail to allege that BetterHelp has any right or duty to control those third parties.

As to the second requirement, Plaintiffs have tacked on a new legal argument based on the

bare allegation that Plaintiffs "may wish to continue" to use BetterHelp, FAC ¶ 35, but (they now claim) are unable to rely on BetterHelp's advertising or labeling. Opp. at 10–11. But the injunctive relief set forth in the FTC consent order includes prohibitions on information disclosure and privacy misrepresentations, and therefore addresses whatever speculative harm purportedly exists based on Plaintiffs' potential return to BetterHelp's services. FAC, Exh. B ("Consent Order") at §§ I, III.A–B, III.F.

This case is unlike any Plaintiffs cite, *see* Opp. at 10–11, because the Consent Order has already entered "an injunction preventing the mislabeling," so Plaintiffs are free to rely on BetterHelp's statements "when shopping in the future." *Guerra v. KIND, LLC*, No. 22-cv-06654-RS, 2023 WL 3436093, at *8 (N.D. Cal. May 11, 2023). Plaintiffs next argue that an injunction is necessary because "third parties and plaintiffs and government agencies still have not received notice" about allegedly shared information. Opp. at 11. This argument, however, is without merit: the Consent Order already requires BetterHelp to notify third parties and users (Consent Order §§ IV.B, V), and Plaintiffs fail to explain how their demand that BetterHelp notify third parties would do anything but duplicate the notice BetterHelp was already required to send.[4]

Plaintiffs continue to close their eyes to the obvious: the injunctive relief that they seek has already been ordered in the Consent Order entered into by the FTC and BetterHelp. Thus, the Court should find that Plaintiffs lack standing to pursue equitable relief and dismiss their claims seeking injunctive relief without leave to amend.

## II. CONCLUSION

For the foregoing reasons, the Court should grant BetterHelp's renewed Motion to Dismiss in its entirety and dismiss with prejudice Plaintiffs' repleaded claims and their newly pleaded SCA claim.

---

[4] BetterHelp has produced to Plaintiffs information confirming that BetterHelp has already sent such notices, but Plaintiffs simply wave this inconvenient fact away rather than explain how it does not doom their claim. Opp. at 3, n. 2. The FAC even alleges that Plaintiff L.M. learned that BetterHelp had shared her information "after she received an email from BetterHelp disclosing" that fact, as ordered by the Consent Order. FAC ¶ 28. Regardless, at this stage, what is critical is not that BetterHelp has complied with its obligations under the injunctive relief secured by the FTC (and it has), but that Plaintiffs seek to impose the burden of a duplicative injunction on the parties and Court without cause.

| | |
|---|---|
| Dated: September 26, 2024 | Respectfully submitted,<br><br>*/s/ Livia M. Kiser*<br>LIVIA M. KISER (SBN 285411)<br>lkiser@kslaw.com<br>JEFFREY HAMMER (SBN 264232)<br>jhammer@kslaw.com<br>CRAIG H. BESSENGER (SBN 245787)<br>cbessenger@kslaw.com<br>JAMES A. UNGER (SBN 325115)<br>junger@kslaw.com<br>**KING & SPALDING LLP**<br>633 West Fifth Street<br>Suite 1600<br>Los Angeles, CA 90071<br>Telephone: +1 (213) 443-4355<br>Facsimile: +1 (213) 443-4310<br><br>Attorneys for Defendant<br>BETTERHELP, INC. |