Gary. M. Klinger (pro hac vice)
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: 866.252.0878
Email: gklinger@milberg.com

*Plaintiffs' Co-Lead Interim Class Counsel*

Christina Tusan (SBN 192203)
TUSAN LAW, PC
ctusan@ctusanlaw.com
680 E. Colorado Blvd. #180
Pasadena, CA 91101
Phone: 626-418-8203
Fax: 626-619-8253

*Plaintiffs' Co-Lead Interim Class Counsel*

Maureen M. Brady (pro hac vice)
MCSHANE AND BRADY LLC
4006 Central Street
Kansas City, MO 64111
816-888-8010
Email: mbrady@mcshanebradylaw.com

*Plaintiffs' Co-Lead Interim Class Counsel*

Alan M. Mansfield (SBN: 125998)
amansfield@whatleykallas.com
WHATLEY KALLAS LLP
1 Sansome Street, 35th Floor
PMB #131
San Francisco, CA 94104 /
16870 West Bernardo Drive, Ste 400, San Diego, CA 92127
Phone: (619) 308-5034
Fax: (888) 341-5048

*Plaintiffs' Liaison Counsel*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE BETTERHELP, INC. DATA DISCLOSURE CASES**<br><br>This Document Relates To: All Actions | Master File No. 3:23-cv-01033-RS<br><br>Hon. Richard Seeborg<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO COMPEL DEFENDANT TO PROVIDE SOURCE CODE IN RESPONSE TO PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS**<br><br>Hearing Date:   April 24, 2025<br>Time:           1:00 p.m.<br>Courtroom:      4, 3rd Floor<br>Judge:          Hon. Donna M. Ryu |

**I.    NOTICE OF MOTION**

PLEASE TAKE NOTICE that per the Court's order dated April 4, 2025, on April 24, 2025 at 1:00 p.m., Plaintiffs will move this Court for an Order compelling Defendant BetterHelp, Inc. ("BH"), pursuant to Fed. R. Civ. P. 37(a), to provide certain source code for its websites and apps that BH has so far refused to produce. For the reasons set forth in the accompanying Memorandum of Points and Authorities and supporting Declarations, the requested information satisfies the requirements of Fed. R. Civ. P. 26(b)(2) and L.R. 37-2 for being ordered produced. As set forth below, the discovery in question is within the scope permitted by Fed. R. Civ. P. 26(b)(1); is not unreasonably cumulative or duplicative; cannot be obtained from some other source that is more convenient, less burdensome, or less expensive; and should be easy to produce. Given that their motion for class certification is currently due on May 8, 2025, Plaintiffs request that BH be ordered to provide the requested source code within 7 days from the Court's Order.

**II.   STATEMENT OF ISSUE TO BE DECIDED**

Should the Court compel BH to provide source code for its websites and apps for the period between January 1, 2017 (the date BH admitted to the FTC it used certain tracking tools on its websites and apps) and March 7, 2023 (the date the first complaint was filed in these actions)?

**III.  MEMORANDUM OF POINTS AND AUTHORITIES**

    **A.    STATEMENT OF RELEVANT FACTS**

Plaintiffs allege BH surreptitiously tracked and recorded Plaintiffs' and millions of individuals' sensitive personal information and shared it with unauthorized third parties, including Google and Meta. To do so, BH programmers embedded code on its websites and apps that automatically sent private information to those third parties when a user either entered information, visited the site, or used BH's services. First Amended Consolidated Complaint ("FACC") at ¶¶86-103. There is no dispute this took place; BH has admitted it to the FTC and the documents produced in discovery clearly show BH used these tracking tools. The crux of this case thus focuses on: (1) what type of information about Plaintiffs and Class Members was gathered using these tracking tools, (2) with whom was that information shared, and (3) for how long.

Plaintiffs requested this information in their First Set of RFPs on BH served on or about

September 12, 2023. On November 27, 2023, BH served its initial responses to Plaintiffs' First Set of Request for Production, interposing significant objections. As part of the meet and confer process, Plaintiffs requested that BH produce the Google Tag Manager ("GTM") change log data, the Meta Events Manager ("MEM") developer tool information, and the source code for the BH websites and apps, which collectively could be used to identify the specific information these tracking tools were configured to transmit to third parties. As set forth in the accompanying Declaration of Christina Tusan ("Tusan Decl.") at ¶5, Ex. 2, Plaintiffs' counsel have exchanged numerous emails and telephonic meetings with BH counsel regarding the deficiencies of BH's responses. As required by L. R. 37-2, over the intervening 11 months the parties exhausted their meet and confer efforts and are at an impasse, as reflected in the March 11, 2025 joint discovery letter. (Dkt. 144.)

BH has admitted that source code will help demonstrate where and when tracking tools were installed on BH's websites and apps, as well as what information they were configured to transmit. BH admitted in response to Interrogatory Nos. 4 and 5 that "Third-party tools were integrated into BH's websites using platforms such as Google Tag Manager *and direct coding changes into the website source code*." Tusan Decl. ¶7, Ex. 4 at 5 (emphasis added); FTC Complaint at para. 57 ("For example, though an affirmative response to the question "Have you been in counseling or therapy before?" was coded as "AddToWishlist," the analyst revealed to Facebook that this event meant that the "user completes questionnaire marking they have been in therapy before," thereby disclosing millions of Visitors' and Users' prior therapy to Facebook."[1]). This source code is clearly relevant and should be produced.

**B.     THE SOURCE CODE AT ISSUE IS RESPONSIVE TO RFPS 7 AND 8:**

REQUEST FOR PRODUCTION NO. 7:

All DOCUMENTS RELATING TO YOUR use of THIRD PARTY ANALYTICS TOOLS on YOUR websites and mobile applications, including but not limited to DOCUMENTS that would identify the following information: when YOU first installed each such THIRD PARTY ANALYTICS TOOLS; where each THIRD PARTY ANALYTICS TOOL was deployed on YOUR websites or applications; what data the THIRD PARTY ANALYTICS TOOL was installed to collect and the types of data it helped to collect; the reason(s) the THIRD PARTY ANALYTICS TOOL was installed; any changes in how the tool was configured or deployed; and the types of data it helped to collect.

---

[1] https://www.ftc.gov/system/files/ftc_gov/pdf/2023169betterhelpcomplaintfinal.pdf, para. 57.

REQUEST FOR PRODUCTION NO. 8:

DOCUMENTS sufficient to show all the ways in which YOU shared, disclosed, collected, and/or allowed third parties access to PERSONAL OR MEDICAL INFORMATION concerning PUTATIVE CLASS MEMBERS, including but not limited to THIRD PARTY ANALYTICS TOOLS and the creation, use, or sharing of custom dimension data based on the data that was collected, and/or the uploading of data that was collected into a data layer.

BH has refused to produce this source code on the grounds that (1) it was too burdensome to produce; (2) the information is highly proprietary and has not been requested, and (3) Plaintiffs "already have the exact information they claim to seek from the historic source code." Dkt. 145 at 3. Those claims are demonstrably wrong. First, BH has offered no evidence to support its claim of burdensomeness. Professor Shafiq, an expert in this field, confirms in his declaration that downloading source code information is not difficult or burdensome and can be done in minutes. Declaration of Professor Zubair Shafiq ("Shafiq Decl.") at ¶¶17-19.

Second, the Court should not accept BH's claims that the source code is "proprietary" and its production would harm the company and thus should not be produced. BH has admitted that significant portions of the source code are already available to the public via the Wayback Machine. BH's claims that its source code is publicly available through the Wayback Machine undermines its claim that the source code is a trade secret that must not be produced. In addition, the Protective Order in this case (ECF 82) is specifically designed to ensure no trade secrets associated with the source code are revealed to the public that are not already public. And BH's claim Plaintiffs have not asked for the source code information before is inaccurate. The above requests call for it, and Plaintiffs did ask for it on many occasions, including in a February 11, 2025 email where it proposed a final compromise to certain outstanding issues that was rejected by BH. See Tusan Decl. at ¶¶5-6, Exs. 2-3 ("We also understand that some pixels were placed directly on the BetterHelp website that are not included in the Google Tag Manager. As a result, providing us with the source code information will verify where and how those pixels were used").

Third, BH cannot seriously dispute that the source code is relevant or that the information the source code provides is otherwise available to the Plaintiffs. BH represented as much to this Court in the joint discovery letter dated November 20, 2024 (Dkt. 141) when it stated that knowing where these tracking tools were located is relevant: "Only the technologies in issue in the lawsuit

3

1  are relevant (i.e., pixels and any other technologies that analyze or track consumer behavior and
2  which Plaintiffs allege "take" information from BetterHelp's website)." BH also admitted in
3  response to Interrogatory Nos. 4 and 5 that Third-party tools were integrated into BH's websites
4  using direct coding changes into the website source code. Tusan Decl. ¶7, Ex 4 at 10-11. While
5  GTM and MEM data (the latter of which BH claims it no longer has and cannot produce, which is
6  incorrect as MEM historical data is not something that disappears within 28 days, see Shafiq Decl.
7  at 12), provides some of this information, the source code is a primary source of this information.
8  Prof. Shafiq explained that to precisely determine what information was shared, due to the
9  installation of tracking tags on a website, it is important to have both the configuration of tracking
10 tags and configuration of the website, which is determined by reviewing the source code. (Shafiq
11 Decl. ¶¶8, 13, 16.) And BH also confirmed to the FTC as referenced in the FTC Complaint and in
12 responses to the FTC that these tracking tools were placed by BH programmers directly in the
13 source code on its websites and apps (as opposed to being placed through GTM).

14      BH's counsel has also argued they will defend this case by arguing any tracking tools
15 collecting particular types of information were only located on these websites and apps for short
16 periods of time and on limited pages. Tusan Decl. at ¶8. The source code is the primary source of
17 this information and will either confirm or refute BH's position. The source code contains a great
18 deal of relevant information that is relevant to help establish the key issue in this case: what
19 information was shared by these tracking tools. It relates directly to the placement and
20 modifications of the tracking tools in that source code during the relevant time period, which as
21 alleged in the FACC is January 1, 2017 to March 7, 2023. See FACC at ¶¶71-77. Contrary to BH's
22 claims, Plaintiffs are not seeking current source code, only source code during the above dates.

23      Finally, the source code information would provide important information relevant to the
24 information shared by BH that is not contained in either an analysis of other data sources produced
25 so far or from the Wayback Machine. Shafiq Decl. at ¶¶8, 13-16. As to BH's claims that Plaintiffs
26 already have the exact same information they are requesting, the information produced by BH,
27 including the .JSON native files produced so far, are only part of what is relevant to provide a
28 fulsome analysis of what was tracked and when, and with whom it was shared. Plaintiffs do not

4

have nor can they readily obtain this historical source code information from anyone besides BH. *Id.* at ¶¶13-16. While BH has claimed Professor Shafiq's analysis of what information was shared came exclusively from an analysis of Wayback Machine information, the information he referred BH to did not provide all the relevant data and was representative of the types of information BH was able to obtain, rather than an analysis of the comprehensive direct historic source code. *Id.*

C.     **Courts Have Held Source Code Should be Produced Where Relevant**

Courts have consistently required the production of source code information, particularly in patent cases where, as here, an understanding of the source code is relevant to proving the key issues in the case. *See MedImpact Healthcare Sys., Inc. v. IQVIA Inc.,* No. 19-CV-1865-GPC (DEB), 2021 WL 5605209, at *2 (S.D. Cal. June 29, 2021) (compelling the production of source code information); *Calendar Research LLC v. StubHub, Inc.*, No. 17-cv-4062-SVW-SSx, 2017 WL 10378338, at *10 (C.D. Cal. Nov. 14, 2017) (compelling source code where "[h]aving access to the source code as a whole will enable Plaintiff's expert to test [defendant's] assertions and to identify and examine any portions that may contain evidence to support Plaintiff's claim"); *see also Stoneeagle Services, Inc. v. Gillman*, No. 11-cv-2408-P, 2013 WL 12124325, at *4 (N.D. Tex. Feb. 25, 2013) (compelling source code and rejecting plaintiff's contention that source code "has no relevance to the instant case because it was never disclosed to [d]efendants and [p]laintiff does not contend that [d]efendants copied it" based on testimony that the source code appeared to nonetheless be "integral to the medical payment system at issue"); *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 14-cv-1142-HZ, 2017 WL 714354, at *2 (D. Or. Feb. 21, 2017) (same result).

Finally, this data is not burdensome to gather and produce. Companies typically preserve their website and app source code and its iterations for later reference by site programmers in a source code repository such as located at GitHub or GitLab. It should not be difficult for BH to identify, locate, download and produce this source code within minutes. Shafiq Decl. at ¶¶17-19.

For the above reasons, the Court should compel BH to produce this information.

Dated: April 10, 2025

/s/ Gary M. Klinger
Gary. M. Klinger (pro hac vice)
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100

5

Ps NO MOTION, MOTION & MPA ISO
MOTION TO COMPEL

Master File No. 3:23-cv-01033-RS

|   |   |   |
|---|---|---|
| 1 |  | Chicago, Illinois 60606 |
| 2 |  | Telephone: 866.252.0878 |
|   |  | Email: gklinger@milberg.com |
| 3 |  | *Plaintiffs' Co-Lead Interim Class Counsel* |
| 4 |  |  |
| 5 | Dated: April 10, 2025 | */s/ Christina Tusan* |
|   |  | Christina Tusan (SBN 192203) |
| 6 |  | TUSAN LAW, PC |
|   |  | ctusan@ctusanlaw.com |
| 7 |  | 680 E. Colorado Blvd. #180 |
|   |  | Pasadena, CA 91101 |
| 8 |  | Phone: 626-418-8203 |
|   |  | Fax: 626-619-8253 |
| 9 |  | *Plaintiffs' Co-Lead Interim Class Counsel* |
| 10 | Dated: April 10, 2025 | *Maureen M. Brady* |
| 11 |  | Maureen M. Brady |
|   |  | McShane AND Brady LLC |
| 12 |  | 4006 Central Street |
|   |  | Kansas City, MO 64111 |
| 13 |  | 816-888-8010 |
|   |  | Email: mbrady@mcshanebradylaw.com |
| 14 |  |  |
|   |  | *Plaintiffs' Co-Lead Interim Class Counsel* |
| 15 |  |  |
| 16 | Dated: April 10, 2025 | */s/ Alan M. Mansfield* |
|   |  | Alan M. Mansfield (SBN: 125998) |
| 17 |  | amansfield@whatleykallas.com |
|   |  | WHATLEY KALLAS LLP |
| 18 |  | 1 Sansome Street, 35th Floor |
|   |  | PMB #131 |
| 19 |  | San Francisco, CA 94104 / |
|   |  | 16870 West Bernardo Drive, Ste 400, San |
| 20 |  | Diego, CA 92127 |
|   |  | Phone: (619) 308-5034 |
| 21 |  | Fax: (888) 341-5048 |
| 22 |  | *Plaintiffs' Liaison Counsel* |