Gary. M. Klinger (pro hac vice)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: 866.252.0878
Email: gklinger@milberg.com

*Plaintiffs' Co-Lead Interim Class Counsel*

Christina Tusan (SBN 192203)
ctusan@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, Suite 600
Tacoma, WA 98402
[Tel:] (310) 601-6766
[Fax] (310) 295-2385

*Plaintiffs' Co-Lead Interim Class Counsel*

Maureen M. Brady (pro hac vice)
MCSHANE & BRADY
4006 Central Street
Kansas City, MO 64111
816-888-8010
Email:
mbrady@mcshanebradylaw.com

*Plaintiffs' Co-Lead Interim Class Counsel*

Alan M. Mansfield (SBN: 125998)
amansfield@whatleykallas.com
WHATLEY KALLAS LLP
1 Sansome Street, 35th Floor
PMB #131
San Francisco, CA 94104 /
16870 West Bernardo Drive, Ste
400, San Diego, CA 92127
Phone: (619) 308-5034
Fax: (888) 341-5048

*Plaintiffs' Liaison Counsel*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE BETTERHELP, INC. DATA DISCLOSURE CASES**<br><br>This Document Relates To: All Actions | **Master File No. 3:23-cv-01033-RS**<br><br>Hon. Richard Seeborg<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: August 28, 2025<br>Time: 1:30 p.m.<br>Courtroom: 3<br>Judge: Hon. Richard Seeborg |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

LIST OF CITATIONS AND ABBREVIATIONS ....................................................... viii

NOTICE OF MOTION ..................................................................................................... 1

ISSUES PRESENTED ....................................................................................................... 2

RELIEF REQUESTED ...................................................................................................... 3

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 5

I.       INTRODUCTION ................................................................................................... 5

II.      FACTUAL BACKGROUND ................................................................................. 7

         A.      Throughout the Class Period, BetterHelp deployed Tracking Tools on its
                 websites and apps, including on pages containing the Intake Questionnaire, and
                 recorded and shared Class Members' identities and PHI with third parties ........... 7

         B.      BetterHelp never sought – let alone received – authorization to disclose HIPAA-
                 protected information ...................................................................................... 12

         C.      Plaintiffs were harmed by BetterHelp's use of the Tracking Tools and disclosure
                 of confidential and sensitive information ......................................................... 14

III.     THIS ACTION SATISFIES ALL OF THE ELEMENTS FOR CLASS
         CERTIFICATION

         A.      Numerosity is Met .......................................................................................... 15

         B.      Commonality is Met ....................................................................................... 16

         C.      Plaintiffs' claims are typical of the Class and Plaintiffs and their counsel are
                 adequate representatives ................................................................................. 16

         D.      Common issues predominate over individual issues ........................................ 17

                 i.       California law can be applied to the entire Class

                 ii.      The predominating issue whether BetterHelp intercepted and disclosed
                          information that Class Members provided, including that they were
                          seeking mental health services, turns on common proof .......................... 18

                 iii.     Each of the Plaintiffs' claims present common and predominant issues an
                          should be certified to proceed on a class-wide basis ............................... 21

                          a.       Claim under ECPA ...................................................................... 21

                          b.       Violation of CIPA ....................................................................... 23

                          c.       Violation of Right of Privacy ...................................................... 25

                          d.       Breach of Implied Contract ......................................................... 27

|  |  | e. | Breach of Confidence .................................................................28 |
|  |  | f. | Violation of UCL.........................................................................29 |
|  |  | g. | Violation of CLRA ......................................................................30 |
|  |  | h. | Unjust Enrichment .......................................................................31 |
|  |  | i. | Claim under the CCPA (for California Subclass Members).........32 |
|  |  | j. | Claim under the SCA (for Nationwide User Subclass) ................33 |

IV.    CLASS-WIDE MONETARY RELIF CAN BE MEASURED THROUGH COMMON
       PROOF...........................................................................................................34

V.     SUPERIORITY IS ALSO SATISFIED HERE ...................................................36

VI.    CONCLUSION.................................................................................................37

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Ambrosio v. Cogent Commc'ns*,
   2016 WL 777775 (N.D. Cal. Feb. 29, 2016) (Seeborg, J.) ............................................. 16

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).................................................................................................... 6, 36

*Amgen v. Connecticut Retirement Plans and Trust Funds*,
   133 S. Ct. 1184 (2013)................................................................................................... 31

*B.K. v. Desert Care Network*,
   2024 WL 1343305 (C.D. Cal. Feb. 1, 2024)................................................................. 23

*Bank of the West v. Superior Court*,
   2 Cal.4th 1254 (1992)................................................................................................ 29, 30

*Bateman v. Am. Multi-Cinema, Inc.*,
   623 F.3d 708 (9th Cir. 2010) ........................................................................................ 35

*Berkla v. Corel Corp.*,
   302 F.3d 909 (9th Cir. 2002) ........................................................................................ 28

*Blaustein v. Burton*,
   9 Cal. App. 3d 161 (1970) ............................................................................................ 28

*Brown v. Google LLC*,
   2023 WL 5029899 (N.D. Cal. Dec. 22, 2022) ......................................................... 23, 35

*Camenisch v. Umpqua Bank*,
   2024 WL 3186552 (N.D. Cal. June 25, 2024 (Seeborg, J.) ........................................... 18

*Castillo v. Seagate Tech., LLC*,
   2016 WL 9280242, at (N.D. Cal. Sept. 14, 2016) ........................................................ 27

*Corona v. Sony Picture Entertainment Inc.*,
   No. 14-cv-09600-RGK, 2015 WL 3916744 (N.D. Cal. June 15, 2015).......................... 27

*Doe v. Meta Platforms, Inc.*,
   690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........................................................................ 22

*Doe, et al. v. Virginia Mason Medical Center, et al.*,
   No. 19-2-26674-1 (Wash. Sup. Ct., King Cnty., Sept. 28, 2021) ............................... 7, 27

*Effinger v. Ancient Organics LLC*,
   657 F.Supp.3d 1290 (N.D. Cal. 2023) ...................................................................... 30, 31

*Ellis v. Costco Corp.*,
   285 F.R.D. 492 (N.D. Cal. 2012) ................................................................................. 35

*Forcellati v. Hylands, Inc.*,
   2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ................................................................ 18

*Galvan v. KDI Distrib. Inc.*,
    2011 WL 5116585 (C.D. Cal., Oct. 25, 2011) ...................................................... 32

*Gold v. Lumber Liquidators, Inc.*,
    323 F.R.D. 280 (N.D. Cal. 2017) (Seeborg, J.) ................................................... 36

*Hanlon v. Chrysler, Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................................. 17

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ............................................................................... 17

*Harris v. comScore, Inc.*,
    292 F.R.D. 579 (N.D. Ill. 2013) ........................................................................... 33

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (2009) ......................................................................................... 26

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) *cert. denied sub nom.*
    *Facebook, Inc. v. Davis*, 141 S. Ct. 1684 (Mar. 22, 2021) ....................... passim

*In re Google Inc. Cookie Placement*,
    806 F.3d 125 (3rd Cir. 2015) ............................................................................... 23

*In re Google Referrer Header Priv. Litig.*,
    465 F. Supp. 3d 999 (N.D. Cal. 2020) ................................................................. 19

*In re Google RTB Consumer Privacy Litigation*,
    606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) .......................................... 22, 23, 28, 29

*In re Meta Pixel Healthcare Litig.*,
    647 F. Supp. 3d 778 (N.D. Cal. 2022) ........................................................... 22, 23

*In re Zynga Priv. Litig.*,
    750 F. 3d 1098 (9th Cir. 2014) ............................................................................ 22

*Jancik v. WebMD LLC*,
    2025 WL 560705 (N.D. Ga., Feb. 20, 2025) ......................................... 6, 24, 35

*Javier v. Assurance IQ, LLC*,
    2022 WL 1744107 (9th Cir. May 31, 2022) ........................................................ 23

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ............................................................................. 34

*Katz-Lacabe v. Oracle Am., Inc.*,
    668 F. Supp. 3d 928 (N.D. Cal. 2023 (Seeborg, J.) ........................................... 22

*Keilholtz v. Lennox Hearth Prods., Inc.*,
    268 F.R.D. 330 (N.D. Cal. 2010) ......................................................................... 32

*Lectrodryer v. SeouBank*,
    77 Cal. App. 4th 723 (2000) ................................................................................ 32

iv

*Mass. Mut. Life Ins. Co. v. Super. Ct.*,
  97 Cal. App. 4th 1282 (2002) ...................................................................... 31

*McAdams v. Monier*,
  182 Cal. App. 4th 174 (2010) ...................................................................... 31

*McCowen v. Trimac Transp. Servs. (W.), Inc.*,
  311 F.R.D. 579 (N.D. Cal. 2015) (Seeborg, J.) ...................................... 36

*Montera v. Premier Nutrition Corp.*,
  111 F.4th 1018 (9th Cir. 2024) .................................................................. 35

*Noel v. Hall*,
  568 F.3d 743 (9th Cir. 2009) ...................................................................... 22

*Olean Wholesale Grocery Coop., v. Bumble Bee Foods*,
  31 F.4th 651 (9th Cir. 2022) (en banc) ............................................ 17, 36

*Oman v. Delta Air Lines, Inc.*,
  889 F.3d 1075 (9th Cir. 2018), *certified question accepted sub nom.*
  *Oman v. Delta Air Lines*, No. S248726, 2018 WL 10809386 (Cal. July 11, 2018),
  *and certified question answered*, 9 Cal. 5th 762 (2020) .......................... 25

*Opperman v. Path, Inc.*,
  2016 WL 3844326 (N.D. Cal. Jul. 15, 2016) ................................. 26, 35, 36

*Podolsky v. First Healthcare Corp*,
  50 Cal. App, 4th 632 (1996) ...................................................................... 29

*Pulaski & Middleman, LLC, v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015) ...................................................................... 36

*Quon v. Arch Wireless Operating Co., Inc.*,
  529 F.3d 892 (9th Cir. 2008), *cert. denied in relevant part*,
  558 U.S. 1090 (2009) .................................................................................. 33

*Reichert v. Gen. Ins. Co. of Am.*,
  68 Cal. 2d 822 (1968)) ................................................................................ 27

*Rodriguez v. Google Inc.*,
  2024 WL 38032 (N.D. Cal., Jan. 3, 2024),
  *as clarified at* 2024 WL 1486139 (Apr. 5, 2024) ............................... passim

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) .................................................................... 16

*Romero v. Securus Techs., Inc.*,
  331 F.R.D. 391 (S.D. Cal. Nov. 21, 2018) .............................................. 27

*Rose v. Abraham*,
  2012 WL 78204 (E.D. Cal. Jan. 9, 2012) .................................................. 31

*Schmitt v. SN Servicing Corp.*,
  2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) .............................................. 25

*Shulman v. Grp. W. Prods., Inc.,*
    18 Cal.4th 200 (1998) ............................................................................ 26

*Stasi v. Inmediata Health Grp. Corp.,*
    501 F.Supp.3d 898 (S.D. Cal. 2020) ..................................................... 33

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ................................................................. 17

*Stearns v. Ticketmaster Corp.,*
    655 F.3d 1013 (9th Cir. 2011) ......................................................... 29, 31

*Steroid Hormone Prod. Cases,*
    181 Cal. App. 4th 145 (2010) ................................................................ 30

*Sussman v. Am. Broad. Companies, Inc.,*
    186 F.3d 1200 (9th Cir. 1999) ............................................................... 22

*T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.,*
    83 F. Supp. 3d 855 (N.D. Cal. 2015) ................................................... 28

*Torres v. Prudential Financial, Inc.,*
    2024 WL 4894289 (N.D. Cal., Nov. 26, 2024) (Breyer, J.) .............. 7, 24, 34

*Tyson Foods, Inc. v. Bouaphakeo,*
    577 U.S. 442 (2016) ............................................................................... 18

*Valentine v. NebuAd, Inc.,*
    804 F.Supp. 2d 1022 (N.D. Cal. 2011) ................................................. 25

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) .......................................................................... 6, 16

*Zinser v. Accufix Rsch. Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001),
    *amended by* 273 F.3d 1266 (9th Cir. 2001) ........................................ 2, 36

**Statutes**

18 U.S.C. § 2510(15) ............................................................................ 33

18 U.S.C. § 2511(d) .............................................................................. 21

Cal. Civ. Code § 1770(a) ...................................................................... 30

Cal. Civ. Code § 1798.150(a)(1) .......................................................... 32

Cal. Civ. Code §1798.150 ..................................................................... 32

Cal. Civ. Code §1798.82 ....................................................................... 32

CCPA § 1798.81.5(d)(1)(A) ................................................................. 33

Health Insurance Portability and Accountability Act of 1996 ........... 12, 14

vi

**Other Authorities**

https://www.ftc.gov/system/files/ftc_gov/pdf/2023169betterhelpfinalorder.pdf ........................ 21

https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html
.................................................................................................................................... 13

**Rules**

Fed R. Civ. P. 23(a)(2) ............................................................................................. 16

Fed. R. Civ. P. 23 ............................................................................................... 5, 37

Fed. R. Civ. P. 23(a) .................................................................................................. 2

Fed. R. Civ. P. 23(b)(3) ................................................................................... 2, 3, 17, 36

Fed. R. Civ. P. 23(b)(3)(A)-(D) ................................................................................. 37

**Regulations**

45 C.F.R. § 164.501 ............................................................................................. 7, 13

45 C.F.R. § 164.502(a) ............................................................................................. 13

45 C.F.R. §§160.130 ................................................................................................... 7

PLAINTIFFS' MPA ISO MOTION FOR CLASS CERT                Master File No. 3:23-cv-01033-RS

**LIST OF CITATIONS AND ABBREVIATIONS**

| Abbreviation | Document |
|---|---|
| CT Seal Dec. | Declaration of Christina Tusan in Support of Plaintiffs' Administrative Motion to Seal |
| CT Dec. | Declaration of Christina Tusan in Support of Plaintiffs' Motion for Class Certification |
| AM Dec. | Declaration of Alan Mansfield in Support of Plaintiffs' Motion for Class Certification |
| GK Dec. | Declaration of Gary Klinger in Support of Plaintiffs' Motion for Class Certification |
| MB Dec. | Declaration of Maureen Brady in Support of Plaintiffs' Motion for Class Certification |
| ZS Dec. | Declaration of Zubair Shafiq, Ph.D. |
| ZS Rep. | Expert Report of Zubair Shafiq, Ph.D. in Support of Plaintiffs' Motion for Class Certification |
| EK Dec. | Declaration of Eric Krause |
| EK Rep. | Expert Report of Eric Krause in Support of Plaintiffs' Motion for Class Certification |
| JDI Dec. | Declaration of Jane Doe One in Support of Plaintiffs' Motion for Class Certification |
| JDIII Dec. | Declaration of Jane Doe Three in Support of Plaintiffs' Motion for Class Certification |
| T.R. Dec. | Declaration of T.R. in Support of Plaintiffs' Motion for Class Certification |
| S.C. Dec. | Declaration of S.C. in Support of Plaintiffs' Motion for Class Certification |
| L.M. Dec. | Declaration of L.M. in Support of Plaintiffs' Motion for Class Certification |

1

## NOTICE OF MOTION

2      PLEASE TAKE NOTICE that on August 28, 2025, at 1:30 p.m., Plaintiffs Jane Doe I, Jane

3   Doe III, T.R, S.C, and L.M (collectively "Plaintiffs") will appear before the Honorable Richard

4   Seeborg of the United States District Court for the Northern District of California to move the

5   Court under Federal Rules of Civil Procedure 23(a) and (b)(3) for an order certifying the following

6   class and subclasses to seek relief for claims asserted in the First Amended Consolidated Class

7   Action Complaint (Dkt. 114, "FACC") against Defendant BetterHelp, Inc. ("BetterHelp" or

8   "Defendant"):

9      **Nationwide Class:**

10     All individuals residing in the United States who, during the period beginning

11     January 1, 2017, and continuing through March 7, 2023 (the "Class Period"),

12     completed the BetterHelp Intake Questionnaire and provided BetterHelp with their

13     email address.

14     **Nationwide User Subclass:**

15     All individuals residing in the United States who, during the Class Period,

16     completed the BetterHelp Intake Questionnaire, provided BetterHelp with their

17     email address, and paid BetterHelp for services.

18     **California Subclass:**

19     All individuals residing in California who, during the Class Period, completed the

20     BetterHelp Intake Questionnaire and provided BetterHelp with their email address.

21     Plaintiffs seek to certify the Nationwide Class to assert claims for violation of the federal

22   Electronic Communications Privacy Act ("ECPA") (Count IV), as well as for invasion of the

23   common law right of privacy (Count I), breach of implied contract (Count II), unjust enrichment

24   (Count III), violation of the California Invasion of Privacy Act ("CIPA") (Count VI), violation of

25   California's Consumers Legal Remedies Act ("CLRA") (Count VII), and violation of California's

26   Unfair Competition Law ("UCL") (Count XI), all under California law. Plaintiffs seek to certify

27   the Nationwide Users Subclass to assert claims for violations of the Stored Communications Act

28   ("SCA") (Count V). Plaintiffs also seek to certify claims on behalf of the California Subclass for

PLAINTIFFS' MPA ISO MOTION FOR CLASS CERT                Master File No. 3:23-cv-01033-RS

violations of the California Constitution Art. I Sec. 1 (Count VIII) and the California Consumer Privacy Act ("CCPA") (Count X).

As required by *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001), the above-defined Class and Subclasses each satisfy all four elements for class certification under Fed. R. Civ. P. 23(a): (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). In addition, under Rule 23(b)(3), questions of law and fact common to Class members and Subclass members predominate over any questions affecting only individual Class and Subclass members, and a class action is manageable and superior to other available group-wide methods for fairly and efficiently adjudicating this controversy considering the various enumerated factors for making that determination.

This Motion is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities, and the following materials as well as any materials that may be submitted in reply, along with other materials in the record, argument of counsel, and such other matters as the Court may consider:

1.   Declarations of Christina Tusan (co-lead counsel) with accompanying exhibits;

2.   Declarations of Gary Klinger, Maureen Brady, and Alan M. Mansfield (co-lead/liaison counsel);

3.   Declarations of Jane Doe I, Jane Doe III, T.R, S.C, and L.M. (proposed class and subclass representatives);

4.   Declarations of Professor Zubair Shafiq (technology expert) and Mr. Eric Krause (damages expert); and

5.   Plaintiffs' Trial Plan.

### ISSUES PRESENTED

1.   Whether the Court should certify a Nationwide Class to pursue certain claims based on Plaintiffs establishing they satisfy all of the criteria for class certification.

2

2.      Whether the Court should certify a Nationwide User Subclass to pursue claims under the SCA based on Plaintiffs establishing they satisfy all of the criteria for class certification.

3.      Whether the Court should certify a California Subclass to pursue certain claims based on Plaintiffs establishing they satisfy all of the criteria for class certification.

**RELIEF REQUESTED**

Plaintiffs ask the Court to certify the Nationwide Class to seek relief under Counts I-IV, VI-VII, & XI, the Nationwide Users Subclass for Count V, and the California Subclass for Counts VIII & X of the FACC pursuant to Rule 23(b)(3). Plaintiffs further ask the Court to appoint all Plaintiffs as Nationwide Class and Nationwide Users Subclass representatives and to appoint T.R and Jane Doe III as California Subclass representatives, and to appoint Gary. M. Klinger, Christina Tusan, Maureen M. Brady, and Alan M. Mansfield as counsel for the proposed class and subclasses defined above.

Dated: May 8, 2025

/s/ Gary M. Klinger
Gary. M. Klinger (pro hac vice)
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: 866.252.0878
Email: gklinger@milberg.com
gabramson@milberg.com
ahoneycutt@milberg.com
rnelson@milberg.com

*Plaintiffs' Co-Lead Interim Class Counsel*

/s/ Christina Tusan
Christina Tusan (SBN 192203)
ctusan@ctusanlaw.com
TUSAN LAW, PC
680 E. Colorado Blvd. #180
Pasadena, CA 91101
Tel: 626-418-8203
Fax: 626-619-8253

*Plaintiffs' Co-Lead Interim Class Counsel*

.
Maureen M. Brady
Maureen M. Brady
McShane & Brady
4006 Central Street

3

Kansas City, MO 64111
816-888-8010
Email: mbrady@mcshanebradylaw.com

*Plaintiffs' Co-Lead Interim Class Counsel*

*/s/ Alan M. Mansfield*
Alan M. Mansfield (SBN: 125998)
amansfield@whatleykallas.com
WHATLEY KALLAS LLP
1 Sansome Street, 35th Floor
PMB #131
San Francisco, CA 94104 /
16870 West Bernardo Drive, Ste 400, San
Diego, CA 92127
Phone: (619) 308-5034
Fax: (888) 341-5048

*Plaintiffs' Liaison Counsel*

PLAINTIFFS' MPA ISO MOTION FOR CLASS CERT            Master File No. 3:23-cv-01033-RS

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiffs challenge Defendant BetterHelp's uniform practice of secretly implementing pixels, web beacons, and other online tracking technologies ("Tracking Tools") that collected and disclosed personal information that Plaintiffs and other consumers shared with BetterHelp. Plaintiffs and millions of consumers did so under the reasonable assumption that, as a company offering healthcare provider services, BetterHelp was fulfilling its federal and state obligations to protect and not disclose that information. It was not.

As set forth below, Plaintiffs will be able to establish on a class-wide basis that BetterHelp violated numerous federal and state laws and uniformly impacted members of the Class and Subclasses defined above by implementing Tracking Tools on its Intake Questionnaire and throughout its websites and apps throughout the Class Period so that it could track their protected health activities and private information and share that information and activity with Facebook, Google, Mixpanel, and other third parties. This practice took place without the knowledge or consent of the millions of people looking into seeking help from BetterHelp.

Each of the requirements for class certification under Fed. R. Civ. P. 23 are satisfied here. The Class and Subclasses are each sufficiently numerous. Millions of people who completed the Intake Questionnaire and provided their email address to BetterHelp had that information intercepted by and disclosed to third parties.

Plaintiffs' claims are typical of the other members of the Class and Subclasses as their claims are anchored in the same conduct of BetterHelp. Both Plaintiffs and their counsel have demonstrated they will adequately represent the Class and Subclasses, having aggressively litigated these claims so far in motion and discovery practice.

In addition, as this Court determined last year in an analogous action (*Rodriguez v. Google Inc*., 2024 WL 38032 (N.D. Cal., Jan. 3, 2024), *as clarified at* 2024 WL 1486139 (Apr. 5, 2024) ("*Rodriguez*")), as proof of Defendant's liability can be established on a class-wide basis, these claims also satisfy the common question and predominance elements of Rule 23. As in *Rodriguez*, the claims at issue can be shown to arise from the same uniform course of conduct as the

predominant common thread here is BetterHelp's uniform practice of collecting and transmitting consumers' protected confidential information to third parties through automated technology that mechanized the capture of that information from millions of members of the Class. BetterHelp's own evidence demonstrates that ███████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ Even if an individual ultimately did not sign up for BetterHelp's service, each Class Member was harmed by BetterHelp's unlawful practices. Additional common issues include BetterHelp's knowing conduct as to where these Tracking Tools were placed and why, the lack of mandatory consent to share such information, and class-wide damages. Whether BetterHelp's use of the Tracking Tools violates the laws set forth above thus raises material, common issues that will predominate over individualized issues, as these central questions can be answered with common evidence. The "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011).

Finally, particularly in light of the differences between the FTC action described below and the claims at issue in this action, certification is superior to other methods for the groupwide adjudication of the claims. Otherwise, millions of Class and Subclass members may never have "vindication of [their] rights," because "individually [they] would be without effective strength to bring their opponents into court at all." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

Both federal and state courts across the country have granted motions for class certification in cases involving similar unconsented disclosures of non-public information through the use of the same or similar Tracking Tools. *See, e.g., Jancik v. WebMD LLC*, 2025 WL 560705, at *10 (N.D. Ga., Feb. 20, 2025); *Torres v. Prudential Financial, Inc.*, 2024 WL 4894289, at *10 (N.D.

Cal., Nov. 26, 2024) (Breyer, J.); *Doe, et al. v. Virginia Mason Medical Center, et al.* ("*Virginia Mason Med. Center*"), No. 19-2-26674-1, p. 3 (Wash. Sup. Ct., King Cnty., Sept. 28, 2021). The Court should do the same here.

## II.    FACTUAL BACKGROUND

### A.    Throughout the Class Period, BetterHelp deployed Tracking Tools on its websites and apps, including on pages containing the Intake Questionnaire, and recorded and shared Class Members' identities and PHI with third parties

BetterHelp claims that ███████████████████████████████████
████████████████████████████ CT Seal Dec. Ex. 1 at 51:3-12. BetterHelp operates through its websites and apps with millions of consumers, ███████████████
███████████████████████████████████ CT Seal Dec. Ex. 1 at 56:6-16; Exs. 2, 3. BetterHelp understands that when an individual searches BetterHelp's websites and apps and inputs information to connect them with an appropriate therapist, ████████
████████████████████████████████████████████████████████ CT Seal DecEx. 1 at 117:19-119:7; Exs. 27-28; see *also,* 45 C.F.R. §§160.130 and 164.501. BetterHelp admits to having used Tracking Tools from numerous third parties, ████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████ CT Dec. Ex. 4 (Resp. No. 2), CT Seal Dec. Ex. 5 at 15:16-17:9 and 95:7-15, and Exs. 6-8.

There is significant common evidence of BetterHelp's capture and disclosure of confidential communications being uniformly mechanized by Tracking Tools deployed on BetterHelp's websites and apps. ███████████████████████████████
████████████████████████████ *Id.* Ex. 5 at 20:5-19. █████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████ ZS Dec., Ex. A - ZS Rep., ¶¶

13, 41-95[1]; CT Seal Dec. Exs. 9-10. In particular, ██████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

ZS Rep. at ¶¶ 49-60, 73; CT Seal Dec. Exs. 9-10, and Ex. 3 at Q.5.

      The Tracking Tools installed by BetterHelp effectively acted as a "bug" for tracking

Plaintiffs' and Class Members' web browsing activity, ██████████████████████████

██████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████ ZS Rep. at ¶¶ 25-39 ███████████████

████████████████████ ¶¶ 59-73 ████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ CT Seal Dec., Exs. 9-10; Ex.

3 at Q.7; and Ex. 11 at 8605. ██████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████ ZS Rep. at ¶¶ 60, 62-64, 69; CT Seal Dec. Exs. 12-15; and Ex. 3 at Q.5. ████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████



---

[1] Dr. Shafiq is a professor at University of California-Davis who leads research specifically focused on "online privacy, security, and safety." He has co-authored over 100 peer-reviewed papers, and he occupies several leadership positions in the development of online privacy technology. ZS Rep., ¶¶ 3-9, App'x A. As he details in his report, Dr. Shafiq reviewed BetterHelp's materials and testimony, analyzed Google Tag Manager configuration information, analyzed Meta Pixel log files produced by Meta, analyzed BetterHelp's website as archived by the Internet Archive's Wayback Machine, and analyzed other information produced in discovery. *Id*, ¶ 40.

ZS Rep., ¶¶ 60, 62-64, 69. CT Seal Dec. Ex. 16 at p. 63 Ex. 27.

ZS Rep., ¶¶ 61-81; CT Seal Dec. Exs. 17-18.

CT Seal Decl. Ex. 5 at 53:13-54:22.

ZS Rep., ¶¶ 61-67, *See infra* Section II(D).

*Id.* at ¶ 36(a); CT Seal Dec. Ex. 19 at 9832; Ex. 5 at 130:4-131:14, Exs. 9-10; Ex. 20 at 8588.

*Id.* at Ex. 21 at 21561-21566. Since the Tracking Tools also were placed on the account login page, Nationwide User Subclass Members could be targeted with mental health related advertisements at approximately the very time they were logging in to talk with their therapists. *Id.* at Ex. 22. All of this conduct occurred without Plaintiffs' knowledge or written consent. JDIII Dec. at ¶¶ 6, 10, 11; JDI Dec. at ¶¶ 6, 10, 11; T.R. Dec. at ¶¶ 6, 10, 11; S.C. Dec. at ¶¶ 6, 10, 11; and L.M. Dec. at ¶¶ 6, 10, 11.

CT Seal



9

Dec. Ex. 23 at 302:7-304:3 and Ex. 24; ZS Rep., ¶¶ 43, 62, citing CT Seal Dec. Ex. 11 at 8637, Ex. 25 at 9992-9993. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████ CT Seal Dec. Ex. 5 at 85:16-86:4, 158:23-159:12, and 160:9-21. ████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████ *Id.* Ex. 26 ████████████████████████████████████

██████████████ *Id.* ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████; Ex. 5 at 92:2-12. While BetterHelp has claimed the hashed email addresses it shared were not usable or traceable (raising the question why companies such as Meta would ever ask for or use them), ████████████████████████████████████████████████████████████████████████████

████████████████████████ CT Seal Dec., Exs. 9-10, 27; ZS Rep. ¶ 79 ████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

    Far from seeking to prevent Class Members' health information from being intercepted and used by third parties, BetterHelp actively aided that process. ██████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ CT Seal Dec., Ex. 12. ████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████ *Id.* Exs. 27, 28*; ZS Rep. at ¶¶ 62-63.*

10

1


ZS Rep., ¶ 59.

*Id.* at ¶ 29.

*Id.* ¶ 31.

*Id.* at ¶¶ 56-59, 74-96.

BetterHelp's egregious violations of customers' privacy rights prompted a related investigation by the U.S. Federal Trade Commission ("FTC") in 2020 for false and misleading advertising and violations of the FTC Act. The FTC's investigation focused on claims of false advertising such as that, *inter alia*, BetterHelp claimed to be compliant with HIPAA when it was not, even though it was required to be. See FACC, Ex. A at ¶¶ 61-66. The FTC Complaint at ¶¶ 3, 5, 6, and 52-56 (FACC, Ex. A) also summarized numerous instances where BetterHelp shared the email addresses of millions of consumers with numerous third parties, including Facebook, Snap and Criteo. The FTC's investigation into BetterHelp included taking testimony from BH representatives and issuing Civil Investigative Demands to BetterHelp containing numerous questions about the practices at issue in this case. FACC, Ex. A, p. 2, ¶ 8. As a result of that investigation, on July 7, 2023, the FTC issued a complaint against BetterHelp. FACC, Ex. A. That Complaint alleged, *inter alia*, that: "[m]illions of consumers . . . signed up for [BetterHelp's online counseling service (the "Service")], entrusting [BetterHelp] with their email addresses, IP addresses, and certain information about their health status and histories – such as the fact that they

are seeking or are in therapy, and whether they have previously been in therapy"; "[BetterHelp]" repeatedly promised to keep [this health information] private and use it only for non-advertising purposes such as to facilitate consumers' therapy"; BetterHelp "continually broke these privacy promises, monetizing consumers' health information to target them and others with advertisements for the Service"; and, BetterHelp capitalized on its patients' health information by "hand[ing] it over to numerous third-party advertising platforms, including Facebook, Pinterest, Snapchat, and Criteo, often permitting these companies to use the information for their own research and product development as well." *Id*. at pp. 1-2 ██████████████████████████████████

██████████████████████████████████████████████████████████████████████████

ZS Rep. at ¶ 42, 45-48, 61-66.[2]

**B.    BetterHelp never sought—let alone received—authorization to disclose HIPAA-protected information.**

███████████████████████████████████████████████████████████████████████

████████ CT Seal Dec., Ex. 1 at 131:2-15 and 134:13-20. ███████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████ CT Seal Dec. Exs. 15, 29, 31-32, and Ex.1 at 145:9-16.

████████████████████████████████████████████████████████ *Id.* Ex. 1 at 139:13-140:9. HIPAA provides the "standard of procedure" for any person, company, or entity who has access to PHI, whether a direct covered entity, a business associate, or any other person or entity ████████████████████████████████████ FACC ¶¶ 116-118. █████████████

---

2 █████████████████████████████████████████████████ See CT Seal Dec. Ex. _1 at 83:5-10 and Ex. 5 at 18:6-21. BetterHelp has refused to produce the source code (other than a few cherry-picked snippets of code it produced on May 2, 2025 despite refusing to turn a complete set of its source code over to Plaintiffs) and other relevant information related to the Tracking Tools it used for time periods after 2021, requiring Plaintiffs to appear at a hearing before Magistrate Judge Ryu on May 8, 2025 to obtain that information. The Court instructed BetterHelp to explain why the production of this information would be unduly burdensome and oppressive and meet and confer over the production of such information. ECF No. 168. As discovery is on-going and BetterHelp has so far refused to provide this information absent Court intervention, the evidence of the relevant consumer facing websites and app source code and the Zaraz tag manager will confirm how much longer this information was being shared. CT Dec. at ¶53. Plaintiffs will supplement this information as discovery progresses.

████████████████████████████████████ CT Seal Dec.

Exs. 33-36, and Ex. 1 at 145:9-159:17, Ex. 327, 176:22-177:3, Ex. 114. ███████████

████████████████████████████████████████████████████████

███████████████████████ *Id.* Ex. 1 at 160:8-161:21 and 164:9-165:12.

      Use of tracking technologies as well as use of email for marketing purposes is prohibited

by HIPAA if the information cannot be deidentified and there would be any risk of reidentification.

45 C.F.R. § 164.502(a); *see also*, https://www.hhs.gov/hipaa/for-

professionals/privacy/guidance/hipaa-online-tracking/index.html. ████████████████

████████████████████████████████████████████████████████ ZS Rep. at

¶¶ 13, 41-95. ███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ CT Seal Dec. Ex.

1 at 193:12-22, Ex. 142, 204:22-206:11. █████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████ *Id.* Ex. 37 at 20622.

████████████████████████████████████████████████████

████████████████████ *Id.* Ex. 1 at 47:7-48:23; Ex. 38 at 210:6-212:8 and 249:24-

249:14. ████████████████████████████████████████████

████████████████████████████████████████████████████ *Id.*

at 58:7–23. ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ *Id.* at 117:10-119:12; *see also* CT Seal Dec. Ex. 16 at

p. 63 ██████████████████████████████████████████████

████████████████████████████████████████████████████████

      In addition, before BetterHelp could lawfully disclose visitors' and users' PHI to Facebook,

Snap, Google, Mixpanel, and other third parties, it had to receive a signed authorization for

disclosure of that information. 45 C.F.R. § 164.501. █████████████████████

████████████████████████████████████████████████ CT Seal

Decl. Ex. 38 at 112:4-15. Nor did it offer Plaintiffs or Class Members the opportunity to complete a form or offer some other affirmative acknowledgement that they consented to BetterHelp's pervasive disclosures. ████████████████████████████████████████

█████████████████████████████ *Id.* Ex. 1 at 115:13-24; Ex. 39.

**C.    Plaintiffs were harmed by BetterHelp's use of the Tracking Tools and disclosure of confidential and sensitive information.**

Each of the Plaintiffs used BetterHelp's websites containing the Tracking Tools to complete the Intake Questionnaire, provide their email address, and pay for BetterHelp's service.[3] None were aware that all of their interactions with BetterHelp's web properties, and consequently their PHI, were being captured and shared with Facebook, Snap, Google, MixPanel, and other third parties and were harmed thereby.[4] All believed such information was being kept confidential and doing so was material to their decisions to work with BetterHelp, including filling out the Intake Questionnaire with their private information. They all had an objective, reasonable expectation of privacy in such sensitive information. No Plaintiff was asked to sign an authorization allowing the release of their information nor gave BetterHelp authorization, through a signed writing or otherwise, to disclose their PHI to those third parties.[5]

As explained by Plaintiffs' expert Eric Krause,[6] Plaintiffs and each Class Member have suffered tangible economic damages and injury. Based on his expertise and experience as an economist, Mr. Krause opines that there exists a robust market for personal data in general, and non-public health information in particular, as used in online marketing and advertising. EK Dec., Ex. A - EK Rep. at ¶¶ 41-67. This data is bought and sold in a third-party market by companies

---

[3] S.C. Dec. ¶¶ 4-5; T.R. Dec., ¶¶ 4-5; L.M. Dec., ¶¶ 4-5; JDI Dec., ¶¶ 4-5; JDIII Dec. ¶¶ 4-5. All Plaintiffs with the exception of Plaintiff L.M. paid with a credit card; L.M. used a coupon to pay for the service but still provided her personal information.
[4] S.C. Dec. ¶¶ 6, 9; T.R. Dec. ¶¶ 6, 8; L.M. Dec. ¶¶ 6, 9; JDI Dec. ¶¶ 6, 9; JDIII Dec. ¶¶ 6, 10.
[5] S.C. Dec. ¶ 11; T.R. Dec. ¶ 10; L.M. Dec. ¶ 11; JDI Dec. ¶ 11; JDIII Dec. ¶ 11.
[6] Mr. Krause is the Director at Applied Economics Consulting Group, Inc. ("Applied Economics"), EK Rep., ¶ 2. He holds an undergraduate degree in Economics from the University of Texas at Austin and a Master of Business Administration degree with a concentration in Finance from the University of Texas at Austin. *Id.* He has extensive experience in performing economic valuations of various types of tangible and intangible assets utilizing commonly accepted and recognized valuation techniques. *Id.* at ¶ 4.

such as MixPanel, which worked with BetterHelp and "bid" for the right to show advertisements based on the information harvested by these third parties through the Tracking Tools described above. Mr. Krause analyzed both this market and documents and information produced in discovery to determine the fair market value of the unlawfully disclosed information. His model assesses the value of this personal data to Class Members based on its independent value on the open market. Through this valuation, as well as multiple recent surveys and peer-reviewed studies of market participants and prevailing economic theories, Mr. Krause has created a damages model that applies to each Class Member. *Id.* at ¶¶ 68-69.

Mr. Krause's model to determine "a reasonable, if conservative, estimate of the value of the type of personal information and patient status alleged to have been inappropriately transferred to third parties" results in a damage calculation of $200 per user. *Id.* at ¶ 72. This figure represents a conservative floor that is common to all Class Members, each of whom had, at a minimum, their personal information (i.e., the "identifiers" that disclose their identity) and their status as a person who was interested in seeking mental health services through BetterHelp taken and disclosed to third parties without their consent. *Id.* at ¶¶ 64-67.

## III.     THIS ACTION SATISFIES ALL OF THE ELEMENTS FOR CLASS CERTIFICATION

### A.     Numerosity is Met

According to BetterHelp, between January 2017 and March 2023, there were 2,245,282 individuals in the United States who registered and paid for BetterHelp's services, of whom 320,226 were residents of California. CT Dec., Ex. 4 at Q. 14. Each of these individuals was required to complete the Intake Questionnaire and provide their email address. Millions of additional individuals also completed the Intake Questionnaire and provided BetterHelp with their email address but did not ultimately pay to use BetterHelp's service.[7] Based on the fact Class members will number in the millions, Rule 23(a)(1) numerosity is met. *Rodriguez,* at *3. In addition, as Class membership can be determined by objective criteria, and BetterHelp should

---

[7] BetterHelp concedes the only way for it to receive someone's email address is if they enter it in a registration form after having already completed the Intake Questionnaire. CT Seal Dec., Ex. 4.

1    maintain and preserve a list of such persons, the Class is also ascertainable.

2         **B.     Commonality is Met.**

3         Plaintiffs' claims implicate common issues "capable of classwide resolution," and

4    therefore satisfy Rule 23(a)(2)'s "permissive" commonality requirement. *Wal-Mart Stores, Inc.,*

5    *supra*, 564 U.S. 338, 359 (2011)("[E]ven a single common question will do." (quotation marks

6    omitted)); *Rodriguez* at *3. BetterHelp's liability turns on its uniform conduct—namely, its

7    implementation of Tracking Tools on its websites and apps, including on the Intake Questionnaire,

8    that captured and disclosed to third parties Plaintiffs' and Class Members' private information,

9    including that they were seeking mental health services, without their knowledge or authorization.

10   Common questions include, *inter alia*: (i) whether BetterHelp's actions in installing the Tracking

11   Tools were intentional; (ii) whether the information intercepted and disclosed by the Tracking

12   Tools was "content" that was intercepted "in transit" under the ECPA and CIPA; (iii) whether

13   BetterHelp breached an implied contract to not disclose that Plaintiffs and Class Members were

14   seeking mental health services or breached Plaintiffs' confidence; and (iv) whether BetterHelp's

15   conduct in using the Tracking Tools to disclose information to third parties without consent

16   violated various Federal and California statutes (*See infra.* for a discussion of each individual count

17   in the FACC).

18
19        **C.     Plaintiffs' claims are typical of the Class and Plaintiffs and their counsel are
               adequate representatives.**

20        Plaintiffs also meet the Rule 23(a)'s typicality and adequacy requirements, which "do not

21   pose a particularly high bar to class certification." *Ambrosio v. Cogent Commc'ns*, 2016 WL

22   777775, at *4 (N.D. Cal. Feb. 29, 2016) (Seeborg, J.). Each of the claims "arise[] from the same

23   course of events, and each class member makes similar arguments to prove the defendant's

24   liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010). Each of the Plaintiffs had their

25   confidential information intercepted by and disclosed to unauthorized third parties via the Tracking

26   Tools installed by BetterHelp on its websites and apps. Plaintiffs' claims align with the interests

27   of the Class members and turn on the "same course of conduct"—namely, BetterHelp's collection

28   and disclosure of sensitive, protected PHI with third parties without Plaintiffs' knowledge or

1    authorization. *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). In addition,

2    Plaintiffs T.R. and Jane Doe III are California residents who can represent the California Subclass.

3        Plaintiffs and their counsel also will adequately represent the Nationwide Class,

4    Nationwide User Subclass, and California Subclass. Two questions determine adequacy: "(1) do

5    the named plaintiffs and their counsel have any conflicts of interest with other class members and

6    (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the

7    class?" *Hanlon v. Chrysler, Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Based on the claims

8    described above and the nature of their common proof, there is no "conflict[] of interest with other

9    class members." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Plaintiffs have proven

10   their commitment to this case to date by working with counsel to prosecute the case, responding

11   to document requests and multiple sets of interrogatories, and sitting for depositions. *See* JDI Dec.

12   ¶12, JDIII Dec. ¶12, T.R. Dec. ¶11, S.C. Dec. ¶12, and L.M. Dec ¶12. Also, Plaintiffs' counsel

13   have extensive experience in prosecuting privacy class actions and have vigorously pursued this

14   case for more than two years, as described in the CT Dec., GK Dec., MB Dec. and AM Dec.

15        **D.    Common issues predominate over individual issues**

16        As this Court held in *Rodriguez,* at *2, "if all four Rule 23(a) prerequisites are satisfied,

17   plaintiffs must also satisfy 'through evidentiary proof' at least one of the three subsections of Rule

18   23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)." Rule 23(b)(3) requires that "the

19   questions of law or fact common to class members predominate over any questions affecting only

20   individual members, and that a class action is superior to other available methods for fairly and

21   efficiently adjudicating the controversy." The legal and factual issues described above are common

22   to all members of the Class and are "capable of being established through a common body of

23   evidence." *Olean Wholesale Grocery Coop., v. Bumble Bee Foods*, 31 F.4th 651, 666 (9th Cir.

24   2022) (en banc). Such common questions need only be capable of class-wide resolution; plaintiffs

25   are not required to show that "the evidence in fact establishes [they] would win at trial." *Olean,* 31

26   F.4th at 667. Predominance under Rule 23(b)(3) thus tests "whether the common, aggregation-

27   enabling issues in the case are more prevalent or more important than the non-common,

28   aggregation-defeating individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453

1   (2016). "When 'one or more of the central issues in the action are common to the class and can be

2   said to predominate, the action may be considered proper under Rule 23(b)(3) even though other

3   important matters will have to be tried separately, such as damages or some affirmative defenses

4   peculiar to some individual class members." *Id.* at 453–54.

5       Looking at the elements of each of the Causes of Action in the FACC and the facts as

6   detailed above, how these technologies operate and what information they gather and share are

7   common to all Class members. As a result, resolution of such common questions of law or fact

8   will predominate over any individual issues that may arise as to such claims, as they will turn on

9   common questions that are subject to common proof.

10          **i.      California law can be applied to the entire Class**

11      As a threshold matter, the evidence gathered to date establishes that Better Help's

12  headquarters are in California; the servers where such communications were intercepted are in

13  California; the primary decisions about using and placing Tracking Tools and aiding third parties

14  in intercepting the communications of millions of Class Members were made in California; and

15  that over 14 percent of BetterHelp's registered users are in California; and thus the conduct at issue

16  occurred almost exclusively within and emanated from California. CT Dec. at Ex. 4; CT Seal Dec.

17  Ex. 38 at 10:14-212:8, Ex. 42 at 37:14-39:6. Plaintiffs satisfy their initial burden to show that

18  "there can be no real dispute that the facts in this case are sufficient to make application of

19  California law to the entire class constitutional". *Camenisch v. Umpqua Bank*, 2024 WL 3186552

20  (N.D. Cal. June 25, 2024 (Seeborg, J.) (denying motion attempting to decertify class asserting

21  claims under California law for non-residents of California); *Forcellati v. Hylands, Inc*., 2014 WL

22  1410264, at *2 (C.D. Cal. Apr. 9, 2014).

23          **ii.     The predominating issue whether BetterHelp intercepted and disclosed

24                    information that Class Members provided, including that they were
                      seeking mental health services, turns on common proof.**

25      Foremost among the common threads running through this case is BetterHelp's uniform

26  conduct: specifically, its unauthorized interception, collection, and transmission of the sensitive

27  data of identifiable individuals through the use of Tracking Tools. All Class members' claims turn

28  on the common contention that BetterHelp intercepted, aided the interception of, or disclosed or

18

1    otherwise transferred to third parties sensitive information that it did not have a lawful right to

2    disclose. The answer to this common question turns on class-wide proof, including BetterHelp's

3    own documents and testimony. ████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████ CT Seal

6    Dec. Ex. 5 at 145:12-24. ████████████████

7    ████████████████████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████ CT Seal

11   Dec. Exs. 6, 9, 10; ZS Rep, ¶¶ 13, 41-73.  Plaintiffs will be able to use this class-wide evidence to

12   show that ██████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████████████████

15   ██████████████████████████████████████████████████ *See, e.g.*, ZS Rep.,

16   ¶¶ 41-73. ████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████████████

18   ████████████████████████████████ *Id.* at ¶¶49-59, 74-96. Whether BetterHelp's disclosure of

19   sensitive health information, including HIPAA-protected PHI, regarding the status of prospective

20   and actual mental health patients along with identifiable information such as email addresses and

21   other identifiers such as Facebook IDs and IP addresses violated numerous statutes and common

22   law is a common, predominating question. Plaintiffs' and Class members' right to the

23   confidentiality of this sensitive information is well-established. "Information need not be

24   personally identifying to be private." *In re Google Referrer Header Priv. Litig.*, 465 F. Supp. 3d

25   999, 1009–10 (N.D. Cal. 2020).

26   ████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████████████████████████

PLAINTIFFS' MPA ISO MOTION FOR CLASS CERT                Master File No. 3:23-cv-01033-RS

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮ ZS Rep. at ¶ 31. ▮▮▮▮▮▮▮▮▮▮▮▮▮

3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at ¶ 29. ▮

4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8 ▮▮▮ *Id.* at ¶ 93. Whether this data was always kept "anonymized", as BetterHelp claims, or

9 traceable to Class members, as Plaintiffs can demonstrate, is a predominant common question.

10     Plaintiffs also can use common evidence to show the data in question is both personal,

11 sensitive, and medically related, and that all Class Members had a reasonable expectation of

12 privacy. BetterHelp's own evidence shows that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16 ▮▮▮ CT Seal Dec. Ex. 6, Ex. 16 at p. 63. ▮▮▮▮▮▮▮▮

17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ CT Seal Dec. Ex. 40 at 51499. As this Court

21 held in *Rodriguez at \*5*, "Despite [defendant's] insistence otherwise, whether the amount or nature

22 of data collected is a fact-specific inquiry does not by itself defeat predominance, because the

23 relevant question is whether the members, who shared common conduct, had an objective,

24 reasonable expectation of privacy …. This is a question capable of resolution class-wide.".

25     Describing its digital marketing practices during the Class Period, BetterHelp's own

26 documents establish ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ZS Rep.

27 at ¶¶ 41-44. ▮▮▮▮▮▮▮▮▮▮

28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1

2

3

4                                                            CT Seal Dec. Ex. 5 at 22:24-24:19 and 26:23-28:6.

5

6

7

8

9

10          ZS Rep. at ¶ 57, ¶¶ 74-96; CT Seal Dec. Ex. 1 at 66:2-9.

11

12                                                ZS Rep. ¶ 57.

13

14

15                                            *Id.* ¶58.

16

17

18

19             CT      Seal      Dec.,      Ex.      41;      FTC      Order      at      pp.      7-9

20    (https://www.ftc.gov/system/files/ftc_gov/pdf/2023169betterhelpfinalorder.pdf).

        **iii.**     **Each of Plaintiffs' claims present common and predominant issues and should be certified to proceed on a class-wide basis.**

        **a.**     **Claim under the ECPA**

        As detailed above, common evidence shows that BetterHelp placed hidden Tracking Tools on its websites and apps, including on the Intake Questionnaire, that forced Plaintiffs' web browsers to send data transmissions to third parties, much like a traditional wiretap. Plaintiffs' ECPA claim requires them to show that the "contents" of their communications were "intercepted in transit." 18 U.S.C. § 2511(d). There can be little dispute this is "content". *Katz-Lacabe v. Oracle*

21

*Am., Inc.*, 668 F. Supp. 3d 928, 944 (N.D. Cal. 2023 (Seeborg, J.) ("content…refers to the intended message conveyed by the communication," not "information about the characteristics of the message."); *In re Google RTB Consumer Privacy Litigation ("Google RTB")*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) (finding that categories of the website, categories that describe the current section of the website and referrer URL that caused navigation to the current page constituted "content").

Numerous courts have also held that the operation of Tracking Tools may constitute an interception, thus making the answer to that question a predominantly common one. *See, e.g., In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (noting Meta itself did not dispute that the Pixel resulted in an intentional interception in transit); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) ("a URL disclosing a 'search term or similar communication made by the user' 'could constitute a communication' under the statute" (quoting *In re Zynga Priv. Litig.*, 750 F. 3d 1098, 1106 (9th Cir. 2014)). This is because the "interception" requirement is not a literal one. Rather, it occurs "when the contents of a wire communication are captured or re-directed in any way." *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009); *In re Meta Pixel*, 647 F.Supp.3d at 795 ("[T]he Ninth Circuit has construed the term [intercept] according to its ordinary meaning as the "act of acquiring, or coming into possession of"). Interception of an electronic communication includes the simultaneous transmission of communications. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) ("Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule.").

Additionally, whether BetterHelp violated the crime-tort exception to the ECPA's party requirement is also common. The crime-tort exception focuses on whether "the purpose for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (quotation marks and citation omitted). Plaintiffs can show BetterHelp's conduct falls within this exception based on common proof because the common evidence summarized above shows BetterHelp intentionally planned

1    on the interception of Plaintiffs' and Class Members' communications despite HIPAA's criminal

2    prohibitions against disclosing individually identifiable health information without authorization.

3    Multiple courts have found substantially identical allegations sufficient to trigger this exception.

4    *In re Meta Pixel*, 647 F.Supp.3d at 797 ("plaintiffs may be able to show that the crime-tort

5    exception applies" based on allegations "that the use of patient data for advertising in the absence

6    of express written consent is criminal and tortious"); Cf., *B.K. v. Desert Care Network*, 2024 WL

7    1343305, at *6 (C.D. Cal. Feb. 1, 2024) (crime-tort exception applied to allegations that defendant

8    intercepted communications regarding "requests to refill prescriptions and appointment scheduling

9    inquires" in "violation of various state tort claims and state and federal laws").

### b.    Violation of CIPA

11    Section 631(a) of CIPA (Count VIII) prohibits any person from using electronic means to

12    "learn the contents or meaning" of any "communication" "without consent" or in an "unauthorized

13    manner." *In re Facebook*, 956 F.3d at 601 (quoting Cal. Pen. Code § 631(a)). CIPA also applies

14    to a person "who aids, agrees with, employs, or conspires with any person or persons to lawfully

15    do, or permit" the interception. *Id.*[8] ████████████████████████████████

16    ████████████████████████████████████████████████████████████████

17    ████████████████████████████████████████████████████████████████

18    ████████████████████████████████████████████████████████████████

19    ████████████████████████████ ZS Rep. at ¶¶ 69-73; CT Seal Dec. Exs. 12-15. As with the

20    ECPA, numerous courts have held this information constitutes "contents" under CIPA. *See, e.g.,*

21    *In re Google Inc. Cookie Placement*, 806 F.3d 125, 139 (3rd Cir. 2015) ("post-domain name

22    portions of the URL are designed to communicate to the visited website which webpage content

23    to send the user."); *Brown v. Google LLC*, 2023 WL 5029899, *15 (N.D. Cal. Dec. 22, 2022)

---

[8] It is also a threshold predominantly common question whether CIPA applies to internet communications. *See, e.g., Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022)(not for publication) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who "reads, or attempts to read, or to learn the contents" of a communication "without the consent of all parties to the communication."); *Google RTB*, 606 F.Supp.3d at 948-49 (discussing application of CIPA to websites such as BetterHelp).

1   (URLs constitute "contents" under CIPA because "Google collects the type of search queries the

2   Ninth Circuit thought could be content in *Zynga Privacy*.").

3          Judge Breyer of this District recently certified a CIPA class based on allegations that an

4   insurance company used technologies similar to the Tracking Tools to aid the interception of

5   information communicated by prospective life insurance applicants. *Torres v. Prudential

6   Financial, Inc.*, 2024 WL 4894289 (N.D. Cal. Nov. 26, 2024). Judge Breyer observed as a

7   threshold matter that "CIPA is not just concerned with whether communications were sent from a

8   place in California; it also covers communications intercepted while 'in transit or passing over any

9   wire, line, or cable' in California or 'received at any place' in California. *Id.* at *9 (citing Cal.

10  Penal Code § 631(a)). Judge Breyer went on to hold that the plaintiffs' claim that the defendant

11  violated CIPA turned on common and predominant evidence regarding whether the life insurance

12  quote was "content" intercepted "in transit;" whether the insurance company aided a third party in

13  intercepting that content; whether a reasonable person could be held to have "consented" to the

14  interception, and class-wide damages. *Id.* at *4, 10. *Accord Jancik v. WebMD LLC*, 2025 WL

15  560705, at *9 (N.D. Ga., Feb. 20, 2025) (certifying claim under analogous Video Privacy

16  Protection Act against medical website operator where common evidence of the operation of the

17  Facebook Pixel could be used to prove whether the type of data defendant transmitted constituted

18  "personally identifiable information.").

19         Another predominant common question is whether BetterHelp "aided" the interception of

20  Plaintiffs' and Class members' communications. As summarized above, ██████████████

21  ████████████████████████████████████████████████████████

22  ████████████████████████████████████████ CT Seal Dec.,

23  Ex. 20 at 8588, Ex. 5 at 26:6-28:3; 28:6-84:16, 278:16-279:1; ZS Rep. ¶ 33 ██████████

24  ████████████████████████████████████████████████████████

25  ██████████ *Id.* ¶ 43 ████████████████████████████████████

26  ████████████████████████████████████ The information BetterHelp

27  intentionally shared with third parties included PHI that is statutorily protected from unauthorized

28  disclosure to third parties absent the patient's consent. Based on the design of these tools and

1    BetterHelp's intentional incorporation of them into its websites and apps, common evidence will

2    establish not only that BetterHelp knew its use of the Tracking Tools would result in the

3    interception of Plaintiffs' and Class members' PHI, but also that such information would be used

4    by others for marketing and advertising purposes rather than solely internal data analysis.

5         Finally, whether CIPA applies to all Nationwide Class members or only the California

6    Subclass also is a common and predominant issue. Deposition testimony confirmed that the

7    conduct at issue originated in and emanated from California because that is where BetterHelp: ███

8    ████████████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████████████████

10   ████████████████    CT Seal Dec., Ex. 38 at 10:14-212:8, Ex. 42 at 37:14-39:6. This is sufficient

11   to apply CIPA to all Class members or to determine whether to do so is a predominantly common

12   question. *See, e.g.*, *Schmitt v. SN Servicing Corp.*, 2021 WL 3493754, at *3 (N.D. Cal. Aug. 9,

13   2021) (data breach allegations regarding defendant who operated out of California "sufficient to

14   allow out-of-state plaintiffs to seek recovery under California law"); *Oman v. Delta Air Lines, Inc.*,

15   889 F.3d 1075, 1079 (9th Cir. 2018), *certified question accepted sub nom. Oman v. Delta Air*

16   *Lines*, No. S248726, 2018 WL 10809386 (Cal. July 11, 2018), *and certified question answered*, 9

17   Cal. 5th 762 (2020) ("If the conduct that 'creates liability' occurs in California, California law

18   governs that conduct."); *Valentine v. NebuAd, Inc.*, 804 F.Supp. 2d 1022, 1028 (N.D. Cal. 2011)

19   ("[a] legislative purpose that articulates an interest in protecting those within California is not

20   inconsistent with also allowing non-Californians to pursue claims against California residents. To

21   conclude otherwise would mean the California Legislature intended to allow California residents

22   to violate the CIPA … with impunity with respect to out-of-state individuals and entities, a result

23   this Court declines to reach.")

24              c.    **Violation of Right of Privacy**

25         The causes of action for invasion of privacy on behalf of the Class and California Subclass

26   (Counts I and VIII) also raise predominant questions of law and fact. BetterHelp's own documents

27   and testimony show that ████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████████████████████████

CT Seal Dec. Ex. 38 at 117:10-119:12

As the Court explained in *Rodriguez* in certifying a breach of privacy claim on behalf of all class members whose communications were tracked by Google, "under both the intrusion upon seclusion and invasion of privacy claims, the question of whether a reasonable expectation of privacy exists is an objective one. *See Shulman v. Grp. W. Prods., Inc.*, 18 Cal.4th 200, 232 (1998). Nonetheless, this objective test may permit examination of 'the surrounding circumstances' to ascertain whether a person had a reasonable expectation of privacy." *See also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). To determine if there was a reasonable expectation of privacy, the factfinder can consider "the identity of the intruder," "the extent to which other persons had access to the subject place," and "the means by which the intrusion occurred." *Id.* at 286–87. Similarly, the right to privacy under California Constitution, Art. I, Sec. 1 requires Sub-class members to show (1) "a legally protected privacy interest"; (2) a reasonable expectation of privacy; and (3) an intrusion "constitut[ing] an egregious breach of the social norms" that is "highly offensive." *Id.* at 287. Given the similarity of these theories, "courts consider the claims together when both are invoked and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) *cert. denied sub nom. Facebook, Inc. v. Davis*, 141 S. Ct. 1684 (Mar. 22, 2021)("*Facebook Tracking*").

In *Opperman v. Path, Inc.*, 2016 WL 3844326, at *11 (N.D. Cal. Jul. 15, 2016), the Court certified a Rule 23(b)(3) class for similar privacy claims where, as here, the plaintiffs alleged that an app developer invaded their privacy by collecting contact data from their mobile device on which the developer's app was installed. The Court rejected the developer's objection that "an individual inquiry will be required into the subjective expectations of each class member." *Id.* Similarly, whether an intrusion is "highly offensive to a reasonable person," with a "focus[] on the

26

degree to which the intrusion is unacceptable as a matter of public policy," *Facebook Tracking*, 956 F.3d at 606, focuses on issues common to the Class Members: the nature of the intrusion, the "intruder's motives and objectives," the intruder's knowledge that its practices are "a problematic privacy issue," and finally broader "social norms," such as not condoning the widespread automated sharing of individuals' sensitive mental health information. *Id.* All of these elements focus on the actions of BetterHelp, and none involves any analysis of an individual consumer's background or personal beliefs. *See also Romero v. Securus Techs., Inc.,* 331 F.R.D. 391, 411 (S.D. Cal. Nov. 21, 2018) (certifying class because the defendant's omission of recording warning was uniform to all class members).

In addition, the court in *Virginia Mason Med. Center*, No. 19-2-26674-1, p. 3 GK Dec. Ex. B found based on similar allegations against a hospital: "The overarching common questions in this case are whether Virginia Mason bugged its [website] with source code that caused tracking cookies to be deposited on Plaintiffs' and class members' computing devices, [and] whether [it] disclosed Plaintiffs' and class members' personally identifiable data and communications to third parties[.]". The court concluded "[a]nswering these questions will resolve common issues that are central to all class members' claims." *Id.*

### d.     Breach of Implied Contract

As this Court has held, "'An implied contract is one, the existence and terms of which are manifested by conduct.' Cal. Civ. Code § 1621. To plead breach of an implied contract, a plaintiff must allege: '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff.'" *Castillo v. Seagate Tech., LLC,* 2016 WL 9280242, at *8–9 (N.D. Cal. Sept. 14, 2016) (citing *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968)) "An implied-in-fact contract requires proof of the same elements necessary to evidence an express contract: mutual assent or offer and acceptance, consideration, legal capacity and lawful subject matter." *Corona v. Sony Picture Entertainment Inc.*, No. 14-cv-09600-RGK, 2015 WL 3916744, at *6 (N.D. Cal. June 15, 2015). "While an implied contract requires that both parties agree to its terms and have a 'meeting of the minds' the creation of an implied contract can be manifested by conduct rather than words." *See T & M Solar & Air*

27

*Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 872 (N.D. Cal. 2015) (citing *Blaustein v. Burton*, 9 Cal. App. 3d 161, 179 (1970)).

Common evidence will establish that ███████████████████████████████████ CT Seal Dec., Ex. 20 at 8576. ███████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████ *Id.* ████████████████████████████████ CT Seal Dec. Ex. 20 at 8584 ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████ As set forth in their Declarations (see n. 6-7 *supra*), Plaintiffs accepted and performed this implied contract by providing their PHI when completing the Intake Questionnaire (and, like over 2.2 million Nationwide User Subclass Members, paying BetterHelp for the services at issue). Common evidence will also establish the uniform breach of this implied contract by BetterHelp ████████████████████████████ ██████████████████████████ CT Seal Dec. 20 at 8584; ZS Rep. at ¶¶ 13, 41-96; EK Rep. at ¶¶69-72.

### e.    Breach of Confidence

To establish a claim for breach of confidence under California law (Count V), a plaintiff must allege that: "(1) the plaintiff conveyed confidential and novel information to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the defendant and the plaintiff that the confidence be maintained; and (4) there was a disclosure or use in violation of the understanding." *Google RTB*, 606 F.Supp.3d at 947–48 (citing *Berkla v. Corel Corp.*, 302 F.3d 909, 917 (9th Cir. 2002)).

Resolution of these issues raise predominant common questions, as the common evidence summarized above shows Plaintiffs and Class Members were required to (and did) communicate sensitive and confidential information to BetterHelp, including sensitive information about their

1    mental health, and reasonably expected BetterHelp would keep that information confidential.

2    BetterHelp disclosed Plaintiffs' and Class members' confidential information ██████████

3    ████████████████████████████████████████████████████████████████████████████

4    ██████ despite BetterHelp's repeated promises as part of the Intake Questionnaire (as well as

5    through the use of the false "HIPAA certified" statements and seals on its website) that it took

6    privacy seriously and would keep their information confidential. CT Seal Dec. Ex. 20 at 8584-

7    8585. BetterHelp thus knew this sensitive information was being provided by Class Members with

8    the reasonable expectation it would remain confidential. Finally, it should be undisputed an

9    individual's PHI is "novel." *Cf. Google RTB*, 606 F.Supp.3d at 948 (denying motion to dismiss

10   breach of confidence claim where plaintiffs alleged they shared, as is the case here, "health data

11   such as whether someone suffers from depression or eating disorders, or information about one's

12   race, sexual orientation, and religious belief.").

### f.    Violation of the UCL

14        Plaintiffs' UCL claims also can be established on a class-wide basis. As detailed in the

15   FACC ¶¶ 23, 129, 206, 314, 321, BetterHelp's conduct as summarized above violated no fewer

16   than eleven federal and state statutes and regulations including, *inter alia*, HIPAA, the ECPA, the

17   CIPA, the SCA and numerous California statutes in connection with disclosing and aiding the

18   interception of Plaintiffs' and Class members' sensitive PHI to unauthorized third parties,

19   constituting an "unlawful" business practice. The California Supreme Court has repeatedly held

20   that relief under the UCL is available without "individualized proof of deception, reliance, and

21   injury…" *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1267 (1992). The UCL focuses "on

22   the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger

23   purpose of protecting the general public against unscrupulous business practices." *Stearns v.*

24   *Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011). Where Plaintiffs present evidence of a

25   uniform practice based on a series of declarations describing the same practices, there is a

26   substantive inference of a pattern of unlawful conduct that can be resolved at trial on a class-wide

27   basis. *See Podolsky v. First Healthcare Corp*, 50 Cal. App, 4th 632, 654 (1996)("[D]eclarations

28   from several persons who had virtually identical experiences…is sufficient to raise an inference

29

1    that a pattern or course of conduct exists.") Plaintiffs' and Class Members' right to equitable

2    monetary relief flows automatically from showing such a statutory violation, as the UCL requires

3    the surrender of all monies flowing from BetterHelp's illegal business practices. *Bank of the West*,

4    2 Cal.4th at 1267 ("One requirement of such enforcement is a basic policy that those who have

5    engaged in proscribed conduct surrender all profits flowing therefrom.")(internal citations

6    omitted). Once Plaintiffs show they lost money and were injured in fact as a result of BetterHelp's

7    business practices (which only the Plaintiffs must show, not other Class Members) "no further

8    individualized proof of injury or causation is required to impose restitution liability against the

9    defendant in favor of absent class members." *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th

10    145, 154 (2010).

11        Both the FACC at ¶¶ 316-318 and the FTC Complaint (FACC Ex. A at ¶¶ 70-82) sets forth

12    how BetterHelp's conduct violates various standards of "unfairness" and violates public policies

13    and moral norms regarding the need to protect the confidentiality of sensitive information and PHI

14    in general and in particular information about consumers' mental health. As set forth in the Krause

15    Report, restitution can be established on a class-wide basis. EK Rep. at ¶¶69-72. The fact that the

16    amount he states is reasonable can be equated with damages does not mean such relief cannot also

17    be considered restitution.

18        Finally, as BetterHelp's wrongful conduct primarily if not exclusively occurred in or

19    emanated from California (CT Seal Dec., Ex. 38 at 210:14-212:8, and Ex. 42 at 37:14-39:6), the

20    UCL applies to the claims of all Class members. *See, e.g., Effinger v. Ancient Organics LLC*, 657

21    F.Supp.3d 1290, 1301 (N.D. Cal. 2023) ("California courts have concluded that '[the UCL and

22    CLRA] may be invoked by out-of-state parties when they are harmed by wrongful conduct

23    occurring in California.'").

24                        **g.    Violation of the CLRA**

25        Here, the common evidence will show BetterHelp's use of Tracking Tools while purporting

26    to be "HIPAA Compliant" and making representations about maintaining the privacy and

27    confidentiality of Class Members' information was unfair and deceptive under the CLRA (Count

28    VII). Under Cal. Civ. Code § 1770(a), certain "unfair methods of competition and unfair or

30

deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful." Specifically, where a company such as BetterHelp engages in conduct that is prohibited by law, it violates Cal. Civ. Code Section 1770 (a)(14) ("Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."). Plaintiffs' CLRA claim for damages is manageable and properly certified to proceed on a class-wide basis as a result of uniform misrepresentations and omission of material facts if: (1) the omission was contrary to a representation actually made by the defendant, or (2) the omission was of a fact the defendant was obliged to disclose. *McAdams v. Monier*, 182 Cal. App. 4th 174, 185-87 (2010) (upholding certification of CLRA claim for failure to disclose material product limitations). Under the CLRA, causation on a class-wide basis can be established by materiality, which is to be presumed when the Legislature has mandated the manner of such disclosures. *See Stearns v. Ticketmaster Corp., supra*, 655 F.3d at 1022. This is because a fact is "material" for CLRA purposes and thus can form the basis for presuming reliance under the CLRA, if a plaintiff would deem it important in determining how to act in the transaction at issue. *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1289-95 (2002). In addition, reliance can be presumed for the CLRA claim where the key facts omitted are material. *Id.* at 1292-93.  Plaintiffs' CLRA claims are also manageable on a class-wide basis, as "there is no risk…that a failure of proof on the common question of materiality will result in individual questions predominating." *Amgen v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1196 (2013). Finally, the CLRA can be applied to all Class members because the wrongful conduct occurred in and emanated from California. *See Effinger*, *supra,* 657 F.Supp.3d at 1301.

### h.    Unjust Enrichment

Plaintiffs' unjust enrichment/quasi contract claim (Count VI) can also be established on a class-wide basis. Under principles of assumpsit and unjust enrichment, a benefit illegally collected or converted in violation of law must in equity and good conscience be returned to Plaintiffs and members of the Class in the form of equitable and legal restitution and restitutionary damages. *See Rose v. Abraham*, 2012 WL 78204, at \*5 (E.D. Cal. Jan. 9, 2012) ("The elements of unjust

1    enrichment are 'receipt of a benefit and unjust retention of the benefit at the expense of another'.")

2    (citing *Lectrodryer v. SeouBank*, 77 Cal. App. 4th 723, 726 (2000)). Such claims are properly

3    certified for class treatment. *See Keilholtz v. Lennox Hearth Prods., Inc.*, 268 F.R.D. 330 (N.D.

4    Cal. 2010) (certifying class of consumers asserting unjust enrichment claim, finding that issues for

5    proving unjust enrichment claims predominated and were manageable); *Galvan v. KDI Distrib.*

6    *Inc.*, 2011 WL 5116585, at *7 (C.D. Cal., Oct. 25, 2011) (certifying claims for unjust enrichment).

7    Here, as explained in the Krause Report, BetterHelp used the Tracking Tools to personally

8    obtain a benefit -- Class Members' valuable health information. EK Rep. at ¶¶ 62-68. Plaintiffs

9    and Class Members provided this valuable information to BetterHelp as prospective and actual

10   mental health patients. It would be unjust for BetterHelp to retain that benefit and profit by

11   bartering Class Members' data in exchange for valuable advertising and analytics services.

12   Numerous peer-reviewed studies and the robust market for such information show that it has

13   significant value that can be considered restitutionary damages. *Id.* at ¶¶45-61.

14                              **i.    Claim under the CCPA (for California Subclass members).**

15   The CCPA, through Cal. Civ. Code §1798.150 read in conjunction with Cal. Civ. Code

16   §1798.82, gives California residents the right to seek statutory damages ranging between $100 and

17   $750 per consumer if they can allege that "nonencrypted and nonredacted personal information . .

18   . [was] subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the

19   business's violation of the duty to implement and maintain reasonable security procedures and

20   practices appropriate to the nature of the information to protect the personal information." Cal.

21   Civ. Code § 1798.150(a)(1).

22   Resolution of this claim raises numerous common and predominant questions that can be

23   answered on a class-wide basis from common evidence. First, the CCPA defines "consumer" as a

24   "natural person who is a California resident . . . however identified, including by any unique

25   identifier." All California Subclass members meet this criterion. Second, the consumers'

26   information must also be nonencrypted, nonredacted, and personal. As summarized in the ZS Rep.

27   at ¶¶ 13, 41-96, this element also can be shown on a class-wide basis. For example, the Tracking

28   Tools' disclosure of identifiers such as ███████████████████████████████

1   ████████████████████████████████ – in combination with their medical

2   or health information satisfies § 1798.81.5(d)(1)(A) of the CCPA. ZS Rep. at ¶¶ 53, 60. See §

3   1798.150(a)(1) (citing "personal information" defined under § 1798.81.5(d)(1)(A)). The common

4   evidence cited above can also be used to show that the disclosure of Plaintiffs Jane Doe III's and

5   T.R.'s and California Subclass Members' personal information was caused by BetterHelp's

6   violation of its duty to implement and maintain "reasonable security procedures and practices"

7   resulting from its sharing of California consumers' personal information with third parties without

8   their authorization or consent. Common proof can establish there has been unauthorized access

9   and disclosure of such information to third parties, which is what is required to prove a claim under

10  the CCPA. *Stasi v. Inmediata Health Grp. Corp.*, 501 F.Supp.3d 898, 924 (S.D. Cal. 2020).

11              **j.     Claim under the SCA (for Nationwide User Subclass)**

12          The SCA defines "electronic communication service" as "any service which provides the

13  users thereof the ability to send or receive wire or electronic communications." 18 U.S.C.

14  § 2510(15). Courts construe this language broadly to encompass entities that provide two-way

15  messaging platforms that allow users to communicate with each other. *See e.g., Quon v. Arch

16  Wireless Operating Co., Inc.*, 529 F.3d 892, 902 (9th Cir. 2008) (the SCA "captures any service

17  that stands as a 'conduit' for the transmission of wire or electronic communications from one user

18  to another."), *cert. denied in relevant part*, 558 U.S. 1090, 130 S. Ct. 1011 (2009).

19          In *Harris v. comScore, Inc.*, 292 F.R.D. 579 (N.D. Ill. 2013), plaintiffs alleged defendant

20  improperly obtained and used their online activity, in violation of the Computer Fraud and Abuse

21  Act ("CFAA"). The Court certified that claim under Rule 23(b)(3), reasoning that "plaintiffs raise

22  a variety of common questions that can be resolved on a classwide basis" because "the software

23  attempts to collect the same information from all computers, and the question whether that

24  collection exceeds the scope of consent is common to all plaintiffs." *Harris*, 292 F.R.D. at 585.

25          Common issues inherent to BetterHelp's use of the Tracking Tools on its websites and apps

26  predominate over any individualized issues. This is particularly the case where any questions

27  concerning Plaintiffs' and Class members' consent to tracking is a common issue resolved by

28  HIPAA's authorization requirements – which BetterHelp has contended do not apply to it and thus

1    had no reason to comply with, and there is no evidence it ever obtained such consent.

2         It is also a common question whether BetterHelp's websites and patient portal provide

3    Plaintiffs and Class members the ability to send and receive communications from their healthcare

4    providers such as therapists that have been referred to and connected through BetterHelp. Indeed,

5    ████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████

9    █████████████ CT Seal Dec. Ex. 1 at 56:6-58:3, and Ex. 43. ████████

10   ████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████

12   ██████████ *Id.* Ex. 1 at 56:6-58:3 and Ex. 42 at 37:14-38:16.

13

14   **IV.    CLASS-WIDE    MONETARY    RELIEF    CAN    BE    MEASURED    THROUGH
         COMMON PROOF.**

15        Class certification is appropriate where damages or restitution are "'capable of

16   measurement on a classwide basis,' in the sense that the whole class suffered damages traceable

17   to the same injurious course of conduct." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir.

18   2017) (quoting *Comcast Corp.*, 569 U.S. at 34-35). Plaintiffs seek different forms of monetary

19   relief depending on the cause of action: statutory damages for the ECPA, SCA, CIPA and CCPA

20   claims; actual damages for claims for violation of privacy, implied contract, breach of confidence

21   and violation of the CLRA; punitive damages for the privacy, breach of confidence and CLRA

22   claims; and equitable restitution and restitutionary damages for the unjust enrichment and UCL

23   claims, as applicable.

24        Each form of Class Members' monetary relief can be established through common proof.

25   As statutory damages are available on the claims for violations of the ECPA, SCA, CIPA, and

26   CCPA, upon establishing entitlement to recovery, all Class or Subclass members are entitled to

27   uniform statutory damages as provided for in those statutes. *See, e.g.,Torres*, 2024 WL 4894289,

28   at *6, 9-10 (certifying CIPA class based on, *inter alia*, availability of classwide statutory damages);

1 | *Jancik*, 2025 WL 560705, at *9 (holding "the VPPA provides for statutory damages, further easing

2 | the question of individualized damages"). "To the extent that statutory damages also serve a

3 | deterrent purpose, a court undermines that purpose in denying class certification on the basis of

4 | the proportionality of actual harm and statutory liability." *Bateman v. Am. Multi-Cinema, Inc.,* 623

5 | F.3d 708, 719 (9th Cir. 2010).[9]

6 |       Plaintiffs' economic expert has further demonstrated that, based on the market for personal

7 | information, the existing markets for PHI and reliable mechanisms for measuring the monetary

8 | value of that information, and the uniform nature in which Plaintiffs' and Class Members' PHI

9 | and other private information was disclosed by BetterHelp, damages and restitution can be proven

10 | in a uniform way applicable to the Nationwide Class and California Subclass. He conservatively

11 | estimates those amounts as $200 per Class Member. EK Rep. ¶¶ 68, 72. This is a proper remedy

12 | to seek here. In *Facebook Tracking*, 956 F.3d at 599-600, the Court held that Plaintiffs had

13 | adequately established standing because they alleged their data "carr[ied] financial value" and that

14 | the defendant "profited from this valuable data.". *See also Brown v. Google LLC*, 2023 WL

15 | 5029899 at *19 (N.D. Cal. Aug. 7, 2023)(damage based on market value appropriate where Google

16 | failed to pay for collected data despite there being a "market" for it). Here, as in *Rodriquez* at *6,

17 | Plaintiffs' damages expert provides a model of unjust enrichment that "account for both elements

18 | capable of application class-wide."

19 |       In addition, as the Court found in *Rodriguez*, at *7 (citing *Ellis v. Costco Corp.*, 285 F.R.D.

20 | 492, 542-44 (N.D. Cal. 2012)), Plaintiffs can seek punitive damages as a class-wide remedy "to

21 | "punish and deter" BetterHelp based on its "conduct towards the class as a whole" for those causes

22 | of action that permit such claims (here, for BetterHelp's violation of the right to privacy and the

23 | CLRA). "It is sufficient to decide that the availability of punitive damages is amenable to classwide

24 | resolution" through common evidence. *Opperman*, 2016 WL 3844326 at *17. Plaintiffs also can

25 | seek nominal damages for all Class members for the counts that permit as award of damages based

---

[9] Such an award should be consistent with the Ninth Circuit's observations in *Montera v. Premier Nutrition Corp.*, 111 F.4th 1018, 1041–42 (9th Cir. 2024), and both the authorities cited therein and in light of the egregiousness of the conduct set forth above, but this is a matter for trial than for class certification.

on *Opperman*, 2016 WL 3844326 at *15-16, as well as this Court's ruling in *Rodriguez* permitting plaintiffs to seek nominal damages for claims based on violation of plaintiffs' and class members' right of privacy. *Rodriguez*, at *7. Even if there was some question as to the extent of each Class member's damages, the Ninth Circuit has affirmed that "damage calculations alone cannot defeat class certification." *Pulaski & Middleman, LLC, v. Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015); *Olean*, 31 F.4th at 668-69.

## V.    SUPERIORITY IS ALSO SATISFIED HERE.

A class action under Rule 23(b)(3) should be found to be superior because it will achieve "economies of time, effort, and expense" while promoting "uniformity of decisions as to persons similarly situated." *Amchem Products v. Windsor*, 521 U.S. 591, 615 (1997). As counsel's Declarations show, discovery here has involved a substantial amount of time, effort, and expense. "[G]iven the high costs of litigation, the need for expert opinion, and the risks involved, individual suits likely would not make economic sense for a substantial number of putative class members." *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 293 (N.D. Cal. 2017) (Seeborg, J.). Here, "class treatment is likely to reduce litigation costs and promote efficiency relative to trying each case individually." *McCowen v. Trimac Transp. Servs. (W.), Inc.*, 311 F.R.D. 579, 589 (N.D. Cal. 2015) (Seeborg, J.). To deny class certification would require individual Class Members bring separate suits, involving the burdensome duplication of discovery and motion practice and wasting the Court's and the parties' resources. Additionally, class treatment of this case is the "superior" method of adjudication because each class member would not have to "litigate numerous and substantial issues to establish his or her right to recover individually." *Zinser*, 253 F.3d at 1192.

This FTC's investigation ultimately resulted in BetterHelp paying $7.8 million to a portion of affected individuals and BetterHelp submitting to regular audits by the FTC for the next 20 years. However, the focus of and the compensation provided in the FTC action was not for the same harms suffered by members of the Class and Subclasses in this action. Millions of people who sought help from BetterHelp and had their private and confidential information shared with some of the world's largest advertising companies have not received full compensation under federal and state law for the separate harms resulting from BetterHelp's illegal conduct being

challenged here. While BetterHelp has previously cited to the FTC investigation and settlement as providing Class Members sufficient relief and at least implicitly arguing it as being superior to certifying the class: (1) the monies paid were only for a small portion of the Class and Subclass; (2) it was for harms largely different than what is sought here; and (3) only paid such individuals a fraction of their estimated actual and statutory damages.[10] That action and its resolution thus is not a "superior" method of proceeding on a group-wide basis.

Finally, under Rule 23(b)(3)(A)-(D): (1) Plaintiffs are unaware of any individual action or other litigation concerning the same subject matter other than an action pending in California state court that has been stayed by agreement and the Plaintiffs are coordinating with; and (2) as Better Help has previously asserted, concentration of this action in this single forum facilitates a comprehensive resolution of the controversy. CT Dec. at ¶54. As Plaintiffs set forth in their accompanying trial plan and as set forth above, there would likely be few if any manageability problems here since these claims are centered on common proof of BetterHelp's uniform tracking practices and its illegal disclosure of identifying information of millions of consumers.

## VI.    CONCLUSION

As this action satisfies the requirements of Fed. R. Civ. P. 23, Plaintiffs request the Court grant Plaintiffs' Motion for Class Certification and certify the proposed Class and Subclass; appoint Plaintiffs as Class representatives; and appoint the undersigned as Class Counsel.

Dated: May 8, 2025

*/s/ Gary M. Klinger*
Gary. M. Klinger (pro hac vice)
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: 866.252.0878
Email: gklinger@milberg.com
gabramson@milberg.com
ahoneycutt@milberg.com
rnelson@milberg.com

*Plaintiffs' Co-Lead Interim Class Counsel*

---

[10] Approximately 534,000 consumers received communications from Ankura, a settlement administrator retained by the FTC, and according to the FTC received an average payment of $14.61 as a result of the FTC settlement. (see https://www.ftc.gov/enforcement/refunds/betterhelp-refunds).

PLAINTIFFS' MPA ISO MOTION FOR CLASS CERT          Master File No. 3:23-cv-01033-RS

1

2    /s/ Christina Tusan
Christina Tusan (SBN 192203)
ctusan@ctusanlaw.com
3    TUSAN LAW, PC
680 E. Colorado Blvd. #180
4    Pasadena, CA 91101
Tel: 626-418-8203
5    Fax: 626-619-8253

6
*Plaintiffs' Co-Lead Interim Class Counsel*
7
Maureen M. Brady
Maureen M. Brady
8    McShane AND Brady LLC
1656 Washington
9    Suite 140
Kansas City, MO 64108
10    816-888-8010
Email: mbrady@mcshanebradylaw.com
11
*Plaintiffs' Co-Lead Interim Class Counsel*
12

13    /s/ Alan M. Mansfield
Alan M. Mansfield (SBN: 125998)
14    amansfield@whatleykallas.com
WHATLEY KALLAS LLP
15    1 Sansome Street, 35th Floor
PMB #131
16    San Francisco, CA 94104 /
16870 West Bernardo Drive, Ste 400, San
17    Diego, CA 92127
Phone: (619) 308-5034
18    Fax: (888) 341-5048

19    *Plaintiffs' Liaison Counsel*

20

21

22

23

24

25

26

27

28