Gary. M. Klinger (pro hac vice)
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: 866.252.0878
Email: gklinger@milberg.com

*Plaintiffs' Co-Lead Interim Class Counsel*

Maureen M. Brady (pro hac vice)
MCSHANE AND BRADY LLC
4006 Central Street
Kansas City, MO 64111
816-888-8010
Email: mbrady@mcshanebradylaw.com

*Plaintiffs' Co-Lead Interim Class Counsel*

Christina Tusan (SBN 192203)
TUSAN LAW, PC
ctusan@ctusanlaw.com
680 E. Colorado Blvd. #180
Pasadena, CA 91101
Phone: 626-418-8203
Fax: 626-619-8253

*Plaintiffs' Co-Lead Interim Class Counsel*

Alan M. Mansfield (SBN: 125998)
amansfield@whatleykallas.com
WHATLEY KALLAS LLP
1 Sansome Street, 35th Floor
PMB #131
San Francisco, CA 94104 /
16870 West Bernardo Drive, Ste 400, San Diego, CA 92127
Phone: (619) 308-5034
Fax: (888) 341-5048

*Plaintiffs' Liaison Counsel*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**IN RE BETTERHELP, INC. DATA DISCLOSURE CASES**

This Document Relates To: All Actions

**Master File No. 3:23-cv-01033-RS**

Hon. Richard Seeborg

**DECLARATION OF ALAN M. MANSFIELD IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

| | |
|---|---|
| Hearing Date: | August 28, 2025 |
| Time: | 1:30 p.m. |
| Courtroom: | 3 |
| Judge: | Hon. Richard Seeborg |

I Alan M. Mansfield, declare as follows:

1. I am an individual over the age of twenty-one (21) and I submit this Declaration based upon my own personal knowledge of the facts stated in this declaration and review of public records and other documentation.

2. I am of counsel to Whatley Kallas, LLP ("Whatley Kallas") and the primary attorney at Whatley Kallas serving as counsel for Plaintiffs in the above captioned matter in my capacity as the Court appointed interim liaison counsel. I have been involved in this litigation since from the pre-litigation process through its inception in 2023 to the present.

3. Pursuant to Fed. R. Civ. Proc. Rule 23(g), "In appointing class counsel, the court: (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class", as well as (B) "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class".

4. On July 24, 2023, I was appointed by the Court as interim Liaison Counsel for the putative class in this action (ECF 66).

5. In terms of the work I have done in identifying or investigating potential claims in this action as part of the co-counsel leadership structure for Plaintiffs in this litigation, Whatley Kallas has diligently represented the Plaintiffs and the proposed class in both our extensive pre-filing work identifying and investigating potential claims in this action as reflected in the original complaint we filed, as well as the work we have done in the over two years this action has been pending, including:

- investigating, preparing and filing one of the original class action complaints in this matter, which was filed in the United States District Court for the Northern District of California on March 11, 2023, as well as working closely with co-lead counsel in preparing the original and amended consolidated Complaints;
- litigating multiple rounds of pleadings and largely defeating Defendant's motions to dismiss the original operative and amended consolidated Complaints;

- drafting multiple discovery requests that were served on Defendant;
- participating in a substantial number of meet and confer discussions with opposing counsel regarding discovery disputes over the responses to those requests and in connection with anticipated and actual motions to compel the production of information from Better Help in order to obtain records and substantive responses to interrogatories, as well as preparing and assisting in the preparation of two discovery motions before Magistrate Judge Ryu ;
- engaging in significant and protracted negotiations with counsel for Defendant over the forms of a Plaintiffs' Non-Disclosure Agreement, Protective Order and ESI protocol, as well as over search terms and custodians for the ESI production;
- collecting and producing documents from Plaintiffs and obtaining Interrogatory responses;
- obtaining and reviewing over 81,000 pages of documents and extensive complaint databases produced by Defendant; which productions are continuing as late as last week;;
- serving non-party subpoenas on Meta, Inc., Criteo, Snap, MixPanel, Pinterest, Crazy Egg, and NextRoll, ("non-parties"), engaging in substantial meet and confer discussions with their counsel and reviewing documents produced by these non-parties;
- helping to prepare for the Rule 30(b)(6) depositions of Defendants' representatives and several present and former BetterHelp employees;
- preparing numerous stipulations and administrative motions in an attempt to resolve numerous litigation related logistics issues;
- working with consultants as well as experts in connection with the reports filed contemporaneously with Plaintiffs' motion for class certification;
- assisting in preparing Plaintiffs' motion for class certification; and
- preparing for and engaging in a mediation with Bruce Friedman of JAMS on December 5, 2023, which discussions continued for months thereafter.

6. In terms of the resources we have committed to representing the proposed class, to date Whatley Kallas attorneys and staff have collectively spent over 1,200 hours working on this case over what will be more than three years by the time this motion is considered, and incurred significant out-of-pocket expenses at this point collectively totaling over $50,000.00. We have thus demonstrated our commitment to expending the skill, time and resources needed to pursue this case to a successful resolution.

7. In terms of counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action, as indicated in Whatley Kallas's firm resume, attached hereto as Exhibit 1, the attorneys at Whatley Kallas have a long history of representation of consumers and providers in health care related litigation, including data breach and unauthorized access cases, and have a strong national reputation in complex healthcare litigation and class action litigation generally. Whatley Kallas is a law firm composed of experienced class action litigators who have been routinely appointed as Class Counsel nationwide in a variety of cases. My personal litigation background and qualifications are contained at p. 12 of that Exhibit.

8. Whatley Kallas's attorneys have repeatedly been appointed to leadership positions in numerous class cases, including many major healthcare cases. For example, Ms. Kallas and Mr. Whatley are currently serving as co-lead counsel in *In re Blue Cross Blue Shield Antitrust Litigation*, MDL 2406 (N.D. Ala), which is the subject of a motion for final approval of a $2.8 billion class-wide settlement. They were also members of the steering committee in *In re: Managed Care Litigation*, which led to the Eleventh Circuit's decision regarding class certification in *Klay v. Humana*, 382 F.3d 1241, 1254 (11th Cir. 2004). Ms. Kallas served as co-lead counsel in the related *Love v. Blue Cross* litigation, No. 03-cv-21296 (S.D. Fla. filed 2003). Other cases where our firm has demonstrated experience in litigating and resolving complex litigation (including health care related matters) include *Waterbury Hospital v. U.S. Foodservice*, No. 06-cv-01657 (D. Conn. 2014) (served as co-lead counsel for a certified class of customers resulting in a settlement of $297 million); *Scher v. Oxford Health Plans* (served as lead counsel in a statewide class arbitration on behalf of physicians in New York resulting in a settlement of $22 million); *In re Insurance Brokerage Litigation*, No. 04-cv-05184 (D. N.J. filed 2004) (served as

co-lead counsel in antitrust and RICO action resulting in settlements with Marsh & McClennan, AIG, Zurich Insurance Company and Arthur J. Gallagher, together totaling over $250 million); *Parsons v. Brighthouse Networks, LLC,* No. 09-cv-00267 (N.D. Ala. 2015) (served as co-lead counsel for a nationwide class in an antitrust action which reached a settlement valued at approximately $91 million in monetary relief and $72 million in injunctive relief); *In re Puerto Rican Cabotage Antitrust Litigation,* No. 08-md-01960 (D.P.R. filed 2008) (served as co-lead counsel representing purchasers in a class action alleging the defendants conspired to fix prices of shipping services to and from Puerto Rico resulting in settlement involving monetary and non-monetary relief exceeding $100 million in value); *In re Lorazepam and Clorazepate Antitrust Litigation*, M.D.L. No. 1290 (D.D.C. 2005) (third party payor lead class counsel in an antitrust action where settlements of over $100 million were achieved); *In re: Qwest Savings and Retirement Plan ERISA Litigation*, No. 02-cv-00464 (D. Colo. 2007) (served as co-lead counsel in action resulting in approximately $37.5 million settlement). We have also been Court appointed class counsel in several actions involving authorized data sharing and access, including *Doe v. CVS* (S.D. Oh. Case No. 2:18 cv-00238-EAS-CMV, filed in 2018) (class action settlement approved in January 2020 arising out of Ohio ADAP mailing by CVS that revealed sensitive HIV related information, providing for over $2 million in payments to affected individuals); and *Doe v. California Department of Public Health, et al.*, (Los Angeles County Superior Court Case No. 20STCV32364, filed in 2020) (class action settlement for over $1.4 million, including programmatic relief, arising out of the violation of the privacy rights of hundreds of recipients of HIV/AIDS medications in California). Settlement of class cases that we have litigated and resolved has resulted in billions of dollars of relief for the nationwide classes of health care consumers and providers, including both monetary relief and significant corporate reform.

9. Based on these and other cases, Whatley Kallas has extensive experience representing plaintiffs in class actions, demonstrating counsel's ability to fairly and adequately represent the interests of the class.

10. To the best of my knowledge, neither Whatley Kallas nor the other Plaintiffs' counsel have a conflict of interest in representing the proposed class in this matter.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 8th day of May, 2025 at San Diego, California.

*<u>/s/ Alan M. Mansfield</u>*
Alan M. Mansfield

# Exhibit 1

WhatleyKallas
Litigation & Healthcare Group

# I. Introduction

Whatley Kallas, LLP, is comprised of a nationally recognized group of attorneys with a long history of representation of plaintiffs and plaintiff classes in complex litigation, especially in the consumer and healthcare area. Its partners have served as Co-Lead Counsel in numerous high profile class actions that have recovered billions of dollars for class members and have achieved significant corporate reforms.

Whatley Kallas operates offices in California, Colorado, New York, Georgia, Alabama, Massachusetts, New Hampshire and Florida.

The attorneys of Whatley Kallas have gained a national reputation for their aggressive litigation style and quality legal work, particularly in their handling of complex cases. Collectively, the attorney group has tried numerous cases to verdict and has recovered billions of dollars in cash and significant corporate reforms for their clients.

The lawyers of Whatley Kallas have been repeatedly recognized in legal publications, such as *The National Law Journal* and *American Lawyer*, by their peers.

The firm's lawyers have gained a national reputation for their aggressive litigation style and their quality legal work. A significant aspect of the Firm's resources is its ability to try a complex case. One of the Firm's founding partners, Joe R. Whatley, Jr., is an experienced trial lawyer and is one of the few lawyers representing plaintiffs in complex class action litigation who has tried a class action case to verdict. He won a $1.28 billion jury verdict on behalf of a class of cattle ranchers against Tyson Fresh Meats, Inc. in Pickett v. Tyson Fresh Meats, Inc., No. 96-A-1103-N (M.D. Ala.). Mr. Whatley also won what was at the time the largest wrongful death verdict in Louisiana history in Dunn v. Consolidated Rail Corp., 890 F. Supp. 1262 (M.D. La.). Mr. Whatley's experience in this regard has made him a highly sought-after member of plaintiffs' leadership groups in numerous complex and multidistrict litigations. More recently, Mr. Whatley and other attorneys from Whatley Kallas have tried a number of class actions before juries, including, *In re Cox Enterprises, Inc. Set-Top Cable Television Antitrust Litigation*, No. 12-ml-2048 (W.D. Okla.), to a plaintiffs' jury verdict and *Levinson v. Westport National Bank*, which settled immediately before closing arguments to the jury. Whatley Kallas's experience in this regard has made it a highly sought-after member of plaintiffs' leadership groups in numerous complex and multidistrict litigations. Since these verdicts, Whatley Kallas has tried a number of jury and non-jury cases and arbitrations.

The firm's partners have also gained a national reputation for their consistent dedication to the interests of their clients by achieving results which include both compensation to victims of wrongdoing and significant industry reforms.

**Whatley Kallas's attorneys have been appointed to leadership positions in numerous cases.** For example, Joe Whatley and Edith Kallas serve as Co-Lead Counsel for the class of Provider Plaintiffs in the ongoing case entitled *In re Blue Cross Blue Shield Antitrust Litigation MDL 2406*, No. 13-cv-20000 (N.D. Ala.), pending in the Northern District of Alabama. Examples of cases in which Whatley Kallas attorneys served in a leadership role and were extensively involved in the litigation and negotiation of settlements include: *Waterbury Hospital v. U.S. Foodservice*, No. 07-md-1894 (D. Conn.) (served as Co-Lead Counsel in action resulting in a $297 million settlement); *Love v. Blue Cross Litigation*, No. 03-cv-21296 (S.D. Fla.) and the related case entitled *In re: Managed Care Litigation* (served as Co-Lead Counsel and members of the steering committee, respectively, in actions resulting in billions of dollars in value, consisting of monetary relief and significant corporate reform, to classes of 900,000 physicians throughout the United States); *Scher v. Oxford Health Plans* (served as lead counsel in statewide class arbitration on behalf of physicians in New York resulting in a settlement of $22 million); *In re Insurance Brokerage Antitrust Litigation*, No. 04-cv-05184 (D. N.J.) (served as Co-Lead Counsel in action resulting in settlements with Marsh & McClennan, AIG, Zurich Insurance Company and Arthur J. Gallagher, together totaling over $250 million); *Levinson v. Westport National Bank*, No. 09-cv-00269 (D. Conn.) (served as lead counsel in action resulting in a $7.5 million settlement for retirees and small investors most of whom were doctors on the eve of closing argument of a jury trial); and the HIV/AIDS Specialty Medications Mail Order Litigations, which were filed against a number of healthcare companies in the country and resulted in significant practice reforms, as well as *Feller v. Blue Cross of California*, No. 56-2010-00368587-CU-BT-VTA (Ventura Super. Ct.) (remedying the practice of trapping members in a closed plan subject to dramatically increasing premiums).

## II. Firm Litigation

A more detailed description of representative cases in which attorneys at Whatley Kallas have served in leadership roles includes, among others:

***In re Blue Cross Blue Shield Antitrust Litigation MDL 2406*, No. 13-cv-20000 (N.D. Ala.).** Co-Lead Counsel for the class of Provider Plaintiffs in this action. The Provider Plaintiffs (including hospitals, physicians, surgery centers, chiropractors, and other healthcare providers) have alleged that all insurers licensing the Blue Cross or Blue Shield trademarks reached explicit agreement to divide the United States into geographic markets called "Service Areas" and to allocate those geographic markets, free of competition, among themselves. The Provider Plaintiffs have also challenged the agreements reached by the Blues to fix prices for services rendered by healthcare providers through the Blue Card Program. The Provider Plaintiffs' claims have survived Motions to Dismiss, and the case is ongoing.

***In re Cox Enterprises, Inc. Set-Top Cable Television Antitrust Litigation*, No. 12-ml-2048 (W.D. Okla.).** Co-Lead Counsel on behalf of a certified plaintiff class of Oklahoma City Cox customers alleging that the cable provider Cox unlawfully tied its premium cable service to rental of its set-top boxes. After a two-week trial, the jury awarded the plaintiffs $6.31 million in damages, which were trebled to $18.93 million. After the jury verdict, the Court entered an Order directing verdict for the Defendant.

***Davis-Hudson v. 23andme, Inc.,* Am. Arb. Ass'n, No. 74-20-1400-0032**. Co-Lead Counsel on behalf of Plaintiff in a class arbitration involving alleged false advertising of genetic testing products in violation of California consumer protection laws resulting in a $22 million settlement.

***Feller v. Blue Cross of California*, No. 56-2010-00368587-CU-BT-VTA (Ventura Super. Ct.).** Served in lead role in class action successfully brought to remedy the practice of trapping members in a closed plan subject to dramatically increasing premiums. Under the settlement, among other relief, class members were allowed to switch plans without underwriting until 2014, at which time preexisting conditions will no longer serve as a basis for denying health insurance.

**HIV/AIDS Specialty Medications Mail Order Litigations.** Served in lead role in successfully brought actions against a number of major health insurance companies in the United States involving their requirements to obtain HIV/AIDS specialty medications by mail order. These companies have agreed to resolve these issues, either as part of a class action settlement or other agreements obligating those companies to change or cancel their mail order programs as to HIV/AIDS specialty medications, ultimately impacting an estimated 50,000 consumers nationwide. These cases include: *Doe v. United Health Care*, No. 13-cv-00864 (C.D. Cal.) (national class action settlement approved in July 2014 permitting consumers to opt out of mail order program); *Doe v. Cigna Health Care*, No. 15-cv-60894 (S.D. Fla.) (national settlement implemented in December 2015 that removed HIV/AIDS specialty medications from the mandatory mail order tier); *Doe v. Blue Cross of California*, No. 37-2013-31442 (San Diego Super. Ct.) (California-only settlement implemented in May 2013 cancelling mandatory mail order program); and *Doe v. Anthem, Inc.* (national settlement implemented in June 2016 that also removed HIV/AIDS specialty medications from the mandatory mail-order requirement tier for all of Anthem's subsidiaries in the United States).

***In re Insurance Brokerage Antitrust Litigation*, MDL No. 1663, No. 04-cv-05184 (D.N.J.).** Co-Lead Counsel in action involving class of purchasers of commercial and employer benefit insurance against many of the largest insurance companies and brokers in the country relating to these companies' alleged participation in a conspiracy to manipulate the markets for insurance. Settlements with the majority of the defendants were reached including Marsh & McClennan, AIG, Zurich Insurance Company and Arthur J. Gallagher, together totaling over $250 million.

***Levinson v. Westport National Bank*, No. 09-cv-00269 (D. Conn.).** Lead counsel for certified class of hundreds of retirees and small investors who lost the bulk of their savings in the aftermath of the Bernard Madoff scandal. This action alleged that the bank breached numerous contractual and fiduciary duties to the investors in its administration of their accounts. After a two-week trial, on the eve of closing arguments, a settlement was reached in the amount of $7.5 million for the Class.

***In re Lorazepam and Clorazepate Antitrust Litigation*, MDL No. 1290 (D.D.C.).** Third Party Payor Lead Class Counsel in an antitrust action. Settlements of over $100 million were achieved.

***Love v. Blue Cross Blue Shield Association*, No. 03-cv-21296 (S.D. Fla.).** Co-Lead Counsel in this action, which alleged that defendants engaged in a civil conspiracy in violation of the Racketeering Influenced and Corrupt Organizations Act to wrongfully and fraudulently pay doctors less than the amounts to which they were entitled. Settlements were reached with approximately ninety percent (90%) of the defendants. The settlements consisted of billions of dollars in value, consisting of monetary relief and significant corporate reforms.

***In re Managed Care Litigation*, MDL No. 1334, No. 03-cv-21296 (S.D. Fla.).** Members of the Plaintiffs' Steering Committee in this action against nine of the largest managed care providers in the United States, including Aetna, Cigna, United, Healthnet, Humana, PacifiCare, Prudential, and WellPoint. This action alleged that these defendants engaged in a civil conspiracy in violation of the Racketeering Influenced and Corrupt Organizations Act to wrongfully and fraudulently pay doctors less than the amounts to which they were entitled. Settlements were reached with Aetna, Cigna, Healthnet, Humana, Prudential, and Wellpoint consisting of monetary relief and significant business practice changes valued in the billions of dollars.

***In re Mattel, Inc. Toy Lead Paint Products Liability Litigation*, MDL No. 1897.** Class of consumers of toys recalled due to their lead content or that were defectively designed with magnets which could come loose and potentially injure children manufactured and sold by Mattel and Fisher Price. A settlement providing for refunds of the purchase price of the toys and reimbursement for prior lead testing was obtained for class members and approved by the United States District Court for the Central District of California.

***In re NVIDIA GTX 970 Graphics Chip Litigation*, 3:15-cv-00760-CRB (N.D. Cal.)**. Co-Lead Counsel for a class action lawsuit relating to complex product defect and false advertising claims that we were able to settle after years of litigation for a settlement valued at over $30 million.

***Parsons v. Brighthouse Networks, LLC*, No. 09-cv-00267 (N.D. Ala.).** Co-Lead Counsel for a nationwide class of Brighthouse cable customers alleging that Brighthouse abused its market power to illegally tie the rental of a set top box to the purchase of premium cable from Brighthouse. The parties reached a settlement valued at approximately $91 million dollars in monetary relief and $72 million dollars in injunctive relief.

***Pickett v. Tyson Fresh Meats, Inc.*, No. 96-A-1103-N (M.D. Ala.).** Co-Lead Counsel representing a class of cattle ranchers against the major beef packers and producers in the country for conspiring to depress the price of beef on the cash market. In addition to serving in a leadership position in this action, Joe R. Whatley served as trial counsel in the Middle District of Alabama for the plaintiff class and obtained a $1.28 billion jury verdict for the class of ranchers and cattle producers. The verdict was ultimately vacated.

***Pineda v. Vitamin Shoppe.*** Class of purchasers of Vitamin Shoppe's "Especially for Women" vitamins. The complaint alleged that testing revealed some of these vitamins were contaminated by lead and/or contained less calcium than the label indicated. Vitamin Shoppe denied all wrongdoing. A settlement was obtained on behalf of the class, who received refunds of 100% of the value of the purchase price of the products or 125% of the purchase price if they choose store credit, which was approved by the Superior Court for Bergen County, New Jersey.

***In Re Puerto Rican Cabotage Antitrust Litigation*, No. 08-md-01960 (D.P.R. ).** Co-Lead Counsel representing purchasers in a class action alleging that Defendants conspired to fix the prices of shipping services to and from Puerto Rico. A settlement was reached resulting in monetary and non-monetary relief exceeding $100 million in value.

***Omni Healthcare, Inc. et al. v. Health First, Inc. et al.*, No. 13-cv-01509 (M.D. Fla. 2013).** Whatley Kallas handled this antitrust case for doctors and other healthcare professionals through selection of the jury. The night after opening statements, the Defendants agreed to pay Whatley Kallas' clients $32 million dollars.

***Scher v. Oxford Health Plans*, AAA Case No. 11 193 00548 05.** Lead Counsel in this statewide class arbitration on behalf of a class of physicians in the state of New York, which resulted in a settlement of $22 million.

***Spencer v. Shell Oil*.** Homeowner suit in connection with polybutylene plumbing throughout the United States in this action in the Circuit Court of Greene County, Alabama. A settlement of approximately $1 billion to repair and replace leaking pipes and fittings for homeowners was obtained.

***Waterbury Hospital v. U.S. Foodservice*, No. 06-cv-01657 (D. Conn.).** Co-Lead Counsel for a certified class of customers in a case involving an alleged scheme whereby USF, the second largest food distributor in the United States, fraudulently inflated the prices it charged to its cost-plus customers. Plaintiffs alleged that USF's customers were charged, pursuant to cost-plus agreements, inflated prices that represented the cost of products plus a kickback to their suppliers. After class certification was affirmed by the Second Circuit and cert was denied, the case settled for $297 million.

***White v. Bed Bath and Beyond*.** A class of purchasers of bedding and linen products from Bed Bath and Beyond. Bed Bath and Beyond inflated the thread count of certain two-ply and multi-ply linens and other bedding products by counting threads in a manner which the Federal Trade Commission has ruled is deceptive to consumers. A settlement was reached with Bed Bath and Beyond, which provided refunds or gift cards to purchasers of these bedding products, which was approved by the United States District Court for the District of New Jersey.

## III. Biographies

**Joe R. Whatley, Jr.**

Joe Whatley grew up in Monroeville, Alabama, the setting for *To Kill A Mockingbird*. Mr. Whatley is one of the few lawyers in the country to have argued before the United States Supreme Court as well as tried class actions to jury verdict for plaintiffs and defendants. He has a wide-ranging, national practice. He has argued cases before a majority of the Circuit Courts of Appeals in the country and tried cases in a number of different State and District Courts, before Judges and juries. For the past several decades, his practice has concentrated in the representation of healthcare providers including healthcare systems to redress abuses by managed care companies.

He is a graduate of Harvard College (A.B., *cum laude*, 1975), and the University of Alabama School of Law (J.D., 1978). Mr. Whatley is a member of the Bar in the States of Alabama, Texas, Colorado and New York, and is admitted to practice before the United States Supreme Court, the United States District Court for the Middle, Southern and Northern Districts of Alabama, the Southern, Eastern and Northern Districts of New York, the Northern, Southern, Eastern and Western Districts of Texas, the Eastern and Western Districts of Michigan, the Eastern District of Wisconsin, the Northern District of Florida, the Northern District of Illinois, and the District of Colorado, as well as the United States Court of Appeals for the First, Second, Third, Fourth, Fifth, Sixth, Ninth, Tenth, Eleventh, and District of Columbia Circuits. After graduating from the University of Alabama School of Law, Mr. Whatley served as a law clerk to the Honorable Frank H. McFadden, who was then Chief United States District Judge for the Northern District of Alabama (1978-1979). Mr. Whatley is a member of the American Bar Association (Member, Sections on: Labor and Employment Law; Litigation; Antitrust Law; Health Law), a member and past President (1990-1991) of the Birmingham Federal Bar Association, and a member and past President (1990-1991) of the Labor and Employment Law Section of the Alabama State Bar.

For more than a decade Mr. Whatley has focused his practice on healthcare and antitrust cases. His healthcare cases have primarily been against health insurance companies. Mr. Whatley was appointed Co-Lead Counsel for the Provider Plaintiffs in *In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406. He was one of the most active lawyers in Court proceedings in *In re Managed Care Litigation* and in *Thomas/Love v. Blue Cross*, and was one of the principal negotiators of the path-breaking settlements in both of those proceedings that resulted in billions of dollars in value, consisting of monetary relief and significant practice changes in the managed care industry. He represents providers of healthcare of all types in disputes with health insurance companies.

He is also an experienced trial lawyer, having tried numerous cases, including class actions, to verdict. For example, Mr. Whatley won a $1.28 billion jury verdict on behalf of a class of cattle ranchers against Tyson Fresh Meats, Inc. in *Pickett v. Tyson Fresh Meats, Inc.*, No. 96-A-1103-N (M.D. Ala.) and won what was at the time the largest wrongful death verdict in Louisiana history in *Dunn v. Consolidated Rail Corp.*, 890 F. Supp. 1262 (M.D. La. 1995). In addition, he has tried other class action cases to successful jury verdicts for plaintiffs and defendants.

Mr. Whatley has been recognized by his peers as one of the top lawyers in the country. He has been admitted as a Fellow to the American College of Trial Lawyers as well as a member of the International Academy of Trial Lawyers. In 2011, he was selected as one of the top 100 lawyers in the New York Metropolitan Area. He has been selected each year for decades as one of the Best Lawyers in Alabama.

**E-MAIL: jwhatley@whatleykallas.com**

**Edith M. Kallas**

Ms. Kallas was born in New York, New York. Ms. Kallas graduated from the Juilliard School in 1984 with a B.M. in Music Performance and from the Fashion Institute of Technology with an A.A.S., summa cum laude. She is a 1987 graduate of the Benjamin N. Cardozo School of Law,

where she was a member of the Moot Court Board. Ms. Kallas is admitted to the New York and Colorado State Bars, the United States Supreme Court, the United States District Court for the Southern, Eastern and Northern Districts of New York, the United States District Court for the District of Colorado, and the United States Courts of Appeal for the Second, Third, Sixth, Ninth, Eleventh, and District of Columbia Circuits. She is also a member of the American Bar Association (Health Law Section), Association of the Bar of the City of New York, the New York State Bar Association, the New York County Lawyers' Association, the Colorado Bar Association and the American Society of Medical Association Counsel.

In April of 2004, Ms. Kallas was honored by thirteen State and County Medical Societies, who presented her with an award "For the Success Attained in her Relentless Pursuit of Justice for the Physicians of America and their Patients." Also in 2004, Ms. Kallas was named by the New York County Lawyers' Association as one of the "Outstanding Women of the Bar." In 2005, the National Law Journal featured Ms. Kallas in their UP CLOSE section in an article entitled, "HMO Settlement: A Fairer Deal for Doctors." The National Law Journal also featured Ms. Kallas and her partner Joe Whatley in an article entitled "Case Puts Doctors Back in the Driver's Seat" in 2007. In 2011, the National Law Journal recognized Ms. Kallas in a feature article entitled, "In Insurance Fights, a Healthy Return for Firm – With Wellpoint Case." In February 2013, Ms. Kallas was highlighted in the *Big Suits* section of the American Lawyer Magazine in connection with the In re Aetna UCR Litigation settlement.

Ms. Kallas concentrates her practice in the areas of healthcare, insurance and consumer litigation. She represents healthcare providers, patients and members of the organized medicine community including physicians, ancillary providers, ambulatory surgical centers, durable medical equipment providers, as well as numerous national, state and county medical societies throughout the country. Her medical association clients have included the American Medical Association, Medical Society of the State of New York, Connecticut State Medical Society, Medical Society of New Jersey, California Medical Association, Florida Medical Association, Texas Medical Association, South Carolina Medical Association, Tennessee Medical Association, Northern Virginia Medical Societies, North Carolina Medical Society, Nebraska Medical Association, Washington State Medical Association, Hawaii Medical Association, Alaska State Medical Association, Rhode Island Medical Society, Vermont Medical Society, New Hampshire Medical Society, El Paso County Medical Society, and the California Chiropractic Association.

Ms. Kallas represents healthcare providers in litigation, arbitration, negotiations, and contracting, and provides day-to-day consultation and advocacy services in connection with a broad range of issues facing providers today. She has also represented healthcare providers and medical associations in numerous class actions pending in federal and state courts (including representation of a certified class of approximately 900,000 physicians throughout the United States). Ms. Kallas was appointed Co-Lead Counsel for the Provider Plaintiffs in *In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406. She has also served as Co-Lead Counsel in the *Love et al. v. Blue Cross Blue Shield Association et al*. in the United States District Court for the Southern District of Florida; on the Steering Committee in the *In re Managed Care* action; as Co-Lead Counsel and a member of the Executive Committee in the UCR Class Actions against Wellpoint (C.D. Cal.), CIGNA and Aetna; as Lead Counsel in the *Scher v. Oxford* physician class arbitration; and has served as lead counsel in numerous state court

healthcare actions. Ms. Kallas also served as Co-Lead Counsel in the *In re Insurance Brokerage Antitrust Litigation* in the District of New Jersey against major brokerage and insurance companies on behalf of classes of businesses and employees who purchased insurance, including healthcare insurance. She was one of the principal negotiators of settlements with Aetna, Cigna, Healthnet, Prudential, Humana, Wellpoint and 90% of all the Blue Cross entities in the country on behalf of nationwide classes of physicians and medical societies that have resulted in billions of dollars in value, consisting of monetary relief and significant corporate reforms, to physicians throughout the country. The settlements have resulted in significant business practice changes that are viewed as setting a new standard in the healthcare industry in the best interests of physicians and their patients.

Ms. Kallas has also served in a lead role in *Doe v. United Health Care*, No. 13-cv-00864 (C.D. Cal.) (national class action settlement approved in July 2014 permitting consumers to opt out of mail order program); *Doe v. Cigna Health Care*, No. 15-cv-60894 (S.D. Fla.) (national settlement implemented in December 2015 that removed HIV/AIDS specialty medications from the mandatory mail order tier); *Doe v. Blue Cross of California*, No. 37-2013-31442 (San Diego Super. Ct.) (California-only settlement implemented in May 2013 cancelling mandatory mail order program); and *Doe v. Anthem, Inc.* (national settlement implemented in June 2016 that also removed HIV/AIDS specialty medications from the mandatory mail-order requirement tier for all of Anthem's subsidiaries in the United States), and was a principal negotiator of the settlements in those actions. Ms. Kallas has also given legislative testimony regarding issues affecting physicians and successfully handled, on a pro bono basis, an appeal for a patient requiring lifesaving treatment.

Ms. Kallas is the co-author of "Gender Bias and the Treatment of Women As Advocates," Women in Law 1998. Ms. Kallas has also participated as a Faculty Member and/or Speaker in connection with the following presentations: "Class Action Healthcare Litigation," ALI-ABA Healthcare Law and Litigation Conference, 1999; "Class Actions: HMOs and Healthcare Providers Under Attack," ALI-ABA Life and Health Insurance Litigation Conference, 2000; "Providers (Suits by Doctors and Hospital Class Actions)," ALI-ABA Healthcare Law and Litigation Conference, 2000; "The Application of ERISA and RICO Theories in the Age of Managed Care," The Judges and Lawyers Breast Cancer Alert, 2000; "Healthcare Litigation: What You Need to Know After Pegram," Practicing Law Institute, 2000; "Provider Suits by Doctors and Hospitals v. HMOs," ALI-ABA Healthcare Law and Litigation Conference, 2001; The Joint Seminar Session of the School of Allied Health and Health Law Section at Quinnipiac University School of Law, 2001; The CLE Conference presented by the American Society of Medical Association Counsel, 2002; "The Unique Role of The Medical Society Effectively Litigating for Change in the Healthcare Arena," American Academy of Otolaryngology Presidential Board of Governors Special Seminar 2002; "The Future of Class Action Litigation in America," The CLE Conference presented by the American Bar Association, 2005; "Gender Bias in Litigation and the Trend Toward Diversity in Multi-District Litigation Proceedings," Mass Torts and Class Actions CLE Summit (Whatley Drake LLC Continuing Legal Education Conference) 2006 and 2007; "Arbitration Issues in Class Action Suits: How *Bazzle* Changed the Landscape of Class Arbitration," Whatley Drake & Kallas LLC Continuing Legal Education Conference 2007, ASMAC 2008; "Forum Shopping: Defendants Do It Too," Symposium on the Class Action Fairness Act and published in the Newsletter of the ABA Tort Trial and Insurance Practice Section Business Litigation Committee, Winter 2007; "Ingenix Litigation Update,"

ASMAC 2010; “Negotiating Skills for Career Advancement,” Connecticut State Medical Society Professional Development Conference for Women in Medicine CME, May 2010; and “National Trends in Provider Contracting,” Connecticut State Medical Society, “Managed Care Contracting: Anatomy of a Contract” Seminar, April 2012; “Avoiding Traps in Alternative Dispute Resolution,” American Medical Association Webinar, February 2013; “Contract Negotiation Skills,” Connecticut State Medical Society Professional Development Conference for Women in Medicine CME; “Update on Antitrust in Healthcare Cases,” American Society of Medical Association Counsel Meeting, June 2015; "MDL Process and Procedures, Selection of Lead Counsel," Miami Law Class Action & Complex Litigation Forum, December 2016; "Health Insurer Predatory Practices," ASMAC 2018; "Ethics Issues in Large Scale Litigation," Miami Law Class Action & Complex Litigation Forum, January 2020.

**E-MAIL: ekallas@whatleykallas.com**

**Patrick J. Sheehan**

Mr. Sheehan heads the Firm’s Boston, Massachusetts office. Mr. Sheehan’s practice focuses on complex litigation involving health care law and consumer protection issues. As part of his practice, Mr. Sheehan represents a wide array of health care providers and consumers in class actions and other complex litigation pending throughout the country. Mr. Sheehan’s health care practice focuses on issues concerning health care financing, including provider reimbursement, health insurance coverage issues and antitrust matters. Mr. Sheehan’s consumer protection practice concentrates on issues related to health insurance, other types of insurance, data breach and privacy litigation, and myriad other issues implicating consumer protection law.

Mr. Sheehan is a graduate of the College of the Holy Cross and Northeastern University School of Law, where he was an editor of the NU Forum. Mr. Sheehan is a member of the American Bar Association, the Massachusetts Bar Association, the Massachusetts Academy of Trial Attorneys and the Boston Bar Association. Mr. Sheehan is a past President and longstanding member of the Board of Directors of the Holy Cross Lawyers Association and a member of the Holy Cross Alumni Association Board of Directors. Mr. Sheehan is also a long-time member of the Massachusetts Bar Association’s Health Law Section Council and a member of the American Society of Medical Association Counsel. Mr. Sheehan has been recognized as a Super Lawyer for his work in class actions for years and frequently speaks on issues concerning health care law and class actions.

Mr. Sheehan is a member of the Massachusetts and New York bars and is admitted to practice before the United States District Courts for the District of Massachusetts, the Southern and Eastern Districts of New York, the Northern District of Illinois, the District of Colorado, the Eastern District of Michigan, the United States Courts of Appeals for the First, Third, Fourth and Eleventh Circuits and the United States Supreme Court.

**E-MAIL: psheehan@whatleykallas.com**

**W. Tucker Brown**

Mr. Brown’s practice focuses primarily on the areas of healthcare, antitrust and other complex litigation. Mr. Brown represents a wide array of healthcare clients, including national and state

medical associations, physicians, hospitals, surgical centers and other healthcare providers in litigations, including national class actions, arbitrations and other forms of dispute resolution. Much of the focus of Mr. Brown's practice is representing healthcare providers in disputes with managed care companies and insurers. In 2016, Mr. Brown was named one of Law360's six "Rising Stars" in Health Law. Mr. Brown was selected as an Alabama Super Lawyers "Rising Star" from 2012-2019, and Super Lawyer in 2020 and 2021. He was a Mid-South Super Lawyer selection in 2020 and 2021.

Mr. Brown presently represents health care providers in antitrust litigation challenging illegal price fixing, market allocation, boycotts and other anticompetitive schemes in cases including *In re Blue Cross Blue Shield Antitrust Litigation*, No. 2:13-cv-20000 (MDL 2406)(N.D. Ala.); a regional hospital system against major insurers in arbitration regarding Medicare Advantage plans resulting in settlements to date of over $20 million; an eating disorder treatment center in claims against a national insurer in arbitration for claims involving breach of contract.

Mr. Brown has been involved in numerous noteworthy healthcare and antitrust cases including *Kissing Camels Surgery Center, LLC, et al. v. Centura Health Corp., et al.*, No. 1:12-cv-03012-WJM-NYW (D. Col.), where Mr. Brown led the five-year litigation on behalf of four Colorado surgery centers involving antitrust claims against large hospital groups and insurers for working to exclude those surgery centers from the Colorado market. The *Kissing Camels* litigation ultimately resulted in successful settlements for each of four Colorado ambulatory surgery centers. Mr. Brown helped lead the litigation efforts in *Parsons v. Brighthouse Networks* where Whatley Kallas represented a nationwide class in an antitrust action against a cable company for tying. Whatley Kallas helped reached a settlement in that case valued at approximately $91 million dollars in monetary relief and $72 million dollars in injunctive relief. Mr. Brown was part of the trial team in the *In re Cox Enterprises Inc. Set-Top Cable Television Box Antitrust Litigation*, No. 5:12-ml-02048 (MDL 2048) (W.D. Okla.) case which tried the case through to a Plaintiffs' verdict, though it was subsequently overturned.

Mr. Brown has been a member of the Alabama Bar since 2004 and is admitted to practice before the United States Court of Appeals for the Eleventh Circuit, as well as the U.S. District Courts for the Northern, Middle and Southern Districts of Alabama, and the U.S. District Court for the District of Colorado. He obtained his B.A. in Economics and Political Science from Vanderbilt University and received his J.D., *magna cum laude*, in 2004 from the Georgetown University Law Center, where he was Order of the Coif. Following law school, he served as law clerk to Hon. William M. Acker, Jr., U.S. District Court for the Northern District of Alabama from 2004 to 2005. He is a member of the Alabama State Bar, the American Bar Association (Healthcare and Antitrust Sections), and the Birmingham Bar Association. Mr. Brown has served as the President of The Community Kitchens of Birmingham. He was born in Birmingham, Alabama.

**E-MAIL: tbrown@whatleykallas.com**

**Henry C. Quillen**

Mr. Quillen has extensive experience litigating matters involving healthcare and antitrust issues. He has briefed and argued dispositive motions in *In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406, and he was one of the primary attorneys representing the plaintiffs in

*OMNI Healthcare, Inc. v. Health First, Inc.*, which resulted in a $32 million settlement. He has also obtained a favorable ruling from the Arkansas Supreme Court on behalf of an air ambulance provider in *Air Evac EMS, Inc. v. USAble Mutual Insurance Co.* The D.C. Circuit cited Mr. Quillen's amicus brief for the American Medical Association when affirming an injunction against the merger of Anthem and Cigna in *United States v. Anthem*. In 2016, Mr. Quillen was named a "Rising Star" by Law360 for his work in competition law, one of just seven attorneys to be honored in his field that year.

Before joining Whatley Kallas, Mr. Quillen was an associate in the litigation department of Sullivan & Cromwell LLP, where he focused on complex commercial litigation. He also served as a law clerk to the Honorable A. Raymond Randolph of the United States Court of Appeals for the District of Columbia Circuit, as well as the Honorable Jeffrey Howard of the United States Court of Appeals for the First Circuit.

Mr. Quillen graduated from Harvard College magna cum laude (A.B., Biochemical Sciences, 2000) and Yale Law School (J.D., 2007). He also received a Master in Public Administration from the John F. Kennedy School of Government (2007). He is a member of the American Bar Association and admitted to practice in New York, New Hampshire, the District of Columbia, the United States District Courts for the District of Colorado, District of Columbia, and District of New Hampshire, the United States Courts of Appeals for the First, Eighth, Tenth, Eleventh, and District of Columbia Circuits, the United States Court of Appeals for Veterans Claims, and the United States Supreme Court.

**E-MAIL: hquillen@whatleykallas.com**

**Catherine I. Hanson**

Ms. Hanson has over 30 years of experience providing advice and counsel to physicians, medical associations and other health care related individuals and organizations. She has handled a broad array of health care and association matters, utilizing all advocacy strategies from informal discussion, to regulation, legislation and litigation. Most recently, Ms. Hanson has focused on managed care, including the impact of ACOs, new payment models and clinical integration, HIPAA, including the Privacy, Security and Transaction Rules, and evolving physician employment arrangements. Ms. Hanson is the author of numerous publications and a sought-after speaker.

Ms. Hanson recently served as vice-president of the American Medical Association's state and private sector advocacy unit from July 2007 through January 2013. Under her leadership, AMA's private sector advocacy team developed the National Managed Care Contract and database, the only complete compilation and analysis of every managed care law and regulation in the country. Ms. Hanson also directed the creation of numerous other unique resources for physicians, including how-to manuals on new payment models, ACOs and physician integration strategies. She led the development of AMA's National Health Insurer Report Card (NHIRC), the first objective look at the claims processing activities of the nation's largest health insurers. Ms. Hanson's private sector advocacy team also achieved significant, nationwide physician profiling reforms and improvements in the HIPAA transaction standards necessary to enable payer transparency and physician practice automation.

Ms. Hanson's state advocacy successes included obtaining National Association of Insurance Commissioners (NAIC) support for AMA positions related to critical state ACA implementation/health insurance market reform issues, such as medical loss ratio, rate review, health insurance exchanges, and transparency of coverage facts for consumers, successes that were subsequently reflected in the federal ACA regulations. She led a successful effort that secured National Conference of Insurance Legislators (NCOIL) model bills regulating rental network PPOs and calling for transparency for out-of-network services instead of a ban on balance billing. Last but certainly not least, Ms. Hanson's team worked with medical associations throughout the country to achieve hundreds of legislative and regulatory victories to preserve medical liability reforms, ensure health insurer transparency, improve public health and safety, enact truth-in-advertising laws and protect the patient-physician relationship.

Prior to her AMA work, Ms. Hanson served as vice-president and general counsel for the California Medical Association from December 1986 through June 2007. Her many CMA accomplishments included an extremely successful advocacy campaign in the courts and before the California Attorney General that resulted in nearly 100 decisions upholding MICRA and otherwise protecting physicians from unfair professional liability exposure, protecting the physician-patient relationship, increasing access to care, reigning in managed care abuses, and ensuring fair peer review, among other issues. Ms. Hanson also led the development and publication of the 4000+ page *California Physicians Legal Handbook,* a comprehensive health law treatise, which she published annually with her CMA Legal Center staff from 1990-2007. Prior to starting the CMA's in-house law department, Ms. Hanson was an attorney with the law firm of Hassard Bonnington in San Francisco.

Ms. Hanson is a past president of the California Society for Health Care Attorneys, a past president of the American Society of Medical Association Counsel, a member of the American Health Lawyers Association, and the American Bar Association Health Law Section.

Ms. Hanson is a Phi Beta Kappa graduate of the University of California, Berkeley. She obtained her J.D. degree from Boalt Hall School of Law at University of California, Berkeley. She is a California licensed attorney admitted to practice in the U.S. Supreme Court, the Ninth Circuit Court of Appeals, and the United States District Court for the Northern and Southern Districts of California. Ms. Hanson has an AV Martindale Hubbell rating. Ms. Hanson is Of Counsel to the Firm.

**E-MAIL: chanson@whatleykallas.com**

**Alan Mansfield**

Alan M. Mansfield has practiced primarily in the area of national health care, privacy, consumer and securities class action and public interest litigation since 1989. His clients have included such public interest organizations as the California Medical Association, the Independent Physical Therapists of California, Consumer Watchdog, and the Privacy Rights Clearinghouse.

Mr. Mansfield has been involved in numerous significant healthcare matters, including a class action against Anthem Blue Cross for improperly closing certain health plans which resulted in a settlement requiring defendant to limit plan rate increases and requiring any plan changes to be

without medical underwriting for several years (*Feller v. Anthem Blue Cross*, Ventura County Superior Court Case No. 56-2010-00368587-CU-BT-VTA); and a class action representing a number of California pharmacists seeking to require Pharmacy Benefits Managers to provide data required under state law, obtaining a significant decision from the Ninth Circuit and the California Supreme Court interpreting the scope of the First Amendment as applied to California pharmacists' claims under California law (*Beeman v. Anthem Prescription*, 2011 U.S. App. LEXIS 14687 (9th Cir., July 19, 2011), *Beeman v. Anthem Prescription*, 58 Cal. 4th 529 (2013). He also has been actively involved in resolving numerous cases on behalf of patients with HIV/AIDS, including *Doe v. CVS,* S.D. Oh. Case No. 2:18 cv-00238-EAS-CMV (Ohio class action settlement approved in January 2020 arising out of Ohio ADAP mailing, providing for over $2 million in payments to affected individuals); *Doe v. United Health Care*, No. 13-cv-00864 (C.D. Cal.) (national class action settlement approved in July 2014 permitting consumers to opt out of mail order program); *Doe v. Cigna Health Care*, No. 15-cv-60894 (S.D. Fla.) (national settlement implemented in December 2015 that removed HIV/AIDS specialty medications from the mandatory mail order tier); *Doe v. Blue Cross of California*, No. 37-2013-31442 (San Diego Super. Ct.) (California-only settlement implemented in May 2013 cancelling mandatory mail order program); *Doe v. Anthem, Inc.* (national settlement implemented in June 2016 that also removed HIV/AIDS specialty medications from the mandatory mail-order requirement tier for all of Anthem's subsidiaries in the United States), and *DOE v. Aetna, Inc. and Coventry Health Plans* (nationwide settlement revising similar mandatory mail-order pharmacy programs). He was also one of the counsel who negotiated a settlement of claims by the IPTCA against a nationwide workers compensation claims processor, revising the procedures and review of submitting and adjudicating such claims. He is currently one of the primary counsel in an action against the California Department of Public Health and other entities for violating the privacy rights of hundreds of recipients of HIV/AIDS medications in California, as well as other significant health care matters.

As part of his commitment to public interest litigation, Mr. Mansfield was one of the lead counsel in *Garrett v. City of Escondido*, 465 F.Supp. 2d 1043 (S.D. Cal. 2006), in the U.S. District Court for the Southern District of California, which successfully challenged the legality of the City of Escondido's immigration landlord-tenant enforcement ordinance, resulting in one of the first decisions addressing the constitutionality of local ordinances or state laws addressing immigration issues. Based on that and other work in the community performed by both him and the previous firm for which he was the managing partner (Rosner & Mansfield LLP), he and his firm was awarded the 2007 Public Service by a Law Firm Award by the San Diego County Bar Association. He also assisted the ACLU in obtaining a significant First Amendment victory regarding the improper seizure by the U.S. Government of property belonging to members of the Mongols Motorcycle Club (*Rivera v. Melson,* No. 2:09-cv-02435 DOC (JCx)(C.D. Cal.)). He was also involved in the "Joe Camel" teen smoking case, a landmark decision that permitted false advertising claims to proceed against a major tobacco company. *Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057. He also volunteers as a *pro tem* commissioner for the San Diego County Superior Court handling small claims and traffic matters.

Highlights from other successful actions where he was appointed as one of the lead class counsel include a class action against 23andMe arising out of claims relating to early genetic testing results, which was resolved as a class action settlement in arbitration valued at over $10 million; a class action against Nvidia Corp. arising out of alleged defects in GPUs that resulted in class

action settlement valued at over $50 million (*In re Nvidia GTX 970 Graphics Card Litigation,* N.D. Ca. Case No. 15-CV-00760-PJH); an action against American Honda for misrepresenting gas mileage on Honda Civic Hybrids, resulting in a settlement valued at over $400 million (*Lockabey v. American Honda*, S.D. Sup. Ct. Case No. 37-2010-00087755-CU-BT-CTL); and an action involving the unauthorized billing of consumers for overdraft fees on checking and debit account, resulting in the creation of a $35 million common fund and significant *cy pres* contributions to several non-profit organizations (*Closson v. Bank of America*, San Francisco Superior Court Case No. CGC 04436877). He also prevailed, after a two-week long class action arbitration in January 2009, on behalf of a class of senior citizens residing at a senior living community who were charged entrance fees in violation of California's landlord-tenant laws, obtaining significant relief for the benefit of the class members and contributions for Alzheimer's Disease research (*VanPelt v. SRG*).

Mr. Mansfield was also one of the lead counsel in class action lawsuits against various utilities, including a class action against Sprint Communications for charging customers improper telephone fees for data plan communication, resulting in a settlement that fully refunded the vast majority of such charges (*Taylor v. Sprint Communications*, Case No. C07-CV-2231-W (RJB)); a class action involving billing customers for previously promised airtime, resulting in a class action settlement that gave over 1 million customers the ability to claim full reimbursement for the uncredited airtime (*Nelson v. Virgin Mobile*, Case No. 05-CV-1594-AJB); a case challenging Sprint's failure to provide a cancellation window when it imposed certain additional fees against customers in July 2003, resulting in a class-wide settlement returning Early Termination Fees that had been charged to consumers, as well as improving certain disclosure practices (*UCAN v. Sprint Spectrum LP*, San Diego Superior Court Case No. GIC 814461); and a class action *Maycumber v. PowerNet Global Telecommunications*, Case No. 06-cv-1773-H (RBB) (S.D. Cal.), which challenged the practice of charging a "Network Access Charge" as a tax when it was not, resulting in a significant refund of such charges. Mr. Mansfield also represented the public interest group UCAN in an action before the California Public Utilities Commission involving improper billing for Early Termination Fees, resulting in a refund of over $18 million in fees to over 100,000 former Cingular Wireless customers (*In Re Cingular Wireless*, CPUC Case No. I.02-06-003), as well as an action challenging AT&T California's practice of terminating 911-only service to California residents in violation of the Public Utilities Code, resulting in a multi-million dollar fine and an order requiring significant practice changes (*UCAN v. SBC California*, CPUC Case No. C.05-11-011).

Mr. Mansfield is currently the President of the Association of Business Trial Lawyers, San Diego Chapter (Secretary – 2017; Treasurer – 2018; Vice President -- 2019); member of the Executive Committee (2008-present); Program Chair, 2017 ABTL Annual Seminar and 2018 ABTL Joint Board Retreat; Planning Committee member, 2016; Program Co-chair, 2009 ABTL Annual Seminar; Co-chair, mini-annual seminar, 2009, 2013 and 2015; Editor, ABTL Report (2004-2009). He also is a Master member of the Enright Inn of Court, and in that capacity has been a team leader for numerous committees responsible for making presentations to members of Inn. He is a member of the Anti-Trust Section of California Bar Association (now California Lawyers Association), where he participated in committee that made presentation to State's Anti-trust and Unfair Competition Law section related to Proposition 64 (2005). Previously Mr. Mansfield was a Lawyer Representative to the Ninth Circuit Judicial Conference, Southern District of California (6/2008 to 6/2010), where he helped create and make presentations to the Southern District of

California Judicial Conference, as well as attended the Ninth Circuit Judicial Conference in 2009. He is also a member of the San Diego County Bar Association, the Federal Bar Association, San Diego Chapter, the Consumer Attorneys of San Diego, and the American Bar Association.

Mr. Mansfield has been a panelist or speaker on numerous issues, including the following: California Center for Judicial Education And Research (July 2001) – participant in panel discussion on mechanics of Bus. & Prof. Code Section 17200 ("UCL") to state court judges in continuing legal education program for judges; The Rutter Group (2001) -- panel discussion on mechanics of UCL; Consumer Financial Services Litigation (PLI, April 2000 and 2001) – participant in panel discussion on choice of law issues arising in nationwide class certification and jurisdictional issues arising from being engaged in Internet activities; Judge Advocate General Naval Training Center (Nov. 2004) – lectured on procedure and substance of state consumer protection statutes at training session for JAG officers from around the Western U.S.; Mealey's Unfair Competition Law Annual Section 17200 Seminar (Nov. 2004) – participant in panel discussion on anticipated litigation issues under UCL; California State Bar Association, Antitrust and Unfair Competition Annual Seminar (May 2005) – participant in panel discussion on class certification issues arising under UCL in light of then recent amendments to Proposition 64; Southern District of California Judicial Conference (May 2008) – participant in panel discussion on identity theft issues and protections available to victims; Mealey's "Weathering Mass Tort and Class Action Settlement Negotiations" (Feb. 2008) – participated in tele-seminar re: ethical issues involved in class actions; Privacy Foundation, University of Denver School of Law (February 2004, 2005, 2007, 2009, 2011 and 2015) – lectured and participated in several panels where discussed federal privacy issues; University of San Diego School of Law (Spring 2008) – guest lecturer in class on Mediation and Arbitration on class action mediation and arbitration issues; Privacy Advocates Seminar (May 2009) – Moderator of panel on trends and limitations in privacy litigation and potential role of cy pres awards in resolving privacy matters; State Bar of California Unfair Competition Law Section "Navigating the Waters: Understanding the Intricacies of California's Unfair Competition Law" (June 2010) — panelist on recent developments under UCL.

Mr. Mansfield has also authored a treatise and articles on a variety of consumer law related issues. In 2003 Mr. Mansfield wrote the chapter and later the 2005 update on California's Consumers Legal Remedies Act, published by the California Bar Association in California Antitrust and Unfair Competition Law – Third, Ch. 19 at 150 (Matthew Bender & Co. 2003). He also assisted in the 2009 revision of the same chapter for the Antitrust and Unfair Competition Law Section, The State Bar of California, California State Antitrust and Unfair Competition Law Fourth, Ch. 19 (Cheryl Lee Johnson, ed., Matthew Bender & Co. 2009). Articles written by Mr. Mansfield include: The ABTL Annual Seminar Keynote Presentation "Watergate: The Ultimate Crisis Event", ABTL Report San Diego (Winter 2017-18) at 6 (www.abtl.org/report/sd); Another Post-Concepcion Twist – California Supreme Court Rules Claims for Public Injunctive Relief May Not Be Subject to Arbitration, ABTL Report San Diego (Spring 2017) at 17 (www.abtl.org/sd); Would You Consider Making Scriptural References in a Closing Argument? ABTL Report San Diego (Winter 2016) at 16 (www.abtl.org/report/sd); How Does Sanchez v. Valencia Holding Co. Change The Arbitration Equation In California? ABTL Report San Diego (Fall 2015) at 1 (co-authored with Michael Klitzke) (www.abtl.org/report/sd); Class Action Waivers After the Supreme Court Decision in AT&T v. Concepcion, ABTL Report San Diego

(Summer 2011) at 4 (www.abtl.org/report/sd); republished in the San Diego Defense Bar Journal (Summer 2011); Kwikset Corp. v. Superior Court: Re-affirming the Vitality of Private Enforcement of the Unfair Competition Law, Competition, The Journal of the Antitrust and Unfair Competition Law Section of the State Bar of California, Vol. 20, No. 1 (Spring 2011)(co-authored with Hon. Pamela M. Parker); Supreme Court's Most Recent Prop. 64 Decision Provides Guidance On Standing, ABTL Report San Diego (Winter 2011) at 1 (www.abtl.org/report/sd); Dukes v. Walmart – the Ninth Circuit's Analysis of How "Merits" Evidence is to be Weighed In Deciding Class Certification, ABTL Report San Diego (Summer 2010) at 7 (www.abtl.org/report/sd); The Proper Scope of Expert Analysis In the Context of Class Certification, Program Materials for American Association for Justice Annual Seminar (July 2009) (co-authored with W. Tucker Brown); The Revised Standards for Publication of Appellate Decisions, ABTL Report San Diego (June 2008) at 4 (www.abtl.org/report/sd); Is Your Client Prepared to Comply With the Data Security Breach Notification Laws?, ABTL Report San Diego (Spring 2007) at 4 (www.abtl.org/report/sd); Behind The Red Cover: A Writ Petition Primer, ABTL Report San Diego (November 2005) at 1 (www.abtl.org/report/sd); Has The Class Certification Inquiry Changed Due To Proposition 64? Program Materials for California's Unfair Competition Law After Proposition 64, State Bar of California Antitrust and Unfair Competition Section Seminar (May 2005); Litigation Involving Websites and Personal Privacy on the Internet - A Balance Gone Askew, Consumer Attorneys of California, Forum Vol. 32, No. 8 at 22 (October 2002)(co-wrote with William Doyle); Hartwell: Are Courtroom Doors Open to Litigation Involving Regulated Industries? ABTL Report San Diego (August 2002) at 1 (www.abtl.org/report/sd); Litigation Arising from the Use of Websites, Consumer Financial Services Litigation at 57 (PLI, April 2001); Nationwide Class Actions in State Court: Starting with Shutts, Consumer Financial Services Litigation at 263 (PLI, April 2000); Kraus, Cortez and Future Battlegrounds In Representative Actions under the Unfair Competition Law, Consumer Attorneys of California, Forum, Vol. 30, No. 6 at 233 (July/August 2000) (co-authored with Mark Chavez); Private Enforcement of California's Unfair Business Practices Act, Program Materials for Consumer Attorneys of California Annual Seminar (November 1997); and Life After BMW v. Gore - Who Is Now the Trier of Fact?, Consumer Financial Services Litigation (Supplement) at 55 (PLI, April 1997).

Mr. Mansfield received his B.S. degree, *cum laude*, in Business Administration - Finance from California Polytechnic State University, San Luis Obispo in 1983 and his *Juris Doctorate* degree from the University of Denver School of Law in 1986. He is admitted to the Bar of the State of California, to the United States District Courts for all Districts of California, to the United States District Court for the Districts of Colorado and Michigan, to the Second, Third, Fifth, Sixth, Ninth and Tenth Circuit Courts of Appeal, and to the Supreme Court of the United States of America. Mr. Mansfield is Of Counsel to the Firm.

**E-MAIL: amansfield@whatleykallas.com**

**Deborah Winegard**

Ms. Winegard focuses her practice on healthcare litigation, primarily representing physicians, hospitals, and other healthcare providers in reimbursement disputes with third party payers, including disputes involving both commercial and Medicare Advantage plans. Ms. Winegard has also handled antitrust, breach of contract, and ERISA litigation on behalf of medical

providers. In addition, Ms. Winegard represents medical societies and organizations advocating for physician interests with payers and government entities.

Ms. Winegard speaks widely on healthcare and reimbursement issues. She has given presentations, among others, for the American Medical Association, the American Society of Medical Association Counsel, the Medical Group Managers Association, and several state and specialty medical associations. Ms. Winegard has also published articles in several publications.

Ms. Winegard's prior experience includes serving as the General Counsel and Director of Third Party Payer Advocacy for the Medical Association of Georgia, as General Counsel and Senior Vice President for the California Medical Association, as Law & Government Affairs Vice President for four states for AT&T, and as an Associate on King & Spalding's Healthcare Team.

Ms. Winegard served as the Facilitator for the MDL settlements with Aetna, Blue Cross Blue Shield Association, Capital Blue Cross, CIGNA, Health Net, and Humana, handling compliance disputes brought by physicians who complained that these health insurers had violated the settlement agreements reached in the MDL healthcare litigation.

Ms. Winegard graduated *magna cum laude* with a B.A. in Politics from Wake Forest University in 1979, where she was elected to the Phi Beta Kappa honor society. She earned her J.D. with honors from the George Washington University Law School in 1982. She is admitted to practice in Georgia, as well as in the United States District Court for the Northern District of Georgia and the United States District Court for the District of Colorado.

Ms. Winegard is President of the American Society of Medical Association Counsel. She also serves as a member of the Board of Governors and Chair of the Audit Committee for LifeLink Foundation. She has previously held leadership positions for the Health Law Section of the State Bar of Georgia, the Georgia Association for Women Lawyers, and the National Kidney Foundation of Georgia, and has also served on the Boards of Directors for the Alliance Française d'Atlanta and the Boys & Girls Clubs of Metro Atlanta.

Ms. Winegard is Of Counsel to the Firm and is based in Atlanta.

Ms. Winegard speaks French.

**E-MAIL: dwinegard@whatleykallas.com**

**Sara Hacker Collins**

Ms. Collins is a member of the Alabama Bar (2005). She is a member of the Alabama State Bar, Birmingham Bar Association and Farrah Law Society. She graduated from Auburn University (B.A. magna cum laude, 2002) and the University of Alabama School of Law (J.D., 2005) where she was Senior Editor of the *Alabama Law Review*. Following law school she served as law clerk for Judge Patricia Smith, Alabama Supreme Court (2005-2006) and for Judge Inge Johnson, U. S. District Judge, Northern District of Alabama (2006-2007).

**E-MAIL: scollins@whatleykallas.com**

**D. Jamie Carruth**

Mr. Carruth practices in the areas of healthcare litigation, antitrust, product liability, consumer protection, complex litigation, and class actions. He represents physicians, medical practices, and ambulatory surgical centers in reimbursement and contract disputes against managed care companies. He represents clients in alternative dispute resolution proceedings in addition to state and federal courts. He specializes in using the latest technology to assist clients in efficiently navigating the E-Discovery process. He is a member of the Alabama Bar since 2004 and is admitted to practice in the United States District Court for the Northern District of Alabama. He is a member of the American and Birmingham Bar Associations. He received a B.A. in political science from the University of Alabama, Tuscaloosa, Alabama in 2001 and obtained a J.D. in 2004 from the University of Alabama School of Law, Tuscaloosa, Alabama.

**E-MAIL: jcarruth@whatleykallas.com**

**C. Nicholas Dorman**

Mr. Dorman's practice is focused on healthcare and antitrust litigation, and he primarily represents healthcare providers challenging anticompetitive practices of insurers and health systems. He also has experience representing both providers and consumers in healthcare litigation involving claims under ERISA and RICO, and representing whistleblowers in *qui tam* litigation under the False Claims Act. He has represented clients in both class and individual antitrust litigation and has taken antitrust cases to trial, obtaining jury verdicts or favorable settlements for his clients.

Mr. Dorman graduated first in his class from the University of Florida Levin College of Law, receiving book awards in Antitrust: Healthcare; Appellate Advocacy; Constitutional Law; Consumer Law; Electronic Discovery, and Electronic Discovery: Search and Data Analysis. He served on the Florida Law Review as Managing Editor. While in law school, he also served as an extern to Hon. Gary R. Jones and to Hon. Maurice M. Paul, both of the U.S. District Court for the Northern District of Florida.

Mr. Dorman is a member of the Florida Bar and is admitted to practice before the U.S. District Courts for the Northern, Middle, and Southern Districts of Florida. He is a member of the Healthcare and Antitrust Sections of the American Bar Association and is a member of Public Justice.

Mr. Dorman is not admitted to practice in the State of Alabama.

**E-MAIL: ndorman@whatleykallas.com**

**T. Kenneth Foster**

T. Kenneth Foster is an attorney with the Firm. He received his B.S. with honors in Business Administration from The University of Alabama in 1968 and his J.D. from The University of Alabama School of Law in 2000. Following law school, he was in private practice for over 15 years, handling both civil and criminal matters. He is a member of the Alabama Bar Association. Prior to attending law school, Mr. Foster worked for several grain processing and

milling companies, serving as past president and on the board of directors of the Home Baking Association, a national milling trade association.

**E-MAIL: kfoster@whatleykallas.com**

**Cody B. Isbell**

Cody B. Isbell is an attorney in the Firm's Birmingham office. He received his B.S. in Criminal Justice from Faulkner University in 2012. He received his J.D. from Cumberland School of Law in 2015. He was a semi-finalist in the Robert B. Donworth Moot Court Competition. Following law school, he practiced as a personal injury attorney in Birmingham. He has been a member of the Alabama State Bar since 2015.

**E-MAIL: cisbell@whatleykallas.com**

**Blake W. Cole**

Mr. Cole is an attorney with the Firm and a member of the Alabama State Bar. He attended Auburn University on scholarship where he obtained his Bachelor of Science in Polymer and Fiber Engineering in 2010. Afterwards he worked for a short time in the body armor industry before proceeding to law school. He obtained his Juris Doctor from Cumberland School of Law in 2016, receiving a book in Estate Planning. He then attended the University of Alabama School of Law where he obtained his Master of Laws in Taxation in 2019.

**E-MAIL: bcole@whatleykallas.com**

**Aspen • Atlanta • Birmingham • Boston • Los Angeles • New York •
Orlando • Portsmouth •San Diego • San Francisco**

1228 Riverside Drive
Aspen, CO 81611
Telephone: 970-300-4848
Facsimile: 800-922-4851

1068 Virginia Ave. NE
Atlanta, GA 30306
Telephone: 404-607-8222
Facsimile: 404-220-9625

2001 Park Place North
Suite 1000
Birmingham, AL 35203
Telephone: 205- 488-1200
Facsimile: 800-922-4851

101 Federal Street, 19th Floor
Boston, MA 02110
Telephone: 617-203-8459
Facsimile: 800-922-4851

355 So. Grand Avenue, Ste 2450
Los Angeles, CA 90071
Telephone: 310-684-2504
Telephone: 213-943-1312
Facsimile: 855-274-1888

152 West 57th Street
41st Floor
New York, NY 10019
Telephone: 212- 447-7060
Facsimile: 800- 922-4851

111 North Orange Avenue
Suite 800
Orlando, FL 32801
Telephone: 321-325-6624
Facsimile: 800-922-4851

159 Middle Street, Suite 2C
Portsmouth, NH 03801
Telephone: 603-294-1591
Facsimile: 800-922-4851

16870 W. Bernardo Dr., Ste 400
San Diego, CA 92127
Telephone: 619-308-5034
Facsimile: 855-274-1888

1 Sansome Street, 35th Fl.
PMB #131
San Francisco, CA 94104
Telephone: 415-906-3876
Facsimile: 855-274-1888

**www.whatleykallas.com**