**I, Andrew W. Mahler, declare as follows:**

1. I make this declaration in connection with the lawsuit captioned *In Re BetterHelp, Inc. Data Disclosure Cases, Master File No. 3:23-cv-01033-RS*.

2. I have more than 15 years of experience in health information privacy and security compliance. I received a Bachelor of Arts degree from Wheaton College in Wheaton, Illinois, and a Juris Doctor degree from Mercer University School of Law. My professional background includes serving as an Investigator for the U.S. Department of Health and Human Services (HHS) Office for Civil Rights (OCR); as a Chief Privacy Officer; a Research Compliance Officer; and currently as Vice President of Privacy, Compliance, and Audit Consulting Services. I have participated in major regulatory enforcement activities, built and managed HIPAA Privacy and Security programs, and assisted clients in resolving compliance challenges. I am licensed to practice law in Arizona (inactive) and Georgia (inactive), and I hold active certifications as an Information Privacy Professional (CIPP/US) and Artificial Intelligence Governance Professional (AIGP) through the International Association of Privacy Professionals, as well as being Certified in Healthcare Compliance (CHC), Healthcare Privacy Compliance (CHPC), and Healthcare Research Compliance (CHRC) through the Compliance Certification Board. A copy of my resume is attached as Exhibit A.

3. I have in-depth knowledge of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), as amended by the Health Information Technology for Economic and Clinical Health ("HITECH") Act, and its implementing regulations, including the Privacy Rule (45 C.F.R. Part 160 and Subparts A and E of Part 164), the Security Rule (45 C.F.R. Part 160 and Subparts A and C of Part 164), and the Breach Notification Rule (45 C.F.R. Part 160 and Subparts A and D of Part 164). I am familiar with the definitions of "covered entity" and "business associate" under HIPAA (please see 45 C.F.R § 160.103), as well as the standards for electronic transactions adopted by the HHS.

4. I have been asked to opine on whether BetterHelp, Inc. ("BetterHelp") engaged in conduct that subjected it to HIPAA as a "covered entity" or "business associate." My opinions are limited to these definitions and are based on the information provided by BetterHelp. I have not been asked to, and do not, address any other issues relating to the allegations in the Complaint. I make this declaration based on my personal knowledge, expertise, and the materials listed in the attached Exhibit B, including the First Amended Consolidated Class Action Complaint filed in this

matter (the "Complaint"). If called as a witness, I could and would testify competently to these facts.

**Definitions Under HIPAA**

4. HIPAA and its implementing regulations apply <u>only</u> to "covered entities " and their "business associates" with respect to the handling of "protected health information" ("PHI"). PHI is defined as individually identifiable health information transmitted or maintained in electronic media or any other form or medium (45 C.F.R. § 160.103).

5. A "covered entity" is defined under HIPAA as: (1) a health plan; (2) a health care clearinghouse; or (3) a health care provider who transmits any health information in electronic form in connection with a transaction for which HHS has adopted a standard (45 C.F.R. § 160.103).

    - A "health plan" is an individual or group plan that provides, or pays the cost of, medical care (as defined in Section 2791(a)(2) of the PHS Act, 42 U.S.C. 300gg-91(a)(2)). Examples include health insurance issuers, group health plans, an issuer of a Medicare supplemental policy (as defined in section 1882(g)(1) of the Act, 42 U.S.C. 1395ss(g)(1)), among others.

    - A "health care clearinghouse" is a public or private entity that processes or facilitates the processing of health information received from another entity in a nonstandard format or containing nonstandard data content into standard data elements or a standard transaction, or that receives a standard transaction from another entity and processes or facilitates the processing of health information into nonstandard format or nonstandard data content for the receiving entity (45 C.F.R. § 160.103).

    - A "health care provider" is a provider of medical or health services (as defined in section 1861(u) of the Act, 42 U.S.C. 1395x(u)) or any other person or organization who furnishes, bills, or is paid for health care in the normal course of business (45 C.F.R. § 160.103). <u>However, to qualify as a covered entity, the health care provider must transmit health information electronically in connection with a "standard transaction" adopted by HHS</u>. These transactions include claims submission, payment and remittance advice, claims status inquiries, enrollment and disenrollment, eligibility inquiries, premium payments, referral certifications, coordination of benefits, and claims attachments. These transactions are typically used for

      interactions with health plans or payers. HHS further clarifies in its Summary of the Privacy Rule, "Using electronic technology, such as email, does not mean a health care provider is a covered entity; the transmission must be in connection with a standard transaction."[1] HHS provides further clarification: "<u>We note that health care providers are only subject to this rule if they conduct certain transactions</u>."[2]

6. A "business associate" is a person or entity that, on behalf of a covered entity, creates, receives, maintains, or transmits PHI for a function or activity regulated by HIPAA, or provides legal, actuarial, accounting, consulting, data aggregation, management, administrative, accreditation, or financial services to or for a covered entity where the provision of the service involves the disclosure of PHI (45 C.F.R. § 160.103). Examples can include claims processors, billing companies, transcription services, and third-party administrators that handle PHI on behalf of a covered entity. A business associate must have a business associate agreement ("BAA") with the covered entity that outlines the permissible uses and disclosures of PHI. However, as OCR has clarified through enforcement actions,[3] an organization may be a business associate even though a BAA has not been executed. Similarly, an organization does not become a business associate by executing a BAA; the organization must meet the definition of a business associate as provided at 45 C.F.R. § 160.103.

**BetterHelp Does Not Meet the Definition of a Covered Entity**

7. Based on my review, BetterHelp does not meet the definition of a covered entity under HIPAA.

8. BetterHelp is not a health plan. As described in the Complaint and BetterHelp's information, BetterHelp operates an online platform that connects individuals with independent contractor mental health professionals for virtual counseling and therapy services. Users pay BetterHelp directly on a monthly basis (via cash pay, credit card, or other online methods like PayPal), and BetterHelp in turn compensates the professionals. BetterHelp does not provide or pay the cost of medical care; it facilitates access to therapy services but does not cover expenses

---

[1] https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html
[2] See the preamble to the HIPAA Privacy Rule, including public comments and responses to § 160.103
[3] https://public3.pagefreezer.com/browse/HHS.gov/31-12-2020T08:51/https:/www.hhs.gov/about/news/2018/12/04/florida-contractor-physicians-group-shares-protected-health-information-unknown-vendor-without.html

like a health insurance plan. It does not accept insurance, and while users' fees may be covered by employers or organizations, this does not transform BetterHelp into a health plan. There is no evidence that BetterHelp functions as an insurer, group health plan, or similar entity that that provides or pays for the cost of medical care.

9. BetterHelp is not a health care clearinghouse. BetterHelp does not process or facilitate the processing of health information between providers and payers in standard or nonstandard formats. BetterHelp does not receive standard transactions from other entities, nor does it process or facilitate the processing of health information into nonstandard format or nonstandard data content for the receiving entity. Instead, its platform is limited to matching users with professionals, facilitating virtual interactions (e.g., messaging, chats, calls, video), and processing direct user payments that are initiated and paid by the user.

10. BetterHelp is not a health care provider that transmits health information electronically in connection with a standard transaction. While the mental health professionals using BetterHelp's platform may qualify as health care providers (as they furnish mental health services), BetterHelp itself does not provide therapy or oversee the professionals professionally—professionals providing therapy on the BetterHelp platform are independent contractors. BetterHelp's role is technological and facilitative, not clinical. Critically, even if BetterHelp could be considered a provider, it does not (and has never) transmitted health information electronically in connection with any HHS-adopted standard transaction. BetterHelp does not submit claims, inquire about eligibility, coordinate benefits, or engage in any billing-related electronic transactions with health plans or payers. All payments are direct from users, with no insurance involvement. Examples of entities that do qualify as a covered entity include hospitals or health care providers that submit claims to insurance providers for services—BetterHelp does not perform these activities.

**BetterHelp Does Not Meet the Definition of a Business Associate**

11. BetterHelp also does not meet the definition of a business associate under HIPAA. To qualify as a business associate, an entity must perform functions or provide services on behalf of a covered entity that involve creating, receiving, maintaining, or transmitting PHI. BetterHelp does not perform any such functions or services for any covered entity. The independent contractor therapists may be covered entities if they engage in standard electronic transactions (e.g., billing insurance) in other contexts, but BetterHelp provides these professionals only with a technology platform for virtual interactions and user matching—services that do not involve PHI

handling on the therapists' behalf. BetterHelp does not access, receive, or transmit PHI in the possession of therapists or any affiliates.

12. The mere existence of agreements, contracts, and certifications that mention HIPAA or covered entity or business associate activities does not indicate HIPAA applicability. For purposes of HIPAA compliance, HHS has jurisdiction over only those organizations that satisfy the regulatory definitions of covered entity or business associate.

In summary, it is my opinion, based on my review of relevant materials, that BetterHelp falls outside HIPAA's scope because it neither qualifies as a covered entity nor performs PHI-related functions as a business associate.

Andrew Mahler, JD, CIPP/US, AIGP, CHPC, CHRC, CHC             September 12, 2025
Vice President, Consulting Services, Privacy/Compliance/Audit
Clearwater Security

**Ex. A – Andrew Mahler CV**

# ANDREW W. MAHLER, JD, CIPP/US, AIGP, CHC, CHPC, CHRC

Email: andrew.mahler@clearwatersecurity.com

## PROFESSIONAL EXPERIENCE

**Clearwater Compliance**, September 2022 – Present

*Vice President, Compliance, Privacy, and Audit*
- For a leading provider of Data Privacy, Compliance, and Cybersecurity solutions for the healthcare industry, responsible for the development, growth, strategy, and delivery of all Data Privacy, Compliance, Audit/Certification, and Artificial Intelligence Risk Services, including all related assessment, consulting, and professional services
- Responsible for over 15 senior-level consultants, including Senior Directors, Managers, and Principal Consultants across 600+ clients

**CynergisTek, Inc.**, September 2016 – September 2022

*Vice President, Privacy, Compliance, and Managed Services,* November 2021 – Present
- For a top-ranked, national privacy, compliance, and information security and technology consulting firm, provided leadership and direction for the development and delivery of all Privacy, Compliance, and Research Services, including all professional, managed, and consulting services

*Director and Senior Manager, Privacy and Compliance Services*, February 2018 – November 2021
- Provide subject matter expertise regarding privacy, research, and compliance rules, regulations, and best practices, including supporting organizations in responding to regulatory investigations, and audits
- Periodically served in interim roles, such as Chief Privacy Officer

*Interim Enterprise Privacy Officer,* February 2019 – July 2020
- Through a contract with large public university and affiliated health system, responsible for oversight of the enterprise-wide Privacy Program
- Responsible for developing and providing compliance training programs throughout the enterprise designed to maintain the competency of management, staff and agents on the organization's compliance program
- Managed privacy investigations and related compliance reviews, provided recommendations to senior leadership and committees regarding incident assessment, breach notification, and corrective action

*Senior Compliance Consultant*, September 2016 – February 2018
- Conducted assessments and mock audits for a diverse variety of large, medium, and small organizations, and provided recommendations regarding regulatory requirements and best practices

**The University of Arizona**, Tucson, Arizona, August 2013 – 2016

*Privacy Officer,* August 2013 – October 2016
*Research Integrity Officer*, January 2015 – October 2016
- Leader, manager, and supervisor for the HIPAA Privacy Program
- Managed investigations and audits, both independently for University units and jointly with affiliated covered entities, and provided recommendations regarding personnel decisions

*University of Arizona Colleges of Law and Management Course Developer and Instructor,*
January 2016 – 2020
- *Health Care Law*, Eller College of Management, May 2016 – 2020
- *Corporate Compliance* (Regular Guest Lecturer)*,* James E. Rogers College of Law, 2013 – 2016

**U.S. Department of Health & Human Services, Office for Civil Rights (OCR)**, Atlanta, Georgia, June 2011 – July 2013

*HIPAA and Civil Rights Specialist and Case Investigator*
- Conducted investigations and ensured compliance regarding the HIPAA Privacy, Security, and Breach Notification Rules
- Prepared comprehensive investigative reports and closure letters, including resolution agreements and corrective action plans

**The Habeas Project**, Atlanta, Georgia

*Legal Clinic,* 2011 – 2012

**The Honorable Ernest D. Blount**, **State Court of Henry County**, McDonough, Georgia
*Judicial Intern,* 2010 – 2011

# EDUCATION
**Mercer University, Walter F. George School of Law**, Macon, Georgia
*Juris Doctor*
- Honors:   CALI Awards for achieving the highest grades in *Comparative Law* and *Criminal Jurisprudence*
  Certificate for Advanced Legal Writing
  Certificate for Exceptional Commitment to Public Service
  Dean's List

**Wheaton College,** Wheaton, Illinois
***Bachelor of Arts***

# BAR ADMISSION, CERTIFICATIONS & AWARDS
- Admitted to practice law in Arizona and Georgia
- Certified Artificial Intelligence Governance Professional (AIGP), 2024-Present
- Certified Information Privacy Professional, U.S. Private-Sector (CIPP/US), 2014 – Present
- Certified in Health Care Compliance (CHC), 2019 – Present
- Certified in Health Care Privacy Compliance (CHPC), 2014 – Present
- Certified in Health Care Research Compliance (CHRC), 2014 – Present
- Received award for Excellence in Teaching for *Health Care Law*, Eller College of Management, The University of Arizona, 2018

# PROFESSIONAL AFFILIATIONS
- Health Care Compliance Association (Member)
- International Association of Privacy Professionals (Member)
- American Health Law Association (Member)
- American Bar Association, Health Law Division (Member)
- Arizona Bar Association (Inactive)
- Georgia Bar Association (Inactive)

**Ex. B – Documents Reviewed**

In forming my opinions, I have reviewed the following documents and materials:

1. Privacy Notices/Policies
    a. April 29, 2021 – Nov. 9, 2021
    b. Dec. 31, 2019 – April 28, 2021 [BH0000628]
    c. February 27, 2020
    d. Jan. 1, 2017 – Nov. 13, 2018 [BH0000590]
    e. Nov. 10, 2021 – Nov. 21, 2022
    f. Nov. 13, 2018 – Sept. 16, 2019 [BH0000610]
    g. Nov. 22, 2022 – March 7, 2023
    h. Sept. 17, 2019 – Dec. 30, 2019 [BH0000619]
2. Terms and Conditions
    a. 2018-05-03 User Terms and Conditions
    b. 2018-05-10 Therapist Terms and Conditions
    c. 2019-08-31 User Terms and Conditions
    d. 2020-08-17 User Terms and Conditions
    e. 2021-09-25 User Terms and Conditions
    f. 2021-09-26 Therapist Terms and Conditions
3. Business Associate Agreement [BH0001291]
4. HIPAA Training January 2018 – TELADOC
5. 2024.08.05 Betterhelp - [Doc 114] Amended Complaint
6. Declaration of Niklas Vaughan
7. HIPAA Privacy, Security, and Breach Notification Rules, Parts 160 and 164
8. "Covered Entities and Business Associates"[1]
9. "Transactions Overview"[2]
10. "Understanding the HIPAA standard transactions: The HIPAA Transactions and Code Set rule"[3]

*[signature]*

Andrew Mahler, JD, CIPP/US, AIGP, CHPC, CHRC, CHC          September 12, 2025
Vice President, Consulting Services, Privacy/Compliance/Audit
Clearwater Security

---

[1] https://www.hhs.gov/hipaa/for-professionals/covered-entities/index.html
[2] https://www.cms.gov/priorities/key-initiatives/burden-reduction/administrative-simplification/transactions
[3] https://assets.ama-assn.org/resources/images/psa/hipaa-tcs.pdf