Gary M. Klinger (*pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

*Plaintiffs' Co-Lead Interim Class Counsel*

Christina Tusan (SBN 192203)
**TUSAN LAW, PC**
680 E. Colorado Blvd. #180
Pasadena, CA 91101
Telephone: (626) 418-8203
Facsimile: (626) 619-8253
Email: ctusan@ctusanlaw.com

*Plaintiffs' Co-Lead Interim Class Counsel*

Maureen M. Brady (*pro hac vice*)
**McSHANE AND BRADY LLC**
4006 Central Street
Kansas City, MO 64111
Telephone: (816) 888-8010
Email: mbrady@mcshanebradylaw.com

*Plaintiffs' Co-Lead Interim Class Counsel*

Alan M. Mansfield (SBN 125998)
**WHATLEY KALLAS LLP**
1 Sansome Street, 35th Floor, PMB #131
San Francisco, CA 94104 /
16870 West Bernardo Drive, Suite 400
San Diego, CA 92127
Telephone: (619) 308-5034
Facsimile: (888) 341-5048
Email: amansfield@whatleykallas.com

*Plaintiffs' Liaison Counsel*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE BETTERHELP, INC. DATA DISCLOSURE CASES | Case No. 3:23-cv-01033-RS |
| | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| This Document Relates To: All Actions | Date: November 21, 2025<br>Time: 9:30 a.m.<br>Courtroom: 3 - 17th Floor<br>Judge: Hon. Richard Seeborg |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ...................................................................................................... 1

II.   ARGUMENT .............................................................................................................. 2

      A.    Common Issues Predominate for the Narrowed Claims ........................................ 2

            1.    Whether BetterHelp's Pixels Shared Protected Information Will Be
                  Determined Through Common Proof .......................................................... 2

            2.    BetterHelp's Other Arguments Do Not Raise Individualized Issues .......... 8

            3.    Predominance is Met for the Common Law Privacy Claim .................... 11

            4.    The Wiretapping Claims Will Turn on Common Proof .......................... 12

            5.    Damages Can Be Determined Classwide ................................................ 13

      B.    A Class Action is Both Manageable and Superior ................................................ 15

            1.    The Verdict Form Shows How Plaintiffs' Claims Can be Efficiently
                  Tried Together Using Classwide Proof .................................................... 15

            2.    The FTC Settlement Does Not Defeat Superiority .................................. 16

      C.    The other Requirements of Rule 23(a) Are Met ................................................... 16

            1.    Plaintiffs Are Adequate and Their Claims Are Typical ........................... 16

            2.    The Class and California Subcvlass Are Sufficiently Numerous ............. 17

III.  CONCLUSION .......................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Ades v. Omni Hotels Mgmt. Corp.*,
  2014 WL 4627271 (C.D. Cal. Sept. 8, 2014)......................................................... 10

*B.P. v. Balwani*,
  2021 WL 4077008 (9th Cir. Sept. 8, 2021) ........................................................... 16

*Bally v. State Farm Life Ins. Co.*,
  335 F.R.D. 288 (N.D. Cal. 2020) .......................................................................... 13

*Belyea v. GreenSky, Inc.*,
  2025 WL 589037 (N.D. Cal. Feb. 24, 2025) .......................................................... 13

*Brown v. Google LLC*,
  685 F. Supp. 3d 909 (N.D. Cal. 2023) ................................................................... 10

*Bustillos v. W. Covina Corp. Fitness, Inc.*,
  2022 WL 423396 (C.D. Cal. Jan. 3, 2022) ............................................................. 17

*Calhoun v. Google LLC*,
  349 F.R.D. 588 (N.D. Cal. 2025) .......................................................................... 10

*Calhoun v. Google, LLC*,
  113 F.4th 1141 (9th Cir. 2024).......................................................................... 9, 10

*Campbell v. Facebook Inc.*,
  315 F.R.D. 250 (N.D. Cal. 2016) ..................................................................... 14, 15

*Doe v. Mindgeek USA Inc.*,
  702 F. Supp. 3d 937 (C.D. Cal. 2023).................................................................... 14

*Frasco v. Flo Health*,
  349 F.R.D. 557 (N.D. Cal. 2025) ........................................................... 8, 9, 10, 12

*Frasco v. Flo Health, Inc.*,
  2025 WL 2680068 (N.D. Cal. Sept. 17, 2025) ....................................................... 14

*Gold v. Midland Credit Mgmt., Inc.*,
  306 F.R.D. 623 (N.D. Cal. 2014) .......................................................................... 14

*Griffith v. TikTok, Inc.*,
  2024 WL 4308813 (C.D. Cal. Sept. 9, 2024)............................................................ 8

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998).............................................................................. 17

*Hawkins v. S2Verify*,
  2016 WL 3999458 (N.D. Cal. July 26, 2016) ........................................................ 15

*In re Apple Inc. Sec. Litig.*,
  2022 WL 354785 (N.D. Cal. Feb. 4, 2022)............................................................ 17

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 3:23-cv-01033-RS

*In re Facebook Priv. Litig.*,
    2016 WL 4585817 (N.D. Cal. Sept. 2, 2016) ....................................................... 8

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ......................................................................... 11

*In re Google Inc. Gmail Litig.*,
    2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .................................................. 10

*In re Hulu Priv. Litig.*,
    2014 WL 2758598 (N.D. Cal. June 7, 2014) ........................................................ 8

*In re Meta Pixel Healthcare Litig.*,
    647 F. Supp. 3d 778 (N.D. Cal. 2022) ............................................................. 10

In *re Tesla Advanced Driver Assistance Sys. Litig.*,
    2025 WL 2532185 (N.D. Cal. Sept. 3, 2025) .................................................... 13

*Kamm v. California City Dev. Co.*,
    509 F.2d 205 (9th Cir. 1975) ......................................................................... 16

*Kang v. Credit Bureau Connection, Inc.*,
    2022 WL 658105 (E.D. Cal. Mar. 4, 2022) ...................................................... 15

*Kellman v. Spokeo, Inc.*,
    2024 WL 2788418 (N.D. Cal. May 29, 2024) .................................................. 14

*Martinez v. D2C, LLC*,
    2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) ..................................................... 18

*Noohi v. Johnson & Johnson Consumer Inc.*,
    146 F.4th 854 (9th Cir. 2025) ......................................................................... 8

*Opperman v. Path, Inc.*,
    2016 WL 3844326 (N.D. Cal. July 15, 2016) .................................................. 11

*Robbins v. Phillips 66 Co.*,
    2021 WL 4932729 (N.D. Cal. Mar. 29, 2021) ................................................. 15

*Rodriguez v.* Google,
    2024 WL 38302 (N.D. Cal. Jan. 3, 2024) .......................................... 9, 13, 14

*Romero v. Securus Techs., Inc.*,
    331 F.R.D. 391 (S.D. Cal. 2018) ..................................................................... 14

*Safari Club Int'l v. Rudolph*,
    862 F.3d 1113 (9th Cir. 2017) ....................................................................... 11

*Sali v. Corona Reg'l Med. Ctr.*,
    909 F.3d 996 (9th Cir. 2018) ........................................................................... 3

*Sanchez-Scott v. Alza Pharms.*,
    86 Cal. App. 4th 365 (2001) ......................................................................... 11

iii

*Savidge v. Pharm-Save, Inc.*,
    2023 WL 2755305 (W.D. Ky. Mar. 31, 2023) .................................................................. 14

*Siqueiros v. Gen. Motors LLC*,
    2021 WL 2115400 (N.D. Cal. May 25, 2021) ................................................................. 13

*Torres v. Prudential Fin., Inc.*,
    2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) .............................................................. 9, 10

*True Health Chiropractic, Inc. v. McKesson Corp.*,
    896 F.3d 923 (9th Cir. 2018) ....................................................................................... 9, 10

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
    489 U.S. 749 (1989) .......................................................................................................... 11

*Utne v. Home Depot U.S.A., Inc.*,
    2022 WL 1443338 (N.D. Cal. May 6, 2022) ................................................................... 12

*Valenzuela v. Kroger Co.*,
    2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) ................................................................. 10

*Zaklit v. Nationstar Mortg. LLC*,
    2017 WL 3174901 (C.D. Cal. July 24, 2017) ........................................................... 12, 14

**Statutes**

Cal. Civ. Code § 1798.150 ............................................................................................................ 14

**Regulations**

45 C.F.R. § 164.501 ......................................................................................................................... 9

## I.    INTRODUCTION

BetterHelp's liability in this case turns on whether its implementation of various Tracking Tools on its websites and app disclosed to third parties like Meta the fact that millions of Class Members were seeking help with their mental health. Based on his review of the source code of BetterHelp's website, Plaintiffs' expert Professor Zubair Shafiq opines that ███████████████████

████████████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████ Dkt. 170-10 ("Shafiq. Rpt.") ¶ 3. This data was intercepted while in transit regardless of a user's privacy settings, browser, or device, because ██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ Dkt. 200-3 ("Supp. Shafiq Rpt.") ¶¶ 3, 6-7 (confirming ███████████████████████████████████), and ¶ 22 █████████

████████████████████████████████████████████████████. Although BetterHelp raises a host of criticisms of Professor Shafiq, it does not substantively challenge his explanation of the source code. Thus, the key issue in this case can be resolved all at once.

In the interests of streamlining this case for trial and narrowing the issues in dispute, Plaintiffs are limiting the claims they ask the Court to certify to the following: the CIPA, CCPA, and common law invasion of privacy claims as to the California Subclass, and the ECPA claims as to the Nationwide Class. Each of these claims will turn on BetterHelp's implementation of the Tracking Tools and a jury can resolve liability questions—*e.g.*, whether the intercepted information constitutes "contents," and whether BetterHelp acted willfully by installing the Tracking Tools on its website—based on evidence common to the entire Class or Subclass. Focusing on these four claims makes a choice of law analysis unnecessary. In addition, damages can be efficiently calculated due to the availability of statutory damages and because Plaintiffs have presented a viable damages model for the common law invasion of privacy claim.

BetterHelp's arguments in opposition to class certification, including its criticisms of Professor Shafiq, do not change the classwide nature of the issues the jury will be asked to decide, nor do they undermine Plaintiffs' showing that BetterHelp ████████████████████████

██████████████████████████████████████████████ BetterHelp's insistence that

Plaintiffs are wrong about how the tracking technologies in this case work is largely derived from the analysis of a rebuttal expert who has no expertise in tracking pixel technologies and who did not even examine the full range of BetterHelp's website source code that corroborates Professor Shafiq's conclusions. BetterHelp's overheated rhetoric aside, the parties' dispute about what the evidence in this case shows does not suggest that Plaintiffs are somehow misleading the Court. BetterHelp also argues that it disclosed its use of tracking pixels and that differences in iterations of its Privacy Policy and website banners require individualized consent inquiries, but this argument fails because no version of these disclosures were sufficient to put a reasonable consumer on notice that the fact they were seeking mental health treatment would be shared with third parties. BetterHelp's other arguments focusing on merits (*e.g.*, whether it is subject to HIPAA or violated wiretapping statutes) are not only irrelevant for purposes of Rule 23, but they also present common questions that can and should be resolved on a classwide basis.

Many of BetterHelp's arguments are directed towards manageability, but as the verdict form[1] submitted with this reply and the recent trials in both *Rodriquez v. Google, Inc.*, No. 3:20-cv-04688 (N.D. Cal.) and *Frasco v. Flo Health, Inc.*, No. 21-cv-00757 (N.D. Cal.) illustrate, the narrowed set of four claims can be efficiently tried using common proof, and do not require a choice of law analysis. And while BetterHelp insists that the FTC settlement resolves the issues in this case and therefore defeats superiority, it ignores that the cases are distinct. The FTC action—which provides for limited relief to only a fraction of the Class—focused on BetterHelp's misleading and fraudulent representations. Only this case can resolve whether its use of online tracking technologies violates California and federal privacy, wiretap and data security laws.

The Court should certify the Class and California Subclass.

## II.    ARGUMENT

### A.    Common Issues Predominate for the Narrowed Claims.

#### 1.    Whether BetterHelp's Pixels Shared Protected Information Will Be Determined Through Common Proof.

In opposing class certification, BetterHelp insists that no claim can be certified because it

---

[1] The proposed verdict form was prepared with the input of counsel from Girard Sharp LLP, who recently associated in to assist with trial and pretrial matters in this case.

did not share the protected health information of Plaintiffs and Class Members. Opp. at 2-5. As support, BetterHelp relies on the Rebuttal Report of Dr. Ben Zhao (Dkt. 210-1) and his criticisms of Professor Shafiq's initial report. Yet neither BetterHelp nor Dr. Zhao offer any substantive criticisms of Shafiq's supplemental report where he analyzed BetterHelp's website source code that was produced the day Plaintiffs' Motion for Class Certification was due. *See* Opposition to BetterHelp's Motion to Exclude the Testimony of Zubair Shafiq at pp. 7-9 filed on October 31, 2025. His analysis of the source code confirmed his opinion in his initial report that ███████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ Supp. Shafiq Rpt. ¶¶ 1-3.

Moreover, as discussed in greater detail in Plaintiffs' opposition to BetterHelp's motion to exclude Professor Shafiq's testimony, the criticisms that BetterHelp and Dr. Zhao muster do not call Professor Shafiq's opinions into doubt. Dr. Zhao admitted during his deposition that he did not review a working and complete set of the source code of BetterHelp's website that underpins Professor Shafiq's supplemental report. *See* Declaration of Christina Tusan in Support of Plaintiffs' Reply to Class Certification ("CT Dec.") at Ex. 1 ("Zhao Tr.") at 8:24-9:10 (stating he ████████ ████████████████████████████████████████, and at 176:17-24 (testifying he ████████████████████████████████████). Even if he did, it is doubtful Dr. Zhao is even qualified to opine regarding how the pixels in this case work because—unlike Professor Shafiq—Dr. Zhao's research and background ████████████████████████████████ ██████████████████████████████████████████████████████████████ Zhao Tr. at 60:17-61:8, 62:9-15, 66:6-11, 66:9-11. The Court should thus assign little or no weight to Dr. Zhao's analysis and BetterHelp's arguments based on them. *See Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) (at class certification stage "an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given[.]").

### a.    Disclosure Did Not Depend on Individual User Choices.

BetterHelp is incorrect that individual user choices or privacy settings will impact whether the core information at issue was shared for each Class Member. As Professor Shafiq explains in

1    his supplemental report, ███████████████████████████████████

2    ████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████

4    ███████████████ Supp. Shafiq Rpt. ¶ 3.

5         The Tracking Tools shared three core pieces of information about each Class Member,

6    regardless of their privacy settings, browser, device, or any other factor: ████████████

7    ████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████

10   ██████████████████████████████████████████████████████ Supp.

11   Shafiq Rpt. ¶¶ 3, 11, 21.

12        BetterHelp's argument that a user's browser or cookie settings impact whether identifiers

13   were shared ignores the important distinction between first-party cookies and third-party cookies.

14   Opp. at 5-6. Professor Shafiq explains that ████████████████████████████

15   ████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████

17   ███████████████ Shafiq Rpt. ¶¶ 49–59; Supp. Shafiq Rpt. ¶¶ 21-22. BetterHelp's expert agrees

18   with Professor Shafiq that █████████████████ Dkt 210-1, Ex. A., ("Zhao Rpt.") §

19   IV (Definitions), and Shafiq explains that ████████████████████

20   ████████████████████████████████ Shafiq Rpt. ¶¶ 56-59.

21   Rather than grappling with the data shared via first-party cookies, BetterHelp points only to factors

22   that can potentially impact the sharing of information through *third-party* cookies. ████████

23   ████████████████████████████████████████████████████████████

24   ████████████████████████████ Shafiq Rpt. ¶¶ 56-59.

25        Nor does the data vary between mobile and desktop devices. Opp. at 11, 13. ████████

26   ██████████████████████████████████████████████████████ *See* CT

27   Dec., Ex. 2, ("Shafiq Tr.") at 302:3-303-11. Moreover, BetterHelp points to no evidence to suggest

28   that the mobile application, which was designed to have the exact same functionality as the website,

4

worked any differently. In fact, BetterHelp's counsel previously represented to this Court that "the apps mirror the website" and "it's the same code that underlies both." *See* CT Dec., Ex. 3, ("MTC Tr.") (May 8, 2025) at 31:17-20. In response to the FTC's Civil Investigative Demand, BetterHelp also represented ███████████████████████████████████████ CT Dec., Ex. 4 at n.3. Additionally, logs produced by Meta in this case, which show ████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████ Tusan Decl. CT Dec. Ex. 5.

BetterHelp is unable to point to any cookie or privacy settings that would change whether content information was captured by BetterHelp's source code. Instead, BetterHelp speculates this must have occurred because Meta did not produce data collected by its pixel for two of the Plaintiffs. BetterHelp then jumps to the conclusion that this means BetterHelp never shared any data about those two Plaintiffs with Meta. Opp. at 16, 18. That inference is unwarranted. These two Plaintiffs visited BetterHelp's website in 2018 and 2019 and Meta does not maintain data indefinitely—it decides how long it keeps information on a "case-by-case basis."[2] BetterHelp has also asserted that on April 27, 2023, it sent a letter to Meta ████████████████████ ████████████████████████████ *See* CT Dec., Ex. 6 and CT Dec., Ex. 7. Thus, ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████

How the pixel functioned and whether it intercepted protected information can also be determined through the source code on BetterHelp's website. In fact, Defendant's expert, Dr. Zhao, ████████████████████████████████████████████████ ████████████████████████████ Zhao Tr. at 112:1722-113:8. This evidence—which applies to all Class Members—████████████████████████████████████

---

[2] https://www.facebook.com/privacy/policy/ ("We keep information as long as we need it to provide our Products, comply with legal obligations or protect our or other's interests. We decide how long we need information on a case-by-case basis. . .") (last visited Oct. 30, 2025).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 3:23-cv-01033-RS

1    ██████.[3] Supp. Shafiq Rpt. ¶¶ 3, 9-11, 14-16, 19-21.

2                    **b.    The Non-Anonymized Patient Information Allowed Third**
3                           **Parties to Identify BetterHelp Users.**

4          BetterHelp insists that it only shares "anonymized" data and disagrees that Meta, Google,

5    and Mixpanel can identify specific users from the data that they collected from their tracking

6    technologies on BetterHelp's website. Opp. at 3–4, 13. Professor Shafiq explains how the

7    combination of data about each user and the user's device that BetterHelp shared with third parties

8    is sufficient to identify the user.[4] Shafiq Rpt. ¶¶ 90-96. Evidence from Meta confirms that it

9    identified BetterHelp users. As BetterHelp acknowledges, Meta produced data logs for three

10   Plaintiffs showing the data it had collected from the BetterHelp pixel for each person. CT Dec. Ex.

11   5. The only information Meta said that it needed Plaintiffs to provide in order to locate the data in

12   its database that had been transmitted to it about Plaintiffs from the pixels on BetterHelp's website

13   was each Plaintiff's name, their Facebook user IDs, and BetterHelp pixel ID. CT Dec. ¶22. In other

14   words, Meta had already matched the data from BetterHelp to specific individuals before Plaintiffs

15   requested the data.[5] Of course, this makes sense, as this is how third parties like Meta and Google

16   create advertising profiles for specific users, which is the core function of their pixels. *See, e.g.*,

17   Opp. at 27 (acknowledging that "Google tracks user IP addresses, searches, and page views to serve

18   users with targeted ads.").

19

20   _____
     [3] BetterHelp also wrongly asserts that Professor Shafiq only "evaluated [the website's pixel
21   configuration] on a single day" yet concluded that the tracking technologies were uniform
     throughout the class period. Opp. at 23 n.10. This ignores that once it was produced, Dr. Shafiq
22   examined BetterHelp's entire source code to confirm ████████████████████████████
     *See* Supp. Shafiq Rpt. ¶ 7. Because BetterHelp was only compelled to produce the source code after
     Dr. Shafiq submitted his initial report, *id.* ¶ 2, this analysis is in his supplemental report.
23   [4] BetterHelp's expert, Dr. Zhao, confuses the issues by arguing that ████████████████████
     ████████████████████████████████. Zhao Rpt. ¶ 23. Professor Shafiq's
24   point is tha █████████████████████████████████████████████████████████████
     █████████████████████████████████████████████████████████████████████
25   ██████████████████████████████████████████████████████████ Shafiq Rpt. ¶¶
     43, 49-59.
26   [5] In connection with a prior motion to seal, counsel for non-party Meta stated: "In particular, Exhibit
     41 [Meta 001-005] contains 'event data' that BetterHelp, Inc. ('BetterHelp') chose to send to Meta
27   using the Meta Pixel, a tool Meta makes available to developers like BetterHelp. The event data
     reflects user activity on BetterHelp's website that Meta matched to the plaintiffs' Facebook
28   accounts, which—once BetterHelp transmits it using the Meta Pixel—Meta then ingests, processes,
     organizes, and stores in its internal data systems." Dkt. 175 at ¶ 2.

### c.    BetterHelp's Accusations Against Plaintiffs Are False.

BetterHelp incorrectly accuses Plaintiffs of making misrepresentations to the Court and cherry-picking evidence. Opp. at 9–11.

*First*, BetterHelp accuses Plaintiffs of ignoring that Meta is responsible for changing its software, but Plaintiffs present evidence that ███████████████████████████ ████████████████████████████████████████ Supp. Shafiq Rpt. ¶¶ 3, 5, 7(a), 13, *see also* CT Dec., Ex. 8 ("Matas Tr.") at 69:4-70:4, 77:10-78:10; CT Dec., Ex. 9 ("Vaughan Tr.") at 75:2-77:25; CT Dec., Ex. 10 ("Bragonier Tr.") at 70:8-71:10; *and* CT Dec., Ex. 11 ("Honbarger Tr.") at 22:7-24:15. Professor Shafiq demonstrates ██████████████████████████ ██████████████████████████████████ *Id.* BetterHelp implicitly acknowledges this by boasting that it exercised its power to decrease the amount of information Meta receives from the pixel by changing the code in 2021. Opp. at 10.

*Second*, BetterHelp accuses Professor Shafiq of cherry-picking data from the time before BetterHelp decreased the volume of data shared with Meta. *Id.* BetterHelp ignores that Professor Shafiq's report ██████████████████████████████████████ Shafiq Rpt. ¶ 70. Professor Shafiq explained in his deposition that ██████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████ Shafiq Tr. at 291:13-298:11; Shafiq Rpt. ¶ 68 (screenshots are ████████████████████████████████). BetterHelp also disregards Shafiq's supplemental report where he explains that ██████████████████████████████ ████████████████████████████████████████████ *See* Supp. Shafiq Rpt. ¶ 3. This is perhaps why BetterHelp elected not to depose Professor Shafiq on his supplemental report, as it had no basis for substantively criticizing Shafiq's interpretation of the source code. See Plaintiffs' Opposition to BetterHelp's Motion to Strike Shafiq at 8 filed concurrently herewith; CT Dec. ¶24.

*Third*, BetterHelp accuses Plaintiffs of lying because BetterHelp insists it "never disclosed Confidential Customer Data" and that individual privacy practices affect what information is

disclosed. Opp. at 10. These are simply disputed issues of fact and expert opinion, nothing more.

### d.    The Cases BetterHelp Cites Are Distinguishable.

The cases BetterHelp relies on are readily distinguishable because here, the key information determining BetterHelp's liability was shared through mechanisms Class Members could not disable, including first-party cookies. In BetterHelp's cases, by contrast, the question of whether sensitive health information was transmitted to a third party varied depending on individual circumstances, such as browser settings. *See* Opp. at 23-25 (citing *In re Hulu Priv. Litig.*, 2014 WL 2758598, at *22 (N.D. Cal. June 7, 2014); *Griffith v. TikTok, Inc.*, 2024 WL 4308813 (C.D. Cal. Sept. 9, 2024); *In re Facebook Priv. Litig.*, 2016 WL 4585817 (N.D. Cal. Sept. 2, 2016)). Other cases holding that there is no privacy interest in IP addresses and device information are irrelevant because the information BetterHelp helped disclose is not so limited. Opp. at 17-18.

Rather, this case is analogous to *Frasco v. Flo Health*, 349 F.R.D. 557, 569 (N.D. Cal. 2025). The *Flo* plaintiffs presented evidence that "user entries for the Custom Events were sent to Meta and Google" and "featured words like 'pregnancy' and 'period,' which communicated information about the dates on which a user menstruated or became pregnant." *Id.* at 573. Here, BetterHelp wrote bespoke code to transmit to Meta, Google, and Mixpanel an event confirming that a website visitor completed the intake questionnaire to request mental health services. Supp. Shafiq Rpt. ¶¶ 3, 5, 7(a), 13-15. Just as in *Flo*, that custom event conveys sensitive health information and the content of Class Member communications with BetterHelp. *See* 349 F.R.D. at 582 ("whether health information was conveyed is answerable with common evidence" because the "evidence about the transmission of Custom Events, the names of the Custom Events, and whether . . . those names . . . convey[ed] sensitive health information, demonstrate that they have a classwide method of resolving the merits questions").

### 2.    BetterHelp's Other Arguments Do Not Raise Individualized Issues.

#### a.    Whether BetterHelp is Subject to HIPAA is a Common Merits Issue.

BetterHelp insists that it is not subject to HIPAA (Opp. at 12), but this is a merits question. *See Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 863 (9th Cir. 2025) (reiterating

1   that class certification does not require plaintiffs to show they will win at trial). And while

2   BetterHelp's expert improperly invades the province of the fact finder in opining that BetterHelp

3   is not subject to HIPAA—which Plaintiffs intend to address at the merits stage—the report

4   underscores that common evidence can be used to resolve this question.[6]

5                   **b.      Consent Can Be Resolved for the Entire Class.**

6          Citing to its Privacy Policy and website banners, BetterHelp argues that it disclosed the use of

7   cookies and beacons and Plaintiffs thus consented to the disclosure of their private information. Opp.

8   at 7-9, 16. BetterHelp further argues that because its Privacy Policy and banners varied during the

9   Class Period, consent will be individualized for Class Members. But here, as in *Rodriguez v. Google*

10  and other cases, consent can be resolved classwide. 2024 WL 38302, at *8-9 (N.D. Cal. Jan. 3, 2024);

11  *see, e.g.*, *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018); *Flo*,

12  349 F.R.D. at 576; *Torres v. Prudential Fin., Inc.*, 2024 WL 4894289, at *7 (N.D. Cal. Nov. 26, 2024).

13         As an initial matter, BetterHelp's consent argument is off the mark because the only

14  acceptable form of consent for HIPAA-protected information is an expressed, signed authorization.

15  *See* 45 C.F.R. § 164.501. BetterHelp does not claim to have obtained any such signed authorization

16  from any Class Member. Even if BetterHelp were not subject to HIPAA, express and implied

17  consent can be answered classwide because they are analyzed under a "reasonable person" standard,

18  "any consent must be actual," and "[t]o be effective, consent must be . . . to the particular conduct, or

19  substantially the same conduct." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024)

20  (citations omitted). BetterHelp's disclosures must "explicitly notify" Plaintiffs and Class Members of

21  the specific conduct being challenged. *Flo*, 349 F.R.D. at 574.

22         Courts have consistently held that the type of generalized statements BetterHelp relies on—

23  *e.g.*, that BetterHelp uses cookies and beacons "to collect information" to help its website "function

24  properly" and "for marketing purposes" (Opp. at 7-9)—are too vague to support an express consent

---

[6] While irrelevant for this motion, BetterHelp's insistence that it is not subject to HIPAA is also
simply not credible

9

defense, particularly when the collection of sensitive personal information is at issue. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 794 (N.D. Cal. 2022) (disclosures about general data collection not sufficient to place consumers on notice that their protected health information was being collected); *Flo*, 349 F.R.D. at 575; *Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023). Other statements BetterHelp cites that reassure users it will "never sell or rent any information you share with us" and that it uses cookies "to comply with laws" further underscore that a reasonable consumer would not believe that BetterHelp was helping companies like Google and Meta to create dossiers about them and their mental health concerns. *See Flo*, 349 F.R.D. at 575-76 (defendant's representations that it would not share health information undercut the value of more generalized disclosures). Thus, any variations in BetterHelp's Privacy Policy and banners are immaterial because none would have notified a reasonable consumer of BetterHelp's conduct.

BetterHelp also suggests that some Class Members could have given implied consent (Opp. at 20-21), but that requires evidence showing Class Members were aware of what was occurring and then "proceeded to expose themselves to the actions anyways." *Prudential*, 2024 WL 4894289, at *4 (citing *Calhoun*, 113 F.4th at 1147); *Valenzuela v. Kroger Co.*, 2024 WL 1336959, at *3 (C.D. Cal. Mar. 28, 2024). Despite having the burden of establishing that consent creates individualized issues, *Flo*, 349 F.R.D. at 575, BetterHelp points to no evidence that any Plaintiff or Class Member was aware of its data sharing practices. *See True Health*, 896 F.3d at 932 ("[W]e do not consider the consent defenses [the defendant] might advance or for which it has presented no evidence."); *Ades v. Omni Hotels Mgmt. Corp.*, 2014 WL 4627271, at *12 (C.D. Cal. Sept. 8, 2014) (rejecting consent challenge to predominance in CIPA case where the defendant failed to show "that a single person meeting the class definition actually consented to a call being recorded during the Class Period."). Because there is no evidence that any Plaintiff or Class Member could have consented, the record stands in stark contrast to the cases BetterHelp cites where the defendant's data collection practices were explicitly disclosed through privacy policies and/or already well-known to the public due to widespread media coverage. *See, e.g.*, *Calhoun v. Google LLC*, 349 F.R.D. 588, 595-96 (N.D. Cal. 2025); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *17-18 (N.D. Cal. Mar. 18, 2014).

### 3.    Predominance is Met for the Common Law Privacy Claim.

Contrary to BetterHelp's arguments, the common law invasion of privacy claim will not turn on individualized issues. Opp. at 26-28. As a threshold matter, BetterHelp's argument that Plaintiffs lack standing because their private information was not disclosed should be rejected for the reasons above. Its contention that three Plaintiffs (Doe I, Doe III, and L.M.) lacked a reasonable expectation of privacy because they previously shared personal information online omits vital context: ███████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████ CT Dec., Ex. 13 ("Doe I Tr.") at 140:19-141:16, 157:13-158:4; *Id.*, Ex. 14 ("Doe III Tr.") at 115:13-116:20; *Id.*, Ex. 15 ("L.M. Tr.") at 137:22-138:21.

Regardless, BetterHelp's argument overlooks that "California law does not require Plaintiffs to prove subjective expectation" of privacy. *Opperman v. Path, Inc.*, 2016 WL 3844326, at *11 (N.D. Cal. July 15, 2016); *see Sanchez-Scott v. Alza Pharms.*, 86 Cal. App. 4th 365, 372 (2001) ("The tort is proven only if the plaintiff had an *objectively* reasonable expectation of seclusion . . . . ") (emphasis added). The claim thus turns on an objective question of whether a reasonable consumer would expect that their privacy rights would be protected. Moreover, the right to privacy includes the right to control how information is disseminated. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020). Consistent with this privacy right, ███████████████████████████

█████████████████████████ *E.g.*, CT Dec., Ex. 14 ("Doe III Tr.") at 98:7-9. And even assuming Plaintiffs separately disclosed the specific personal health information at issue in this case— they did not—the Supreme Court has rejected the "cramped notion of personal privacy" that an individual loses all privacy interests in personal information the moment it is disclosed. *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 762 (1989); *see also Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1128 (9th Cir. 2017) (an expectation of privacy "is not a binary, all-or-nothing characteristic") (citation omitted).

BetterHelp's contention that Plaintiffs admitted to previously searching Google for therapists before signing up for BetterHelp again misses the mark because it bears on subjective expectations that are not an element of the claim. ████████████████████████████████

1     ███████████████████████████████████████████████████████

2     ██████████ *E.g.*, CT Dec., Ex. 13 ("Doe I Tr.") at 130:13-20, 147:6-15. Further, the operative

3     question is whether the plaintiffs manifested their "voluntary consent to the invasive actions of the

4     defendant." *Flo*, 349 F.R.D. at 582. For the reasons stated above, they did not consent to BetterHelp's

5     conduct.

### 4. The Wiretapping Claims Will Turn on Common Proof.

7        The predominance challenges to the CIPA and ECPA claims should be rejected. Opp. at 28-

8     29. First, there is no evidence that any Plaintiff consented to the interception of their private

9     communications. Second, several of the arguments—that the intercepted information does not

10    constitute "contents" and interception did not occur while "in transit" under Section 631—are merits

11    questions. Opp. at 28-30 (citing cases addressing merits). These arguments will also be answered with

12    common proof. For example, for all Class Members, third parties uniformly intercepted an "event"

13    showing that the visitor completed BetterHelp's intake questionnaire, which reveals the contents of

14    the communication with BetterHelp: the visitor was requesting mental health treatment.

15        While BetterHelp insists there is no way to determine whether a Class Member's

16    communications were sent or received in California for the CIPA claim, the California Subclass is

17    limited to California residents. *See Zaklit v. Nationstar Mortg. LLC*, 2017 WL 3174901, at *9 (C.D.

18    Cal. July 24, 2017) (California area code was a reasonable proxy for being in California during

19    recorded calls).████████████████████████████████████████████████

20    ██████████████████████ Shafiq Rpt. ¶¶ 31, 38. *See Torres*, 2024 WL 4894289, at *9 (IP address

21    along with defendant's records could be used to determine location of interception). Class Members

22    can also be required to attest to their location as part of a claims administration process. *Id.*; *see Utne*

23    *v. Home Depot U.S.A., Inc.*, 2022 WL 1443338, at *8 (N.D. Cal. May 6, 2022) ("claims phase" can

24    weed out class members). And BetterHelp in its Interrogatory responses specifically identified the

25    number of Class Members that were located in California, by year. CT Decl. Ex. 17 at Resp. #14.

26        BetterHelp also claims that some Plaintiffs' and Class Members' claims are "likely" subject

27    to a statute of limitations defense, but courts have consistently held that timeliness questions do not

28    defeat class certification where, as here, other key questions can be resolved classwide. *See Siqueiros*

1     *v. Gen. Motors LLC*, 2021 WL 2115400, at \*23 (N.D. Cal. May 25, 2021); *Bally v. State Farm Life*

2     *Ins. Co.*, 335 F.R.D. 288, 304 (N.D. Cal. 2020). As with BetterHelp's consent argument, whether

3     tolling applies to a subset of Class Members' claims will turn on an "objective inquiry" through

4     common proof. *In re Tesla Advanced Driver Assistance Sys. Litig.*, 2025 WL 2532185, at \*10 (N.D.

5     Cal. Sept. 3, 2025) (delayed discovery rule common to the class); *Belyea v. GreenSky, Inc.*, 2025 WL

6     589037, at \*19 (N.D. Cal. Feb. 24, 2025) (whether defendant's agreement put class members on notice

7     for statute of limitations purposes was common issue).

8            **5.**      **Damages Can Be Determined Classwide.**

9               **a.**      **Plaintiffs Present a Viable Model to Measure Actual Damages.**

10         BetterHelp claims that Plaintiffs have not presented a classwide method for calculating

11     actual damages. Opp. at 36. Plaintiffs' damages expert, Eric Krause—who has decades of

12     experience in valuing intangible assets such as personal data—███████████████████████

13     ████████████████████████████████████████████████████████████████████████████

14     ███████████████████████████████████ Krause Rpt. ¶¶ 2-5, 41-68; CT Dec.,

15     Ex. 16 ("Krause Tr.") 21:18–23, 57:2–20████████████████████████████████████

16     ████████████████████████████████████████████████████████████████████████████

17     ████████████████████████████████████████████████████████████████████████████

18     ██████████████████████████████████ Krause Tr. 143:10-25, 144:1-10; Krause Rpt. ¶¶

19     45–46, 65–68. *See Rodriguez*, 2024 WL 38302, at \*10-11 (rejecting *Daubert* challenge to expert

20     who calculated actual damages based in part on users' willingness to pay to prevent data collection

21     and entities' willingness to pay for collecting such data). Based on these studies and the types of

22     PHI and PII that were shared, ███████████████████████████████████████████████

23     ███████ *Id.*

24         Citing its competing expert, BetterHelp argues that Plaintiffs' damages model fails because

25     there is no legal market for individuals to sell their digital information. But the answer to that

26     question about the merits of the model is common to the entire Class. The argument is also

27     substantively wrong. As discussed in Plaintiffs' opposition to BetterHelp's motion to exclude

28     Krause, while it is true the personal data at issue is an intangible asset without an active liquid

market, an entire field of economics is devoted to the valuation of such assets, including intellectual property assets like goodwill, patents, and trade secrets. The absence of a liquid market is the reason an expert opinion is needed—it does not mean such assets have no quantifiable value at all. The market-based approach Krause applied to arrive at his conclusions has also been upheld in other cases involving the valuation of personal information. *See, e.g.*, *See Savidge v. Pharm-Save, Inc.*, 2023 WL 2755305, at *19 (W.D. Ky. Mar. 31, 2023) (rejecting *Daubert* challenge to expert who applied market approach in data breach case). BetterHelp's other criticisms of Krause—such as whether the studies he used are sufficiently analogous to the information disclosed in this case—go to weight, not admissibility. *See Rodriguez*, 2024 WL 38302, at *12 (expert's use of survey data was not "cherry-picked" when he explained why he selected it for his damages calculations).

Mr. Krause applies a well-accepted methodology in conducting his damages valuation that can be applied to the entire Class.

### b.    Statutory Damages Are Not Individualized.

Contrary to what BetterHelp claims, the availability of statutory damages confirms damages can be efficiently calculated. *See Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 633 (N.D. Cal. 2014) (stating that statutory damages "will involve [a] less stringent individualized inquiry"); *Doe v. Mindgeek USA Inc.*, 702 F. Supp. 3d 937, 950 (C.D. Cal. 2023) (statutory damages "supports a finding of predominance."); *Romero v. Securus Techs., Inc.*, 331 F.R.D. 391, 411 (S.D. Cal. 2018) (rejecting argument that individualized damages inquiries would predominate because the statute in question provided for statutory damages); *Zaklit*, 2017 WL 3174901, at *9 (similar); *Kellman v. Spokeo, Inc.*, 2024 WL 2788418, at *11 (N.D. Cal. May 29, 2024) (similar).

Citing *Campbell v. Facebook Inc.*, 315 F.R.D. 250 (N.D. Cal. 2016), BetterHelp argues that statutory damages under ECPA and CIPA are discretionary and will thus require consideration of the individual circumstances of each Class Member. But CIPA does not provide for discretionary damages. *See Frasco v. Flo Health, Inc.*, 2025 WL 2680068, at *13 (N.D. Cal. Sept. 17, 2025) (*Campbell* did not apply discretionary standard to CIPA). The provision BetterHelp erroneously cites (Cal. Civ. Code § 1798.150) is part of the CCPA, and is therefore not grounds for refusing to certify the CIPA claim.

Even as to discretionary damages, such as under the CCPA, "within the Ninth Circuit, the issue of determining the award amount within the statutory range generally has not been predominant enough to negate certification[,]" *Kang v. Credit Bureau Connection, Inc.,* 2022 WL 658105, at *7 (E.D. Cal. Mar. 4, 2022); *see, e.g.*, *Hawkins v. S2Verify*, 2016 WL 3999458, at *6 (N.D. Cal. July 26, 2016) (certifying statutory damages class even where range was discretionary). *Campbell* is also distinguishable because that case was not focused on health information, so most class members there "suffered little, if any, harm" from the disclosure of their information. 315 F.R.D. at 268-69. Here, by contrast, BetterHelp's disclosure of the fact that Class Members were seeking mental health counseling has long been the type of privacy violation that is actionable under the common law. *See Frasco*, 349 F.R.D. at 579 (explaining under Ninth Circuit precedent, the intrusion on private matters itself makes the defendant liable).

**B.     A Class Action is Both Manageable and Superior.**

**1.     The Verdict Form Shows How Plaintiffs' Claims Can be Efficiently Tried Together Using Classwide Proof.**

BetterHelp faults Plaintiffs for not submitting a trial plan, but Plaintiffs did in fact submit a trial plan (*see* Dkt. 170-12), even though it is not a prerequisite to class certification. *See Robbins v. Phillips 66 Co.*, 2021 WL 4932729, at *3 n.4 (N.D. Cal. Mar. 29, 2021) (Seeborg, J.).

In any event, the proposed verdict form Plaintiffs submit with this reply further illustrates that the four claims Plaintiffs seek to certify[7] substantially overlap in their elements and can be readily managed. *See* Plaintiffs' Proposed Jury Verdict Form filed concurrently herewith. Although there may be some variation in how particular questions are worded for each claim, the verdict form shows that the jury would need to only answer a discrete number of questions to resolve all of the claims. Questions common to multiple claims include (a) whether Class Members had a reasonable expectation of privacy in their communications with BetterHelp, (b) whether BetterHelp aided or procured third parties to intercept Class Member communications and personal information, and (c) whether Class Members consented to the sharing of this information.

---

[7] In addition to the four claims Plaintiffs seek to certify, to conform to proof and in light of developments in the law, Plaintiffs may also seek leave to amend to add a claim under section 632 of CIPA. Plaintiffs will be prepared to address this issue at the class certification hearing.

### 2. The FTC Settlement Does Not Defeat Superiority.

According to BetterHelp, the FTC settlement precludes a superiority finding because it already resolves the issues in this case. Opp. at 14, 37 (citing *Kamm v. California City Dev. Co.*, 509 F.2d 205 (9th Cir. 1975)). As the Ninth Circuit has stated, however, *Kamm* "does not hold that a prior public settlement necessarily defeats superiority for future class actions." *B.P. v. Balwani*, 2021 WL 4077008, at *2 (9th Cir. Sept. 8, 2021). Instead, a class action remains superior so long as there are sufficient differences with the government case, including in the "scope of damages" and the types of claims at issue. *Id.* (class action was superior despite prior state consent decree).

A class action was not superior in *Kamm* because it would have largely duplicated a state action that already provided significant relief to most class members. A class proceeding here, by contrast, will not duplicate the FTC action, which focused on BetterHelp's unfair and deceptive business practices, including "repeatedly misrepresent[ing] its practices with respect to the collection, use, and disclosure" of users' health information. *See* 7/6/23 FTC Compl., ¶¶ 70-100 (asserting various counts for unfair privacy practices and misrepresentations). Plaintiffs no longer seek classwide relief under the CLRA and UCL based on BetterHelp's misrepresentations. Their wiretapping, CCPA, and common law invasion of privacy claims are not tethered to BetterHelp's advertising practices, and these claims are also distinct because the FTC could not pursue them. *See Balwani*, 2021 WL 4077008, at *2 (noting that the plaintiffs' "California statutory claims" were "unaffected" by the state consent action). It also cannot be said that the FTC settlement already provides "significant relief . . . to many members of the class[.]" *Kamm*, 509 F.2d at 212. The $7.8 million FTC recovery provides on average less than $15 in individual payments to a small portion (534,000) of the proposed Class, and the Class Period here (2017-23) extends beyond the period covered by the FTC action (2017-20). Certification is warranted because the requirements of Rule 23 are met here, and a class proceeding is the superior means of resolving the unique issues in this case.

### C. The Other Requirements of Rule 23(a) Are Met.

#### 1. Plaintiffs Are Adequate and Their Claims are Typical.

BetterHelp challenges Plaintiffs and their counsel's adequacy, but none of its arguments suggest any conflicts of interest or failure to vigorously represent the interests of the Class. *See*

1    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Instead, in challenging Plaintiffs'

2    adequacy, BetterHelp relies on the same flawed arguments addressed above that (1) there is no

3    evidence that two Plaintiffs had their information disclosed and (2) three Plaintiffs have freely

4    disclosed their private details. As already explained, Meta's records are not the only evidence that

5    Plaintiffs' information was disclosed, and BetterHelp takes Plaintiffs' deposition testimony out of

6    context. The only criticism of Plaintiffs' counsel's adequacy BetterHelp musters is a dispute over

7    the significance of an internal BetterHelp presentation slide, which actually confirms the improper

8    sharing of data by BetterHelp. Opp. 21. It is unclear why BetterHelp now wants to reject its own

9    documents in support of Plaintiffs' Motion. While BetterHelp cites to a document purporting to list

10   other misleading citations, BetterHelp appears not to have actually submitted such a document with

11   its opposition papers. CT Dec. ¶23. Even assuming there are any citation errors, it is not a basis for

12   finding Plaintiffs' counsel inadequate when they have diligently represented the Class for several

13   years. *See In re Apple Inc. Sec. Litig.*, 2022 WL 354785, at *5 (N.D. Cal. Feb. 4, 2022) (minor errors

14   do not defeat adequacy).

15        BetterHelp also challenges typicality, but its argument is wholly tied to its flawed consent

16   argument and should be rejected for the same reasons. Opp. at 20 (citing, *inter alia*, *Bustillos v. W.*

17   *Covina Corp. Fitness, Inc.*, 2022 WL 423396, at *3 (C.D. Cal. Jan. 3, 2022) (plaintiff who did not

18   consent could not represent class consisting of consumers who consented)).

19        **2.    The Class and California Subclass Are Sufficiently Numerous.**

20        Rather than contest the actual size of either the Class or California Subclass – the numbers

21   of which were identified specifically by BetterHelp in its Interrogatory responses (see CT Decl, Ex.

22   17 at Resp. #14), BetterHelp challenges numerosity by recycling its argument that what information

23   was transmitted is contingent on individual factors and thus concluding that the number of violations

24   Plaintiffs will ultimately prove is speculative. Opp. at 22. Professor Shafiq's analysis of

25   BetterHelp's website source code—which, again, BetterHelp does not challenge—explains that

26   ████████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████████████

28   ████████████████████████████████████████████    Shafiq Rpt. ¶¶ 13, 38, 52-59. This case is

therefore nothing like *Martinez v. D2C, LLC*, 2024 WL 4367406, at \*6-9 (S.D. Fla. Oct. 1, 2024), where the plaintiff relied entirely on unwarranted inferences about class members' browser settings and whether they were logged into Facebook to establish numerosity.

## III.    CONCLUSION

For these reasons and the reasons stated in their Motion for Class Certification and all supporting papers, Plaintiffs request that the Court certify the Class and California Subclass and appoint them as class representatives, appoint their counsel as class counsel, and direct the parties to promptly submit a proposed plan of notice.

Dated: October 31, 2025                    Respectfully submitted,

*/s/ Gary. M. Klinger*
Gary M. Klinger (*pro hac vice*)
William J. Edelman (SBN 285177)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com
Email: wedelman@milberg.com

*Plaintiffs' Co-Lead Interim Class Counsel*

*/s/ Christina Tusan*
Christina Tusan (SBN 192203)
**TUSAN LAW, PC**
680 E. Colorado Blvd. #180
Pasadena, CA 91101
Telephone: (626) 418-8203
Facsimile: (626) 619-8253
Email: ctusan@ctusanlaw.com

*Plaintiffs' Co-Lead Interim Class Counsel*

*/s/ Maureen M. Brady*
Maureen M. Brady (*pro hac vice*)
**McSHANE AND BRADY LLC**
1656 Washington Suite 140
Kansas City, MO 64108
Telephone: (816) 888-8010
Email: mbrady@mcshanebradylaw.com

*Plaintiffs' Co-Lead Interim Class Counsel*

*/s/ Alan M. Mansfield*
Alan M. Mansfield (SBN 125998)

18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WHATLEY KALLAS LLP**
1 Sansome Street, 35th Floor, PMB #131
San Francisco, CA 94104 /
16870 West Bernardo Drive, Suite 400
San Diego, CA 92127
Telephone: (619) 308-5034
Facsimile: (888) 341-5048
Email: amansfield@whatleykallas.com

*Plaintiffs' Liaison Counsel*

*/s/ Dena C. Sharp*
Dena C. Sharp (SBN 245869)
Trevor T. Tan (SBN 281045)
Nina Gliozzo (SBN 333569)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: 415.981.4800
Email: dsharp@girardsharp.com
Email: ttan@girardsharp.com
Email: ngliozzo@girardsharp.com

*Plaintiffs' Trial Counsel*

19