**GIBSON, DUNN & CRUTCHER LLP**

ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

*Attorneys for Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE: BETTERHELP, INC. DATA DISCLOSURE CASES,

Case No. 3:23-cv-01033-RS

**DECLARATION OF ABIGAIL A. BARRERA IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED**

I, Abigail A. Barrera, state and declare as follows:

1. I am an attorney licensed to practice in the State of California. I am a partner at the law firm Gibson, Dunn & Crutcher LLP, and counsel for non-party Meta Platforms, Inc. ("Meta"). I am familiar with Meta's treatment of proprietary and confidential information based on my personal experience representing Meta.[1] I have personal knowledge of the facts stated below and, if called as a witness, I could and would testify competently thereto.

2. I submit this declaration under Local Rule 79-5(f)(3) in support of Plaintiffs' Administrative Motion to Consider Whether Another Party's Material Should Be Sealed. Dkt. No. 224. Meta, a non-party to this action, seeks to seal an exhibit which the plaintiffs filed on October 31, 2025 at Dkt. No. 225 ("Exhibit 5"). Meta proposes to seal Exhibit 5 because it contains proprietary, commercially sensitive, and confidential information. In particular, Exhibit 5 contains "event data" that BetterHelp, Inc. ("BetterHelp") chose to send to Meta using the Meta Pixel, a tool Meta makes available to developers like BetterHelp. The event data reflects user activity on BetterHelp's website that Meta matched to the plaintiffs' Facebook accounts, which—once BetterHelp transmits it using the Meta Pixel—Meta then ingests, processes, organizes, and stores in its internal data systems. The non-public, internal processes by which Meta ingests, processes, organizes, and stores that event data, if disclosed to the public, would place Meta at a competitive disadvantage.[2]

3. Sealing is appropriate here for several reasons. *First*, Meta's sealing request is "narrowly tailored to seek sealing only of sealable material." *Singh v. Costco Wholesale Corp.*, No. 20-CV-08180-NC, 2023 WL 4335287, at *1 (N.D. Cal. May 11, 2023). Meta's request is limited only to Exhibit 41 because it reveals proprietary, commercially sensitive, and confidential information

[1] This Court and others in this District routinely grant motions to seal on the basis of declarations of counsel submitted pursuant to Local Rule 79-5. *See, e.g.*, Dkt. Nos. 157, 417; *see also Avago Techs. Fiber IP (Singapore) PTE. Ltd., v. IPtronics Inc.*, No. 5:10-cv-02863-EJD, Dkt Nos. 544 (N.D. Cal. Apr. 3, 2015), 545 (N.D. Cal. Apr. 7, 2015); *Cisco Sys. Inc., v. OpenTV Inc.*, No. 5:13-cv-00282-EJD, Dkt. Nos. 76, 82 (N.D. Cal. Oct. 8, 2013). I am personally familiar with Meta's practices of safeguarding proprietary information, including based on my experience representing Meta for many years, but if the Court deems this declaration insufficient, Meta respectfully requests that it be permitted to file a further declaration supporting filing under seal.

[2] Meta previously sought to seal this same document. *See* Dkt No. 175.

concerning the non-public, internal processes by which Meta ingests, processes, organizes, and stores event data received from developers like BetterHelp.

4. *Second*, as the Supreme Court has recognized, the public right of access to court records may be limited when those records could be used "as sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc*., 435 U.S. 589, 598 (1978). Meta is likely to suffer harm if highly confidential information regarding the way it organizes and stores event data received from developers like BetterHelp is made public. Meta operates in an intensely competitive marketplace and has serious and legitimate concerns that competitors will exploit any release of Meta's sensitive, proprietary information to gain a competitive advantage. Disclosure of the limited information Meta seeks to seal would provide these competitors with unfair insight into how Meta's systems are designed and operate, giving competitors the ability to "duplicate features of" Meta's systems and technical infrastructure "which could cause competitive harm." *In re Google Inc. Gmail Litig.,* 13–MD–02430–LHK, 2013 WL 5366963, at *3 (N.D. Cal. Sept. 25, 2013) (finding "compelling reasons to seal" materials relating to "descriptions of how Gmail operates").

5. *Third*, there is "a compelling reason to seal" information that could compromise a party's "network infrastructure and security systems." *Music Grp. Macao Com. Offshore Ltd. v. Foote*, No. 14-CV-03078-JSC, 2015 WL 3993147, at *6 (N.D. Cal. June 30, 2015). The disclosure of event data that is referenced herein is competitively sensitive and could empower bad actors to exploit Meta's systems and misuse data stored by Meta.

6. The public's right to inspect and access court records "can be overridden given sufficiently compelling reasons for doing so." *Foltz v. State Farm Mut. Auto Ins. Comp.*, 331 F.3d 1122, 1135 (9th Cir. 2003). Such compelling reasons exist here. Relevant factors in deciding whether a party's interest in sealing overcomes the public's interest in disclosure include: (1) the amount of material sought to be sealed (*see Algarin v. Maybelline, LLC*, No. 12-CV-3000-AJB (DHB), at *3 (S.D. Cal. Feb. 21, 2014)); (2) the "public interest in understanding the judicial process" (*Ctr. for Auto Safety v. Chrysler Grp.*, *LLC*, 747 F. App'x 463, 465 (9th Cir. 2018)), and (3) "whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets" (*Id.*). Each of these factors supports sealing the limited material that Meta produced

in this matter. *First*, as noted above, the amount of material is limited only to Exhibit 41. *See Algarin*, 2014 WL 690410, at *3 (permitting sealing because party "only s[ought] to seal a limited amount of information"). *Second*, sealing of this limited information will not impede the public's understanding of the judicial process. The limited information that Meta seeks to seal is not essential to the public's understanding of the merits of this dispute to which Meta is not a party. *Third*, as discussed above, disclosure of this information is likely to place Meta at a competitive disadvantage. Meta's competitors could use this sensitive information concerning Meta's internal processes for their own gain and bad actors could use this sensitive information to better understand and infiltrate the data Meta stores, including user data.

7. Courts routinely protect the type of information that Meta seeks to seal here. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (holding "confidential . . . commercial information" was entitled to protection from disclosure); *see also Calhoun v. Google LLC*, No. 20-CV-05146-YGR (SVK), 2022 WL 1122843, at *3 (N.D. Cal. Apr. 14, 2022) (allowing redactions for references to "sensitive features of Google's internal systems and operations, including the various types of data sources which include information related to Google's data logs, internal data structures, internal identifiers and their proprietary functions"); *Ojmar US, LLC v. Sec. People, Inc.*, No. 16-CV-04948-HSG, 2016 WL 6091543, at *2 (N.D. Cal. Oct. 19, 2016) (noting protections afforded by courts within the Ninth Circuit are broad and extend to "confidential information regarding [a defendant's] products, services, and business practices"). Meta proposes sealing that would keep only its most sensitive, non-public material sealed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 7th day of November 2025 in San Francisco, California.

*/s/ Abigail A. Barrera*
Abigail A. Barrera