LIVIA M. KISER (SBN 285411)
*lkiser@kslaw.com*
JEFFREY HAMMER (SBN 264232)
*jhammer@kslaw.com*
CRAIG H. BESSENGER (SBN 245787)
*cbessenger@kslaw.com*
JAMES A. UNGER (SBN 325115)
*junger@kslaw.com*
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, California 90071
Telephone: +1 213 443 4355
Facsimile: +1 213 443 4310

Attorneys for Defendant
BETTERHELP, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**IN RE BETTERHELP, INC. DATA DISCLOSURE CASES**

This Document Relates To:

All Cases/

Case No. 3:23-cv-01033-RS

**REPLY IN SUPPORT OF BETTERHELP, INC.'S MOTION TO EXCLUDE TESTIMONY OF PROFESSOR ZUBAIR SHAFIQ**

Date: January 29, 2026
Time: 1:30 p.m.
Courtroom: 4
Judge: Hon. Richard Seeborg

# TABLE OF CONTENTS


Page(s)

I. INTRODUCTION ..... 4

II. PROFESSOR SHAFIQ'S OPINIONS SHOULD BE EXCLUDED ..... 4

A. Professor Shafiq's Opinions Are Inadmissible Under Rule 702 ..... 5

B. The Court Is Required to Exercise its Gatekeeper Role Under *Daubert* at the Class Certification Stage ..... 6

C. Professor Shafiq's Error-Riddled Analysis in This Case Is Consistent with the Criticisms of Other Courts and Reflects the Unreliability of His Opinions ..... 8

D. Plaintiffs Improperly Criticize Dr. Zhao to Distract from Professor Shafiq's Flawed Analysis ..... 9

E. Plaintiffs Fail to Rebut BetterHelp's Criticisms of Professor Shafiq's Opinions and Fail to Carry Their Burden of Admissibility ..... 10

(1) Professor Shafiq's Supplemental Report Is Equally Flawed and Does Not Rescue His Opinions ..... 10

(2) Plaintiffs Have No Credible Explanation for Professor Shafiq's Failure to Document His Testing ..... 11

(3) Professor Shafiq's Conclusions About "Uniform" Sharing of Sensitive Information Are Contradicted by the Evidence ..... 12

III. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Doe v. Adventist Health*,
Case No. 22STCV36304 (L.A. Super. Ct. Feb. 24, 2025) .......... 9

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .......... 7

*Engilis v. Monsanto Co.*,
151 F.4th 1040 (9th Cir. 2025) .......... 4

*In re Google RTB Consumer Privacy Litigation*,
No. 4:21-CV-2155-YGR, 2024 WL 2242690 (N.D. Cal. Apr. 4, 2024) .......... 9

*Grant v. United States*,
No. 2:11-CV-00360 LKK, 2011 WL 2367656 (E.D. Cal. June 9, 2011), *report and recommendation adopted*, No. CIV-S-11-0360-LKK, 2011 WL 2967323 (E.D. Cal. July 19, 2011) .......... 10

*Griffith v. TikTok, Inc.*,
No. 5:23-CV-00964-SB-E, 2024 WL 4874556 (C.D. Cal. Oct. 22, 2024) .......... 8, 9

*Grodzitsky v. American Honda Motor Co., Inc.*,
957 F.3d 979 (9th Cir. 2020) .......... 4, 7

*Hershewe v. JOYY Inc.*,
No. 2:20-CV-10611-SB-AFM, 2022 WL 1123208 (C.D. Cal. Mar. 9, 2022), *aff'd*, No. 22-55377, 2023 WL 3316328 (9th Cir. May 9, 2023) .......... 10

*Lust By & Through Lust v. Merrell Dow Pharms.*,
Inc., 89 F.3d 594 (9th Cir. 1996) .......... 4

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
713 F. Supp. 3d 660 (N.D. Cal. 2024) .......... 6

*Pascal v. Nissan North America, Inc.*,
No. 820CV00492JLSJDE, 2023 WL 2558786 (C.D. Cal. Feb. 21, 2023) .......... 7

*Ramirez v. City of Los Angeles*,
No. CV-15-02179-MWF-FFM, 2016 WL 11758444 (C.D. Cal. Oct. 3, 2016) .......... 9

*Rusoff v. Happy Grp., Inc.*,
No. 21-CV-08084-AMO, 2024 WL 5339463 (N.D. Cal. Sept. 27, 2024) .......... 6

*Sali v. Corona Regional Medical Center*,
909 F.3d 996 (9th Cir. 2018) .......... 7, 10

*Scarlet Honolulu, Inc. v. Honolulu Liquor Comm'n*,
No. CV 21-00457 JMS-KJM, 2022 WL 22963566 (D. Haw. Aug. 9, 2022) .......................... 4

*Wal Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......................................................................................... 7

*Weisgram v. Marley Co.*,
528 U.S. 440 (2000) .......................................................................................... 5

**Other Authorities**

Federal Rule of Evidence 702 ............................................................................ 4, 5, 6

Local Rule 7-1 ..................................................................................................... 10

Local Rule 7-18 ................................................................................................... 10

## I. INTRODUCTION

As Defendant BetterHelp, Inc. ("BetterHelp") set out in its Motion, Professor Shafiq's opinions reflected in his Expert Report (ECF No. 170-10) and Supplemental Report (ECF No. 200-3) must be excluded because they fail to meet the standards of reliability that govern expert testimony pursuant to Federal Rule of Evidence 702.

Rather than directly addressing BetterHelp's sound criticisms of Professor Shafiq's opinions, Plaintiffs first argue that the Court should not exclude his opinions under *Daubert* at the class certification stage and should instead consider only how much weight to give his flawed opinions. (Opposition ("Opp.") at 4.) But that is not the law: Ninth Circuit authority is clear that expert opinions are properly excluded at the class certification stage where—as is plainly true here—the opinions are unreliable. *Grodzitsky v. American Honda Motor Co., Inc.*, 957 F.3d 979, 984, 986 (9th Cir. 2020). Plaintiffs next criticize BetterHelp's expert, Dr. Ben Zhao, in what amounts to an improper motion to exclude his testimony that should be disregarded entirely. *Scarlet Honolulu, Inc. v. Honolulu Liquor Comm'n*, No. CV 21-00457 JMS-KJM, 2022 WL 22963566, at *2 (D. Haw. Aug. 9, 2022) ("[I]t is improper for a party to use its opposition to a motion . . . as a motion to strike . . . ."). When Plaintiffs finally address the substance of Professor Shafiq's opinions, they fail to address (much less rebut) BetterHelp's numerous criticisms of his analysis and conclusions and rely instead on further misdirection and excuses for the shortcomings of Professor Shafiq's reports.

For these reasons and as further discussed below, the Court should strike Professor Shafiq's two reports and exclude his opinions and testimony in his matter.

## II. PROFESSOR SHAFIQ'S OPINIONS SHOULD BE EXCLUDED

Plaintiffs, as the proponent of Professor Shafiq's opinions, "ha[ve] the burden of proving admissibility," *Lust By & Through Lust v. Merrell Dow Pharms.*, Inc., 89 F.3d 594, 598 (9th Cir. 1996), and "there is no presumption in favor of admission." *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025).

/ / /

/ / /

### A. Professor Shafiq's Opinions Are Inadmissible Under Rule 702

As set out in BetterHelp's Motion, and further below, Professor Shafiq's opinions do not meet the "exacting standards of reliability" required of expert opinions and must be excluded. *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000)**.**

*First,* his opinions will not help the trier of fact understand the evidence in this case or determine a fact in issue under Rule 702(a). He falsely claims that BetterHelp universally shared "sensitive information" but he opines as to just three entities—Mixpanel, Google Analytics, and Facebook—where Facebook is the only consumer-facing entity and, with limited exceptions inapplicable to the Named Plaintiffs, the Facebook Pixel captured only non-actionable Common Digital Information. (Mot. at 7-9.) He entirely ignores the clear impact of common consumer behavior on data collection—including the use privacy-enhancing web browsers, VPNs, and ad-blocking software—as evidenced by the fact that Meta had no information about two of the Named Plaintiffs who affirmatively chose to use those tools. (*Id.* at 9-11.). Professory Shafiq blames BetterHelp for the conduct of third parties, including where Facebook modified its Pixel without BetterHelp's knowledge or consent. (*Id.* at 12-13.) He asserts, without evidence, that Google and Meta aggregated Common Digital Information to identify individuals who visited the BetterHelp website through a process of "fingerprinting" and an entirely speculative theory called "entropy." (*Id.* at 14.) He also identified a website (Mind Diagnostics) that has its own (different) pixel and is not even owned or operated by BetterHelp. (*Id.* at 12-13.) Whatever Mind Diagnostics shared through its pixel is in no sense "evidence" as to BetterHelp, but Professor Shafiq opines unreliably that it is. (*Id.*)

*Second*, his opinions must be excluded under Rule 702(b) because they are not based on sufficient facts or data. As noted above, Professor Shafiq ignores the material impact that consumer privacy choices have on managing cookies and data collection, including the differences between internet browsers. (Opp. at 14-16.) For purposes of his testing, Professor Shafiq used only a laptop running Chrome as its browser and wholly failed to consider that more than 83% of BetterHelp's active users visit from mobile devices, which introduce new and different variables to the analysis of data collection. (*Id.* at 16-17.) There is no dispute that Professor Shafiq failed to analyze

anything related to mobile devices at all. Professor Shafiq also failed to consider the impact of BetterHelp's privacy policies and the banners on its website disclosing use of cookies. (*Id.* at 17.)

*Third*, the requirements of Rule 702(c) are not met because Professory Shafiq failed to adequately document his testing methodology through the standard preservation of .har files. The screenshots he provided in his report are demonstrably misleading and in many respects inaccurate. Accordingly, BetterHelp cannot test and verify the basis of Professor Shafiq's conclusions. (Opp. at 17-18.) Instead of producing .har files, Professor Shafiq provided only selective and misleading screenshots that cannot be replicated or validated. (*Id.* at 18-21.).

*Finally*, Professor Shafiq's opinions do not satisfy Rule 702(d), because they do not reflect a "reliable application of the principles and methods to the facts of the case." To the contrary, Professor Shafiq ignored significant undisputed evidence, selectively relied on unrepresentative portions of the record, made significant errors in his analysis, and failed to document his work such that it could be replicated and tested. (Opp. at 21-22.)

### B. The Court Is Required to Exercise its Gatekeeper Role Under *Daubert* at the Class Certification Stage

Faced with the numerous flaws in Professor Shafiq's opinions outlined above, Plaintiffs first argue that the Court should forfeit its mandatory role as gatekeeper under *Daubert* merely because BetterHelp has sought to exclude Professor Shafiq's opinions at the class certification stage. (Opp. at 4 (arguing that the Court should conduct only a "'limited' Daubert analysis").) Plaintiffs' argument that the Court should consider Professor Shafiq's opinions even if it finds they are inadmissible under *Daubert* serves only to highlight the fact that his "expert" opinions do not survive scrutiny and must be excluded.

It is not the case that this Court should decline to exercise its gatekeeping function at this stage of the proceedings. Governing and persuasive authority is directly contrary to Plaintiffs' argument. "A court may exclude expert testimony submitted in support of class certification if it does not comply with the standards set forth in *Daubert*." *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 713 F. Supp. 3d 660, 669 (N.D. Cal. 2024) (granting in part and denying in part motions to exclude expert testimony at class certification stage); *Rusoff v. Happy*

*Grp., Inc.*, No. 21-CV-08084-AMO, 2024 WL 5339463, at *6 (N.D. Cal. Sept. 27, 2024) (granting defendant's motion to strike plaintiffs' expert opinions and refusing to consider them in deciding class certification motion); *see also Wal Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (reversing order granting class certification and holding that "[a] trial court has broad latitude not only in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability").

In *Grodzitsky v. American Honda Motor Co., Inc.*, the Ninth Circuit affirmed the district court's exclusion of plaintiffs' expert report that (as here) was "riddled with scientific and methodological flaws" and further affirmed the resulting denial of class certification. 957 F.3d at 984, 986 (9th Cir. 2020). In reaching its conclusion, the Ninth Circuit held that the district court "properly performed its gatekeeping function in assessing [the expert's] proffered opinion and concluding that the opinion was not predicated on reliable scientific methodology." *Id.* at 987. Further, because the expert's opinion was central to plaintiffs' case, "[i]n the absence of the report, the plaintiffs failed to demonstrate commonality," requiring denial of class certification. *Id.*

Plaintiffs' authority is readily distinguishable. The primary case on which Plaintiffs rely, *Sali v. Corona Regional Medical Center*, was decided before the Ninth Circuit issued *Grodzitsky*, *supra*, in which the Ninth Circuit was "clear that a successful *Daubert* challenge at the class certification stage can warrant denial of certification." *Pascal v. Nissan North America, Inc.*, No. 820CV00492JLSJDE, 2023 WL 2558786, at *6 n.2 (C.D. Cal. Feb. 21, 2023) (discussing *Grodzitsky*). Moreover, *Sali* confirms that "a district court should evaluate admissibility under the standard set forth in *Daubert*" and posits only that "the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage." 909 F.3d 996, 1006 (9th Cir. 2018). As *Grodzitsky* and the other authority cited *supra* demonstrate, however, expert opinions that are inadmissible under *Daubert* may properly be given *no weight* and excluded at the class certification stage—particularly where, as in both *Grodzitsky* and this case, the opinions are "riddled with scientific and methodological flaws" and plaintiffs' bid for class certification is entirely premised on those flawed opinions. *Grodzitsky*, 957 F.3d at 986.

### C. Professor Shafiq's Error-Riddled Analysis in This Case Is Consistent with the Criticisms of Other Courts and Reflects the Unreliability of His Opinions

Professor Shafiq's opinions have been heavily criticized in other cases, including because his opinions contained "numerous serious errors" reflecting a "deeply flawed analysis" that resulted in the denial, in part, of a motion for class certification. *Griffith v. TikTok, Inc.*, No. 5:23-CV-00964-SB-E, 2024 WL 4874556, at *1, 2 (C.D. Cal. Oct. 22, 2024). In *Griffith*, just as here with Dr. Shafiq's supplemental report, plaintiffs admitted that "'Dr. Shafiq's original analysis contained certain imprecisions' and produce[d] a new 90-page rebuttal report, on which they now exclusively rely. . . . The rebuttal report . . . maintains all the same conclusions, in some cases inexplicably reporting more results even with narrowed criteria." *Id.* at *2. This is apparently Dr. Shafiq's playbook—produce a piece of paid-for advocacy masquerading as an expert report and when its flaws are challenged, simply provide a second report that "maintains all the same conclusions" but tries to shore up his numerous analytical and methodological errors in an effort to pass muster. *Id.* That effort failed in *Griffith*, just as it does in this case.

Plaintiffs' response to *Griffith* is to argue that the court in that case "did not even exclude [Professor Shafiq's] opinions under *Daubert*." (Opp. at 10.) This is hardly an endorsement of Dr. Shafiq's analytical rigor. In fact, the reasons the *Griffith* court did not exclude Dr. Shafiq's opinions are made clear in its decision, and it has nothing to do with the soundness of Dr. Shafiq's work—first, "Defendants demonstrated that the report of . . . Dr. Zubair Shafiq, on which Plaintiffs principally relied [in their motion for class certification], contained numerous serious errors." 2024 WL 4874556, at *1. "Plaintiffs then filed a reply, accompanied by a new 90-page rebuttal report by Dr. Shafiq," and claimed that they were no longer relying on the "deeply flawed analysis" in the initial report, such that there was no reason for the court to exclude the report. *Id.* at *1, 2. Unsurprisingly, the court noted numerous problems with Dr. Shafiq's "new" report, but "decline[d] . . . to assess the overall reliability of Dr. Shafiq's rebuttal report in this context, where Defendants have not had an opportunity to address it," because it was submitted with a reply brief. *Id.* at *2 n.3.

Plaintiffs also claim that BetterHelp misrepresented two other cases involving Dr. Shafiq.

(Opp. at 11.) Not so—in both cases Dr. Shafiq improperly sought to expand the scope of his opinions beyond what the evidence supports. In *In re Google RTB Consumer Privacy Litigation*, the court rejected Dr. Shafiq's effort to extrapolate his analysis of a limited data set as "insufficiently developed" and concluded that plaintiffs' "failure to more definitively demonstrate that the . . . data thus far is representative of the class as a whole is fatal, even for commonality." No. 4:21-CV-2155-YGR, 2024 WL 2242690, at *10 (N.D. Cal. Apr. 4, 2024). In *Doe v. Adventist Health,* Professor Shafiq once again—just as in *Griffith* and here—issued an initial report in which his conclusions were not supported by the evidence he cited. Case No. 22STCV36304 (L.A. Super. Ct. Feb. 24, 2025) (denying class certification because determining whether or not each class member's URL contained search terms that qualified as "content" would predominate over common issues) (Dkt. 205-2 at 8-10). In Professor Shafiq's "reply report," he attempted to sidestep his errors by limiting the scope of the putative class. *Id.* at 8. The court rejected Professor Shafiq's excuses, however, because "Plaintiffs' class definition by its own terms is not limited to patients who entered search terms into Defendant's website." *Id.* at 9.

The bare fact that courts have criticized Dr. Shafiq's analysis in other cases might not alone be a sufficient reason to exclude his opinions, as Plaintiffs argue (Opp. at 11), but where Dr. Shafiq has demonstrated a pattern of producing "deeply flawed analysis" containing "numerous serious errors," the reliability of his opinions must be scrutinized more closely and, in this case, BetterHelp having demonstrated in essentially unrebutted fashion the presence of the exact same errors, those opinions must be excluded. *Ramirez v. City of Los Angeles*, No. CV-15-02179-MWF-FFM, 2016 WL 11758444, at *2 (C.D. Cal. Oct. 3, 2016) (expert's prior disqualification, or limitation of testimony in prior cases, is relevant to question of reliability of expert's opinions).

**D. Plaintiffs Improperly Criticize Dr. Zhao to Distract from Professor Shafiq's Flawed Analysis**

Plaintiffs further admit the weakness of Professor Shafiq's opinions and their inability to defend them by devoting the first two pages of argument in their Opposition to improperly attacking the qualifications of BetterHelp's expert, Dr. Zhao, and claiming the Court should give Dr. Zhao's opinions no weight. (Opp. at 5-7.) Plaintiffs could have properly moved to exclude Dr. Zhao's

opinions and chose not to do so—doubtless because Dr. Zhao's relevant qualifications as an expert are manifest and his opinions both substantively and methodologically sound. (*See, e.g.*, Dkt. 216 at ¶¶ 1-5, 18-23 (Rebuttal Report of Dr. Ben Zhao ("Zhao Rpt."), filed under seal).) Under Local Rule 7-1, "[a]ny written request to the Court for an order"—here, Plaintiffs' request that the Court should disregard Dr. Zhao's opinions—must be properly presented and noticed, which Plaintiffs failed to do.

The fact that Plaintiffs are attempting to smuggle an affirmative *Daubert* motion to exclude into their Opposition is made clear by their citation in this section to *Sali*, *supra*, which they claim provides the governing standard for *Daubert* motions at the class certification stage. (Opp. at 5.) This portion of Plaintiffs' Opposition is plainly an improper motion and must be rejected out of hand. *Hershewe v. JOYY Inc.*, No. 2:20-CV-10611-SB-AFM, 2022 WL 1123208, at *2 (C.D. Cal. Mar. 9, 2022), *aff'd*, No. 22-55377, 2023 WL 3316328 (9th Cir. May 9, 2023) ("[O]ver one-fifth of Plaintiffs' opposition is not actually an opposition at all, but rather an improper motion . . . that does not comply with the procedural requirements of Local Rule 7-18. . . . The Court will not consider any of the arguments advanced by Plaintiffs in the above-cited sections."); *Grant v. United States*, No. 2:11-CV-00360 LKK, 2011 WL 2367656, at *4 (E.D. Cal. June 9, 2011), *report and recommendation adopted*, No. CIV-S-11-0360-LKK, 2011 WL 2967323 (E.D. Cal. July 19, 2011) (disregarding motion "buried in plaintiff's opposition" as procedurally improper and in violation of Federal Rules of Civil Procedure and the court's Local Rules).

### E. Plaintiffs Fail to Rebut BetterHelp's Criticisms of Professor Shafiq's Opinions and Fail to Carry Their Burden of Admissibility

When Plaintiffs finally turn to the substance of Professor Shafiq's opinions, they fail to carry their burden of proving the admissibility of his testimony.

#### (1) Professor Shafiq's Supplemental Report Is Equally Flawed and Does Not Rescue His Opinions

Plaintiffs inexplicably claim in their Opposition that BetterHelp does not "articulate any substantive criticism of Professor Shafiq's supplemental report" and argue that there is no basis to exclude that report and its conclusions. (Opp. at 7.) To the contrary, BetterHelp explicitly and

repeatedly addressed *both* of Professor Shafiq's inadequate reports throughout BetterHelp's Motion, and many of the errors and omissions in Professor Shafiq's analysis apply equally to both reports. As BetterHelp clearly stated, "There are many . . . errors in his **reports**, not only in his analysis, but in his claims related to technology . . . ." (Mot. at 14 (emphasis added).) "In his **reports**, Professor Shafiq purports to blame BetterHelp for the conduct of third parties by . . . claiming that BetterHelp is actually responsible for their alleged conduct." (*Id.* at 11 (emphasis added).) Finally, "Professor Shafiq's **reports** are irrelevant and unreliable because they (1) lack scientific and technical foundation; (2) disregard significant evidence that is not in dispute; and (3) are riddled with mistakes, cherry-pick and affirmatively mislead the Court and trier of fact . . . ." (*Id.* at 21 (emphasis added).) Moreover, Dr. Zhao also addressed the substantive flaws and misrepresentations in Professor Shafiq's supplemental report. (*See, e.g.,* Dr. Zhao Rpt. at ¶ 27 (discussing Google Analytics).) Plaintiffs' effort to distract attention from the errors in Professor Shafiq's initial report by focusing on his supplemental report is meritless.

**(2) Plaintiffs Have No Credible Explanation for Professor Shafiq's Failure to Document His Testing**

Plaintiffs do not challenge the undisputed fact that .har files are the standard and accepted method of documenting the exact type of analysis Professor Shafiq performed in this case, nor do they provide any credible explanation for why Professor Shafiq did not simply document his work in this accepted manner. Instead, they offer the rambling excuse that, "Shafiq was running testing [*sic*] on the BetterHelp website through the Wayback Machine's archive rather than accessing the website live, so it was unnecessary to create a new recording because the record of which code was on the website was already preserved, and it will trigger the same network transmissions now as it did during Professor Shafiq's testing." (Opp. at 16.) But as BetterHelp explained in its Motion, without .har files the screenshots Professor Shafiq produced as "proof" of his analysis can be neither replicated nor validated and Professor Shafiq's opinions become an extended exercise in *ipse dixit*. (Mot. at 18, citing Zhao Rpt. at ¶¶ 69-70.) Notably, Professor Zhao also utilized the Wayback Machine in his analysis, and he produced his .har files to Plaintiffs to validate the work and analysis that he performed. (*Id.*)

**(3) Professor Shafiq's Conclusions About "Uniform" Sharing of Sensitive Information Are Contradicted by the Evidence**

Plaintiffs argue that Professor Shafiq's opinion that BetterHelp used tracking technologies on its website to uniformly share "identifiers" for each purported class member is "reliable and well supported" and further claim that "BetterHelp's attacks on this opinion apply only to his initial report . . . ." (Opp. at 12.) As noted above BetterHelp criticized both Professor Shafiq's initial report and supplemental report, but either way, Plaintiffs' claim is demonstrably false. As BetterHelp discussed at length in its Motion, and further above, there are numerous ways in which Professor Shafiq's conclusion that some non-existent set of "identifiers" was disclosed for *every putative class member* is bogus, regardless of whether it is based on his first report or his supplemental report or both.

Indeed, Plaintiffs do not deny that there is **no evidence** that any such information was shared for *two of the Named Plaintiffs*, Plaintiffs who testified that they used privacy tools readily available to themselves (and everyone else). Plaintiffs speculate without basis that Meta may have destroyed the information for these two individuals pursuant to Meta policy or BetterHelp's request (Opp. at 15), but Plaintiffs' explanation conveniently ignores that Meta produced information for other Named Plaintiffs who used BetterHelp in the same timeframe. (*See* Mot. at 10-11 (table).) The fact that Meta produced no information for the two Named Plaintiffs who were most proactive concerning their online privacy puts the lie to Professor Shafiq's conclusions about a supposed set of identifying information collected for every putative class member.

Plaintiffs' claim that BetterHelp "ignores the distinction between first- and third-party cookies" likewise fails to salvage Professor Shafiq's opinions. (Opp. at 12-13.) Fundamentally, this is not a case about first-party cookies, which are limited in scope to the website that sets them and cannot accessed by other domains. (Dr. Zhao Rpt. at ¶ 30.) Plaintiffs (and Professor Shafiq) are forced to argue that first-party cookies are really at issue here because they know that individuals have numerous tools and practices available to them (detailed *supra*) that can block third-party cookies, and as the evidence in this case demonstrates, *do* block third-party cookies and thereby prevent data collection and cross-site tracking. BetterHelp is well aware of the distinction

between first- and third-party cookies, and the ways in which Professor Shafiq misrepresents their use and significance in this case, and Plaintiffs' attempt to argue otherwise is meritless. (*See, e.g.*, Dr. Zhao Rpt. at ¶¶ 30-34.)

Given both the real impact of individual consumer privacy choices on data collection and BetterHelp's privacy policy and cookie banners, which Professor Shafiq admittedly failed to consider, there is no credible basis for Professor Shafiq to extrapolate his (untestable) conclusions to the putative class. This is precisely the type of unsupported overreach for which other courts have previously criticized Professor Shafiq and it should be rejected here as well.

## III. CONCLUSION

For the foregoing reasons, BetterHelp respectfully requests that the Court strike Professor Shafiq's two reports and exclude his opinions and testimony in his matter.

Dated: November 24, 2025

**KING & SPALDING LLP**

By: */s/ Livia M. Kiser*

LIVIA M. KISER (SBN 285411)
*lkiser@kslaw.com*
JEFFREY HAMMER (SBN 264232)
*jhammer@kslaw.com*
CRAIG H. BESSENGER (SBN 245787)
*cbessenger@kslaw.com*
JAMES A. UNGER (SBN 325115)
*junger@kslaw.com*
Attorneys for Defendant
BETTERHELP, INC.