01:16:58

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| IN RE BETTERHELP, INC. DATA DISCLOSURE CASES | ) | CV-23-1033-RS |
| | ) | SAN JOSE, CALIFORNIA |
| | ) | JANUARY 29, 2026 |
| | ) | PAGES 1 - 69 |

TRANSCRIPT OF PROCEEDINGS BY ZOOM
BEFORE THE HONORABLE RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFF: GIRARD SHARP, LLP
601 CALIFORNIA STREET, STE 1400
SAN FRANCISCO, CA 94108
**BY: DENA SHARP**
**NINA GLIOZZO**

FOR THE PLAINTIFF: MCSHANE & BRADY, LLC
4006 CENTRAL STREET
KANSAS CITY, MO 64111
**BY: MAUREEN BRADY**

APPEARANCES CONTINUED ON THE NEXT PAGE

OFFICIAL COURT REPORTER: SUMMER FISHER, CSR, CRR
CERTIFICATE NUMBER 13185

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

A P P E A R A N C E S: (CONT'D)

FOR THE PLAINTIFF: MILBERG, PLLC
227 WEST MONROE STREET, STE 2100
CHICAGO, IL 60606
**BY: WILLIAM EDELMAN**

FOR THE PLAINTIFF: TUSAN LAW, PC
380 E. COLORADO BLVD., STE 180
PASADENA, CA 91101
**BY: CHRISTINA TUSAN**

FOR THE PLAINTIFF: WHATLEY KALLAS, LLP
16870 W. BERNARDO DRIVE, STE 400
SAN DIEGO, CA 92127
**BY: ALAN MANSFIELD**

FOR THE DEFENDANT: KING & SPALDING, LLP
50 CALIFORNIA STREET, STE 3300
SAN FRANCISCO, CA 94111
**BY: LIVIA KISER**

FOR THE DEFENDANT: KING & SPALDING, LLP
633 WEST FIFTH STREET, STE 1600
LOS ANGELES, CA 90071
**BY: JEFFREY HAMMER**

SAN JOSE, CALIFORNIA JANUARY 29, 2026

P R O C E E D I N G S

(COURT CONVENED AT 1:30 P.M.)

01:30:38 **THE CLERK:** WE ARE CALLING CASE NUMBER 23-CV-1033, C.M. V. BETTERHELP.

01:30:46 COUNSEL, YOU WANT TO MAKE YOUR APPEARANCES OR DO YOU WANT TO JUST DO IT IF YOU ARE GOING TO DO SEPARATE ARGUMENT? HOW WOULD YOU LIKE TO PROCEED?

01:30:52 **THE COURT:** JUST GO AHEAD AND MAKE YOUR APPEARANCES.

01:30:57 **MS. BRADY:** GOOD AFTERNOON, YOUR HONOR.

01:30:59 MAUREEN BRADY OF MCSHANE & BRADY ON BEHALF OF PLAINTIFFS.

01:31:02 **MS. SHARP:** GOOD AFTERNOON, YOUR HONOR.

01:31:03 DENA SHARP FROM GIRARD SHARP, ALSO ON BEHALF OF THE PLAINTIFFS. AND WITH ME APPEARING TODAY IS MY COLLEAGUE, NINA GLIOZZO, ALSO OF MY FIRM.

01:31:11 **THE COURT:** GOOD AFTERNOON.

01:31:14 **MR. EDELMAN:** GOOD AFTERNOON, YOUR HONOR.

01:31:15 WILLIAM EDELMAN FROM THE MILBERG FIRM FOR THE PLAINTIFFS.

01:31:18 **THE COURT:** GOOD AFTERNOON.

01:31:21 **MS. TUSAN:** GOOD AFTERNOON. CHRISTINA TUSAN, TUSAN LAW, FOR PLAINTIFFS.

01:31:23 **THE COURT:** GOOD AFTERNOON.

01:31:24 **MR. MANSFIELD:** AND GOOD AFTERNOON, YOUR HONOR.

01:31:28 ALAN MANSFIELD FROM WHATLEY KALLAS, ALSO FOR -- AS LIAISON COUNSEL FOR THE PLAINTIFFS. THANK YOU.

01:31:30 **THE COURT:** GOOD AFTERNOON.
01:31:32 **MS. KISER:** GOOD AFTERNOON, YOUR HONOR.
01:31:32 MY NAME IS LIV KISER AND I REPRESENT DEFENDANT, BETTERHELP.
01:31:36 **THE COURT:** GOOD AFTERNOON.
01:31:38 **MR. HAMMER:** GOOD AFTERNOON, YOUR HONOR.
01:31:39 JEFF HAMMER, ALSO FOR BETTER HELP.
01:31:41 **THE COURT:** GOOD AFTERNOON.
01:31:43 SO ON THE DOCKET TODAY IS THE MOTION FOR CLASS CERTIFICATION AND THEN ALSO MOTIONS TO EXCLUDE VARIOUS EXPERT TESTIMONY.
01:31:55 IT APPEARS THAT IN THE PROCESS OF THE BRIEFING, THAT THE PLAINTIFFS HAVE NARROWED SIGNIFICANTLY THEIR REQUESTED CERTIFICATION. AT A CERTAIN POINT I WAS THINKING SHOULD WE THEREFORE HAVE SOME ADDITIONAL BRIEFING OR FOCUS ON NOW THE NEWLY CONSTITUTED REQUEST BUT I DIDN'T HEAR FROM PEOPLE IN THAT REGARD, SO ARE WE READY TO DECIDE THE QUESTION?
01:32:31 **MS. KISER:** YOUR HONOR, LIV KISER ON BEHALF OF DEFENDANT BETTERHELP. I THINK FROM OUR PERSPECTIVE THERE'S ENOUGH HERE FOR YOU TO MAKE A DECISION, HOWEVER THROUGH THE COURSE OF THIS IF YOU DECIDE YOU NEED ADDITIONAL BRIEFING, WE ARE WILLING TO DO IT, OF COURSE.
01:32:43 **THE COURT:** OKAY. VERY WELL.
01:32:45 I KNOW THERE'S SOME INTERPLAY BETWEEN THE CERTIFICATION REQUEST AND THE MOTIONS TO EXCLUDE THE VARIOUS EXPECT

TESTIMONY. I WILL SAY BY WAY OF SHORTHAND, THIS WILL NOT COME AS A SURPRISE, MY REACTION ON THE MOTIONS TO EXCLUDE TESTIMONY IS THAT AT LEAST ON THE INITIAL READ, TO THE EXTENT THERE ARE ISSUES WITH RESPECT TO THIS TESTIMONY, IT DOES GO TO THE WEIGHT.

I MEAN, I DON'T THINK THERE IS A REAL BASIS TO EXCLUDE WHOLESALE TESTIMONY BY THESE WITNESSES. I KNOW THERE MAY BE SOME MORE TARGETED REQUESTS THAT CERTAIN ASPECTS OF THE TESTIMONY SHOULD NOT BE CONSIDERED, BUT TO GIVE YOU SOME GUIDANCE, I'M INCLINED TO THINK THOSE MOTIONS ARE NOT GOING TO RESULT IN WHOLESALE EXCLUSION.

SO LET'S GO BACK TO THE CLASS CERTIFICATION, THE NARROWED REQUEST. SO THERE IS A REQUEST FOR A NATIONWIDE CLASS FOR THE ECPA, A CALIFORNIA SUBCLASS FOR THE VARIOUS STATUTORY AND STATE COMMON LAW CLAIMS, SO WHY DON'T WE START WITH THAT.

AND THE PLAINTIFFS ARE THE MOVING PARTY SEEKING CLASS CERTIFICATION, SO WHO WANTS TO ADDRESS?

**MS. BRADY:** YOUR HONOR, MAUREEN BRADY ON BEHALF OF PLAINTIFFS. WE ARE GOING TO SPLIT THIS UP A LITTLE BIT AND CO-COUNSEL DENA SHARP WILL BE TAKING THOSE ISSUES.

**THE COURT:** OKAY.

**MS. BRADY:** ALL RIGHT.

**THE COURT:** AND THEN -- SO THE SPLIT IS THE EXPERT TESTIMONY VERSUS THE CLASS CERT ISSUES?

**MS. BRADY:** A LITTLE MORE NUANCED THAN THAT. I WILL

ADDRESS ANY KIND OF ISSUES INVOLVING THE SPECIFIC PLAINTIFFS, THOSE TYPES OF THINGS, FACT ISSUES, AND DENA IS GOING TO ADDRESS THE VARIOUS NARROWING OF THE ISSUES.

**THE COURT:** MS. SHARP.

**MS. SHARP:** THANK YOU, YOUR HONOR. DENA SHARP, GIRARD SHARP, ON BEHALF OF THE CLASS PLAINTIFFS.

YOUR HONOR HAS IT EXACTLY RIGHT, HAVING TAKEN A LOOK AT THE LANDSCAPE, WE DETERMINED COLLECTIVELY THAT A SOMEWHAT NARROWED CLASS WITH A VERY CLEARLY DEFINED CALIFORNIA SUBCLASS THAT IS COMPLETELY STATUTORY IN NATURE IN TERMS OF THOSE CLAIMS EXCEPT FOR THE INVASION OF PRIVACY CLAIM WHICH ALSO IS ASSERTED ON BEHALF OF THE CALIFORNIA SUBCLASS AND THEN THE NATIONWIDE CLASS ON THE ECPA ARE ALL THAT ARE REMAINING.

AND THEN WE SUBMITTED TO YOUR HONOR ALONG WITH THE REPLY, A PROPOSED VERDICT FORM THAT WE HOPED LAID OUT RELATIVELY CLEARLY HOW WE SEE THOSE ELEMENTS INTERPLAYING. AND OF COURSE YOUR HONOR IS INTIMATELY AWARE WITH SOME OF THOSE CLAIMS, AT LEAST THE INVASION OF PRIVACY FROM THE RODRIGUEZ V. GOOGLE CASE, SO WE TOOK SOME GUIDANCE FROM THAT AS WELL.

AS -- OF COURSE WE ARE PREPARED TO ADDRESS WHATEVER YOUR HONOR SEES FIT --

**THE COURT:** WELL, YOU KNOW, THE MAIN POINT OF CONTENTION SEEMS TO BE, AS WE HEAR OFTEN IN CASES OF THIS KIND, THAT, OH, THERE ARE ALL THESE INDIVIDUAL ISSUES, THE SETTINGS, THE VARIOUS OTHER ASPECTS, WHICH PLATFORMS ARE BEING USED, ARE

INDIVIDUALIZED AND THEREFORE WE CAN'T REALLY PROCEED ON A CLASS BASIS.

AND I UNDERSTAND YOUR ARGUMENT IS WE DO HAVE SOME COMMON QUESTIONS, THE PRINCIPAL QUESTIONS HERE WHICH WILL RESULT IN COMMON ANSWERS BECAUSE, AS I UNDERSTAND IT, YOUR BASIC PREMISE IS THE WEBSITE OPERATES TO COLLECT AND TRANSMIT CLASS MEMBER INFO; IS THAT RIGHT?

**MS. SHARP:** PRECISELY, YOUR HONOR, AND IT TURNS ON WHAT BETTERHELP DID ON ITS WEBSITE, DID IN ITS APPS, WHAT THE UNDERLYING SOURCE CODE PROVIDES IN TERMS OF INFORMATION ABOUT BETTERHELP USERS ON THAT WEBSITE AND THE DISSEMINATION OF THAT INFORMATION TO THIRD PARTIES.

**THE COURT:** SO THE ANSWER TO THAT QUESTION IS YES, THEN DO WE END UP WITH A LOT OF INDIVIDUAL QUESTIONS AFTER THAT?

AND I KNOW THAT YOUR POSITION IS THEY WOULDN'T PREDOMINATE FOR PURPOSES OF CLASS CERTIFICATION, BUT ARE THERE INDIVIDUALIZED ISSUES THAT AT SOME POINT WOULD HAVE TO BE ADDRESSED?

**MS. SHARP:** FROM OUR PERSPECTIVE YOUR HONOR, NO, PARTICULARLY GIVEN THAT WE NOW HAVE THE SOURCE CODE THAT FLOWS FROM THAT WEBSITE. AND AS YOUR HONOR PROBABLY OBSERVED IN THE BRIEFING, THAT SOURCE CODE WAS PRODUCED ON THE SAME DAY THAT THE PLAINTIFFS FILED THE CLASS CERTIFICATION MOTION.

**THE COURT:** MR. SHAFIQ DID ANALYZE IT AND THEN WE HAD

THE SUPPLEMENTAL.

**MS. SHARP:** PRECISELY, WE HAD A SUPPLEMENTAL REPORT THAT ADDRESSES THAT SOURCE CODE HEAD ON.

NOW TO BE CLEAR, HIS OPENING REPORT ALSO ADDRESSED WHAT HE BELIEVED THAT SOURCE CODE WOULD SHOW BASED ON LOOKING AT THE WAYBACK MACHINE, TURNS OUT HE WAS RIGHT, FROM OUR PERSPECTIVE WE UNDERSTAND THAT OF COURSE THERE IS GOING TO BE A HEATED BATTLE OF THE EXPERTS, IT WOULDN'T BE A GOOD CLASS ACTION IF THERE WASN'T SOME DISPUTE BETWEEN THE EXPERTS.

**THE COURT:** IT WOULD BE A BATTLE OF SUMMARY JUDGEMENT.

**MS. SHARP:** CORRECT. AGREED.

WE UNDERSTAND THAT THOSE ARE MERITS QUESTIONS, BUT I THINK AS THE COURT'S QUESTION CONTENDS, THOSE ARE COMMON MERITS QUESTIONS THAT ARE GOING TO BE ANSWERED THE SAME WAY FOR EVERY CLASS MEMBER WHO WAS A USER ON THE WEBSITE WHO FILLED OUT THAT INTAKE QUESTIONNAIRE.

AND THAT IS -- YOU KNOW, TO THE COURT'S POINT ABOUT THE NARROWING OF THE CLASS, THAT IS ONE AREA THAT WE THINK MIGHT MERIT A LITTLE BIT OF CLARIFICATION, JUST TO BE CLEAR, THAT BECAUSE WE DON'T HAVE THE STORED COMMUNICATIONS ACT CLAIM ANYMORE, BECAUSE WE HAVE DROPPED SOME OF THOSE MISREPRESENTATIONS CLAIMS, THE ISSUES ARE NARROWED AND THE COMMON QUESTION IS WHETHER EVERY CLASS MEMBER WHO FILLED OUT THAT INTAKE QUESTIONNAIRE HAD THAT INFORMATION SHARED WITH A

THIRD PARTY. THE FACT THAT THAT IS SENSITIVE INFORMATION, WE THINK SHOULD BE BEYOND DISPUTE, PARTICULARLY TAKING INTO ACCOUNT FOR BETTER OR FOR WORSE, THE STIGMA THAT MENTAL HEALTH CARE RECEIVES IN THIS COUNTRY.

SO THAT REALLY IS THE COMMON QUESTION. AND TO BE CLEAR ABOUT THE RECORD BECAUSE THIS WAS A QUESTION I HAD WHEN I WAS LOOKING BACK AT THE RECORD, THAT SUPPLEMENTAL REPORT BY DR. SHAFIQ WAS SERVED IN EARLY APRIL, THE DEFENDANT'S OPPOSITION BRIEF WAS SERVED IN LATE SEPTEMBER, AND BETTERHELP OPTED NOT TO DEPOSE DR. SHAFIQ AGAIN AFTER THAT SUPPLEMENTAL REPORT WAS SERVED.

AND SO FROM OUR PERSPECTIVE, THAT REPORT IS EFFECTIVELY UNREBUTTED. WE UNDERSTAND THAT THERE MAY BE SOME DISPUTES AMONG THE PARTIES ABOUT WHETHER DR. ZHAO'S OPINION IS RIGHT OR NOT, IT REALLY BOILS DOWN TO THIS FIRST PARTY COOKIE QUESTION, THE FIRST PARTY COOKIES THAT ARE ON THE BETTERHELP WEBSITE AND WHETHER THEY WERE CAPABLE OF SHARING WITH THIRD PARTIES THE SENSITIVE INFORMATION THAT WE BELIEVE NOT ONLY INCLUDES THE CONTENTS, THAT IS THE FACT THAT SOMEONE FILLED OUT THE INTAKE QUESTIONNAIRE, BUT THEN ALSO THE IDENTIFIERS FOR THOSE FOLKS.

**THE COURT:** PRETTY BASIC DISPUTE OF FACT.

**MS. SHARP:** YEAH.

**THE COURT:** I DON'T QUITE -- IS THERE -- WILL THAT BE THE FOCUS OF ANY SUMMARY JUDGEMENT MOTION HERE PRESUMABLY?

**MS. SHARP:** IT APPEARS THAT WAY TO US BECAUSE CONSENT

IS, FROM OUR PERSPECTIVE, BOTH COMMON AND WAS NOT PROVIDED BECAUSE THERE IS NO FIT BETWEEN THE DISCLOSURES THAT WERE GIVEN TO THE CLASS MEMBERS AND THE PRIVATE INFORMATION THAT WAS SHARED WITH REGARD TO THE REASONABLE EXPECTATION OF PRIVACY.

AGAIN, THAT'S AN OBJECTIVE QUESTION BASED ON A REASONABLE PERSON. WE HAVEN'T SEEN EVIDENCE TO THE CONTRARY, AND OF COURSE THE STANDARD AT RULE 23 IS A PREPONDERANCE OF THE EVIDENCE STANDARD. AND SO THE DEFENDANTS CAN'T BEAT SOMETHING WITH NOTHING, AND SO FAR WE HAVEN'T SEEN WHAT THE REBUTTAL IS TO THAT EVIDENCE.

**THE COURT:** THERE WAS AN ISSUE THAT WAS FLOATING OUT THERE ABOUT HIPAA COVERAGE, WHETHER OR NOT THERE ARE HIPAA -- SUBJECT TO.

THAT ALSO, I ASSUME FROM YOUR POSTURE IS, FOR GOOD OR FOR BAD, AN ISSUE THAT CAN BE ANSWERED ON A CLASS-WIDE BASIS, OBVIOUSLY, BUT WHAT'S THE STORY WITH THAT ISSUE?

**MS. SHARP:** FAIR QUESTION, YOUR HONOR, AND MS. BRADY SHOULD PROBABLY ADDRESS THAT. THE ONE THING I WILL SAY IS THAT THE FTC TOOK THAT UP ISSUE AND ADDRESSED THE FACT THAT BETTERHELP HAD SOME KIND OF SEAL ON ITS WEBSITE THAT APPEARED TO BE HIPAA. BETTERHELP THEN TOLD THE FTC THAT IT WAS SUBJECT TO HIPAA.

SO THERE IS FOR SURE A DISPUTE NOW ABOUT THAT, BUT FROM OUR PERSPECTIVE -- MS. BRADY IS A SPECIALIST IN HIPAA ISSUES, BUT SEE IT AS A COMMON QUESTION.

**THE COURT:** THERE WAS THAT POINT IN THE CASE WHERE THERE WAS A REQUEST TO STAY AND I SAID NO, TO HAVE THE FTC THING PLAY ITSELF OUT; HAS IT PLAYED ITSELF OUT?

**MS. SHARP:** INDEED, YOUR HONOR. AND AS THE COURT MAY HAVE SEEN IN THE DEFENDANT'S BRIEFING IN THE OPPOSITION, THEY RAISE A SUPERIORITY QUESTION BASED ON THAT FTC RESOLUTION, BECAUSE THE FTC HAS, AS WE PUT IN THE RECORD, NOW SENT MONEY OUT TO A VERY SMALL PORTION OF THE CLASS, WE AGREE IT'S ABOUT 535,000 PEOPLE OR SO, WHICH FROM WHAT WE UNDERSTAND IS A VERY SMALL PORTION OF THE NATIONWIDE CLASS.

THE PER CAPITA RECOVERY UNDER THAT FTC RELIEF THAT WAS PROVIDED WAS LESS THAN $15 A CLASS MEMBER, AND THAT IS OBVIOUSLY RELIEF RESTITUTION THAT'S PROVIDED UNDER SECTION 5 RATHER THAN DAMAGES, WHETHER STATUTORY OR DISCRETIONARY IN NATURE UNDER THE INVASION OF PRIVACY.

AND THE NINTH CIRCUIT'S CAM DECISION THAT BETTERHELP RELIES ON OF COURSE CONVEYS TO THE COURT BROAD DISCRETION ON THAT SUPERIORITY FINDING AND WHETHER ANY PRIOR ACTION SUPPLANTS BASICALLY THE CLASS. AND THE NINTH CIRCUIT IN BALWANI V. BP, WHICH WAS A THERANOS SPINOFF CASE, WAS REALLY QUITE CLEAR. AND IN THAT CASE THERE WAS AN ARIZONA CONSENT DECREE AND JUDGE DAVILA WAS FACED WITH A SIMILAR QUESTION ABOUT WHETHER THAT EFFECTIVELY WIPED OUT THE CLASS ACTION.

HE NOTED THAT THAT CONSENT ACTION CONTEMPLATED NOT EVEN A -- I DON'T HAVE QUITE THE WORDS BUT IT'S SOMETHING ABOUT THE

FULL COMPLEMENT OF DAMAGES. AND IN THAT CASE IT'S ON ALL FOURS BECAUSE THERE WERE STATUTORY CLAIMS THERE, AND THE NINTH CIRCUIT NOTED THAT THE CONSENT ACTION DID NOT AFFECT THOSE STATUTORY CLAIMS AT ALL.

SO THE SHORT ANSWER -- THE LONG ANSWER TO A SHORT QUESTION IS YES, THE MONEY WENT OUT FROM THE FTC CASE, WE BELIEVE THAT THAT'S ALL THERE IS, AND THERE'S CERTAINLY NO BASIS FOR THE COURT TO DENY CLASS CERTIFICATION ON A SUPERIORITY BASIS GIVEN THAT ACTION.

**THE COURT:** ON THE HIPPA POINT, YOU WERE GOING TO SAY SOMETHING.

**MS. BRADY:** YES, YOUR HONOR.

AS TO THE HIPPA POINT, THAT ACTUALLY SUPPORTS THE ISSUES FOR CERTIFICATION BECAUSE IT CAN BE RESOLVED ON A CLASS-WIDE BASIS, IT IS WHETHER OR NOT HIPAA APPLIES TO BETTERHELP, BUT JUST SETS THE STANDARD FOR WHAT KIND OF PRIVACY IS EXPECTED.

NOW CERTAINLY BETTERHELP HAS STATED MULTIPLE TIMES THAT IT WAS HIPAA COMPLIANT, THAT IT WAS SUBJECT TO HIPAA. NOW THAT HAS BEEN WALKED BACK SLIGHTLY, AND SO CONSEQUENTLY, THOSE ARE QUESTIONS THAT CAN BE RESOLVED AT THE MERITS PHASE.

**THE COURT:** OKAY.

ON THE -- I WILL COME BACK TO YOU FOLKS.

BUT ON THE DEFENSE SIDE, WHO WANTS TO TALK ABOUT WHAT WE HAVE TALKED ABOUT THUS FAR?

**MS. KISER:** YES, YOUR HONOR. THANK YOU.

LIV KISER ON BEHALF OF BETTERHELP.

I WANT TO CORRECT A FEW THINGS. FIRST OF ALL, PROFESSOR SHAFIQ'S SUPPLEMENTAL REPORT CAME IN ON AUGUST 8TH, NOT APRIL. I WOULD HAVE DEPOSED HIM ON IT HAD --

**MS. SHARP:** I'M SORRY, I MISSPOKE IF I SAID APRIL, I MEANT AUGUST. FOR THE COURT REPORTER, THIS IS DENA SHARP. SORRY.

**MS. KISER:** YEAH. AND THE REASON WE DIDN'T DEPOSE HIM -- AND BY THE WAY, IN HIS SUPPLEMENTAL REPORT, HE SAYS NOTHING ABOUT SURVEY QUESTIONS AND ANSWERS. AS WE HAVE IDENTIFIED FOR THE COURT, THERE WAS A BRIEF PERIOD OF TIME WHEN THE METAPIXEL GRABBED SURVEY RESPONSES, NEVER QUESTIONS, AND THAT WAS BECAUSE BETTERHELP CHANGED THE RADIAL DIAL ON ITS WEBSITE TO A BIG BUTTON. WITHOUT ITS KNOWLEDGE, META STARTED GRABBING MORE INFORMATION, AT WHICH TIME WHEN THEY DISCOVERED IT, THEY IMMEDIATELY SHUT IT OFF.

**THE COURT:** IT WASN'T -- SOME OF YOUR INITIAL ATTACK ON DR. SHAFIQ WAS THAT HE HADN'T REVIEWED THE SOURCE CODE, BUT THEN HE DID. SO THOSE ARGUMENTS AREN'T THERE ANYMORE, ARE THEY?

**MS. KISER:** NOT, THAT'S NOT CORRECT, OUR ATTACK ON SHAFIQ IS THAT HE DIDN'T PRODUCE EVIDENCE OF HIS WORK, IT HAD NOTHING TO DO WITH SOURCE CODE.

**THE COURT:** WELL YOUR BRIEFING CRITICIZED, TO SOME EXTENT, HE WAS ONLY ANALYZING THE WEBSITE.

01:45:14 **MS. KISER:** WELL TO BE CLEAR, AND PROFESSOR ZHAO GOES INTO GREAT DETAIL ON THIS POINT, THE FACT IS IT'S NOT ABOUT SOURCE CODE, IT'S ABOUT WHETHER HE WAS ABLE TO DEMONSTRATE THROUGH -- SHOWING HIS WORK THROUGH A HARD FILE, WHAT HE WAS LOOKING AT. HE HAS MADE A LOT OF STATEMENTS THAT ARE CONCLUSORY AND THAT ARE NOT SUBSTANTIATED.

01:45:32 **THE COURT:** THAT WILL BE GRIST FOR THE MILL FOR YOUR CROSS-EXAMINATION.

01:45:35 **MS. KISER:** WELL I UNDERSTAND YOUR POINT, BUT --

01:45:37 **THE COURT:** WAIT, YOU KNOW, THIS WORKS, I SPEAK, THEN IT'S YOUR TURN.

01:45:40 YOU KNOW, YOU ARE GOING TO BE ABLE TO HAVE A ROBUST CROSS, BUT IT'S REALLY NOT A BASIS TO EXCLUDE HIS TESTIMONY.

01:45:48 **MS. KISER:** WELL I'M NOT UP HERE TO TALK ABOUT EXCLUDING PROFESSOR SHAFIQ'S TESTIMONY, I'M JUST MAKING THE POINT THAT HE DID NOT OPINE THE QUESTIONS AND ANSWERS --

01:45:57 **THE COURT:** -- SO ON CLASS CERT.

01:45:59 **MS. KISER:** YES, AND I WOULD LIKE TO SPEAK TO THAT.

01:46:01 BETTERHELP, THE COMPANY, HAS NEVER SAID IT WAS SUBJECT TO HIPAA. WE PUT IN AN EXPERT THAT EXPLAINED WHY WE ARE NOT SUBJECT TO HIPAA, AND THERE IS NO WITNESS AT BETTERHELP THAT'S EVER SAID THEY WERE SUBJECT TO HIPAA. SO I'M UNCLEAR ON WHY PLAINTIFFS ARE SAYING THAT WE COULD WALK THAT BACK BECAUSE THAT IS NOT TRUE. WE HAVE NEVER --

01:46:18 **THE COURT:** IN ANY EVENT, WHAT I'M FOCUSED ON HERE

TODAY IS THE CLASS ISSUE. IF THERE IS SUCH AN ISSUE, IT CAN BE ANSWERED ON A CLASS-WIDE BASIS, RIGHT?

**MS. KISER:** I MEAN YES, YES.

**THE COURT:** YOU EITHER ARE OR YOU ARE NOT.

**MS. KISER:** RIGHT.

BUT JUST TO BE CLEAR, I MEAN LET'S TAKE A STEP BACK AND TALK ABOUT RULE 23 BECAUSE RULE 23 IS WHAT WE ARE CONSIDERING TODAY, AND I THINK HIPAA IS ACTUALLY A SIDE POINT BECAUSE NO PERSONAL HEALTH INFORMATION --

**THE COURT:** LET'S NOT TALK ABOUT IT, THEN LET'S TALK ABOUT THE OTHER ISSUES.

**MS. KISER:** YEAH. ABSOLUTELY.

SO WHAT OF PROFESSOR SHAFIQ SAID AND WHAT WE DO NOT DISPUTE IS THAT CERTAIN DATA TRAFFIC ELEMENTS WERE SHARED THROUGH THE META PIXEL, AND I HAVE EXAMPLES OF WHAT THOSE LOOK LIKE THAT I'VE SHARED WITH PLAINTIFFS THAT I WOULD LIKE TO SHARE WITH YOUR HONOR IF YOU WOULD BE WILLING TO LOOK. MAY I?

**THE COURT:** SURE. BUT WHAT I WOULD REALLY APPRECIATE HEARING FROM YOU IS THE POSITION THAT THE PLAINTIFFS HAVE TAKEN, FOR GOOD OR FOR BAD, AS I HAVE SAID WHEN I WAS DISCUSSING THIS, BETTERHELP WEBSITE OPERATED TO COLLECT AND TRANSMIT CLASS MEMBER INFO, AND YOU ARE VERY ADAMANT TO SAY THAT IT DIDN'T.

**MS. KISER:** THAT'S CORRECT.

**THE COURT:** AND THAT'S FINE. THAT SEEMS TO ME TO BE

A SUMMARY JUDGEMENT ISSUE, NOT A CLASS CERT ISSUE. WE WILL GET A COMMON ANSWER, IN FACT I THINK YOUR POSITION IS INDEED IT WILL BE A COMMON ANSWER BECAUSE YOU SAID THAT YOU DON'T DO IT.

SO I UNDERSTAND WHY THAT IS BEING THE FOCUS OF THE CLASS ISSUE BECAUSE IT IS NOT A CLASS QUESTION. I MEAN, WE CAN GET AN ANSWER ONE WAY OR THE OTHER.

**MS. KISER:** I MEAN, I THINK THE REASON IT'S A CLASS QUESTION IS THAT DEPENDING ON PLAINTIFF'S AND CLASS MEMBERS' SETTINGS IN THEIR COMPUTERS, WHETHER THEY WERE USING A MOBILE APP, THESE ARE THINGS THAT PROFESSOR SHAFIQ DIDN'T EVEN TEST THAT REALLY DRIVES WHETHER ANY INFORMATION WOULD HAVE BEEN SHARED WITH FACEBOOK AT ALL.

SO WE COMMENDED TO YOUR HONOR THE IN RE HULU CASE WHICH WAS EXACTLY LIKE THIS --

**THE COURT:** BUT THEIR CONTENTION IS, WHICH IS WHY YOU CAN BRING IT UP ON SUMMARY JUDGEMENT. THEY SAY THE INFORMATION WAS SHARED, AND YOU SAY THAT'S WRONG. WELL IF THERE'S UNDISPUTED FACT AND THAT SUPPORTS YOUR POSITION, YOU GET SUMMARY JUDGEMENT. IF IT ISN'T AND THEY HAVE FACTS THAT SHOW YOU DID, ACROSS THE BOARD, SHARE THE INFORMATION, THEN YOU LOSE AT SUMMARY JUDGEMENT. BUT WE ARE GOING TO KNOW THE ANSWER, SO IT ISN'T INDIVIDUALIZED QUESTIONS.

**MS. KISER:** SO I THINK THE COURT --

**THE COURT:** I MEAN -- I WANT TO MAKE SURE I UNDERSTAND IT.

YOU ARE NOT SAYING THAT YOU DID SHARE PRIVATE INFORMATION FOR SOME PEOPLE BUT NOT FOR OTHERS, OR ARE YOU?

**MS. KISER:** I'M SAYING THAT THERE WAS -- THE RECORD SHOWS THAT WITH RESPECT TO THESE SPECIFIC PLAINTIFFS, THERE WERE THREE PLAINTIFFS -- AND WE KNOW THIS BECAUSE META PRODUCED DOCUMENTS -- THERE WERE THREE PLAINTIFFS FOR WHICH DEVICE ID, ALL THAT INFORMATION YOU ARE LOOKING AT RIGHT THERE WAS SHARED. TWO PLAINTIFFS HAD NO INFORMATION SHARED AT ALL AND THOSE INDIVIDUALS TESTIFIED THAT THEY USED PRIVACY BLOCKERS, AD BLOCKERS, THE THINGS THAT PEOPLE DO TO PROTECT THEIR PRIVACY.

**THE COURT:** SO YOUR ARGUMENT IS INADEQUACY OF THE CLASS REPS.

**MS. KISER:** ADEQUACY OF CLASS REPS AND ALSO INDIVIDUALIZED ISSUES BASED ON THE NAMED PLAINTIFFS THEMSELVES.

**THE COURT:** WELL THAT SECOND PART I DON'T GET. THE FIRST PART I GET, ADEQUACY OF CLASS REPS. BUT IF THEIR POSITION IS, AS I SAID, IS THAT IT'S SHARED ACROSS THE BOARD BY THESE CLASS MEMBERS AND THEN YOU SAY, WELL THESE TWO, THEY DIDN'T SHARE THE INFORMATION. IS YOUR POSITION THAT THAT REFLECTS THE FACT THAT SOME -- IN SOME INSTANCES IT WAS SHARED AND IN SOME INSTANCES IT WASN'T, OR IS YOUR POSITION, WHICH IS WHAT I UNDERSTOOD IT TO BE, NOBODY, IT WASN'T SHARED FOR ANYBODY?

**MS. KISER:** OUR POSITION IS THAT THE META PIXEL SHARED THE INFORMATION THAT'S BEFORE YOUR HONOR RIGHT NOW.

**THE COURT:** OKAY.

**MS. KISER:** AND -- BUT FOR INDIVIDUALS WHO HAD PRIVACY BLOCKERS AND TOOK STEPS TO LIMIT ANY INFORMATION BEING SHARED, NO INFORMATION WAS SHARED.

AND THE THIRD POINT IS BETTERHELP OBTAINED CONSENT AND DISCLOSED THE EXISTENCE OF WEB BEACONS.

I UNDERSTAND THEIR CONTENTIONS ARE THIS IS A CLASS-WIDE ISSUE BUT WE HAVE AFFIRMATIVE DEFENSES THAT CANNOT BE RESOLVED ON A CLASS-WIDE BASIS.

FOR EXAMPLE, WITH RESPECT TO THE FOUR REMAINING CLAIMS, WE HAVE STATUTE OF LIMITATIONS DEFENSES FOR THESE CLASS MEMBERS. THIS IS A SIX-YEAR CLASS. WE HAVE CONSENT DEFENSES.

**THE COURT:** THAT'S A QUESTION OF WHO IS IN THE CLASS, WHO IS THE MEMBER OF THE CLASS, THAT'S NOT A BASIS TO DEFEAT CLASS CERTIFICATION.

**MS. KISER:** WELL THERE IS GOING TO BE --

**THE COURT:** ARE GOING TO SAY WELL THESE PEOPLE, THEIR CLAIMS RAN BEFORE THE STATUTORY PERIOD SO THEY ARE NOT A MEMBER OF THE CLASS.

**MS. KISER:** WELL, BUT OF COURSE I THINK UNDER RULE 23, IT'S WHETHER THE PLAINTIFFS CAN GENERATE COMMON ANSWERS, AND IF THERE ARE AFFIRMATIVE DEFENSES THAT APPLY TO DIFFERENT PROPOSED CLASS MEMBERS WHO AREN'T HERE YET AND ALSO TO THE PLAINTIFFS THEMSELVES THEN WE HAVE A MANAGEABILITY PROBLEM AND WE HAVE A PREDOMINANCE PROBLEM. IT'S NOT JUST

AFFIRMATIVE CLAIMS, IT'S ALSO AFFIRMATIVE DEFENSES THAT HAVE TO BE TAKEN INTO ACCOUNT. WHETHER IT'S --

THE COURT: -- THEN YOU WOULD NEVER HAVE A CLASS ACTION.

**MS. KISER:** I DON'T THINK THAT'S TRUE.

**THE COURT:** BECAUSE YOU ARE ARGUING -- THE ARGUMENT IS SOME PEOPLE ARE NOT PROPER CLASS MEMBERS. AND SO THEN YOU WOULD SAY, WELL THERE'S THE POTENTIAL THAT PEOPLE WHO ARE NOT PROPERLY IN THE CASE, IF WE CERTIFY, WILL BE IN THE CLASS.

I DON'T GET THE ARGUMENT.

**MS. KISER:** WELL I THINK OTHER COURTS HAVE ADDRESSED THESE ISSUES AND SAID, FOR EXAMPLE, IF THERE ARE INDIVIDUALIZED ISSUES CONCERNING HOW THEIR BROWSER SETTINGS WERE, WHAT THEY WERE DOING IN TERMS OF THEIR OWN PRIVACY PRACTICES, IT'S NOT A SUPERIOR METHOD.

**THE COURT:** ARE YOU TALKING ABOUT IN RE FACEBOOK.

**MS. KISER:** I'M TALKING ABOUT IN RE FACEBOOK I'M TALKING ABOUT THE HULU PRIVACY LITIGATION IN SOUTHERN DISTRICT OF CALIFORNIA. THIS IS NOT THE SAME AS RODRIGUEZ, THIS IS ENTIRELY DIFFERENT THAN RODRIGUEZ BECAUSE BETTERHELP WAS NOT PARTICIPATING -- WAS NOT TELLING PEOPLE, I'M NOT COLLECTING YOUR INFORMATION, AND THEN COLLECTING IT. BETTERHELP WAS SAYING, WE USE WEB BEACONS, WE USE COOKIES. AND THAT WAS CONSISTENT THROUGHOUT THE CLASS PERIOD, THEY HAD CLICK THROUGH BANNERS TOWARD THE END OF THE CLASS PERIOD. THEY TOLD

CONSUMERS THIS WAS HAPPENING. SO THAT IS COMPLETELY DIFFERENT.

WITH RESPECT TO FLO HEALTH, FLO HEALTH WAS A FACEBOOK SDK.

**THE COURT:** WELL GOOGLE WOULD TELL YOU THEY DID TELL PEOPLE, BUT THAT'S NEITHER HERE NOR THERE.

**MS. KISER:** BUT THEY HAD A TOGGLE SWITCH, AND I'M VERY FAMILIAR WITH THE CASE, AND WE NEVER HAD A TOGGLE SWITCH, BUT WE DID DIRECT OUR CONSUMERS, IF YOU DON'T WANT INFORMATION SHARED, HERE'S STEPS YOU CAN TAKE. SO BETTERHELP IS NOT A DATA AGGREGATOR, BETTERHELP WASN'T TRANSMITTING PERSONALLY IDENTIFYING INFORMATION TO FACEBOOK.

SO I GUESS WHAT WE ARE SAYING IS, TO THE EXTENT THAT YOU CAN REVIEW OUR PAPERS, WE REALLY THINK THAT IN RE HULU IS IMPORTANT, WE THINK OTHER CASES THAT THE ND CAL HAS CONSIDERED, WE ALSO THINK THE IN RE GOOGLE CASE FROM THE NINTH CIRCUIT THAT TALKS ABOUT PEDESTRIAN INFORMATION IS NOT ACTIONABLE.

AND THESE ARE ALL CASES WE THINK THAT SHOW THAT THIS IS NOT AN APPROPRIATE CASE FOR CERTIFICATION BECAUSE THE INFORMATION WASN'T SHARED, IT WAS PEDESTRIAN LEVEL.

**THE COURT:** SO YOU HANDED UP THE NETWORK TRAFFIC DATA ELEMENTS VISUAL EXAMPLES DOCUMENT TO ME. CAN YOU REMIND ME WHAT IS IT ABOUT THIS DOCUMENT YOU WANT ME TO LOOK AT?

**MS. KISER:** WHAT I WANT YOU TO CONSIDER IS THAT THESE ARE THE ELEMENTS THAT PROFESSOR SHAFIQ SAID WERE SHARED THROUGHOUT THE CLASS PERIOD. HE SAID THESE ARE THE ELEMENTS THAT HE BELIEVES THAT FACEBOOK AND GOOGLE CAN SOMEHOW USE TO

RESOLVE IDENTITIES, AND WE ARE SAYING TO YOU THAT FIRST OF ALL, WE DON'T AGREE WITH THAT. SECONDLY, WE DIDN'T SHARE HASHED E-MAILS THROUGHOUT THE ENTIRE CLASS PERIOD. BUT THIRDLY, EVEN IF WE SHARED HASHED E-MAILS, IF THE FACEBOOK ALREADY HAD THE HASHED E-MAIL, IF WANTED TO RESOLVE IT, IF THE PERSON HAD A FACEBOOK ACCOUNT.

BUT ALL OF THESE INDIVIDUALS DID NOT HAVE FACEBOOK ACCOUNTS, ALL OF THESE INDIVIDUALS HAD DIFFERENT PRACTICES THAT WOULD HAVE FORECLOSED ANY INFORMATION BEING SHARED.

AND AGAIN, WE KNOW THAT BECAUSE META PRODUCED DOCUMENTS FOR THESE PLAINTIFFS AND WE SHOWED THAT 40 PERCENT OF THEM HAD NO INFORMATION TRANSMITTED AT ALL TO FACEBOOK.

AND BY THE WAY, THE OTHER THREE PLAINTIFFS HAD NOTHING OF SUBSTANCE TRANSMITTED IN TERMS OF ANSWERS TO SURVEYS OR THEIR PERSONAL HEALTH INFORMATION OR ANYTHING LIKE THAT.

AND I UNDERSTAND YOUR POINT ABOUT PROFESSOR SHAFIQ AND WE RESPECT YOUR DECISION THAT IT MAY GO TO WEIGHT, BUT HE DID ASCRIBE WRONGFUL CONDUCT OF A THIRD PARTY, MIND DIAGNOSTICS TO BETTERHELP. AND THAT'S JUST WRONG, WE DON'T OWN MIND DIAGNOSTICS, WE HAVE NOTHING TO DO WITH MIND DIAGNOSTICS, SO THAT WOULD BE INAPPROPRIATE TO ASCRIBE THEIR WRONGFUL CONDUCT TO US.

**THE COURT:** WELL I DON'T THINK THAT BY DENYING THE MOTION TO EXCLUDE IN TOTAL DOESN'T PRECLUDE IN A MOTION IN LIMINE FOR TRIAL TO SAY, WELL THIS PIECE OF THIS EXPERT'S

PROPOSED TESTIMONY SHOULD BE EXCLUDED BECAUSE IT'S FACTUALLY INCORRECT OR WHATEVER. AND SO I'M NOT SUGGESTING THAT WERE I TO DENY THE MOTIONS ON EXCLUDING IT AT THIS JUNCTURE, THAT I'M TAKING THE POSITION THAT WE WILL HENCEFORTH NOT HERE ANYTHING MORE ABOUT THE EXPERT TESTIMONY.

**MS. KISER:** I APPRECIATE THAT.

**THE COURT:** YOU WILL BE PERFECTLY ENTITLED TO SAY THEY CAN'T GO THERE, THEY CAN'T GO THAT FAR OR IT'S NOT COVERED BY THE REPORT OR WHATEVER.

**MS. KISER:** RIGHT.

**THE COURT:** I AM NOT PRECLUDING ANY OF THOSE MOTIONS.

**MS. KISER:** I APPRECIATE THAT. THANK YOU, YOUR HONOR.

I DO WANT TO TOUCH ON THE FTC SETTLEMENT BECAUSE IT IS A MATTER FOR WHICH WE NEED TO MAKE A RECORD.

I MEAN, I KNOW PLAINTIFFS HAVE TRIED TO -- THEY DID ALLUDE TO THE FACT THAT THIS IS DISCRETIONARY. WE DID PROVIDE SIGNIFICANT RELIEF, $7.8 MILLION TO 534,000 PAYING CONSUMERS, SIGNIFICANT OVERLAP OF THE CLASS PERIOD, AUGUST FIRST OF 2017 TO DECEMBER 31ST, 2020.

CAM HELD THAT RELIEF DOESN'T HAVE TO BE COMPLETE OR COVER ALL CLASS MEMBERS. IN THAT CASE THE SETTLEMENT TOTALLED 3.3 MILLION FOR LOSSES UP TO 200 MILLION WHICH IS A FRACTION.

AND THEN THERE'S THE CONDE CASE WHICH IS 2018 WESTLAW 4297056 WHERE THERE WAS A SETTLEMENT TOTAL OF $26.5 MILLION FOR

01:56:50 LOSSES ESTIMATED AT 170 MILLION.

01:56:53 AND YOU KNOW, IN THIS CASE WE KNOW THAT THE ALLEGATIONS 01:56:58 ARE SUBSTANTIALLY SIMILAR BECAUSE THE FIRST AMENDED 01:57:01 CONSOLIDATED COMPLAINT IS BASICALLY A COPY/PASTE OF THE FTC 01:57:05 COMPLAINT.

01:57:05 **THE COURT:** WELL IS YOUR POSITION ULTIMATELY GOING TO 01:57:09 BE -- AND I WILL ADMIT, THIS IS OFF THE TOP OF MY HEAD, I MAY 01:57:13 BE COMPLETELY WRONG ABOUT THIS, IS THERE A SETOFF ISSUE DOWN 01:57:16 THE LINE?

01:57:17 **MS. KISER:** I THINK THAT THE THRESHOLD ISSUE FOR 01:57:19 PURPOSES OF RULE 23 IS THAT A CLASS ACTION DEVICE ISN'T 01:57:22 SUPERIOR.

01:57:23 **THE COURT:** OKAY.

01:57:24 **MS. KISER:** I THINK THE CAM CASE SAYS --

01:57:26 **THE COURT:** SO YOU ARE NOT -- LET'S SAY I DON'T AGREE 01:57:28 WITH THAT.

01:57:28 **MS. KISER:** YEAH.

01:57:29 **THE COURT:** DOES THAT -- WILL IT BE POTENTIALLY YOUR 01:57:33 POSITION DOWN THE LINE THAT OKAY, THAT'S FINE, YOU KNOW, THE 01:57:36 JURY COMES IN AND SAYS $7 MILLION, YOU WILL SAY, WELL WE GET A 01:57:41 SETOFF OF $7.3 MILLION BECAUSE THE FTC CONSENT DECREE?

01:57:45 **MS. KISER:** ABSOLUTELY WE WILL, YEAH, AND I THINK 01:57:47 THAT WOULD BE APPROPRIATE.

01:57:48 **THE COURT:** OKAY. I'M NOT SAYING I AGREE WITH YOU, 01:57:51 I'M JUST SAYING I UNDERSTAND IT. OKAY.

01:57:54 **MS. KISER:** YES. I UNDERSTAND IT, YOU ARE NOT AGREEING WITH ME NECESSARILY.

01:57:58 **THE COURT:** I'M NOT NECESSARILY DISAGREEING WITH IT, I'M JUST NOT DEALING WITH IT AT THE MOMENT.

01:58:03 **MS. KISER:** I TOTALLY GET THAT.

01:58:04 YOU KNOW, THERE'S JUST A FEW OTHER THINGS I WANT TO SAY, BUT I DON'T -- YOU KNOW, IF YOU WANT TO GO BACK TO THEM, I'M --

01:58:10 **THE COURT:** THANK YOU. I THINK THAT'S A GOOD IDEA BECAUSE I WOULD LIKE TO HEAR FROM MS. SHARP ON THE -- PARTICULARLY ON THE ADEQUACY OF THE CLASS REPS POINT.

01:58:19 **MS. SHARP:** THANK YOU, YOUR HONOR.

01:58:20 I WILL TAKE A SHOT AT THAT AND A FEW OF THE OTHER ARGUMENTS AND THEN I'M SURE THAT MS. BRADY IS GOING TO HAVE MORE THINGS TO ADD, SHE'S BEEN IN THE TRENCHES MORE THAN I HAVE.

01:58:30 JUST TO TAKE THINGS IN ORDER THOUGH, WITH REGARD TO THE TWO PLAINTIFFS THAT MS. KISER REFERENCED, IT'S INCORRECT TO SAY THAT THE INFORMATION WASN'T SHARED WITH META, THAT IS AN INFERENCE THAT THE DEFENDANT IS DRAWING, BUT WHAT WE KNOW IS THAT META DOES NOT HAVE THAT INFORMATION, BUT AS WE SAID IN THE BRIEFING --

01:58:51 **THE COURT:** THEY MIGHT HAVE DELETED IT AND ALL OF THIS.

01:58:54 **MS. SHARP:** BETTERHELP ASKED THEM AT THE BEHEST OF THE FTC TO DELETE THE INFORMATION. NOW WE DON'T KNOW ONE WAY

OR THE OTHER BUT WHAT WE DON'T HAVE, AGAIN WITH REGARD TO THE PREPONDERANCE STANDARD, IS ANY EVIDENCE FROM BETTERHELP THAT THAT INFORMATION DID NOT GO TO META. AND AGAIN, MORE IMPORTANTLY, THE QUESTION IS: DID THAT INFORMATION UNIFORMLY GET SENT TO THIRD PARTIES WHEN A PLAINTIFF FILLED OUT THAT INTAKE QUESTIONNAIRE? WE DON'T HAVE ANY EVIDENCE THAT SUGGESTS THAT THAT IS NOT THE CASE FOR THESE TWO DEFENDANTS. WE UNDERSTAND THERE IS AN ABSENCE OF EVIDENCE, BUT IN THAT SETTING, GIVEN THE FACT THAT BETTERHELP HAD MANDATED -- HAD DIRECTED META TO DELETE THAT INFORMATION, AND WE ALSO INCLUDE IN A FOOTNOTE IN OUR REPLY THAT META SAYS ON ITS WEBSITE THAT IT WILL DELETE INFORMATION ON A CASE-BY-CASE BASIS.

AND SO WHEN THESE CLASS MEMBERS SENT IN THE INFORMATION EARLY IN THE CLASS PERIOD, IT IS ENTIRELY POSSIBLE THAT META DIDN'T KEEP IT FOREVER, BUT THE SUGGESTION THAT META DOESN'T HAVE THAT INFORMATION, IN TERMS OF BEING ABLE TO WRIT LARGE IDENTIFY THE CLASS MEMBERS, DOES NOT FLOW FROM THE FACT THAT WE DON'T HAVE THE INFORMATION FROM THOSE TWO PLAINTIFFS.

WHY DON'T I PAUSE THERE.

**THE COURT:** SO -- BUT DOES THAT MEAN THAT -- YOU WOULD AGREE THAT FOR THEM TO BE ADEQUATE CLASS REPS, THIS INFERENCE WOULD HAVE TO BE WRONG THAT THEY HAVE MADE.

**MS. SHARP:** YES.

**THE COURT:** IN OTHER WORDS, OBVIOUSLY IF THE INFORMATION WASN'T SHARED, THEY COULDN'T BE CLASS REPS.

02:00:24 **MS. SHARP:** YES. I MEAN -- YEAH -- YES. BUT ON THE OTHER HAND, THE ABSENCE OF THE FACT THAT TWO OF THOSE PLAINTIFF'S INFORMATION IS NOT TODAY IN META'S POSSESSION, OF COURSE DOESN'T SUPPORT THE INFERENCE THAT IT NEVER WAS OR COULDN'T HAVE BEEN SUBJECT TO THE PRACTICES THAT BETTERHELP WAS UNDER TAKING.

02:00:41 **THE COURT:** OKAY.

02:00:42 **MS. SHARP:** IF I MAY JUST BUZZ THROUGH THE OTHER POINTS AND THEN TO THE EXTENT THE COURT HAS QUESTIONS.

02:00:46 WITH REGARD TO THE COURT'S QUESTION ABOUT WHO LOOKED AT SOURCE CODE AND WHO IS ATTACKING WHOM, CANDIDLY OUR CONCERN ABOUT DR. ZHAO IS THAT HE DIDN'T GET TO SEE THE FULL SOURCE CODE THAT BETTERHELP HAS. SO DR. SHAFIQ DID. WE DON'T UNDERSTAND THAT DR. ZHAO DID, HE TESTIFIED IN HIS DEPOSITION HE HADN'T SEEN ALL OF IT. WE UNDERSTAND THAT IS A MERITS ISSUE BUT WANTED TO CLARIFY THE RECORD ON THAT.

02:01:10 WITH REGARD TO THE POINT THAT WAS MADE ABOUT SURVEY QUESTIONS, I'M NOT SURE I UNDERSTOOD EXACTLY WHAT THE POINT WAS BUT I JUST WANT TO BE CRYSTALLINE THAT THE CONTENTS THAT WE BELIEVE WERE CONVEYED FROM BETTERHELP TO THIRD PARTIES IS NOT THE SURVEY QUESTIONS THEMSELVES AND THE ANSWERS, IT IS THE FACT OF HAVING COMPLETED THAT INTAKE QUESTIONNAIRE.

02:01:31 SO IN OTHER WORDS, IT'S THAT BASELINE INFORMATION. THIS IS NOT TO SAY THAT A WHOLE LOT OF OTHER INFORMATION, WE BELIEVE WAS CONVEYED, BUT TO THE COURT'S INQUIRY AT THIS POINT ABOUT

02:01:41 WHAT IS COMMON TO THE CLASS, WHAT CAN WE SAY ABOUT EVERYBODY, AS FAR AS THE EVIDENCE SHOWS, IT'S THE FACT THAT THAT INTAKE QUESTIONNAIRE WAS FILLED OUT.

02:01:49 **THE COURT:** AND SO AT TRIAL YOU WOULD BE -- YOU WOULD -- IF I SAY OKAY, THAT MAKES PERFECT SENSE TO ME, IF THERE IS MORE EGREGIOUS SHARING, IF YOU WILL --

02:02:03 **MS. SHARP:** YEAH.

02:02:03 **THE COURT:** -- WHY WOULD THAT EVEN BE RELEVANT IF THIS CASE GOES TO TRIAL? YOU ARE SAYING COMPLETING THE SURVEY QUESTIONNAIRE, THE COMPLETION OF IT, AND PRESUMABLY THE SHARING OF IT, IS THAT'S THE ACTIONABLE. AND SO IF I ACCEPT THAT SHOULD I THEN SAY IF EVEN MORE INFORMATION, AND IT MIGHT EVEN BE MORE EGREGIOUS IN THE SENSE OF HOW, I SHOULDN'T LET THE JURY HEAR THAT.

02:02:32 **MS. SHARP:** WELL WE WOULD LIKE TO SEE HOW YOUR HONOR RULES ON SUMMARY JUDGEMENT WHAT THE EVIDENCE SHOWS, AND CANDIDLY --

02:02:36 **THE COURT:** IT WAS NOT A FAIR QUESTION, BY THE WAY, IT'S FINE, I WAS JUST ENJOYING IT.

02:02:41 **MS. SHARP:** WELL I'M ENJOYING IT TOO, BECAUSE THE TRUTH IS I DON'T KNOW WHAT JUDGE DONATO DID EXACTLY IN THE FRASCO V. FLO HEALTH CASE, BUT WHAT I CAN TELL YOU IS THAT THERE ARE A LOT OF PARALLELS THERE. YOU HEARD A LOT ABOUT THE HULU CASE AND ABOUT THE FACEBOOK CASE. THOSE CASES ALL INVOLVE, AS BETTERHELP SAYS ITSELF IN ITS OPPOSITION, THOSE ARE

ABOUT SELF-REPORTING BY INDIVIDUALS ABOUT WHAT THEY DID ON THE WEB. AND THOSE CASES INVOLVE INDIVIDUAL BROWSER SETTINGS.

OUR CASE IS NOT ABOUT THAT, IT'S MUCH MORE LIKE FRASCO V. FLO HEALTH WHERE THERE IS A CONTENT PACKET THAT'S WAY TOO TECHNICAL FOR ME TO TALK ABOUT, BUT THERE IS ALSO THIS IDEA OF A CUSTOM EVENT THAT SHARES THIS BASELINE INFORMATION THAT SOMEBODY -- THAT INCLUDED THE WORDS "PREGNANCY" AND "MENSTRUATION." THAT WAS SUFFICIENT FOR JUDGE DONATO TO FIND THAT CONTENTS HAD BEEN REVEALED. HOW EXACTLY THAT PLAYED OUT AT TRIAL, I DON'T KNOW, BUT I CAN'T WAIT TO FIND OUT.

MY PERSPECTIVE ON THAT OVERALL, THOUGH, IS THAT -- AND TO MAKE THE POINT I MADE IN OPENING, TO THE EXTENT THERE IS A SENSITIVITY ISSUE HERE, FROM MY PERSPECTIVE, THE PREDICTABILITY OF WOMEN'S CYCLES IS A MUCH LESS SENSITIVE THING THAN THE FACT THAT SOMEBODY AFFIRMATIVELY GOES AND SEEKS OUT MENTAL HEALTHCARE.

A FEW MORE POINTS IF I MAY, YOUR HONOR, QUICKLY. ON CONSENT, IT SEEMS LIKE WE MAY JUST HAVE A DISAGREEMENT ABOUT WHETHER THERE IS EVIDENCE IN THE RECORD.

IT IS TRUE THAT WHEN THERE IS AN AFFIRMATIVE DEFENSE THAT IS ASSERTED, IT REQUIRES EVIDENCE. THE TRUE HEALTH CASE OUT OF THE NINTH CIRCUIT WE CITED SAYS EXACTLY THAT. WE HAVE NOT SEEN EVIDENCE OF ANY AFFIRMATIVE CONSENT THAT ANY CLASS MEMBER PROVIDED, AGAIN, WITH REGARD TO THE ACTUAL INFORMATION THAT'S IN PLAY HERE.

IT'S NOT ABOUT TELLING PEOPLE THAT YOU USE BEACONS OR YOU USE COOKIES GENERALLY, IT'S WE ARE SHARING YOUR INFORMATION WITH THIRD PARTIES, RIGHT, AND THAT CORE PRIVATE INFORMATION. THAT'S THE FIT ISSUE.

WITH REGARD TO GOOGLE ABOUT WHOM IT SEEMS LIKE EVERYBODY KNOWS MORE THAN ME, THE ONE THING I DO KNOW IS THAT ITS TERMS OF SERVICE AND GOOGLE SHARING SOME INFORMATION PUBLICLY IS A VERY DIFFERENT THING THAN THE IDEA THAT A MENTAL HEALTH WEBSITE IS GOING TO SHARE THE FACT THAT SOMEBODY IS SEEKING OUT MENTAL HEALTHCARE.

ALSO REASSURANCES, BETTERHELP SAYS THINGS LIKE, WE ARE NEVER GOING TO SELL YOUR INFORMATION, WE ARE NEVER GOING TO RENT YOUR INFORMATION, WE ARE JUST USING THIS TO IMPROVE OUR WEBSITE. THOSE KINDS OF REASSURANCES WERE FOUND TO UNDERMINE ANY KIND OF CONSENT IN FLO AND OTHER CASES.

WITH REGARD TO THE VISUAL ELEMENTS OR THE EXAMPLES, I'M HOLDING UP A DEMONSTRATIVE FOR THE COURT REPORTER, AND I'M SORRY IF I'M TALKING TOO FAST, THIS INFORMATION IS INTERESTING, BUT THESE ARE ALL IDENTIFIERS. IN OTHER WORDS, THIS GOES INTO CATEGORY 1 WHICH IS WEATHER META AND GOOGLE AND MIXPANEL AND THESE OTHER ENTITIES, WHO BY THE WAY MAKE THEIR BREAD AND BUTTER BY HAVING THE IDENTITY OF WEB USERS AND USING THAT INFORMATION TO CURATE ADS AND EVERYTHING, THIS IS WHETHER THEY COULD IDENTIFY THOSE CLASS MEMBERS. THAT'S OBVIOUSLY ONE MERITS ISSUE, DOESN'T GO TO THE CONTENTS THOUGH AND WHAT WAS

ACTUALLY SHARED, IN TERMS OF THE PRIVATE INFORMATION.

TWO LAST POINTS I WILL MAKE AND THEN I WILL TURN IT OVER TO MS. BRADY WHO WILL ADDRESS THE CLASS REPS AND THE HIPAA ISSUES.

MIND DIAGNOSTICS WE WILL TAKE UP LATER, WE SEE IT AS A RED HERRING, IT WAS SIMPLY A WEBSITE THAT DR. SHAFIQ USED TO MAKE AN EXAMPLE IN HIS REPORT AS OPPOSED TO ANYTHING GREATER THAN THAT.

FINALLY ON SUPERIORITY, SINCE I TOUCHED ON IT BUT DIDN'T GO ALL THE WAY, I BELIEVE I DISAGREE AS A MATTER OF LAW THAT THERE WOULD BE A SETOFF WHEN THERE IS RESTITUTION FROM A GOVERNMENT ACTION, PARTICULARLY WHEN WE HAVE STATUTORY DAMAGES IN WHICH THERE IS NO MITIGATION DEFENSE THAT I HAVE SEEN.

AND WITH REGARD TO THE TWO CASES CONSTRUING CAM THAT MS. KISER TOUCHED ON, THAT WAS JUDGE WHYTE, OF COURSE HERE IN THE NORTHERN DISTRICT IN 2015, AND I WILL QUOTE FROM THAT DECISION, "THE FTC SETTLEMENT PROVIDES NEARLY ALL, IF NOT ALL, OF THE POSSIBLE RELIEF IN THE FAC."  SO THAT IS A FULL RELIEF KIND OF SITUATION, MORE THAN $30 MILLION WERE SENT OUT TO THE CLASS THERE.  THE PLAINTIFFS ONLY HAD A COUPLE, I DON'T WANT TO SAY LAME BECAUSE I WOULD NEVER SAY THAT ABOUT MY BRETHREN, BUT RELATIVELY WEAK ARGUMENTS THERE ABOUT THE ADEQUACY NOTICE FROM THE FTC.  THERE WAS NOT AN ARGUMENT THAT THIS CLASS WAS GOING TO BE LEFT WITHOUT RELIEF.  A SUBSTANTIAL PORTION OF THIS CLASS IS GOING TO BE LEFT WITHOUT RELIEF.  AND IN CONDE V. SENSA,

ALSO CITED, THAT'S A SOUTHERN DISTRICT OF CALIFORNIA CASE, THAT'S ONE ABOUT WEIGHT LOSS PRODUCTS, CLASS CERTIFICATION WAS DENIED FOR A WHOLE HOST OF REASONS THERE, INCLUDING THAT ARBITRATION IN INDIVIDUAL ISSUES WOULD LIKELY RENDER ABOUT 80 PERCENT OF THE CLASS MEMBERS THERE NOT ABLE TO RECOVER IN ANY EVENT. BECAUSE CAM IDENTIFIES AS ONE OF THE FACTORS, WHETHER THIS CASE IS A GOOD USE OF JUDICIAL RESOURCES. IN CERTAIN CIRCUMSTANCES, THAT MAY MAKE SENSE, WE RESPECTFULLY SUBMIT THAT THAT'S NOT THE CASE HERE.

MS. BRADY WOULD LIKE TO ADDRESS THE PLAINTIFFS OR ANY HIPAA ISSUES. OF COURSE IF THE COURT HAS QUESTIONS, I'M HAPPY TO ANSWER THEM. THANK YOU.

**THE COURT:** THANK YOU.

**MS. BRADY:** THANK YOU, YOUR HONOR.

WITH REGARDS TO YOUR QUESTION ABOUT WHETHER OR NOT THE PLAINTIFFS WOULD BE ADEQUATE, AS MS. SHARP ALREADY STATED, THESE ARE ISSUES THAT ARE QUESTIONS FOR THE ENTIRETY OF THE CLASS, AND THE FOCUS REALLY HAS TO BE ON WHAT ACTION BETTERHELP TOOK RATHER THAN WHAT INFORMATION META HAS RETAINED.

AND OUR POSITION IS THAT IT APPLIES TO EVERYONE EQUALLY, EVERYBODY GOT THEIR INFORMATION SENT TO THESE THIRD PARTY ENTITIES. BUT ULTIMATELY, THE TWO-PRONG TEST FOR ADEQUACY IS DO THE NAMED PLAINTIFFS AND THEIR COUNSEL HAVE CONFLICTS OF INTEREST WITH OTHER CLASS MEMBERS? THERE IS NONE HERE.

AND TWO, WHETHER THE NAMED PLAINTIFFS AND THEIR COUNSEL

PROSECUTE THE ACTIONS VIGOROUSLY ON BEHALF OF THE CLASS.

ALL OF OUR NAMED PLAINTIFFS WENT THROUGH DISCOVERY PROCESS, DEPOSITIONS, AND ALL OF THOSE THINGS.

**THE COURT:** BUT THEY DO -- THE WHOLE NOTION, THEY HAVE TO BE REPRESENTATIVE, THEIR CLAIMS HAVE TO -- NOW THAT DOESN'T MEAN THAT THEY CAN'T BE ADEQUATE REPRESENTATIVES AND BE IN THAT POSITION EVEN THOUGH THERE MAY BE ASPECTS OF THE CLAIMS THAT THEY DIDN'T THEMSELVES SUFFER, BUT THEY HAVE TO SUFFER THE CORE PROBLEM --

**MS. BRADY:** ABSOLUTELY.

**THE COURT:** -- THAT IS AT ISSUE IN THE LAWSUIT FOR THEM TO BE ADEQUATE.

**MS. BRADY:** ABSOLUTELY.

**THE COURT:** AND SO THE POSITION THAT YOUR COLLEAGUES ARE TELLING ME IS THAT AT LEAST TWO OUT OF THE THREE OF THESE DIDN'T SUFFER A REPRESENTATIVE INJURY.

NOW I UNDERSTAND, FROM WHAT MS. SHARP SAYS, THAT HER CONTENTION IS THAT'S BASED ON AN INFERENCE ABOUT WHERE INFORMATION FLOWED AND WE CAN'T GO THERE BECAUSE WE DON'T KNOW WHETHER OR NOT MATERIAL -- FROM WHAT THEY ARE POINTING TO, WHETHER OR NOT THAT SHOWS MATERIAL FLOW OR IT DIDN'T; IS THAT RIGHT? IS THAT ESSENTIALLY --

**MS. BRADY:** ESSENTIALLY, YES, YOUR HONOR, BUT ULTIMATELY THOSE ARE QUESTIONS OF FACT.

OUR EXPERT SAYS THAT THE PIXEL FIRED AUTOMATICALLY

UNIFORMLY FOR EVERYONE AND THAT INFORMATION WAS SENT TO META, MIXPANEL, GOOGLE, ALL OF THESE OTHER PLACES.

AND THE EFFECT THAT THAT HAS IS THE INFORMATION IS SHARED, BECAUSE AGAIN THE FOCUS IS ON WHAT DID BETTERHELP DO.

ULTIMATELY WITH REGARDS TO THOSE TWO PARTICULAR PLAINTIFFS, THE FACT THAT META HAS NOT RETAINED THE INFORMATION IS NOT PROOF POSITIVE THAT IT WASN'T SHARED.

**THE COURT:** I UNDERSTAND. YOU ARE SAYING THEY ARE ADEQUATE BECAUSE THEIR INFORMATION WAS COLLECTED AND TRANSMITTED AND THE FACT THAT THERE MAY BE SOME EVIDENTIARY ISSUES IS, YOU'RE NOT TAKING THE POSITION THAT OKAY, YEAH, THEIR INFORMATION WASN'T SHARED BUT THEY STILL CAN BE REPRESENTATIVE OF THE PLAINTIFF. THAT'S NOT YOUR POSITION.

**MS. BRADY:** NO, YOUR HONOR. THANK YOU. AND IF YOUR HONOR HAS ANY QUESTIONS ABOUT HIPAA, I WILL SAY --

**THE COURT:** BUT HIPAA -- I DON'T REALLY THINK, NOW THAT WE HAVE KIND OF HASHED THIS OUT, THAT HIPAA IS THE CENTRAL POINT FOR THIS ISSUE. IT MIGHT BE DOWN THE LINE.

**MS. BRADY:** AGREED.

**THE COURT:** THANKS. LET ME GO BACK TO MS. KISER.

**MS. KISER:** THANK YOU.

SO YOUR HONOR, I DO WANT TO MAKE THREE POINTS. THE FIRST ONE IS THAT THE IDEA THAT THERE'S NO CONSENTING ISSUE IN THIS CASE IS SIMPLY NOT TRUE. I'M NOT GOING TO READ ALL THE LANGUAGE, BUT THEY CERTAINLY DISCLOSE THEY HAD PIXELS OPERATING

ON THE WEBSITE.

I KNOW THEY ARE TELLING YOUR HONOR THAT SOMEHOW IT WAS TRANSMITTED TO FACEBOOK THAT A SURVEY WAS COMPLETED. IN FACT THE URL THAT WAS TRANSMITTED WAS BETTERHELP/NEXT WHICH WAS NOT COMMUNICATING THAT A SURVEY WAS COMPLETED. AND EVEN PROFESSOR SHAFIQ DOES NOT SAY THAT THE SURVEY BEING COMPLETED WAS TRANSMITTED TO FACEBOOK.

WHAT YOU WILL SEE FROM THE EVIDENCE THAT IS NOT IN DISPUTE IS THAT THERE WERE EVENTS THAT FACEBOOK WOULD CHARACTERIZE, AND WE -- BETTERHELP USED THOSE UNDER NAMES THAT WOULD NOT IDENTIFY WHAT THEY WERE TO FACEBOOK.

SO IF FACEBOOK HAD, FOR EXAMPLE, MARKET BASKET OR NEXT MARKET, THEY WOULD USE THAT TO "PERSON SIGNED UP" OR SOMETHING. SO IT WOULD MEAN SOMETHING TO BETTERHELP, IT WOULD MEAN NOTHING TO FACEBOOK.

AND I THINK WHAT'S CLEAR, AND I THINK -- AND BY THE WAY, I DO THINK IN RE HULU IS AN ND CAL CASE AND I APOLOGIZE IF I SAID IT WASN'T. THERE IS ANOTHER CASE THAT I THINK IS DIRECTLY ON POINT AS WELL AND THAT'S THE CASE IN THE MARTINEZ CASE IN SOUTHERN DISTRICT OF FLORIDA. AND ESSENTIALLY THEY WERE TAKING THE SAME POSITION AS PLAINTIFFS ARE HERE WHICH IS THE IDEA IS THAT -- THEIR POSITION WAS EVERYTHING IS TRANSMITTED NO MATTER WHAT BECAUSE THE PIXEL FIRES, OKAY. AND THE EXPERTS IN THAT CASE ON BOTH SIDES RECOGNIZED THAT IF A PERSON DOES NOT HAVE A FACEBOOK ACCOUNT, THE INFORMATION IS NOT GOING TO BE

TRANSMITTED.

**THE COURT:** OF COURSE.

**MS. KISER:** AND THAT STANDS TO REASON.

**THE COURT:** I CAN'T RESIST POINTING IT OUT, ALL OF THESE DISTRICT COURT CASES ARE ONLY AS GOOD AS HOW PERSUASIVE THEY ARE WHEN I READ THEM, THEY ARE NOT PRECEDENT.

**MS. KISER:** I COMPLETELY UNDERSTAND THAT.

**THE COURT:** AND EVEN MORE COMPELLING TO ME -- I MEAN I DO WANT TO KNOW WHAT CASES ARE DECIDED IN THE NORTHERN DISTRICT, BUT YOU KNOW, IF THERE IS A SOUTHERN DISTRICT OF FLORIDA CASE, IT MAY BE GREAT, AND IF I READ IT, IT MAY PERSUADE ME, BUT IF IT DOESN'T PERSUADE ME, I DON'T HAVE TO WORRY ABOUT IT.

**MS. KISER:** A HUNDRED PERCENT CORRECT, IT WAS JUST SIMILAR FACTS.

**THE COURT:** NO, I APPRECIATE IT, AND I WANT COUNSEL TO POINT THOSE OUT TO ME BECAUSE OFTEN THEY ARE VERY PERSUASIVE.

**MS. KISER:** YEAH, SOMETIMES THEY ARE.

AND THE OTHER POINT I WANT TO MAKE, AND I THINK THIS IS IMPORTANT, AND I JUST WANT TO MAKE SURE -- AND I'M NOT -- LIKE I SAID, I'M NOT GOING TO READ ALL THE CONSENTS BUT IT'S IN OUR BRIEFING AND WE WENT AHEAD AND IDENTIFIED ALL THE DIFFERENT CONSENTS DURING THE RELEVANT PERIOD AND THEY ARE ATTACHED AS EXHIBITS TO OUR MOTION, I DO THINK CONSENT IS REAL AND LOOMS

LARGE HERE. I DON'T THINK THAT THEY CAN JUST BRUSH IT OFF AND SAY THERE IS NO EVIDENCE IN THE CASE OF CONSENT, I WOULD BE VERY -- FOR THE BENEFIT OF YOUR CLERKS, ON PAGES 8 AND 9 OF OUR BRIEFING AND ALSO EXHIBITS TO NIKLAS VAUGHAN'S DECLARATION WHERE THEY ARE LAID OUT IN TOTAL. AND YOU WILL SEE THEY ARE VERY ROBUST, AND SO I DON'T THINK IT'S FAIR TO SAY THAT THERE WAS NO WAY THAT CONSUMERS HAD NO NOTICE THAT COOKIES AND WEB BEACONS WERE USED. AND THEY SAID THEY WERE USED FOR MARKETING PURPOSES SO I THINK THAT'S IMPORTANT.

I DON'T WANT TO GO CLAIM BY CLAIM, I DO THINK THAT THE AFFIRMATIVE DEFENSES WILL NOT BE SUBJECT TO COMMON PROOF. I UNDERSTAND THAT YOUR HONOR IS FOCUSED ON WHAT -- I THINK THIS COURT HAS SAID IT'S NOT JUST WHETHER THEY ARE COMMON QUESTIONS BUT COMMON ANSWERS.

AND I THINK WITH RESPECT TO -- AND THIS IS WHY I THINK THE MARTINEZ CASE IN FLORIDA COULD BE PERSUASIVE TO YOUR HONOR, THEY DO RECOGNIZE THAT THERE ARE SOME AUTOMATIC AD BLOCKERS AND SOME AUTOMATIC PIXEL BLOCKERS, ESPECIALLY IN THE MOBILE PHONES, AND PROFESSOR SHAFIQ ONLY LOOKED AT THE CHROME BROWSER WITH PRIVACY SETTINGS WIDE OPEN.

SO THERE IS ALL THESE OTHER -- NOW THAT, YOU KNOW, PRIVACY HAS BECOME MORE MATURE AND NOW THAT TECHNOLOGY SORT OF CAUGHT UP WITH THE ISSUES, YOU KNOW, APPLE AND OTHERS DO HAVE AUTOMATIC BLOCKING. SO IT IS NOT FAIR TO SAY THAT JUST BECAUSE THERE WAS THE POTENTIAL FOR INFORMATION TO BE SHARED WITH META

THAT IT ACTUALLY HAPPENED.

AND THE VAST MAJORITY, 84 PERCENT OF BETTERHELP USERS ACCESSED IT BY A MOBILE APPLICATION. SO THAT'S SIGNIFICANTLY DIFFERENT THAN EVERYBODY ACCESSING VIA CHROME ON THEIR LAPTOP.

SO I THINK THAT'S AN IMPORTANT DISTINCTION AND I DO THINK IT'S GOING TO RAISE A HOST OF ISSUES IN TERMS OF IDENTIFYING WHO IS GOING TO BE PART OF ANY POTENTIAL CLASS, WHICH AS YOU KNOW WE THINK WOULD NOT BE APPROPRIATE.

I DO ALSO WANT TO RAISE THE POINT THAT I KNOW THAT PLAINTIFFS ARE TALKING ABOUT HOW META AND GOOGLE AND OTHERS CAN DO IDENTITY RESOLUTION. I DON'T THINK IT'S FAIR TO ASCRIBE TO BETTERHELP WHATEVER ALLEGED WRONGFUL CONDUCT MIGHT ASCRIBABLE TO THOSE ENTITIES.

I DON'T THINK THERE'S ANY EVIDENCE IN THE RECORD THAT BETTERHELP EVER THOUGHT THAT THAT COULD HAPPEN; IN FACT, THERE'S EVIDENCE IN THE RECORD WHERE BETTERHELP WAS CONSCIENTIOUS AND TRIED TO PREVENT META FROM TAKING MORE INFORMATION THAN IT COULD. IT'S NOT A BAD ACTOR.

THE OTHER POINT I WOULD LIKE IT MAKE IS THAT --

**THE COURT:** WELL I DON'T -- YOU KNOW, IF BETTERHELP -- AND I KNOW YOU SAY THIS DOESN'T HAPPEN, BUT IF BETTERHELP SHARES SENSITIVE INFORMATION AND THEN IT'S MISUSED BY THIRD PARTIES, THERE'S A FORESEEABILITY ASPECT TO THAT. I CAN'T JUST SAY, IT'S NOT OUR PROBLEM, BECAUSE THAT'S A CONSEQUENCE OF THE SHARING.

AND I DON'T THINK YOU REALLY DISPUTE THIS, WE ARE NOT GOING TO HAVE A DISPUTE ABOUT, IF YOU ARE TRYING TO ACCESS MENTAL HEALTHCARE, THAT THAT IS INFORMATION THAT IS PRIVATE AND SENSITIVE. I MEAN, I DON'T THINK THERE WILL BE A DISPUTE ABOUT THAT BECAUSE I AGREE WITH MS. SHARP, THAT'S THE MOST SENSITIVE INFORMATION YOU HAVE. YOU KNOW, TALK ABOUT SOMETHING YOU DON'T NECESSARILY WANT THE OTHERS TO KNOW IS THAT YOU ARE SEEKING MENTAL HEALTHCARE.

**MS. KISER:** AND YET THE PLAINTIFFS POSTED ABOUT THESE AND OTHER SENSITIVE MATTERS.

**THE COURT:** WELL I DON'T THINK THAT'S INCONSISTENT. IT'S YOU WANT TO HAVE CONTROL OF THAT INFORMATION AND YOU MAY WANT TO TELL PEOPLE, THAT DOESN'T MEAN YOU WON'T WANT TO TELL PEOPLE BUT IT CERTAINLY DOESN'T UNDERMINE THE NOTION THAT THAT IS EXTREMELY SENSITIVE INFORMATION IF YOU ARE SEEKING MENTAL HEALTH TREATMENT.

YOU MAY WANT TO BE A ROLE MODEL AND TELL PEOPLE THAT YOU HAVE, AND THAT'S WONDERFUL, BUT THAT DOESN'T THEN MEAN YOU NO LONGER CARE ABOUT ITS SENSITIVITY.

**MS. KISER:** AND JUST TO BE CLEAR, BETTERHELP NEVER TRANSMITTED ANY PERSONAL INFORMATION ABOUT PEOPLE SEEKING THERAPY OR NOT, I THINK THAT'S REALLY AN IMPORTANT POINT.

**THE COURT:** I UNDERSTAND. BUT FROM THE PUTATIVE CLASS MEMBERS' PERSPECTIVE, THE IDEA THAT THEY ARE ACCESSING OF MENTAL HEALTH HAS BEEN SHARED IN ANY FORM IS SOMETHING THAT --

I WOULDN'T MINIMIZE THAT.

**MS. KISER:** AND I DON'T MINIMIZE THAT, I'M JUST SAYING IN THIS CASE THERE IS NO EVIDENCE THAT THE INFORMATION ABOUT THEM SEEKING MENTAL HEALTH WAS SHARED.

**THE COURT:** I UNDERSTAND.

**MS. KISER:** THAT'S ALL I'M SAYING.

AND LOOK, AND AS I --

**THE COURT:** BECAUSE YOUR POSITION, KIND OF LIKE HARKENING BACK TO THE GOOGLE CASE WHICH KEEPS COMING UP, YOUR POSITION IS IT'S ANONYMIZED, RIGHT?

**MS. KISER:** WELL, MY POSITION IS THAT THE INFORMATION THAT WAS CONSISTENTLY SHARED IS THE NUMBERS THAT YOU SEE IN FRONT OF YOU ON DEVICES AND THINGS LIKE THAT, AND THAT TO THE EXTENT --

**THE COURT:** YOUR ARGUMENT IS THAT COULD THEN BE UTILIZED TO ULTIMATELY IDENTIFY, AND I KNOW YOU DISPUTE THAT.

**MS. KISER:** I DO, AND ALSO I ALSO DISPUTE -- AND THAT WOULD BE THROUGH A CHROME BROWSER AND ALL THE THINGS. IF IT'S SHARED ON A MOBILE APP, ALL THE BLOCKERS ARE IN PLACE AND EVEN LESS INFORMATION WILL BE SHARED. AND AGAIN, IF THE PERSON DOESN'T HAVE A FACEBOOK ACCOUNT, IT DOESN'T -- IT'S NEVER GOING TO BE -- FACEBOOK IS NOT GOING TO BE ABLE TO BE IDENTITY RESOLVE ANYWAY.

BUT I WOULD ALSO LIKE TO ADD THAT I KNOW PLAINTIFFS ARE TRYING TO SAY THERE WERE A WHOLE BENCH OF SOCIAL MEDIA APPS,

02:18:57 BUT THERE'S NO EVIDENCE IN THE RECORD FOR ANYONE OTHER THAN META, MIXPANEL IS LITERALLY A BACK OFFICE FUNCTION, AND IT HAS TO DO -- IT DOESN'T HAVE A SOCIAL MEDIA PLATFORM, AND IT'S NOT, YOU KNOW, POSTING OR DISCLOSING INFORMATION, IT'S NOT A PUBLIC WEBSITE, IT'S LITERALLY A BACK OFFICE FUNCTION LIKE MICROSOFT WORD, AND GOOGLE ANALYTICS IS BASICALLY USED TO OPTIMIZE WEBSITES.

02:19:17 **THE COURT:** ON THE ISSUE ABOUT THE NAMED PLAINTIFFS AND YOUR CONTENTION THAT INFORMATION WASN'T SHARED, ARE THE PLAINTIFFS CORRECT YOU ARE ASKING ME TO DRAW THE INFERENCE THAT THE ABSENCE OF INFORMATION FROM FACEBOOK FOR META, YOU ARE SAYING THAT MEANS THE INFORMATION WASN'T SHARED.

02:19:42 **MS. KISER:** WHAT I'M ASKING YOU TO DO IS CONSIDER THE FACT THAT THE FIVE PLAINTIFFS -- PLAINTIFFS SUBPOENAED META. OF THE FIVE PLAINTIFFS, THREE HAD SOME INFORMATION THAT DID NOT DISCLOSE ANYTHING ABOUT THEIR PUBLIC -- THEIR MENTAL HEALTH, AND TWO HAD NO INFORMATION.

02:19:56 **THE COURT:** OKAY. ON THE TWO THAT HAD NO INFORMATION, THEIR POSITION IS META WAS ASKED TO DESTROY THIS MATERIAL, ALL THAT. WHY ARE THEY WRONG THAT I SHOULD NOT JUMP TO THE INFERENCE YOU WANT ME TO MAKE BECAUSE OF THE ABSENCE OF A RECORD OF THE INFORMATION?

02:20:15 **MS. KISER:** BECAUSE THEY TESTIFIED THAT THEY AFFIRMATIVELY TOOK STEPS TO PREVENT INFORMATION FROM GOING TO META. AT THEIR DEPOSITION THEY TESTIFIED ALL THE PRIVACY

THINGS THAT THEY DO, THEY TESTIFIED THAT THEY TAKE STEPS TO PROTECT THEIR IDENTITY ONLINE BECAUSE THEY WANT PRIVACY.

SO I THINK THE EVIDENCE SUGGESTS THAT THOSE STEPS WERE EFFICACIOUS AND THAT THE INFORMATION WASN'T TRANSFERRED.

I DON'T THINK THAT IT'S REASONABLE TO DRAW AN INFERENCE THAT WE HAVE A SITUATION WHERE BECAUSE THREE PEOPLE HAD INFORMATION TRANSMITTED TO META THEN BETTERHELP WAS SOMEHOW WRONGFUL AND THAT IF THERE'S TWO PEOPLE THAT DON'T HAVE INFORMATION TRANSMITTED, BETTERHELP IS STILL WRONGFUL BECAUSE WE CAN JUST ASSUME THE INFORMATION WAS DELETED.

IT SEEMS TO ME THAT THE INFORMATION THAT THEY HAD FOR THOSE PLAINTIFFS, THEY HAD INFORMATION FOR EVERYBODY, THEY JUST DIDN'T HAVE ANYTHING IDENTIFYING AT ALL FOR THE TWO. THEY IDENTIFIED THOSE PEOPLE AS HAVING FACEBOOK ACCOUNTS BUT THEY DIDN'T HAVE ANY INFORMATION FOR THOSE TWO.

SO I GUESS WHAT I'M SAYING IS IT SEEMS UNLIKELY TO ME THAT -- AND I DON'T THINK IT'S FAIR, I THINK IT DOESN'T HELP THEM MEET THEIR BURDEN, THE ABSENCE OF EVIDENCE DOESN'T, IN MY VIEW, HELP THEM MEET THEIR BURDEN.

BUT I DO THINK YOU HAVE TO GO BACK TO THE IDEA THAT WE ARE TALKING ABOUT META HERE, THEY HAVE TOSSED IN A BUNCH OF OTHER SOCIAL MEDIA SITES BUT THEIR EXPERT OFFERS NO EVIDENCE OF THOSE, HE STRICTLY STICKS TO META. HE DID ASCRIBE MIND DIAGNOSTICS'S WRONGFUL CONDUCT TO BETTERHELP, WHICH WAS INAPPROPRIATE.

WE WOULD ENCOURAGE YOUR HONOR TO CONSIDER THE FACT THAT HE'S VERY FOCUSED ON ONLY CHROME BROWSERS AND ONLY INDIVIDUALS WHO ACCESSED FROM A DESKTOP OR A LAPTOP COMPUTER. AND SO EVEN IF YOU ARE LETTING THAT IN, IT DOESN'T SAY ANYTHING ABOUT ANYONE ELSE WHO WAS ACCESSING BY A MOBILE APP, ACCESSING THROUGH A VPN, ACCESSING THROUGH OTHER MEANS BECAUSE THAT JUST HAS NOTHING TO DO WITH WHAT HE DID. AND HE DID LIMIT HIS ANALYSIS TO CHROME BROWSERS.

AND AGAIN, WE WEREN'T ABLE TO LOOK AT WHAT HE DID BECAUSE HE DID NOT SHOW HIS WORK. AND I UNDERSTAND YOU THINK THAT'S FODDER FOR CROSS-EXAMINATION, AND PERHAPS IT IS, BUT THE FACT IS WE WERE NOT ABLE TO -- WE CREATED HARD FILES FROM THE ANALYSIS THAT WE DID AND PROVIDED IT TO THEM, IT WOULD HAVE BEEN NICE TO BE ABLE TO UNDERSTAND WHY HE DID SOME OF THE THINGS HE DID, AND WE DON'T BELIEVE THE CONCLUSIONS THAT HE CAME TO, IN MANY RESPECTS, WERE CORRECT. I UNDERSTAND THAT YOU BELIEVE THAT.

**THE COURT:** WAS THERE SOME MOTION PRACTICE -- DISCOVERY MOTION PRACTICE ON THESE ISSUES?

**MS. KISER:** WHAT WE WOUND UP DOING IS WE ASKED THEM IF HE HAD A HARD FILE AND HE SAID NO, AND HE WASN'T WILLING TO PROVIDE ONE. AND I GUESS WE COULD HAVE GONE TO THE COURT AND DEMANDED HE CREATE ONE, BUT HE DIDN'T CREATE ONE, SO IT WOULD HAVE BEEN A NULL SET.

BUT MY COLLEAGUE DOES WANT TO TALK ABOUT SOME OF THE

ISSUES THAT WE BELIEVE GO TO ADMISSIBILITY BECAUSE THEY DO TRAIN ON SOME OF THE ISSUES THAT FOCUS ON CLASS CERTIFICATION. SO DOES YOUR HONOR HAVE ANY OTHER QUESTIONS FOR ME ABOUT RULE 23?

**THE COURT:** NO.

**MS. KISER:** OKAY. I WOULD LIKE TO TURN IT OVER TO MR. HAMMER TO TALK BRIEFLY ABOUT --

**THE COURT:** MR. HAMMER IS GOING TO TALK ABOUT WHAT?

**MS. KISER:** THE EXPERTS AND SOME OF THE ISSUES THAT TRAIN ON ADMISSIBILITY.

**THE COURT:** ALL RIGHT.

**MR. HAMMER:** THANK YOU, YOUR HONOR.

JEFFREY HAMMER FOR BETTERHELP. AND I HAVE HERE, AN ADMONITION AT THE OUTSET IN MIND, SO IF YOU WILL JUST INDULGE ME, BECAUSE I DO THINK SOME ARE HIGHLY RELEVANT AND THEY DO, IN FACT, AT A MINIMUM, GO TO CERTIFICATION ISSUES. WE BELIEVE EXCLUSION IS WARRANTED, BUT AT A MINIMUM, THEY GO TO CERTIFICATION.

IN THE CASE OF SHAFIQ, I DO THINK IT'S IMPORTANT TO STEP BACK BECAUSE THERE WAS SOME DISCUSSION ABOUT SOME OF THE ALLEGATIONS WRIT LARGE IN THE CASE. BUT FOR CERTIFICATION PURPOSES, PLAINTIFF'S POSITION, AS I UNDERSTAND IT, IS THAT ACROSS THE CLASS, TWO CATEGORIES THE OF INFORMATION WERE SHARED UNIFORMLY, THEY CLAIM.

THE TYPES OF BITS OF INFORMATION THAT YOU HAVE ON THE

DEMONSTRATIVE IN FRONT OF YOU, HASH TEAM HELPS, SO YOU HAVE THOSE BITS, AS WELL AS THE FACT OF SIGNING UP FOR BETTERHELP'S SERVICES, THOSE ARE THE TWO BUCKETS.

AND IT IS IMPORTANT, CONSIDERING THAT DR. SHAFIQ'S OPINION IS ON A CLASS-WIDE BASIS, NOT SIMPLY FOR A SINGLE USER, IT'S IMPORTANT TO TAKE A LOOK AT THE METHODOLOGY HE USED.

AND AS MS. KISER WAS JUST RELAYING, HE USED A CHROME LAPTOP WITHOUT ANY PRIVACY SETTINGS AND HOW HE WENT ABOUT ANALYZING THE WEBSITE, AND HE USED THE WAYBACK MACHINE TO ANALYZE THE WEBSITE. HE DID NOT TAKE INTO ACCOUNT ANY OF THESE SETTINGS THAT ARE INDIVIDUALIZED, THAT COULD IN FACT PREVENT THE DISCLOSURE OF EVEN THESE LITTLE BITS OF INFORMATION OR THE FACT OF REGISTERING, WHICH WE --

**THE COURT:** ISN'T THAT A FACTUAL DISPUTE? IF YOU ARE RIGHT AND THERE IS UNDISPUTED FACT THAT THERE WASN'T SHARING, YOU BRING A SUMMARY JUDGEMENT MOTION.

THEY DISAGREE WITH YOU ON THIS. I HAVE NO SUMMARY JUDGEMENT MOTION IN FRONT OF ME. SO AGAIN, I KNOW IT'S A SIMPLISTIC WAY TO PHRASE IT, ONE WAY OR THE OTHER THERE ARE CLASS-WIDE QUESTIONS WHICH WILL HAVE CLASS ANSWERS. BECAUSE IF YOU ARE RIGHT, IT'S THEY ARE OUT ACROSS THE BOARD.

**MR. HAMMER:** YOUR HONOR, FORGIVE ME, I ONLY INTENDED AS A FOOTNOTE THAT WE DISPUTE ACROSS THE BOARD, I RECOGNIZE THAT THAT IS A SUMMARY JUDGEMENT ISSUE. THE POINT I'M FOCUSING ON HERE IS THAT FOR ANY INFORMATION TO GET TO META OR A THIRD

PARTY, IT IS AN INDIVIDUALIZED INQUIRY BECAUSE THESE SETTINGS VARY PER USER.

**THE COURT:** BUT THEY SAY THEY DON'T -- THEY DISAGREE WITH YOU THAT THAT RESULTS IN A BLOCK OF THE TRANSMISSION OF INFORMATION ABOUT PLEADING THE SURVEY AND ALL OF THAT. THEY SAY YOU ARE WRONG.

**MR. HAMMER:** YEAH. I UNDERSTAND THAT THEY SAY WE ARE WRONG. OUR EXPERT -- SO FOR PURPOSES OF DIRECTING THE COURT TO ASSESS THIS ISSUE, WE WOULD ASK THAT YOU TAKE A CLOSE LOOK AT OUR EXPERT, DR. ZHAO.

**THE COURT:** I'M SUPPOSED TO DECIDE WHICH EXPERT I THINK IS RIGHT AND THEN TO DECIDE CLASS CERTIFICATION?

**MR. HAMMER:** ONLY ON THIS ISSUE OF INDIVIDUALIZED BLOCK OF INFORMATION, THAT IS A CRITICAL PIECE HERE.

**THE COURT:** I GUESS -- WHY DIDN'T YOU BRING YOUR SUMMARY JUDGEMENT MOTION? I MEAN, I DON'T UNDERSTAND WHY IF YOU FEEL SO STRONGLY THAT THEY ARE GOING TO LOSE ON FUNDAMENTAL ISSUES, THAT THERE'S NO DISPUTED ISSUES OF FACT ON THESE QUESTIONS, WHY DON'T I HAVE A SUMMARY JUDGEMENT MOTION?

I DON'T KNOW WHY YOU ARE ARGUING IT THROUGH THE AVENUE OF INADEQUACY OF EXPERT TESTIMONY AND IMPROPRIETY OF CLASS CERTIFICATION.

**MR. HAMMER:** YOUR HONOR, WE RECOGNIZE SOME INFORMATION CAN CONVEY FOR CERTAIN USERS, OUR POSITION IS THAT'S NOT ACTIONABLE, I SUSPECT WE WILL ULTIMATELY BRING A

SUMMARY JUDGEMENT MOTION. BUT FOR PURPOSES OF CLASS CERT, THE CRITICAL PIECE IS THAT-

**THE COURT:** BUT AGAIN, THEY ARE SAYING YOU ARE WRONG. THEY SAY WRONG.

SO YOU KNOW, THEN THIS IS BEING TEED UP TO ME IN A CLASS CERT MODEL, NOT A MERIT DETERMINATION ON WHETHER OR NOT THERE ARE FACTUAL DISPUTES ON THESE QUESTIONS.

SO I DON'T -- I DON'T THINK IT PUTS THE COURT IN A FAIR POSITION, YOUR ARGUMENTS, QUITE CANDIDLY, THAT I SHOULD BE DECIDING, OPINING BETWEEN WARRING EXPERTS FOR PURPOSES OF DECIDING WHETHER OR NOT IT SHOULD BE A CLASS CERT ISSUE.

BECAUSE TO ME, I WOULD THINK -- IT ALMOST SOUNDS LIKE, IF I WAS IN YOUR SHOES, YOU WOULD SAY I DON'T CARE WHETHER OR NOT THEY CERTIFY A CLASS; IN FACT IN A WAY, IF THEY CERTIFY THE CLASS, THE MORE THE BETTER, BECAUSE WE ARE GOING TO WIN AND THEN THEY ARE ALL GOING TO BE BOUND.

I DON'T QUITE SEE WHY YOUR ATTACK ON CLASS CERT IS AN ENTIRELY MERIT-BASED ATTACK.

**MR. HAMMER:** YOUR HONOR --

**THE COURT:** I MEAN, IT'S NOT NUMEROSITY, IT'S TO SOME EXTENT TYPICALITY, BUT NOT REALLY, OR COMMONALITY, IT'S MORE THEY ARE FACTUALLY WRONG.

**MR. HAMMER:** YOUR HONOR, IT IS A PREDOMINANCE-FOCUSED ATTACK ON CERTIFICATION BASED ON --

**THE COURT:** IF I ACCEPT YOUR FACTS.

**MR. HAMMER:** YOUR HONOR --

**THE COURT:** BECAUSE THEIR FACTS ARE THERE IS INFORMATION SHARING, COLLECTING AND SHARING IS ACROSS THE BOARD. THAT'S WHAT THEY TELL ME.

SO IF THEY TELL ME THAT, YOUR POSITION IS, NUMBER ONE, I SHOULD ACCEPT YOUR VERSION OF THE FACTS, AND HAVING ACCEPTED YOUR VERSION OF THE FACTS, I SHOULD THEN CONCLUDE THAT THERE CAN NOT BE CLASS CERTIFICATION, RIGHT?

**MR. HAMMER:** YOUR HONOR, THERE ARE TWO SEPARATE ISSUES AND THE EXPERTS SPEAK TO BOTH OF THESE ISSUES. THERE IS THE ISSUE OF INDIVIDUALIZED USER SETTINGS AND WHETHER THERE'S UNIFORM INFORMATION SHARING RELATIVE TO CLASS CERT, AND THEN THERE IS THE ISSUE OF ANY INFORMATION BEING SHARED ON THE MERITS RELATIVE TO SUMMARY JUDGEMENT DOWN THE ROAD.

I AM FOCUSING ON THE FIRST PIECE, INDIVIDUALIZED SETTINGS, I UNDERSTAND THAT THEIR EXPERT COMES DOWN ON THE SIDE THAT YOU CANNOT BLOCK INFORMATION FROM BEING SHARED, AND I'M MERELY HIGHLIGHTING THE SIGNIFICANCE OF ASSESSING THAT ISSUE. AND IT IS THE CASE THAT --

**THE COURT:** BUT IF THEIR EXPERT IS RIGHT THEN CLASS CERTIFICATION IS QUITE APPROPRIATE.

**MR. HAMMER:** I RECOGNIZE THAT'S FOR THE COURT TO DECIDE WHETHER THEIR EXPERT IS RIGHT ON THE ISSUE OF WHETHER INFORMATION CAN BE BLOCKED, BUT THE REASON I GO BACK TO THAT AND THE REASON THE PRODUCTION FOR META IS SO SIGNIFICANT IS

02:29:51 BECAUSE WHAT THAT SHOWS --

02:29:52 **THE COURT:** I'M GOING TO STOP YOU AGAIN.

02:29:54 SO EFFECTIVELY YOU ARE TELLING ME THAT I NEED TO ADJUDICATE WHICH EXPERT IS RIGHT ON THE FACTS, ON THE FACTS, NOT ON THEIR OPINIONS, WHICH EXPERT HAS THE FACTS RIGHT. AND THEN HAVING DECIDED THAT, THEN I DECIDE CLASS CERTIFICATION.

02:30:10 IS THAT WHAT YOU WANT ME TO DO?

02:30:12 **MR. HAMMER:** YOUR HONOR, WHAT WE ASK THE COURT TO DO IS MAKE A DECISION OF WHETHER INDIVIDUALIZED INQUIRIES ARE REQUIRED TO --

02:30:18 **THE COURT:** AND I ONLY WOULD CONCLUDE THAT IF I AGREE WITH YOUR EXPERT'S FACTUAL DETERMINATION --

02:30:23 **MR. HAMMER:** WELL, HIS EXPERT OPINION ON THE ISSUE.

02:30:25 **THE COURT:** NO, IT'S FACTS. HE DOESN'T HAVE -- HE HAS OPINIONS BUT HE DOESN'T CONTROL THE FACTS. EITHER THERE WAS SHARING OR THERE WASN'T. EITHER THERE WAS CHECKING OR THERE WASN'T. HE CAN HAVE AN OPINION ABOUT WHETHER OR NOT THE FACTS REFLECT THAT OR NOT BUT HE'S NOT A PERCIPIENT WITNESS.

02:30:48 **MR. HAMMER:** WELL YOUR HONOR, IF THAT'S THE CASE, PROFESSOR SHAFIQ DID NOT PUT IN FACTS ABOUT UNIFORM SHARING. THERE ARE NO FACTS IN THE RECORD UNDER HIS OPINION ABOUT WHETHER INFORMATION CAN BE BLOCKED OR NOT BLOCKED, IT IS HIS OPINION. THERE IS NO --

02:31:00 **THE COURT:** OKAY. RIGHT.

02:31:02 **MR. HAMMER:** SO THE PLAINTIFFS HAVEN'T BORNE THEIR

BURDEN ON THE FACTS.

**THE COURT:** IN YOUR OPINION, MR. ZHAO, HE'S GOT HIS OPINIONS, RIGHT? HE IS NOT THE ONE WITH THE FACTS AND DR. SHAFIQ DOESN'T HAVE FACTS; YOU ARE NOT SAYING THAT, RIGHT?

**MR. HAMMER:** NO, THAT'S THE CASE, THEY BOTH HAVE THEIR OPINION ABOUT --

**THE COURT:** OKAY. SO AGAIN, I'M IN THIS POSITION WHERE I HAVE EXPERTS ON BOTH SIDES WITH OPINIONS, AND FOR ME TO AGREE WITH YOU IS THAT I HAVE TO EMBRACE THE DECISIONS OF MR. ZHAO OR HIS OPINIONS AND SAY I DON'T -- YOU KNOW, DR. SHAFIQ OR PROFESSOR SHAFIQ, FORGET IT, AND THEREFORE -- WELL HAVING DONE THAT, WE CAN'T CERTIFY A CLASS.

AND I THINK YOU ARE PUTTING THE CART BEFORE THE HORSE IS THE PROBLEM THAT YOU'VE GOT.

**MR. HAMMER:** I UNDERSTAND, YOUR HONOR.

I DO THINK THAT AN ASSESSMENT OF THE EXPERT'S OPINION IS -- BOTH PROFESSOR SHAFIQ AND DR. ZHAO'S -- IS REQUIRED TO MAKE AN ASSESSMENT WHETHER THEY ARE INDIVIDUALIZED ISSUES, SO I DO THINK THAT IS BEFORE THE COURT.

IF YOU WILL ALLOW ME, I WOULD LIKE TO PIVOT BRIEFLY TO DR. KRAUSE'S OPINION.

**THE COURT:** SURE.

**MR. HAMMER:** YOU KNOW, A DAMAGES EXPERT, I DON'T THINK IN EVERY SITUATION WE WOULD HAVE BROUGHT A MOTION TO EXCLUDE. I DO THINK THERE IS A UNIQUE SITUATION HERE WITH THE

MODEL AND THE APPROACH THAT DR. KRAUSE USED, AND IN PARTICULAR, THE INFORMATION THAT'S ASSESSED.

THERE ARE A NUMBER OF PROBLEMS TO HIS APPROACH TO FAIR MARKET VALUATION THAT I THINK GO BEYOND JUST MERELY CROSS-EXAMINING EXPERT WITNESS AND GO TO WEIGHT, AND THERE REALLY IS THIS --

**THE COURT:** IF I SORT OF READ WHAT YOU ARE SAYING, TO PUT IT IN THE VERNACULAR, IS HE'S A HIRED GUN AND HE SAYS THAT HE HAS THE SAME MODEL IN EVERY CASE AND IT'S A COOKIE CUTTER THING; IS THAT WHAT YOU ARE SAYING?

**MR. HAMMER:** YOU KNOW, THAT IS THE FINAL POINT IN OUR MOTION AND WE MENTIONED IT ONLY SORT OF AS AN ADDENDUM BECAUSE IT IS HIGHLY RELEVANT TO THESE HOSPITAL CASES THAT ARE VERY DIFFERENT, HE OFFERED THE SAME, BUT I THINK IF YOU LOOK AT --

**THE COURT:** IF HE'S MAKING A PRIVACY VALUATION OF SORTS, WHY WOULD IT REALLY MATTER IN WHAT CONTEXT IT ARISES?

**MR. HAMMER:** BECAUSE IN THOSE HOSPITAL CASES, THE ALLEGATION THAT VERY ROBUST MEDICAL INFORMATION WAS SHARED, WHICH IS VERY DIFFERENT, QUALITATIVELY, THAN WHAT THE PLAINTIFFS ARE ALLEGING, IT'S MERELY THE FACT OF SIGNING UP WITH BETTERHELP.

**THE COURT:** I THINK YOU MINIMIZE -- I WILL TELL YOU QUITE CANDIDLY AND MAYBE YOU WILL CONVINCE ME THAT I'M WRONG ABOUT MY INITIAL VIEW, BUT AS I INDICATED BEFORE, I THINK SHARING INFORMATION ABOUT SEEKING MENTAL HEALTH TREATMENT IS

VERY SENSITIVE, AND I DON'T BUY THE IDEA THAT, OH WELL THAT'S -- YOU KNOW, THAT DOESN'T EQUATE WITH SOME OTHER KIND OF MEDICAL INFORMATION THAT WOULD BE ALL EVERYONE'S CONSENSUS, A SENSITIVE THING, I THINK IT'S QUITE SENSITIVE.

**MR. HAMMER:** UNDERSTOOD, YOUR HONOR. AND I WOULD ASK THE COURT TO -- WHEN REVIEWING THAT MOTION, TO LOOK CLOSELY AS WHAT IT IS THAT MR. KRAUSE VALUED.

AND THE REASON THIS IS SIGNIFICANT IS BECAUSE HE HAD A DIFFERENT UNDERSTANDING OF WHAT IT IS THAT DR. SHAFIQ SAID WAS SHARED UNIFORMLY. AND I BELIEVE -- I'M THE ONE WHO TOOK MR. KRAUSE'S DEPOSITION -- I BELIEVE IT'S BECAUSE HE ACTUALLY DIDN'T LOOK HARD AND AT DR. SHAFIQ'S OPINION. AND SO HE INCLUDED VALUING E-MAILS, HE INCLUDED WHAT HE BELIEVED WAS ACCOUNT INFORMATION WHICH WOULD INCLUDE ALL THE INFORMATION WHEN YOU SIGN UP FOR THE ACCOUNT, WHICH IS NOT DR. SHAFIQ'S OPINION.

AND PLAINTIFFS, IN OPPOSING OUR MOTION, TRY TO WALK BACK. IF YOU LOOK AT HIS TESTIMONY, THAT'S CLEARLY WHAT HE UNDERSTOOD AND HE WAS SHOOTING FROM THE HIP ON WHAT HE THOUGHT HE WAS VALUING. THAT'S WHY IT IS SIGNIFICANT THAT HE USED THE SAME MODEL WITH THE SAME INPUTS AND CAME UP WITH THE SAME VALUE IS BECAUSE --

**THE COURT:** WHEN I'M DOING EFFECTIVELY A DAUBERT ANALYSIS IS THERE'S ALWAYS THAT LINE BETWEEN WHAT IS AMMUNITION FOR EFFECTIVE CROSS AND IS THE METHODOLOGY SOMEHOW, YOU KNOW,

DEFECTIVE.

AND KIND OF WHAT YOU ARE SAYING IS IT'S A SLAPDASH APPROACH, AND ONE SIZE FITS ALL, AND HE'S NOT DOING A VERY GOOD JOB. BUT THE ACTUAL PROCESS, HIS MATH, IF YOU WILL, IS NOT -- HE'S NOT DOING SOMETHING UNIQUE OR DIFFERENT IN TERMS OF HOW HE'S ASSESSING THE DAMAGE, YOU ARE SAYING HE'S DOING A LOUSY JOB.

**MR. HAMMER:** NO, WE ARE ACTUALLY -- YOUR HONOR, JUST -- I UNDERSTAND WHAT YOU ARE SAYING ABOUT THE APPROACH, WE AREN'T WILLY NILLY BRINGING THIS MOTION, IT REALLY IS BECAUSE OF HOW HE APPROACHED THIS ISSUE. THERE ARE FUNDAMENTAL PROBLEMS. IT WOULD BE AKIN TO VALUING REAL ESTATE AND HIM SAYING HE'S VALUING A HOUSE BY LOOKING AT COMPARABLE SKY SCRAPERS. I MEAN, IT'S REALLY DIFFERENT THINGS, HE'S VALUING SOMETHING THAT DR. SHAFIQ DID NOT --

**THE COURT:** I DON'T THINK I WOULD GRANT THE DAUBERT.

**MR. HAMMER:** WHAT'S THAT?

**THE COURT:** I DON'T THINK I WOULD GRANT THE DAUBERT.

IF THE REAL ESTATE IS ASSESSING IT AND DOING IT IN A TRADITIONAL WAY BUT DOING A REALLY LOUSY JOB, YOU COMPARED THE PROCESS OF THE REAL ESTATE ASSESSMENT IS LOOKING AT COMPARABLES, THEN THE PROBLEM IS YOU LOOKED AT BAD COMPARABLES.

THAT'S SOMETHING I WOULD EXPECT WOULD COME OUT ON CROSS-EXAMINATION. I DON'T THINK IT WOULD BE SOMETHING THAT WOULD SAY, OH YOU KNOW, YOU DECIDED THAT YOUR VALUE IS BASED ON

02:36:47 THE INTEREST RATE OR SOMETHING THAT -- IT REALLY DOESN'T HAVE
02:36:50 ANYTHING TO DO WITH THE PARTICULAR VALUATION. THAT'S WHEN YOU
02:36:53 SAY, HEY, YOUR METHODOLOGY IS WRONG, WE CAN'T LET YOU TESTIFY.
02:36:57 SO I THINK IT'S A BIT OF A FINE LINE. I UNDERSTAND WHAT
02:36:59 YOU ARE SAYING AND I'M NOT SUGGESTING THAT THERE CAN'T BE A
02:37:04 CIRCUMSTANCE IN WHICH AN EXPERT IS SO FAR AFIELD, AND OKAY, I'M
02:37:11 DOING IT STRUCTURALLY THE WAY YOU THINK I SHOULD DO IT BUT
02:37:14 EFFECTIVELY IT'S OUT TO LUNCH. YOU KNOW, YOU CAN GRANT DAUBERT
02:37:18 IN THAT CASE, BUT YOU HAVEN'T GOTTEN ME QUITE TO THE POINT THAT
02:37:21 MR. KRAUSE IS IN THAT BALLPARK.
02:37:23 **MR. HAMMER:** ONE LAST COMMENT AND I WILL MOVE ON FROM
02:37:25 KRAUSE.
02:37:26 YOU SAID YOU ARE NOT SAYING THAT THE MATH IS WRONG.
02:37:30 THERE'S JUST NO MATH, HE REALLY DID PLUCK A NUMBER OUT OF THIN
02:37:35 AIR. AND I THINK THAT'S HIGHLY PROBLEMATIC, IT IS PURELY AN
02:37:40 OUT-OF-THIN-AIR NUMBER AND HE'S CLAIMING FAIR MARKET VALUATION
02:37:43 AND THERE IS JUST NO MARKET. YOU MIGHT BE ABLE TO HAVE SOME
02:37:46 OTHER DAMAGES MODEL, I DON'T KNOW, YOU CAN'T HAVE FAIR MARKET
02:37:50 VALUATION WHEN THERE IS ADMITTEDLY NO MARKET.
02:37:53 SO WE WOULD ASK THE COURT TO TAKE A --
02:37:56 **THE COURT:** HOW DOES KRAUSE INTERPLAY WITH THE CLASS
02:37:58 CERT ISSUE, OR DOES HE?
02:38:01 **MR. HAMMER:** IT'S RELEVANT IN PARTICULAR TO THE
02:38:03 INVASION OF PRIVACY CLAIM AND THE DAMAGES MODEL FOR THAT CLAIM,
02:38:06 AND WE DO THINK IT'S HIGHLY PROBABLE.

02:38:08 **THE COURT:** SO IF HE'S EXCLUDED THEN ON THE INVASION OF PRIVACY CLAIM, HOW DOES THAT EQUATE OR HOW DOES THAT SUPPORT YOUR POSITION THAT THEREFORE THERE CANNOT BE CERTIFICATION ON THAT CLAIM?

02:38:22 **MR. HAMMER:** THERE'S NO VIABLE DAMAGES FOR THAT CLAIM.

02:38:25 **THE COURT:** WELL COULDN'T THE NAMED PLAINTIFFS TESTIFY AS DAMAGES WITNESSES AND IF THERE WAS A SHOWING THAT THERE WAS SOME COMMONALITY TO THAT -- I MEAN, IS THE EXCLUSION OF A DAMAGE EXPERT RESOLVED IN WHAT YOU JUST SAID WHICH IS NO VIABLE DAMAGE THEORY? DO YOU HAVE TO HAVE AN EXPERT FOR DAMAGE ON AN INVASION FOR PRIVACY CLAIM?

02:38:53 **MR. HAMMER:** THE KEY HERE IS WHAT MR. KRAUSE OPINED ABOUT IS THAT THERE IS A VIABLE CLASS-WIDE DAMAGES MODEL.

02:38:59 SO JUST BECAUSE AN INDIVIDUAL SAYS, YOU KNOW, I COULD HAVE SOLD MY USER ID TO THIS PARTICULAR THIRD PARTY FOR $10, THEREFORE I'M HARMED TO THAT TUNE.

02:39:10 **THE COURT:** WOULD IT BE FAIR TO SAY THAT WHAT YOU ARE SAYING IS IF KRAUSE IS EXCLUDED, IT'S NOT THAT THERE MAY BE NO DAMAGES BUT THE DAMAGES BECOME INDIVIDUALIZED AND CAN'T BE DONE ON A CLASS BASIS, RIGHT?

02:39:26 **MR. HAMMER:** THAT'S RIGHT.

02:39:26 AND YOUR HONOR, LAST, I JUST DO WANT TO POINT OUT, AND THIS IS A TOTAL PIVOT, BUT THERE WAS A VERDICT FORM APPENDED TO THE MOTION, AND THAT'S NOT A TRIAL PLAN, YOU KNOW, BUT WE DO

THINK THAT'S JUST SOMETHING WE WANT TO HIGHLIGHT AS YOU CONSIDER IT.

**THE COURT:** WELL IT'S A PRESENTATION THAT I TAKE TO SAY ONE OF THE ISSUES IS MANAGEABILITY AND THIS SHOWS THAT IT'S A MANAGEABLE WAY TO PROCEED. THAT'S WHY THEY SUBMITTED IT.

**MR. HAMMER:** I JUST THINK IT'S A LIMITED PART OF MANAGING THIS CASE.

**THE COURT:** OKAY. OKAY. THANK YOU.

SHORT.

**MS. SHARP:** VERY SHORT, YOUR HONOR. AND --

**THE COURT:** BECAUSE I'M GOING TO SEE YOU TOMORROW, RIGHT?

**MS. SHARP:** YOU ARE INDEED. FORGIVE ME FOR THAT. I HOPE I DON'T WEAR OUT MY WELCOME.

**THE COURT:** ALWAYS A PLEASURE.

**MS. SHARP:** THANK YOU.

AND I WILL ONLY MAKE A FEW POINTS ON RULE 23 THAT I DON'T THINK I'VE TOUCHED ON, THEN I WILL TURN IT OVER TO MR. EDELMAN AND MS. TUSAN TO TOUCH ON THE EXPERT ISSUES BRIEFLY.

MANAGEABILITY, YOUR HONOR HAS IT RIGHT, AND IT IS THE CORE, AND WE THINK THAT HOW THE CASE GETS TRIED, AS YOUR HONOR POINTED OUT EARLIER, IS EXACTLY THE QUESTION OF THE COURT, AND THE PLAINTIFFS, CANDIDLY, HAVE TO GRAPPLE WITH RIGHT NOW, THAT'S WHY WE PUT IN A VERDICT FORM AS WELL.

ON CONSENT, TO THE EXTENT THAT THERE WAS A SUGGESTION THAT

THERE COULD HAVE BEEN CONSENT, NOBODY KNOWS, SPECULATING ABOUT IT IS INSUFFICIENT. THAT IS THE ADES V. OMNI HOTEL CASE, THERE NEEDS TO BE EVIDENCE EVEN OF A SINGLE CLASS MEMBER WHO CONSENTED TO THE ACTUAL THING. WE DON'T SEE THAT HERE.

WITH REGARD TO THE CITES TO BOTH MARTINEZ AND HULU, WHICH JUDGE BEELER DID DECIDE HERE, THOSE ARE DIFFERENT BECAUSE THEY GO TO THE INDIVIDUAL BROWSER SETTINGS, AND OUR PERSPECTIVE IS THAT THAT'S NOT THE CENTRAL ISSUE HERE.

ON PRIMARY LIABILITY VERSUS AIDING AND ABETTING, INTERESTING ISSUES WE CAN TAKE UP ON SUMMARY JUDGEMENT.

ON THE POINT THAT THIS IS ALL ABOUT META AND WE DON'T SAY ANYTHING ABOUT GOOGLE OR MIXPANEL, THAT FOCUSES ON THE WRONG THING BECAUSE IT'S FOCUSING ON THE USE BY THE THIRD PARTIES OF THAT INFORMATION RATHER THAN THE FACT THAT IT WENT TO THEM.

WITH REGARD TO THE TWO PLAINTIFFS, THEIR TESTIMONY THEY CARED ABOUT PRIVACY SETTINGS, THEY DO, THAT'S WHY THEY ARE HERE BEING PLAINTIFFS IN THIS CASE. OTHERS OF THE THREE PLAINTIFFS WHO DID HAVE THE META INFORMATION OR FOR WHOM META HAD INFORMATION, THEY TESTIFIED THEY CARED ABOUT THEIR PRIVACY SETTINGS TOO.

LAST THING IS ON DESKTOP VERSUS MOBILE VERSUS APP, THE WEBSITE, AS PROFESSOR SHAFIQ SETS OUT AT HIS REPORT AT PARAGRAPH 58, THE SOURCE CODE WORKS THE SAME ON A "RANGE OF WEB BROWSERS AND DEVICE TYPES."

NOW WITH REGARD TO APPS, THE APPLICATION AND WHETHER IT

WORKED THE SAME, WE HAVE A FEW THINGS IN THE RECORD. WITH REGARD TO APPLICATIONS, BETTERHELP'S COUNSEL IN THE CONTEXT OF A DISCOVERY HEARING ON THE SOURCE CODE, SAID IN COURT TO JUDGE RYU, I BELIEVE, AND WE PUT THIS IN THE TUSAN DECLARATION IN SUPPORT OF THE REPLY, THAT'S EXHIBIT 3 AT PAGE 31, SAID IN COURT THAT "APPS MIRROR THE WEBSITE" AND "IT'S THE SAME CODE THAT UNDERLIES BOTH."

AND THEN IN RESPONSE TO AN FTC CIVIL INVESTIGATIVE DEMAND, BETTERHELP REPRESENTED TO THE FTC, AND THIS IS AT TUSAN DECLARATION, EXHIBIT 4, FOOTNOTE 3, THE "APP'S CONTENT IS THE SAME AS THE WEBSITE'S."

FINALLY, TUSAN EXHIBIT 5, THE META LOGS SHOW THAT META RECEIVED INFORMATION FROM BETTERHELP VIA PIXEL DESPITE A VARIETY OF ACCESS POINTS.

SO THAT'S EVIDENCE THAT IS IN THE RECORD WITH REGARD TO THE APPS, TO THE EXTENT THERE IS A CONCERN THERE.

IF THE COURT HAS ANY OTHER RULE 23 ISSUES, HAPPY TO ADDRESS THEM, OTHERWISE I WILL TURN IT OVER TO MY COLLEAGUES.

THANK YOU.

**THE COURT:** VERY SHORT.

**MR. EDELMAN:** GOOD AFTERNOON, YOUR HONOR. WILLIAM EDELMAN. I WILL KEEP IT SHORT.

ON PROFESSOR SHAFIQ, ALL I WILL SAY IS THAT THE COURT ACCURATELY SUMMARIZED PROFESSOR SHAFIQ DOES IN FACT OPINE, AND THERE IS IN THE RECORD, ALL OF THE VARIATIONS THAT DEFENSE

02:43:27 COUNSEL'S ARGUMENTS AND EXPERT HAVE TALKED ABOUT DO NOT MATTER FOR THE CORE SET OF INFORMATION. IT IS A BATTLE OF THE EXPERTS ON THAT ISSUE AND THEREFORE CLASS CERTIFICATION IS APPROPRIATE.

02:43:37 TURNING TO MR. KRAUSE. FIRST, JUST TO CONTEXTUALIZE IT, IT IS ACCURATE THAT IT ONLY GOES TO THE INVASION OF PRIVACY CLAIM ON THE CALIFORNIA SUBCLASS.

02:43:47 SECOND, PLAINTIFFS DO NOT CONCEDE THAT THAT WOULD DOOM THE CLAIM. I THINK THAT WOULD BE ULTIMATELY AN ISSUE ABOUT A MOTION IN LIMINE IF THEY WERE TO SUCCESSFULLY EXCLUDE INDIVIDUAL PLAINTIFF'S TESTIMONY ON THAT POINT SUCH THAT WE WOULD HAVE NO EVIDENCE WITHOUT THE EXPERT. THE COURT COULD REACH THAT THEN, BUT THAT'S DOWN THE ROAD.

02:44:04 **THE COURT:** HOLD ON, IF THEY WERE SUCCESSFUL IN KNOCKING OUT KRAUSE, HOW COULD YOU -- WOULDN'T YOU HAVE THE PROBLEM THAT IF YOU ARE USING, SAY CLASS REPRESENTATIVES TO MOUNT A DAMAGES CASE, THERE WOULD BE CERTAINLY THE PROSPECT THAT IT'S PRETTY INDIVIDUALIZED DAMAGE PRESENTATIONS, AND THEN YOU'VE GOT POTENTIALLY AN ISSUE OF WHETHER OR NOT IT SHOULD BE CERTIFIED.

02:44:35 **MR. EDELMAN:** THE ONLY PART I DISAGREE WITH IS WHETHER OR NOT IT SHOULD BE CERTIFIED. AT THIS POINT THERE'S BEEN NO SHOWING THAT IT WOULD BE HIGHLY INDIVIDUALIZED. THE EVIDENCE FROM PROFESSOR KRAUSE IS THAT HE'S VALUING WHAT PRIVACY ITSELF IS WORTH, WHICH IS NOT EASY, AND SO OUR POSITION WOULD BE EVEN WITHOUT MR. KRAUSE, WE WOULD WANT TO PUT IN AN

INDIVIDUAL PLAINTIFF'S TESTIMONY ABOUT WHAT PRIVACY MEANS.

**THE COURT:** WHAT KRAUSE IS SAYING, IF I UNDERSTAND IT, THAT YOU CAN PUT A VALUE ON IT THAT IS ACROSS THE BOARD THAT WOULD APPLY, INFORMATION -- YOU CAN ASCRIBE X AMOUNT, THE INFORMATION. IF I WERE TO CONCLUDE HE DOESN'T HAVE A BASIS FOR DOING THAT, IT WOULD SEEM TO ME YOU WOULD THEN ALMOST HAVE TO FALL BACK ON WHAT EACH INDIVIDUAL THINKS THE VALUE OF THEIR INFORMATION IS, AND THAT WOULD BE POTENTIALLY VERY INDIVIDUALIZED BECAUSE PEOPLE WOULD HAVE DIFFERENT -- IF YOU CAN'T DO IT THE WAY KRAUSE SAYS YOU CAN DO IT AND I WAS TO HAVE PROBLEMS WITH HIM, THEN I DO THINK THERE MIGHT BE SOME DIFFICULTY IN -- I'M NOT SAYING AN INDIVIDUAL PLAINTIFF COULDN'T PROVE THEY HAD DAMAGES BUT I DO WONDER WHETHER OR NOT IT COULD THEN BE ON A CLASS BASIS.

**MR. EDELMAN:** I ABSOLUTELY AGREE WITH YOUR HONOR THAT, REPRESENTING THE PLAINTIFFS, I WOULD MUCH RATHER HAVE AN EXPERT TO OFFER THAT EVIDENCE, IT WOULD BE CLEAR.

I'M ONLY NOT CONCEDING ENTIRELY THAT IT WOULD BE IMPOSSIBLE, I THINK THAT WOULD BE A MORE DIFFICULT FIGHT FOR US TO SAY THAT A JURY COULD CONCLUDE BASED ON THE TESTIMONY OF INDIVIDUALS ON A CLASS-WIDE BASIS WHAT THE VALUE OF THIS CORE PIECE OF INFORMATION IS. BUT IT'S NOT AN IMPOSSIBLE ARGUMENT, IT'S THE SAME INFORMATION SHARED ACROSS THE ENTIRE CLASS.

COULD A JURY RATIONALLY CONCLUDE? WE WOULD ARGUE THAT THEY CAN. I VERY MUCH HOPE WE DON'T HAVE TO ARGUE THAT AND

WE --

**THE COURT:** PART OF IT WHICH WE DON'T HAVE TO DEVELOP HERE, WHICH IS USUALLY CERTIFICATION DOESN'T FALL BY THE WAYSIDE BECAUSE OF PROBLEMS WITH DAMAGES --

**MR. EDELMAN:** AND THAT IS MY FINAL POINT.

**THE COURT:** -- YOU CAN HAVE A MECHANISM TO DETERMINE THE DAMAGES ON SOME SORT OF A CLAIMS PROCESS OR WHAT HAVE YOU, BUT YOU DO HAVE TO BE ABLE TO PROVE DAMAGE AS AN ELEMENT OF THE CLAIM.

SO MAYBE YOU HAVE TO BE ABLE TO SHOW THAT ONCE ALL THE OTHER ELEMENTS ARE MET, YOU WILL RESULT IN DAMAGE. AND THEN YOU DETERMINE -- OKAY. ALL RIGHT. GO AHEAD.

**MR. EDELMAN:** THE FINAL POINT IS MR. KRAUSE -- JUST AS YOUR HONOR STATED, IN TERMS OF THE CRITICISMS OF THE PARTICULAR COMPARABLES PICKED, THE BASIC METHODOLOGY IS SOUND, THE USE OF COMPARABLES IS NOT A METHODOLOGY THAT THEY HAVE REBUTTED OR SHOWN IS INAPPROPRIATE OR UNRELIABLE.

IN FACT, THE NUTRAMAX CASE THE COURT IS I ASSUME FAMILIAR WITH, THERE IS A MODEL WITHOUT ANY INPUTS AND NO NUMBERS. SO THE ABSENCE -- SO NUMBER ONE, I KNOW OPPOSING COUNSEL MADE THE POINT THAT THERE IS NO MATH, THAT SIMPLY DOES NOT MATTER, THERE ARE A VARIETY OF CONTEXT WHERE BECAUSE THERE IS AN ABSENCE OF LIQUID MARKET, ONE MUST LOOK AT COMPARABLES AND EXERCISE JUDGMENT TO PICK THE RIGHT COMPARABLES. THERE IS NO MATH, IT'S STILL VALID, REAL ESTATE APPRAISAL BEING A PRIME EXAMPLE.

02:47:47 AND THEN SECOND, TO THE EXTENT THEY EVEN HAVE SOME POINTS THAT THEY WANT TO RAISE ON CROSS, WE ARE NOT EVEN -- WE ARE NOT THERE YET AT EXPERTS, WE COULD CHANGE THIS OPINION AND EXACTLY WHAT INPUTS HE USES, WE DON'T HAVE TO BE THERE AT THE CLASS CERTIFICATION STAGE.

AND MY COLLEAGUE, MS. TUSAN, UNLESS YOU HAD ANY OTHER QUESTIONS ON MR. KRAUSE, IS GOING TO ADDRESS THE HARD FILE ISSUE FOR PROFESSOR SHAFIQ.

**THE COURT:** EVEN SHORTER.

**MS. TUSAN:** VERY SHORT. VERY SHORT.

YEAH. I JUST WANTED TO CLARIFY, I THINK THERE'S BEEN SOME CONFUSION ABOUT THE HARD FILE ISSUE. ESSENTIALLY WHAT PROFESSOR SHAFIQ WAS DOING IN HIS FIRST REPORT BEFORE THE SOURCE CODE, WAS BASICALLY TAKING SCREEN SHOTS FROM A WEBSITE THAT EVERYBODY COULD SEE AND RECORD. NO NEED FOR A HARD FILE.

NOW PROFESSOR ZHAO THEN SAYS IN HIS REPORT THAT THE PROBLEM WITH WAYBACK IS THAT SOMETIMES IT CHANGES IT, IT'S NOT A COMPLETELY ACCURATE SOURCE, WHICH IS A PROBLEM FOR PROFESSOR ZHAO BECAUSE PROFESSOR SHAFIQ DID THEN USE THE SOURCE CODE TO CONFIRM EXACTLY WHAT HAPPENED AND PROFESSOR ZHAO DID NOT LOOK AT THE SOURCE CODE AND THEREFORE HE COULD NOT CRITICIZE PROFESSOR SHAFIQ'S RESPONSE TO THAT.

SO THE HARD FILES ARE REALLY A RED HERRING, THEY ARE NOT RELEVANT, HE COULD HAVE GONE TO THE WEBSITE IN THE SAME WAY.

IN THE SAY SAME, THERE ARE ISSUES OF HE USED A CHROME

BROWSER VERSUS SOMETHING ELSE, RIGHT. WHAT WE HAVE IN THE RECORD IS PROFESSOR SHAFIQ CLEARLY STATING WITH FIRST PARTY COOKIES, THEY WORK THE SAME WAY FOR EVERYONE, AND BLOCKERS DO NOT DO ANYTHING TO PREVENT FIRST PARTY COOKIES FROM SENDING THE INFORMATION.

SO THIS ARGUMENT THAT OUR TWO PLAINTIFFS, SOMEHOW IT GOT BLOCKED, DON'T WORK FOR THAT REASON. AND THAT'S CLEAR AND THAT'S NOT DISPUTED. PROFESSOR ZHAO'S REPORT TALKS A LOT ABOUT THIRD PARTIES, WE ARE NOT TALKING ABOUT THIRD PARTY COOKIES, TRACKERS CAN'T BLOCK IT BECAUSE THEY THINK IT'S BETTERHELP'S OWN COOKIE AND THE WEBSITE DOESN'T WORK WITHOUT THE FIRST PARTY COOKIE GOING.

AND WITH THE FBP COOKIE, THEY KNOW EXACTLY WHO THOSE PEOPLE ARE. AND WE KNOW THAT BECAUSE THE DATA WE GOT IN THE META 1 THROUGH 5 ACTUALLY HAS A CATEGORY, IT'S IN THE RECORD, THAT SAYS -- THAT TALKS ABOUT AN ACTUAL MATCH KEY. AND THAT MATCH KEY REFERENCES FBP, IP ADDRESS, USER IDENTIFIER. SO THAT SHOWS THEY USE THOSE KEYS TO MATCH THOSE PEOPLE TO THE DATA SENT BY BETTERHELP.

AND SO THAT IS REALLY CRITICAL AND THAT'S NOT SOMETHING THAT PROFESSOR ZHAO HAS BEEN ABLE TO DISPUTE, AND IN FACT HE DIDN'T LOOK AT IT EVEN THOUGH HE SAID SOURCE CODE IS THE MOST RELIABLE SOURCE. THAT'S HOW WE KNOW IT HAPPENED ALL THE WAY THROUGH THE CLASS PERIOD, THAT'S HOW WE KNOW IT WASN'T BLOCKED BECAUSE FIRST PARTY COOKIES DON'T WORK THAT WAY.

IN ADDITION TO THE USER IDENTIFIERS WE HAVE, IN ADDITION TO THE FACT THAT THERE WAS ADVANCED MATCHING THROUGH THE TIME PERIOD WHICH THEY ADMIT TO IN ADDITION TO ALL THE SHARING THAT HAPPENED.

THE OTHER THING I WILL SAY ABOUT THE TWO PLAINTIFFS WHO META DIDN'T PROVIDE DATA FOR, THEY WERE EARLY IN THE TIME PERIOD, SO THOSE ARE THE 2018/2019 PEOPLE. THE META LOGS WE HAVE ARE 2020 AND 2021 WHICH IS CONSISTENT WITH OUR POINT THAT META PROBABLY DIDN'T KEEP THE OLDER STUFF FROM THOSE OLDER YEARS.

AND WE KNOW THAT SOURCE CODE WORKS IN THE WAY LIKE ANY TYPE OF SOURCE CODE WHERE THE DATA IS SENT, AND SO THAT'S CONSISTENT WITH WHAT PROFESSOR SHAFIQ HAS SAID, THAT IT'S UNDISPUTED THAT THE FIRST PARTY COOKIES WORKED THE SAME WAY FOR EVERYONE WITH THOSE IDENTIFIERS. FBP IS FACEBOOK'S OWN IDENTIFIER, THEY KNOW WHO THOSE PEOPLE ARE, THAT IS THE WHOLE POINT OF IT.

AND EVEN IN SOME CASES WHERE FBP DIDN'T GO WHERE IT WAS JUST A USER IDENTIFIER OR AN IP ADDRESS, YOU WILL SEE ON THAT LINE OF MATCHING, FACEBOOK WAS STILL ABLE TO CONNECT THOSE PEOPLE.

IN THE SAME WAY WITH THE APPS AND THE PHONES, YOU WILL ALSO SEE IT SAYS ON THOSE DOCUMENTS, HOW DID META GET THE DATA? IPHONE, ANDROID, CHROME, SAFARI, IOS, ALL THE THINGS THAT PROFESSOR ZHAO SAYS WILL PREVENT THIS FROM HAPPENING, YOU KNOW,

56 PERCENT OF PEOPLE USE SAFARI, COULDN'T GO THROUGH, IT'S RIGHT HERE, THEY USED SAFARI, META GOT IT, THEY CONNECTED IT TO PEOPLE.

AND THAT IS ALL CONSISTENT WITH PROFESSOR SHAFIQ'S ANALYSIS AS TO HOW THAT WORKED.

AND WITH RESPECT TO MIND DIAGNOSTICS WHICH THEY KEEP RAISING, PROFESSOR ZHAO IN FACT INDICATED THAT, AS PROFESSOR SHAFIQ DID, BECAUSE MIND DIAGNOSTICS CAME UP BECAUSE IT WAS IN META'S PIXEL LOGS. AND IN MY DECLARATION WE SAY, WE ASK META TO TELL US WHAT COMES CONNECTED TO THE BETTERHELP PIXEL NUMBER X. THIS IS WHAT THEY PRODUCED, AND THE MIND DIAGNOSTICS WAS PART OF IT.

AND THE REASON, AS PROFESSOR ZHAO ALSO ADMITTED, IS THAT BETTERHELP LINKED TO THAT AS A DIAGNOSTIC TOOL. THEY LINKED THIS THIRD PARTY WEBSITE.

SO WE ARE NOT SAYING THAT WE THINK -- HE'S NOT SAYING IT IS A BETTERHELP WEBSITE, HE'S JUST SAYING THIS CAME ALONG WITH THE TRACKER TO META. IT'S NOT RELEVANT TO OUR CLASS CERT, IT'S SOMETHING HE POINTED OUT, PROFESSOR ZHAO IS NOT DISAGREEING WITH THAT, AS A PRACTICE OF HOW PIXEL WORKED BECAUSE IT WAS TRACKED TO THAT SECOND PLACE. AND EVEN IN BETTERHELP'S OWN DOCUMENTS, THEY TALK ABOUT MIND DIAGNOSTICS AND THE VALUE OF THAT LINK.

SO THAT AGAIN IS JUST ANOTHER RED HERRING. TO SAY THAT PROFESSOR SHAFIQ HASN'T TALKED ABOUT HOW THIS WORKS IS ENTIRELY

INACCURATE, HE TALKS ABOUT COOKIES THROUGHOUT THE WHOLE THING, NOT JUST FACEBOOK, GOOGLE, HE TALKS ABOUT THE META EVENTS LOG, HOW META ITSELF SHOWED THAT IT COLLECTED AND FOUND 2.2 MILLION CONVERSIONS FROM THE BETTERHELP WEBSITE TO FACEBOOK CONNECTED THAT INFORMATION.

SO ESSENTIALLY PROFESSOR ZHAO HAS A VERY SHORT LIST OF DATA THAT HE LOOKED AT, PROFESSOR SHAFIQ LOOKED AT 97 PERCENT MORE DOCUMENTS, SOURCE CODE, WHICH IS CRITICAL, META, GOOGLE TAG MANAGER, ALL OF THOSE THINGS WHICH HE EXPLAINS, GOOGLE TAG MANAGER SHOWS IT WENT TO GOOGLE, ALL OF THOSE DATA POINTS ARE UNDISPUTED, ASIDE FROM THIS BEING A QUESTION FOR A LATER DAY, YOU KNOW, THOSE ARE UNDISPUTED POINTS THAT WE FEEL CLEARLY SUPPORT CLASS CERT.

**THE COURT:** OKAY. THANK YOU.

I WILL GO BACK AND REVIEW WHAT YOU HAVE TOLD ME AND WE WILL GO FROM THERE.

**MS. SHARP:** ONE HOUSEKEEPING MATTER, IF I MAY, YOUR HONOR.

**THE COURT:** YES.

**MS. SHARP:** WITH REGARD TO WHEN WE SEE YOUR HONOR AGAIN, WE ARE HOPING TO GET A CASE SCHEDULE IN PLACE. WE DON'T HAVE A TRIAL DATE, WE DON'T HAVE DATES AFTER CLASS CERTIFICATION, WHICH I UNDERSTAND IS OF COURSE THE COURT'S PRACTICE.

I ALSO WANTED TO NOTIFY THE COURT WE DO HAVE ONE MOTION

THAT WE DO EXPECT TO FILE VERY PROMPTLY WITHIN THE NEXT WEEK, AND IT IS A NARROW MOTION FOR LEAVE TO AMEND OUR COMPLAINT TO ADD A CLAIM, A SECOND CLAIM, THE 632 CLAIM, WE REFERENCE THIS IN A FOOTNOTE, WE PREPARED AN AMENDED COMPLAINT, WE SHARED IT WITH DEFENSE COUNSEL. WE HAVE ADVISED THEM, WE HAD A MEET AND CONFER. I UNDERSTAND THAT THEIR POSITION IS THAT THEY INTEND TO OPPOSE THAT MOTION. WE DON'T SEE THE BASIS FOR THAT BECAUSE WE DON'T SEE UNDUE PREJUDICE, WE SEE NO DELAY, GIVEN WE HAVE NO CASE SCHEDULE. WE WILL BRIEF THAT, WE HOPE TO DO IT PROMPTLY.

WHAT WE DO NOT WANT TO DO, AND BE VERY CLEAR ABOUT, IS THAT ADDING THAT CLAIM, GIVEN THE WAY THE LAW IS EVOLVING, WE DO NOT EXPECT ANY NEW EXPERT WORK, WE NEED NO NEW DISCOVERY, AND IF WE WEREN'T FACING OPPOSITION ON THE MOTION FOR LEAVE TO AMEND, WE WOULD BE READY TO FILE A VERY SHORT SUPPLEMENTAL CLASS CERTIFICATION BRIEF THAT EXPLAINS THAT THAT IS THE SAME CLASS SUBJECT TO THE SAME EXACT EXPERT ANALYSIS AND SO OUGHT TO BE APPENDED TO THIS CLASS AND ON WE GO.

WE WANTED TO JUST NOTIFY THE COURT THAT WE INTEND TO DO THAT, HOPE TO DO IT VERY QUICKLY.

**THE COURT:** SO YOU WANT TO -- YOU KNOW, IT'S A TWO-STEP PROCESS, WE HAVE THE MOTION TO SEEK LEAVE TO AMEND AND THEN IT CAN BE OPPOSED, I KNOW THE STANDARD IS RATHER LIBERAL AT THAT STAGE, BUT THEN YOU CAN MAKE THE MOTION TO DISMISS. YOU WANT TO OPPOSE IT AT THE FILING OF THE --

**MS. KISER:** YES, YOUR HONOR. TO BE CLEAR, WHEN WE

MET AND CONFERRED WITH MR. MANSFIELD, WE SAID WE DON'T OBJECT TO YOU AMENDING ON BEHALF OF INDIVIDUAL PLAINTIFFS BUT WE DON'T THINK AT THIS STAGE YOU SHOULD AMEND ON BEHALF OF A CLASS BECAUSE IT'S GOING TO START THE BRIEFING ALL OVER AGAIN, THAT'S WHAT THE AUTHORITY SAYS.

AND SO OUR VIEW OF THIS IS THAT WE ASKED IF THEY WOULD PLEASE SUBMIT A JOINT FILING TO THE COURT TO SEE HOW YOU WANTED TO HANDLE IT IN ADVANCE OF THE ARGUMENT, THEY DECLINED TO DO SO.

SO I DON'T THINK IT'S APPROPRIATE, WE'VE ALREADY HAD TWELVE CLAIMS DOWN TO FOUR, THEY WANT TO AMEND AND DO ANOTHER CLAIM FOR CLASS CERTIFICATION, I FEEL I KNOW THEIR POSITION IS ALL OF THIS IS ALL THE SAME AND IT'S NOT GOING TO BE AN ISSUE BUT WE BELIEVE IT WILL BE AN ISSUE, AND WE WISH --

**THE COURT:** WELL IT SOUNDS TO ME LIKE I'M GOING TO HAVE TO SEE THE BACK AND FORTH.

**MS. KISER:** CORRECT.

**THE COURT:** SO THE WAY THAT USUALLY IS DONE IS THE MOTION TO SEEK LEAVE TO AMEND AND THE OPPOSITION. I GENERALLY DON'T HAVE HEARINGS ON THOSE BUT -- AND I DO HOPE JUST FROM AN EFFICIENCY STANDPOINT, IF WHATEVER POINT YOU WANT TO BATTLE THIS, IS FINE, BUT I HOPE WE DON'T DUPLICATE THE BATTLE.

IN OTHER WORDS, IF WE HAVE THIS AND I GIVE THEM THE OPPORTUNITY TO AMEND, I HOPE THIS IS THE TIME TO HAVE THE QUESTION SHOWING.

02:56:50 I DON'T WANT -- WHAT I WOULD LIKE TO AVOID IS WE GO THROUGH A WHOLE MOTION PRACTICE, I MAKE A DECISION. IF I DO MAKE THE DECISION TO ALLOW THEM TO AMEND, I DON'T WANT THEN A MOTION TO DISMISS BASED ON THE SAME STUFF THAT I'VE ALREADY CONSIDERED WITH RESPECT TO THE MOTION TO AMEND, DO YOU UNDERSTAND?

02:57:09 **MS. KISER:** I SEE WHAT YOU MEAN.

02:57:10 **THE COURT:** I WANT TO AVOID TWO MOTIONS. IF YOU GUYS ARE READY TO JOIN THE ISSUE ON THE ISSUES THAT MATTER, I DON'T KNOW HOW I WILL COME OUT ON IT BECAUSE I DON'T KNOW ANYTHING ABOUT IT --

02:57:21 **MS. KISER:** RIGHT.

02:57:21 **THE COURT:** -- BUT I WANT TO DECIDE IT ONCE.

02:57:23 **MS. KISER:** I SEE. SO YOU WANT US TO RAISE --

02:57:24 **THE COURT:** I WANT YOU TO GO OKAY, WE GOT THROUGH, BUT THAT WAS JUST PRELIMINARY, AND I DON'T WANT TO DO --

02:57:31 **MS. KISER:** I COULDN'T AGREE MORE. SO YOU ARE SAYING YOU WANT US TO JOIN THE ISSUES AND TALK ABOUT WHY THE CLAIM FAILS AS A MATTER OF LAW, IF IN FACT IT DOES.

02:57:39 **THE COURT:** I DON'T WANT A WHOLE LONG THING ABOUT, YOU KNOW, AMENDMENTS ARE LIBERALLY, DA, DA, DA, DA, DA, AND THEN I SAY, OKAY I'M GOING TO LET YOU AMEND, AND THEN YOU SAY, OH BY THE WAY, WE HAD ALL THESE OTHER REASONS WHY IT SHOULD BE THROWN OUT ON 12(B), I WOULD LIKE YOU TO PUT THEM ALL TOGETHER.

02:57:56 **MS. KISER:** UNDERSTOOD, YOUR HONOR.

AND BY THE WAY, THIS IS THE FIRST WE ARE HEARING ABOUT A CASE SCHEDULE, OF COURSE WE ARE HAPPY TO MEET AND CONFER WITH THEM AND TRY TO PRESENT A SCHEDULE TO YOUR HONOR.

**THE COURT:** MY PRACTICE IS, AND MS. SHARP ALLUDED TO IT AND SHE'S CORRECT, WHAT I DO IS WHEN I GIVE YOU THE ORDERS ON THESE MOTIONS, I THEN SET A FURTHER CASE MANAGEMENT CONFERENCE BECAUSE WHEN WE HAD THE INITIAL ONE, I ONLY WANTED TO SCHEDULE THROUGH CLASS CERT.

**MS. KISER:** UNDERSTOOD.

**THE COURT:** SO I WILL DO THAT, BUT THAT DOESN'T PRECLUDE, AND IN FACT I ENCOURAGE YOU TO START WORKING TOGETHER, BECAUSE YOU KNOW WHAT THE ISSUES ARE GOING TO BE AT THE FURTHER CASE MANAGEMENT CONFERENCE --

**MS. KISER:** RIGHT.

**THE COURT:** -- SO YOU MIGHT AS WELL GET AS FAR ALONG AS YOU CAN, EVEN BEFORE THE SCHEDULING CONFERENCE.

**MS. KISER:** ABSOLUTELY.

**THE COURT:** SO I'M NOT SURE EXACTLY WHEN I'M GOING TO GET THIS ORDER OUT.

**MS. KISER:** OKAY. WE APPRECIATE IT. THANK YOU FOR YOUR HELP.

**MS. SHARP:** THANK YOU VERY MUCH, YOUR HONOR.

**THE COURT:** THANK YOU.

(PROCEEDINGS CONCLUDED AT 2:58 P.M.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

SUMMER A. FISHER, CSR, CRR
CERTIFICATE NUMBER 13185

DATED: FEBRUARY 3, 2026