LIVIA M. KISER (SBN 285411)
*lkiser@kslaw.com*
JEFFREY HAMMER (SBN 264232)
*jhammer@kslaw.com*
CRAIG H. BESSENGER (SBN 245787)
*cbessenger@kslaw.com*
JAMES A. UNGER (SBN 325115)
*junger@kslaw.com*
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, California 90071
Telephone: +1 213 443 4355
Facsimile: +1 213 443 4310

Attorneys for Defendant
BETTERHELP, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE BETTERHELP, INC. DATA DISCLOSURE CASES**<br><br>This Document Relates To:<br><br>All Cases/ | Case No. 3:23-cv-01033-RS<br><br>**REDACTED**<br><br>**BETTERHELP, INC.'S OPPOSITION TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION REGARDING PENAL CODE SECTION 632 CLAIM**<br><br>Date: May 7, 2026<br>Time: 1:30 p.m.<br>Courtroom: 12 – 19th Floor<br>Judge: Hon. Richard Seeborg |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. RELEVANT BACKGROUND ..... 3

III. ARGUMENT ..... 4

A. CIPA Does Not Apply to Communications Transmitted Via Radio ..... 5

B. There Is No Common Evidence to Establish that Subclass Members Were Located in California When Communications Occurred ..... 6

C. Additional Individual Questions Predominate with Plaintiffs' CIPA Claims ..... 8

(1) Cookies and Pixels Are Not "Electronic Amplifying or Recording Devices" ..... 8

(2) Whether the Information at Issue Is "Confidential" Is Individualized ..... 9

(3) The Information at Issue Is Not a "Communication" Under CIPA ..... 9

(4) Whether Any Information Was Collected At All Depends on Each User's Privacy Choices ..... 11

(5) Consent Presents Individualized Inquiries ..... 12

a) The Absence of Express Consent Cannot Be Proven Through Common Evidence ..... 12

b) The Absence of Implied Consent Cannot Be Proven Through Common Evidence ..... 14

D. A Class Action Is Neither Manageable Nor Superior Under These Facts ..... 16

IV. CONCLUSION ..... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ades v. Omni Hotels Mgmt. Corp.*,
46 F. Supp. 3d 999 (C.D. Cal. 2014) .................... 4, 7

*Aguirre v. Am. Honda Motor Corp., Inc.*,
No. 22-CV-06909-HSG, 2026 WL 608349 (N.D. Cal. Mar. 4, 2026) .................... 8

*Allen v. Shutterfly, Inc.*,
No. 20-CV-02448-BLF, 2020 WL 5517172 (N.D. Cal. Sept. 14, 2020).................... 15

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
133 S.Ct. 1184 (2013) .................... 5

*In re Apple Data Priv. Litig.*,
2026 WL 146025 .................... 9, 10

*Backhaut v. Apple Inc.*,
2015 WL 4776427 (N.D. Cal. Aug. 13, 2015).................... 15

*Badella v. Deniro Mktg. LLC*,
2011 WL 5358400 (N.D. Cal. Nov. 4, 2011).................... 16

*Berger v. Home Depot USA, Inc.*,
741 F.3d 1061 (9th Cir. 2014).................... 14

*Bergstein v. Parmar*,
2013 WL 12114091 (C.D. Cal. Aug. 23, 2013).................... 4, 7

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024).................... 14

*Calhoun v. Google LLC*,
349 F.R.D. 588 (N.D. Cal. 2025) .................... 15

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013).................... 12

*Connelly v. Hilton Grand Vacations Co., LLC*,
294 F.R.D. 574 (S.D. Cal. 2013).................... 14

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .................... 8

*Frasco v. Flo Health*,
349 F.R.D. 557 (N.D. Cal. 2025) .................... 6, 7

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .......... 14, 15

*In re Google RTB Consumer Priv. Litig.*,
No. 4:21-CV-2155-YGR, 2024 WL 2242690 (N.D. Cal. Apr. 4, 2024) .......... 14

*Hadley v. Kellogg Sales Co.*,
324 F. Supp. 3d 1084 (N.D. Cal. 2018) .......... 12

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 10

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) .......... 4, 6, 7

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) .......... 11

*In re Optical Disk Drive Antitrust Litig.*,
303 F.R.D. 311 (N.D. Cal. 2014) .......... 5

*People v. Crew*,
74 P.3d 820 (Cal. 2003) .......... 7

*Robbins v. Phillips 66 Co.*,
343 F.R.D. 126 (N.D. Cal. 2022) .......... 12

*Sherman v. Yahoo! Inc.*,
2015 WL 5604400 (S.D. Cal. Sept. 23, 2015) .......... 14

*Shvager v. ViaSat, Inc.*,
2014 WL 12585790 (C.D. Cal. Mar. 10, 2014) .......... 4, 7

*Smith v. YETI Coolers, LLC*,
754 F.Supp.3d 933 (N.D. Cal. 2024) .......... 15

*Torres v. Prudential Fin., Inc.*,
2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) .......... 7

*TransUnion v. Ramirez*,
594 U.S. 413 (2021) .......... 2

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) .......... 16

*Wal–Mart Stores, Inc. v. Dukes*,
131 S.Ct. 2541 (2011) .......... 5

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 11

**Statutes**

Cal. Penal Code § 27 ........ 7

Cal. Penal Code § 632 ........ *passim*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Apparently not confident in the viability of the claims they have been asserting for the last 33 months, suddenly at the eleventh hour, Plaintiffs purport to assert a claim on behalf of their California subclass that BetterHelp "aided and abetted" a violation of Section 632 of the California Invasion of Privacy Act ("CIPA") via the existence of cookies and pixels on the BetterHelp website and the BetterHelp mobile app, which Plaintiffs contend somehow transmitted information when a consumer "completed the BetterHelp Intake Questionnaire and provided BetterHelp with their email address."[1]

The sloppy and ill-conceived claim fails out of the box. A criminal statute, Section 632 by its terms expressly does not apply to communications transmitted via radio. As explained in the accompanying report of Sandeep Chatterjee, Ph.D. ("Chatterjee Rpt."), for devices connected to the internet via Wi-Fi, Bluetooth, or cellular network (*i.e.*, virtually all devices), data is conveyed via radio frequency, a means of conveying information that is expressly *excluded* from the ambit of Section 632. Chatterjee Rpt. at § VI (Opinion 4). Indeed, the information at issue is not even a "communication" as contemplated by CIPA, which is not surprising given that CIPA was enacted before the internet was invented. Plaintiffs' Section 631(a) claim also fails for this reason (and others). The Court can summarily deny Plaintiffs' motion for class certification on the CIPA claims for this reason alone.

Moreover, there is no way to establish through common evidence that putative class members were even located in California when they signed up with BetterHelp—another threshold statutory requirement—and Plaintiffs have offered none.

A third reason the CIPA claims are not amenable to class treatment and otherwise fail is that any data that may have been "transmitted" came directly from Plaintiffs' (and proposed class members') own devices, not from BetterHelp. If any data was shared at all, the information

[1] The California Court of Appeal will be addressing whether CIPA even applies to the internet in the pending appeal in *Variety Media, LLC v. the Superior Court of Los Angeles County*, Case No. B350578. In order to conserve the Court's and parties' resources, BetterHelp intends to file a motion requesting that the Court stay this action pending a final decision in the *Variety* appeal.

(common digital information) was encrypted, chopped up, and sent in packets from consumers' devices to (for example) Meta's servers. There was no "eavesdropping" by the pixel or cookie. The cookies and pixels do not act as "recording" or "amplifying" devices. There could not have been any "reading" or "listening" to the encrypted packets while they were "in transit." Chatterjee Rpt. at § VI.

There are only two plaintiffs located in California who could possibly even assert a CIPA claim, Jane Doe III and T.R.. Third Am. Consolidated Compl. ("TACC") ¶¶ 28-29. (Plaintiffs claim that Jane Doe I can assert claims on behalf of a California subclass, ¶ 143, but she is a resident of Michigan, so that is not correct, TACC ¶ 26. And R.S. is no longer in the lawsuit. *See generally* TACC.) But Plaintiffs know (or should know) [redacted] and, therefore, she does not even have standing to assert a CIPA claim. Dkt. No. 206 ("Opp. to Class Cert.") at 16. [redacted] so even he accessed BetterHelp via radio frequency most (if not all) of the time. *Id.* And both these individuals testified [redacted].[2]

That both California plaintiffs – and most (likely all) proposed California class members were utilizing radio technology via Wi-Fi and cellular networks when they accessed BetterHelp website and app is a threshold issue not even acknowledged or addressed by Plaintiffs' technical expert. *See* Dkt. No. 169-5 ("Shafiq Rpt."), No. 200-3 ("Shafiq Supp. Rpt."). But it necessarily means not only are Plaintiff Jane Doe III and T.R.'s individual CIPA claims subject to individual defenses, the CIPA claims are not subject to class treatment. *See TransUnion v. Ramirez*, 594 U.S. 413, 431 (2021) ("Every class member must have Article III standing in order to recover individual damages. 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'").

[2] Plaintiffs speculate that Facebook must have deleted this information based on when [redacted] *See* Dkt. No. 170-1, Ex. 41 (Meta Production).

And as Jane Doe III and T.R. demonstrate, even if there were any California consumers accessing the internet in California via some way *other than* radio technology, which is unlikely, whether any data relating to the Intake Questionnaire or email address (or anything else, confidential or not) could have been transmitted to a third party at all depends on device settings of those individual consumers, including the web browser and operating system used, browser and social media privacy settings, use of ad-blocking software, and whether the consumer even had a Facebook account and/or logged into BetterHelp via their Facebook or Google account.

Finally, whether a California consumer accessing the BetterHelp website expressly or impliedly consented to the transmission of information via pixel and cookie is equally dependent on individual circumstances: BetterHelp's Privacy Policy was updated at least nine times during the Proposed Class Period; pop-up banners disclosing BetterHelp's use of pixels were introduced in September 2020 and changed over time; and beginning in mid-2021, BetterHelp expressly notified users of tools they could use to manage their tracking preferences. Whether each proposed class member expressly or impliedly consented to the transmission of information via pixel and cookie thus cannot be determined through the same evidence – individualized inquiries will be necessary for each consumer.

As set out further below, Plaintiffs demonstrably fail to meet their evidentiary burden under Rule 23 for each element of Section 632, and their motion for class certification of this claim (and their other CIPA claim) should be denied.

## II. RELEVANT BACKGROUND

Plaintiffs commenced this action on March 7, 2023, and filed their Motion for Class Certification on May 8, 2025. (Dkt. No. 170 ("Class Cert Motion").) On September 15, 2025, BetterHelp filed its Opposition to Plaintiffs' motion and motions to strike the testimony of Plaintiffs' experts Professor Shafiq and Eric Krause. (Dkt. Nos. 204-206.) On October 31, 2025, Plaintiffs filed their reply in support of class certification and oppositions to the motions to strike. (Dkt. No. 225, 227, 229.) On November 24, 2025, BetterHelp filed replies in support of its motions to strike. (Dkt. Nos. 242, 243.) A hearing was held on the parties' motions on January 29, 2026. Following the hearing and nearly three years after initially filing suit, Plaintiffs amended the

complaint to add a claim for violating Section 632 of CIPA. *See* TACC at ¶¶ 188-209.

The two remaining California Plaintiffs, Jane Doe III and T.R., purport to assert CIPA claims on behalf of a California subclass. TACC ¶¶ 28, 29; Plaintiffs' allegations concerning their prior CIPA claim have been consolidated with their new CIPA claim. TACC ¶¶ 188-209. They claim that BetterHelp violated Sections 631 and 632. Section 632 prohibits a person from (1) "intentionally" and (2) "without the consent of all parties" to (3) a confidential (4) communication (5) using "an electronic amplifying or recording device" to (6) "eavesdrop upon or record" the confidential communication, whether the communication is (7) "carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, ***except a radio***."[3] (emphasis supplied).

A plaintiff must also be able to prove that the "confidential communication" was sent to or received in California. "[T]he principal purpose of section 632 is to protect the privacy of confidential communications of California residents while they are in California," *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 119-20 (2006), and thus Section 632 applies only when the communication is sent from or received at any place in California. *See also Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1010 (C.D. Cal. 2014) ("As in *Kearney*, CIPA would only control calls from Californians, and companies would still be able to record calls from California so long as they notified callers at the outset."); *Shvager v. ViaSat, Inc.*, 2014 WL 12585790, at *7 (C.D. Cal. Mar. 10, 2014) (Section 632 "appl[ies] to recorded or monitored telephone calls so long as one party is located in California, even if the other is outside the state"); *Bergstein v. Parmar*, 2013 WL 12114091, at *5 (C.D. Cal. Aug. 23, 2013) ("Section 632 applies when a confidential communication takes place in part in California and in part in another state.").

## III. ARGUMENT[4]

"A party seeking class certification must affirmatively demonstrate . . . compliance with"

---

[3] BetterHelp disputes that either Plaintiff has any viable CIPA claim, that CIPA applies to the internet or that there is cause of action for aiding and abetting a violation of CIPA Section 632 for reasons discussed herein and if necessary, will address these issues on summary judgment.

[4] As with Plaintiffs, BetterHelp only addresses commonality and the predominance and superiority requirements of Rule 23(a) and (b)(3) in this brief and otherwise incorporates the arguments set forth in its opposition to class certification. *See* Opp. to Class Cert.

Rule 23. *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). "[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311, 315 (N.D. Cal. 2014) (quoting *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S.Ct. 1184, 1194, (2013). "This 'rigorous' analysis applies to both Rule 23(a) and Rule 23(b)." *Id.*

### A. CIPA Does Not Apply to Communications Transmitted Via Radio

Most devices used to access the internet are "radios" and not subject to Section 632. Section 632 applies only to "confidential communications" between parties "in the presence of one another or by means of a telegraph, telephone, or other device, ***except a radio***." Cal. Penal Code § 632(a) (emphasis added). Although some courts have applied Section 632 to internet communications (presumably based on wired connections to the Internet), undersigned counsel is not aware of any such decisions addressing the issue of computers and mobile devices transmitting Internet data through radio communication technologies. Any device that connects to the internet via Wi-Fi or cellular network—including a laptop or cell phone—is a "radio," *i.e.*, it uses radio frequency (RF) communications to transmit data and thus does not fall within the ambit of Section 632.

As explained by Dr. Chatterjee, network communications over the internet mostly occur over radio links. Chatterjee Rpt. at ¶¶ 89-96. These radio links include Wi-Fi, which enables digital devices within a certain area to communicate via radio waves and cellular networks, which are radio communication technologies. *Id.* To the extent that any user accessed the BetterHelp website from a device using a radio, *e.g.*, a laptop or computer using a Wi-Fi network, Bluetooth, or a cellular hotspot, or a mobile device using Bluetooth, a Wi-Fi network or a cellular network, any communication from that user's device is, by its terms, exempt from Section 632. This is the overwhelming number of users: from November 2022 to the end of the class period, approximately **84%** of the traffic to the BetterHelp website was mobile traffic, which can only be via Wi-Fi or cellular network (*i.e.*, radio). Dkt. No. 207 ("Vaughan Decl."), ¶ 19.

Plaintiff Jane Doe III herself admitted [redacted]. *See* Opp. to Class Cert at 16. Even though T.R. [redacted]

[redacted]. *Id.* Given this, and the evidence that most of the proposed class members (both in and outside California) used radio frequency to access BetterHelp, there is no way that Plaintiffs can satisfy their burden under Rule 23 for their CIPA claims. Plaintiffs' motion for class certification as to the CIPA claims is properly denied.

**B. There Is No Common Evidence to Establish that Subclass Members Were Located in California When Communications Occurred**

As with Plaintiffs' CIPA claim under Section 631 (Opp. to Class Cert. at 29), certification of any CIPA class also should be denied because Plaintiffs have not submitted *any* evidence, let alone established there is common evidence, to prove that the alleged "confidential communications" were sent to or from California when putative class members signed up with BetterHelp. *See Kearney*, 39 Cal. 4th 95, 120 ("[S]ection 632 applies when a confidential communication takes place in part in California and in part in another state."). BetterHelp's servers are in Virginia and have been during the entire class period, Vaughan Decl. ¶ 3, and Plaintiffs have offered no evidence of where class members were located when signing up with BetterHelp (nor could they). Although BetterHelp has provided in discovery the number of California users, *see* Dkt. No. 170-1 ("Tusan Decl."), Ex. 4 at 8, these figures reflect a user's self-selected state of residence, *not* location when registering or using the BetterHelp app or website. Vaughan Decl. at ¶ 21.

In *Flo Health*, the court denied certification of the plaintiffs' Section 631 CIPA claim because (as here) the plaintiffs offered no common evidence that communications were sent from or received in California. *See Frasco v. Flo Health*, 349 F.R.D. 557, 586-87 (N.D. Cal. 2025). The court rejected the plaintiffs' unsubstantiated assertion that "Flo's location data shows which users were in California" and reliance on "evidence that Google and Meta are based in California" and designed the technology at issue in California, *id.* at 586-87 and refused to certify the claim. The Court should reach the same result as to Plaintiffs' Section 632 claim here. Although Section 632 does not include an express territorial requirement, courts have uniformly held that, like Section 631, Section 632 requires that the communication be sent from or received in California (which

makes sense, given some nexus to California would be necessary to apply California law).[5] *See Kearney*, 39 Cal. 4th at 119-20; *Ades*, 46 F. Supp. 3d at 1010; *Shvager*, 2014 WL 12585790, at *7; *Bergstein*, 2013 WL 12114091, at *5. Indeed, Penal Code provisions only apply where the underlying conduct occurs at least in part in California. *See People v. Crew*, 74 P.3d 820, 832–33 (Cal. 2003), as modified on denial of reh'g (Oct. 29, 2003) ("California courts have criminal jurisdiction over anyone who commits a crime in whole or in part within this state"); Cal. Penal Code § 27(1) (explaining that California criminal provisions apply to "[a]ll persons who commit, in whole or in part, any crime within this state").

Plaintiffs previously insisted that "[a] Class Member's presence in California can [] be cross-checked with IP addresses based on BetterHelp's records," (Dkt. No. 225 ("Reply Br.") at 12) but they have offered no evidence in support of this assertion[6] and, in any event, that is not accurate. For starters, approximately a third of all internet users use VPNs, which mask IP address, and even where a VPN is not used, virtually all IP addresses are dynamic, obfuscated, or shared, and thus cannot be used to reliably establish location. (Dkt. No. 210-1 ("Zhao Rpt.") at 25-26). That a proposed subclass member may have self-disclosed that he/she is a resident of California does not bear on whether that person was *in California* when the BetterHelp app or website was accessed and the Intake Questionnaire was completed or any email address was shared. In addition, many (most) proposed class members accessed BetterHelp via a mobile app through cellular networks, so no "IP address" would be involved. Zhao Rpt., ¶¶ 29, 44; Vaughan Decl., ¶ 19. Plaintiffs cite to *Torres v. Prudential*, but—unlike here—Plaintiffs in that case provided a legitimate evidentiary basis for their proposed approach to identifying class members' location using the defendant's records. *Torres v. Prudential Fin., Inc.*, 2024 WL 4894289, at *9 (N.D. Cal. Nov. 26, 2024). Plaintiffs have not done so here, which perhaps is why they propose to cure this fatal gap in the evidence after the fact "as part of a claims administration process" by requiring class members "to attest to their location." (Reply Br. at 12.) Their proposal is contrary to law and

---

[5] Although the *Flo Health* court certified the Section 632 claim, the defendants in that case (unlike here) "d[id] not explain why" the location of the class members "might be relevant." *Id.* at 587.

[6] Plaintiffs cite paragraphs 31 and 38 of the Shafiq Report (*see* Reply Br. at 12), but these sections do not address a user's location when creating an account.

properly rejected. Whether the communications at issue occurred in California is a threshold statutory standing issue that may not be handled after the fact through an administration process. *See Aguirre v. Am. Honda Motor Corp., Inc.*, No. 22-CV-06909-HSG, 2026 WL 608349, at *6 n.16 (N.D. Cal. Mar. 4, 2026) (rejecting plaintiffs' proposal to use claims process "to elide inherently individualized questions of standing"). Plaintiffs have not and cannot meet their burden to establish whether they (or anyone else) were in California at the time of accessing the BetterHelp website or mobile app and, therefore, this is yet another threshold reason their CIPA claims are not amenable to class treatment.

### C. Additional Individual Questions Predominate with Plaintiffs' CIPA Claims

There are myriad other reasons Plaintiffs cannot meet their burden to satisfy the commonality or predominance requirements under Rule 23(a) and (b)(3). Section 632 requires that Plaintiffs prove, among other elements, that (1) third parties (2) recorded class members' (3) "confidential" (4) "communications" (5) by certain means other than by "radio" (6) without class members' consent and (7) the communications were sent from or received in California. As discussed above, elements (5) and (7) cannot possibly be satisfied (not even as to the named plaintiffs). None of the other inquiries can be established through common evidence either.

#### (1) *Cookies and Pixels Are Not "Electronic Amplifying or Recording Devices"*

Section 632 applies only to confidential communications that are "recorded" by an "electronic amplifying or recording device." But the technologies at issue, *i.e.*, cookies and pixels, are not "electronic amplifying or recording devices"[7] and do not "record" communications. Chatterjee Rpt. ¶¶ 81-88. Since data transmitted by cookies and pixels is converted to bits and chopped into packets where it is sent over a network bit-by-bit, none of the bits can possibly be

[7] Section 632 applies only to confidential communications between parties "in the presence of one another or by means of a telegraph, telephone, or other device" other than a radio. Although some courts have held that pixels are a "device" for Section 632's "means of communication" requirement at the motion to dismiss stage, *see Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023), those courts have not addressed whether cookies and pixels are "amplifying" or "recording devices" that "record" communications as required under Section 632. And as discussed in Section III.A, *infra*, the means of communication here is via devices connected to the internet via radio frequency, which is expressly exempt from Section 632.

understood while in transit. *Id.* These technologies also do not "amplify" anything. An amplifier is an electronic device that boosts an audio signal's power to a level that can be heard, usually through speakers or headphones. *Id.* Plaintiffs' technical expert does not contend otherwise.

Cookies and pixels are neither amplifying nor recording devices, and they are not subject to CIPA Section 632.

**(2)** ***Whether the Information at Issue Is "Confidential" Is Individualized***

Under Section 632, a communication is only "confidential" if it is "carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto . . . ." Cal. Penal Code § 632(c). Whether proposed class members *desired* that the information transmitted via a pixel or cookie be kept confidential is based on highly individualized inquiries, including because during part of the class period, proposed class members could use their Facebook or Google logins to access and register for BetterHelp. Vaughan Decl., ¶ 6. Anyone who voluntarily disclosed to Meta or Google that they were seeking mental health services while they signed up for BetterHelp would not have any basis to claim they intended to keep that fact confidential. *See* Opp. to Class Cert. at 15-16 (summarizing online practices for named Plaintiffs).

**(3)** ***The Information at Issue Is Not a "Communication" Under CIPA***

"The exact contours of this definition [of a 'communication' under CIPA] are still somewhat undefined, but it is clear that 'communication' refers to the substance or content of an exchange of ideas, not the 'non-content-based conduct coincident to the communication.'" *In re Apple Data Priv. Litig.*, 2026 WL 146025, at *6 (dismissing Section 632 claim and noting that CIPA does not define "communication," but courts have developed a definition consistent with the statute and its legislative purpose). "[U]ser agent, IP latitude, IP longitude, IP city, and user actions are the same kinds of data the Court already found not to be 'communication' . . . because they pertain to how, not what information is relayed." *Id.* at *7 ("what users 'tapped on'" and "how the user was connected to the internet" did not constitute a "communication" under Section 632). The "identifiers" that Professor Shafiq claims were disclosed, such as "account device identifiers and

the combination of IP address and user agent" (Dkt. No. 200-3 ("Shafiq Supp. Report") at 3) are not a "communication" subject to liability under Section 632.

Even assuming, for the sake of argument, that these website "events" for every putative class member were sent to third parties like Facebook, they are not "communications" subject to liability under CIPA. This information, including the fact of a user's registration on a website, is not "the substance or content of an exchange of ideas" necessary for a "communication" under CIPA. *In re Apple Data Priv. Litig.*, 2026 WL 146025, at *6.[8]

Plaintiffs argue that "online communications about sensitive personal information—including health or medical information" are at issue, (Suppl. Mot. at 6), but, unlike the cases on which Plaintiffs rely (*id.*), there is no evidence in this case that there was ever any disclosure of "health or medical information." The pixel events at issue are "'non-content-based conduct coincident to the communication.'" *In re Apple Data Priv. Litig.*, 2026 WL 146025, at *6. Even if they permit the general inference that the individual is seeking to access online mental health resources, this does not raise the information to the status of a "communication." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) (granting motion to dismiss CIPA claim).

As Judge Breyer explained in *Hammerling*:

> While Google might infer a user's traits and habits from the fact that this user uses non-Google apps designed for a specific purpose, the extent of that inference is limited because Plaintiffs do not allege Google can read the specific information (i.e., content) that a user inputs. Consider again Plaintiffs' allegation that Google can learn about a user's menstrual cycle. From the activity data regarding the duration and frequency of a user's use of a fertility tracker app, Google may infer that the user is a female and has the ability to get pregnant. However, it is

[8] As further explained in the Chatterjee Report, even if information were transmitted to Meta or other third parties via the pixel, Meta is not "reading, attempting to read, or to learn the contents or meaning" of the information while it "is in transit," as required under CIPA Section 631. During transmission of data over the internet, the actual "message report or communications" are divided into multiple subparts, additional header bits are appended to each subpart, and each subpart or packet is individually routed over the internet and can even arrive at their destination out of order. Chatterjee Report at ¶¶ 70-80. Thus, even if these packets were accessed while in transit, they would not represent the actual "message, report or communications" conveyed by a user. *Id.* In addition, the network communications from the user's browser are encrypted prior to being sent, such that third party would not be able to read the actual "message report or communications"—only indecipherable encrypted text. *Id.*

> implausible that Google can infer anything beyond that. . . . As alleged, Google's data collection only allows Google to make "educated guesses" about a user's traits and habits . . . .

*Id.* Here, any inference that might be drawn from the "CompleteRegistration" and "AddPaymentInfo" events is far more limited than the "duration and frequency" of the use of a "fertility tracker app" in *Hammerling*, and therefore cannot be a "communication" under Section 632.

**(4) *Whether Any Information Was Collected At All Depends on Each User's Privacy Choices***

As an initial matter, the type of common digital information that Plaintiffs claim was shared—IP addresses, device properties, UUIDs, basic URLs, user agents, hashed emails[9]—is not actionable as a matter of law. *See, e.g., In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) (holding there is no reasonable expectation of privacy in the disclosure of identification and address information through a URL); *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) ("[I]t is well established in the Ninth Circuit that 'there is no legally protected privacy interest in IP addresses.'") (collecting cases).

Even if the type of data purportedly shared here could form the basis for liability, as is evident from California plaintiffs Jane Doe III and T.R., whether any data was shared at all depends on a variety of factors unique to each proposed class member and within their exclusive control. *See* Opp. to Class Cert. at 5, 17-18 (addressing user choices that impact whether information is collected). These material differences are evident even in the widely divergent online privacy habits and practices of Plaintiffs. *See id.* at 15-17. Plaintiffs' claim that both "identifying information" and the fact of whether users completed BetterHelp's intake questionnaire were collected by third parties via so-called "ghost-written first party cookies"—regardless of a user's privacy settings, browser, or any other factor, (Reply Br. at 4; Supp. Br. at 5)—but they do not provide evidence to support this sweeping assertion, and in point of fact, it is not true. *See* Zhao Rpt. at ¶¶ 32-34 (addressing "cookie ghostwriting"); Vaughan Decl., ¶ 16.

---

[9] BetterHelp provided a handout to the Court during the January 29, 2026 hearing illustrating such common digital information. *See* ECF No. 253-1.

As noted above in footnote 2, *supra*, Plaintiffs speculate that [redacted], *see* (Reply Br. at 5, but that assertion makes no sense given other plaintiffs who admitted to poor privacy hygiene created their BetterHelp accounts around the same time. That Plaintiffs rely solely on speculation to support their claim that means they failed to meet their burden of satisfying Rule 23 "through evidentiary proof." *See Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1093 (N.D. Cal. 2018) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). The only evidence in the record is that [redacted], and the most plausible explanation for that is that Facebook never collected their information (and likely numerous other putative class members). Regardless of the reason, the foundational question of whether Facebook ever collected *any* information about class members will require an individualized assessment of a user's privacy practices and whether Facebook or any other third party actually possesses the user's information; meaning certification should be denied. *See Robbins v. Phillips 66 Co.*, 343 F.R.D. 126, 131 (N.D. Cal. 2022) (denying certification where "facts unique to each claimant" would "necessitate[e] mini-trials").

**(5) *Consent Presents Individualized Inquiries***

Section 632 requires Plaintiffs to prove that class members' confidential information was collected "without the consent of all parties to a communication." Cal. Penal Code § 632(a). For reasons discussed above, the information in issue is neither confidential nor a communication, but even if it were, in order to be actionable, Plaintiffs would need to prove class members did not provide *both* express and implied consent, and neither can be proven through common evidence.

**a) The Absence of Express Consent Cannot Be Proven Through Common Evidence**

Plaintiffs cannot rebut evidence of express consent to the use of pixel and cookie technology though common evidence because BetterHelp's Privacy Policy and other privacy disclosures were constantly evolving throughout the Proposed Class Period, and those disclosures clearly identified the use of pixels and cookies, even though the precise disclosures varied over time. *See* Opp. to Class Cert. at 7-9.

**Privacy Policy.** Throughout the Proposed Class Period, BetterHelp's Privacy Policy was expressly incorporated into BetterHelp's Terms of Service and also hyperlinked at the bottom of the user's view of BetterHelp's webpage. Vaughan Decl. ¶¶ 22-26. BetterHelp required users to agree to the Terms of Service and Privacy Policy when signing up for the service and also when the Terms of Service or Privacy Policy were updated. *Id.* As explained in BetterHelp's Opposition, its Privacy Policy was updated nine times throughout the Proposed Class Period, with many substantive changes to the relevant language regarding the use of "cookies and web beacons." Opp. to Class Cert. at 7-8. Indeed, beginning on December 31, 2019, the Privacy Policy added a five-page "Privacy Notice for California Residents" to comply with the California Consumer Privacy Act that expressly notified users of the disclosure of information. Vaughan Decl., Ex. H.

**Pop-Up Banners.** Beginning in September 2020, BetterHelp added a pop-up banner that appeared with every question of the Intake Questionnaire until users clicked a button indicating their consent. Vaughan Decl. ¶ 27. The banner disclosed BetterHelp's use of pixels and provided a link to the Privacy Policy, but the specific language changed over time. *Id.*, Ex. M; Opp. to Class Cert. at 8-9.

**Cookie and Pixel Manager.** Beginning on April 29, 2021, BetterHelp further updated its Privacy Policy to notify users: "If you want to opt out of these cookies and web beacons, manage your options <u>here</u>," *id.* at Ex. K at BH0085420, which hyperlinked to an interface that allowed users to manage their tracking preferences. And beginning in mid-2021, BetterHelp added language to the banner that linked to a user's "Cookie Preferences" and explicitly gave users the opportunity to manage their tracking preferences on the site. *Id.* at Ex. M.

* * *

In light of the above and the other evidence in the record, Plaintiffs' bare assertion that BetterHelp's disclosures were "uniform," (Supp. Br. at 5), is demonstrably false. The evidence of express consent will differ significantly, for example, for a user who created an account in January 2020 (after the "Privacy Notice for California Residents" was added to the Privacy Policy), September 2020 (when pop-up banners were first introduced), and April 2021 (at which time users were given tools to manage their tracking preferences). During the entire Proposed Class Period,

the Privacy Policy was also consistently being updated, as were the pop-up banners and management tools after they were introduced. *See* Vaughan Decl., ¶¶ 22-27, Exs. D-M.

Although Plaintiffs also contend that BetterHelp made uniform "reassurances" on which reasonable users would have relied to believe that BetterHelp "would safeguard their personal data." (Supp. Br. at 6.), Plaintiffs did not provide any evidence that BetterHelp's representations were uniform across the Proposed Class Period (because there is no such evidence). To the contrary, Plaintiffs concede that such statements varied significantly. *See* TACC at ¶¶ 51-58 (alleging that HIPAA seal was displayed through Dec. 2020); *see id.* at ¶¶ 57-58 (listing changes in alleged statements made to users).

Because Plaintiffs cannot rebut express consent through common evidence, this is yet another reason neither of their CIPA claims can be certified. *See Sherman v. Yahoo! Inc.*, 2015 WL 5604400, at *8-9 (S.D. Cal. Sept. 23, 2015) (denying certification and holding that common issues did not predominate where "determining which agreement each user consented to requires an individualized determination"); *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 578-79 (S.D. Cal. 2013) (denying certification based on lack of predominance because the circumstances under which putative class members provided consent varied); *see also Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070–71 (9th Cir. 2014), abrogated on other grounds by *Microsoft Corp. v. Baker*, 582 U.S. 23 (2017) (holding that common questions did not predominate over individual issues where "[e]ach of the five [consumer] contracts used by Home Depot required an independent legal analysis").

**b) The Absence of Implied Consent Cannot Be Proven Through Common Evidence**

Plaintiffs also cannot satisfy Rule 23 to rebut implied consent. "In privacy litigation, consent can be 'express,' but it can also be 'implied in fact based on whether the surrounding circumstances demonstrate' that the party whose personal information was collected knew it." *In re Google RTB Consumer Priv. Litig.*, No. 4:21-CV-2155-YGR, 2024 WL 2242690, at *12 (N.D. Cal. Apr. 4, 2024) (denying certification) (citing *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *14 (N.D. Cal. Mar. 18, 2014)). "[T]he circumstances, considered as a whole, [must]

demonstrate that a reasonable person [would have] understood that [the] action[s] would be carried out" and that they proceeded to expose themselves to the actions anyways. *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024). Implied consent "is 'an intensely factual question that requires consideration of the circumstances surrounding the alleged privacy violation' that takes into account 'a broad set of materials.'" *Calhoun v. Google LLC*, 349 F.R.D. 588, 597 n.3 (N.D. Cal. 2025) (denying certification).

Whether class members understood that third parties collected information regarding class members seeking "counseling and therapy services"—which Plaintiffs allege is the uniform disclosure that triggers liability (Supp. Br. at 5)—is a highly individualized inquiry. Such an inquiry will include an analysis of how BetterHelp's disclosures are presented to users, both online and via the app, including how the verbiage and attributes such as placement, font size, etc. changed for every iteration during the class period. *See Allen v. Shutterfly, Inc.*, No. 20-CV-02448-BLF, 2020 WL 5517172, at *6 (N.D. Cal. Sept. 14, 2020) (analyzing specific verbiage and attributes of website pop-up); *See Smith v. YETI Coolers, LLC*, 754 F.Supp.3d 933, 941 (N.D. Cal. 2024) (same); *see, e.g.,* Vaughan Decl., Ex. M (pop-up banners). It also will include an assessment of users' online conduct, including whether they impliedly consented to disclosing that they were seeking mental health services to Google or Meta by clicking on ads for BetterHelp or other mental health platforms on those platforms, searching for mental health providers, or posting about similar issues online. *See In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *19 (considering all "surrounding circumstances" to assess implied consent). Indeed, Plaintiffs engaged in each of these types of conduct to varying degrees,[10] highlighting the individualized nature of the inquiry. In addition, between March 31, 2017 and February 15, 2022, users could create a personal BetterHelp account using their credentials from a Facebook or Google account. Vaughan Decl. at ¶ 6. Any reasonable user would understand that, by doing so, they were notifying Facebook or Google of their actions.

The existence of implied consent for each member of the proposed classes would overwhelm common questions and certification should be denied on that basis. *See Calhoun*, 349 F.R.D. at 597 (denying certification based on implied consent); *In re Google Inc. Gmail Litig.*, 2014

[10] *See* Opp. to Class Cert. at 15-16 (summarizing online practices for named Plaintiffs).

WL 1102660, at *17 (same); *Backhaut v. Apple Inc.*, 2015 WL 4776427, at *14 (N.D. Cal. Aug. 13, 2015) (same).

**D. A Class Action Is Neither Manageable Nor Superior Under These Facts**

In determining whether to certify a class, courts must evaluate whether a viable trial plan has been presented. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (abuse of discretion to certify class without showing "how the class trial could be conducted"); *Badella v. Deniro Mktg. LLC*, 2011 WL 5358400, at *13 (N.D. Cal. Nov. 4, 2011). Here, there is no plausible means of conducting a "trial by proxy" in light of the numerous individualized inquiries discussed above. The testimony and evidence proffered by Plaintiffs cannot resolve for every member of their proposed class dispositive issues for liability under CIPA.

## IV. CONCLUSION

For the reasons above and those set forth in BetterHelp's Opposition to Class Certification, Plaintiffs' Motion for Class Certification should be denied.

Dated: April 6, 2026

**KING & SPALDING LLP**

By: */s/ Livia M. Kiser*
LIVIA M. KISER (SBN 285411)
*lkiser@kslaw.com*
JEFFREY HAMMER (SBN 264232)
*jhammer@kslaw.com*
CRAIG H. BESSENGER (SBN 245787)
*cbessenger@kslaw.com*
JAMES A. UNGER (SBN 325115)
*junger@kslaw.com*

Attorneys for Defendant
BETTERHELP, INC.