Gary. M. Klinger (*pro hac vice*)
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

*Plaintiffs' Co-Lead Interim Class Counsel*

Christina Tusan (SBN 192203)
**TUSAN LAW, PC**
680 E. Colorado Blvd. #180
Pasadena, CA 91101
Telephone: (626) 418-8203
Facsimile: (626) 619-8253
Email: ctusan@ctusanlaw.com

*Plaintiffs' Co-Lead Interim Class Counsel*

Maureen M. Brady (*pro hac vice*)
**McSHANE AND BRADY LLC**
1656 Washington Suite 140
Kansas City, MO 64108
Telephone: (816) 888-8010
Email: mbrady@mcshanebradylaw.com

*Plaintiffs' Co-Lead Interim Class Counsel*

Alan M. Mansfield (SBN 125998)
**WHATLEY KALLAS LLP**
1 Sansome Street, 35th Floor, PMB #131
San Francisco, CA 94104 /
16870 West Bernardo Drive, Suite 400
San Diego, CA 92127
Telephone: (619) 308-5034
Facsimile: (888) 341-5048
Email: amansfield@whatleykallas.com

*Plaintiffs' Liaison Counsel*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE BETTERHELP, INC. DATA DISCLOSURE CASES<br><br><br>This Document Relates To: All Actions | Case No. 3:23-cv-01033-RS<br><br>**PLAINTIFFS' SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION REGARDING PENAL CODE SECTION 632 CLAIM**<br><br>Date:       May 7, 2026<br>Time:       1:30 p.m.<br>Courtroom: 12 - 19th Floor<br>Judge:      Hon. Richard Seeborg |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ..................................................................................................... 1

II.    ARGUMENT ............................................................................................................ 2

    A.    Section 632 Applies to the Communications and Tracking Tools
          in This Case ................................................................................................... 2

    B.    Common Questions Predominate for the Section 632 Claim ......................... 6

          1.    Whether Subclass Members' Private Communications Were
                Eavesdropped on or Recorded While in California is Subject to
                Common Proof ................................................................................... 6

          2.    There is No Evidence Consent Will be Individualized ....................... 9

          3.    Whether Subclass Members' Private Communications Were
                Captured Will be Determined Through the Same Evidence ............... 11

    C.    Along with Plaintiffs' Other Claims, a Class Trial on the Section 632
          Claim Is Both manageable and Superior ....................................................... 15

III.    CONCLUSION ........................................................................................................ 15

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Aguirre v. Am. Honda Motor Corp., Inc.*,
2026 WL 608349 (N.D. Cal. Mar. 4, 2026) ....................................................................... 8, 9

*Allen v. Shutterfly, Inc.*,
2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) ..................................................................... 11

Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,
568 U.S. 455 (2013) ............................................................................................................... 2

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .................................................................................. 5

*Calhoun v. Google, LLC,*
113 F.4th 1141 (9th Cir. 2024)......................................................................................... 9, 10

*Cf., Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) .................................................................................. 6

Connelly v. Hilton Grand Vacations Co., LLC,
294 F.R.D. 574 (S.D. Cal. 2013)......................................................................................... 11

*Doe I v. Google LLC,*
2025 WL 1616720 (N.D. Cal. June 6, 2025) ....................................................................... 12

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ............................................................................... 5

*Flanagan v. Flanagan*,
27 Cal.4th 766 (2002) ........................................................................................................... 5

*Flowers v. Twilio, Inc.*, 2018 WL 10758024 (Cal. Super. Jan. 02, 2018) .................................... 10

*Frasco v. Flo Health, Inc.* ("*Frasco I*"),
349 F.R.D. 557 (N.D. Cal. 2025).................................................................................... 12, 14

*Frasco v. Flo Health, Inc.* ("*Frasco II*"),
2025 WL 2680068 (N.D. Cal. Sept. 17, 2025) ........................................................... 7, 8, 12

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024).............................................................................. 6

*Hammerling v. Google* LLC,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .............................................................................. 13

*Hangarter v. Provident Life & Accident Ins. Co.,*
373 F.3d 998 (9th Cir. 2004) .................................................................................................... 3

*In re Apple Data Privacy Litigation,*
2026 WL 146025 (N.D. Cal. Jan. 20, 2026) .................................................................... 12, 13

*In re Facebook, Inc. Internet Tracking Litig.,*
956 F.3d 589 (9th Cir. 2020) .......................................................................................... 5, 13, 14

*In re Google Inc. Gmail Litigation,*
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ................................................................... 11

*In re Google Inc.,*
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ................................................................... 10

*In re Google RTB Consumer Priv. Litigation,*
2024 WL 2242690 (N.D. Cal. Apr. 4, 2024) ..................................................................... 11

*In re Meta Pixel Healthcare Litig.,*
647 F. Supp. 3d 778 (N.D. Cal. 2022) ................................................................... 10, 12, 13

*Javier v. Assurance IQ, LLC,*
2022 WL 1744107 (9th Cir. May 31, 2022) ....................................................................... 5

*Joffe v. Google, Inc.,*
746 F.3d 920 (9th Cir. 2013)................................................................................................ 4

*Libman v. Apple, Inc.,*
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) ................................................................... 6

*Matera v. Google Inc.,*
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016)..................................................................... 5

*Mitchell v. Sonesta Int'l Hotels Corp.,*
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) ....................................................................... 5

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,*
523 F.3d 1051 (9th Cir. 2008)................................................................................................ 3

*Negro v. Superior Ct.,*
230 Cal. App. 4th 879 (2014)................................................................................................ 10

*Nitsch v. Dreamworks Animation SKG Inc.,*
315 F.R.D. 270 (N.D. Cal. 2016) ....................................................................................... 7

*Oakley, Inc. v. Bugaboos Eyewear Corp.,*
757 F. Supp. 2d 1050 (S.D. Cal. 2010) ............................................................................. 3

*People v. Cain,*
10 Cal. 4th 1 (1995) ............................................................................................................. 13

iii

*People v. Guzman*,
11 Cal. App. 5th 184 (2019)..................................................................................................... 4

*People v. Superior Ct. (Decker)*,
41 Cal. 4th 1 (2007) ............................................................................................................... 13

*People v. Windham*,
145 Cal. App. 4th 881 (2006)................................................................................................. 10

*Polanco v. E. Chigago Mach. Tool Corp.*,
2012 WL 12886209 (C.D. Cal. June 26, 2012) ...................................................................... 3

*R.C. v. Sussex Publishers, LLC ("Sussex I")*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025).......................................................................... 3

*R.C. v. Sussex Publishers, LLC ("Sussex II")*,
2026 WL 266450 (N.D. Cal. Feb. 2, 2026)............................................................................. 5

*Raffin v. Medicredit, Inc.*,
2017 WL 131745 (C.D. Cal. Jan. 3, 2017) ......................................................................... 7, 8

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........................................................................................................ 3, 5

*Rodriguez v. Google LLC*,
2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ............................................................................... 9

*Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*,
2023 WL 3569981 (N.D. Cal. May 19, 2023) ........................................................................ 7

*Sherman v. Yahoo! Inc.*,
2015 WL 5604400 (S.D. Cal. Sept. 23, 2015) ...................................................................... 11

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......................................................................... 6

*Smith v. Rack Room Shoes, Inc.*,
2026 WL 183852 (N.D. Cal. Jan. 23, 2026) ....................................................................... 3, 5

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .................................................................................. 11

*Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*,
2014 WL 4627271 (C.D. Cal. Sept. 8, 2014)......................................................................... 7

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025).................................................................................... 6

*Torres v. Prudential Fin., Inc.*,
2024 WL 4894289 (N.D. Cal. Nov. 26, 2024)................................................................... 8, 10

*True Health Chiropractic, Inc. v. McKesson Corp.*,
      896 F.3d 923 (9th Cir. 2018).................................................................................... 9, 10, 11

*United States v. Rose*,
      669 F.2d 23 (1st Cir. 1982) ................................................................................................ 4

*Zaklit v. Nationstar Mortg. LLC*,
      2017 WL 3174901 (C.D. Cal. July 24, 2017) ................................................................. 7, 8

**Regulations**

45 C.F.R. § 164.501 ........................................................................................................................ 9

PLAINTIFFS' SUPP. REPLY IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION REGARDING PENAL CODE SECTION 632 CLAIM          Case No. 3:23-cv-01033-RS

## I.   INTRODUCTION

BetterHelp's Opposition to certifying Plaintiffs' CIPA Section 632 claim for class treatment recycles many of the arguments it raised in opposition to Plaintiffs' motion for class certification. BetterHelp still has not presented any *evidence* undermining the analysis of Plaintiffs' expert Professor Zubair Shafiq, who examined BetterHelp's source code and explained how the Tracking Tools on BetterHelp's websites and app revealed that California Subclass members sought out counseling and therapy services regardless of their privacy settings, browsers, or devices (*see* Shafiq Declarations, Dkts. 169-5, 200-3). Professor Shafiq's analysis is the common evidence that is key to resolving all of Plaintiffs' claims, including the Section 632 claim.

Instead of presenting any evidence demonstrating individualized issues, BetterHelp asks this Court to pioneer a highly strained reading of Section 632 and deny class certification on the ground that wireless internet communications are not protected under Section 632 because they are "radio" communications. As a threshold matter, BetterHelp's (incorrect) merits interpretation of Section 632 would apply the same to all Subclass members, so it is not a reason to deny class certification. Regardless, BetterHelp relies on impermissible legal conclusions from its technical expert Sandeep Chatterjee ("Chatterjee Decl.", Dkt. 267-2) to support an argument that is contrary to Section 632's text, legislative intent, and the weight of interpretative authority. Courts have repeatedly applied Section 632 to similar tracking technologies because they are "other device[s]," consistent with the California Supreme Court's direction that courts broadly interpret CIPA to encompass new technologies. In addition, the Ninth Circuit has rejected BetterHelp's argument in the context of the federal Electronic Communications Privacy Act ("ECPA") claim (Second Cause of Action), holding the only "radio" communications exempt from the ECPA are traditional auditory communications like AM/FM radio that are public in nature, not Wi-Fi internet communications.

BetterHelp also argues in opposition to certifying the 632 claim that determining whether California Subclass members were in California when they filled out intake questionnaires will turn on individual inquiries. Yet at the same time, BetterHelp admits it has a list of California users, which was provided in response to Plaintiffs' Interrogatory how many class members are located

1

in California. *See* Ex. 4 to Declaration of Christina Tusan, Dkt. 170-1 ("Tusan Decl.") at 8. In addition, BetterHelp cites no evidence supporting its suggestion that IP addresses are not a reasonable proxy for establishing location in California. And even if there are some Subclass members who were not located in California at the time they signed up for BetterHelp's services, courts have repeatedly held in other CIPA cases that such users can be excluded in a later phase of the proceedings, such as damage determinations.

BetterHelp's other arguments are no more persuasive in the Section 632 context than they were in its original opposition to Plaintiffs' class certification motion. Its focus on whether Subclass members had a reasonable expectation of privacy ignores the objective nature of the inquiry and that courts have repeatedly reaffirmed a reasonable expectation of privacy in medical-related communications. Although it again raises the specter of individualized consent inquiries, BetterHelp continues to rely on the same generic statements in its privacy policies and banners about cookies that courts have consistently held are insufficient, particularly in the context of medically related communications, to put a reasonable consumer on notice. Nor has BetterHelp presented any evidence that even a single Subclass member gave implied consent because they were aware that the fact they were seeking mental health help was being disclosed to third parties but continued to use its services anyway. Finally, BetterHelp's argument that there is no class-wide proof that any confidential information was actually captured ignores both Professor Shafiq's analysis of its source code and information in the record from Meta. Tusan Decl. (Dkt. 169-4) at Ex 41.

The Court should certify the Section 632 claim of the California Subclass.

## II.     ARGUMENT

### A.     Section 632 Applies to the Communications and Tracking Tools in This Case.

BetterHelp argues that class certification should be denied because Section 632 does not apply to the communications and Tracking Tools in this case. Supp. Opp. at 5. This is a merits question that will generate common answers for the entire California Subclass and is no impediment to class certification. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,* 568 U.S. 455, 459 (2013) (predominance does not require showing that the questions common to the class "will be answered,

PLAINTIFFS' SUPP. REPLY IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION REGARDING PENAL CODE SECTION 632 CLAIM          Case No. 3:23-cv-01033-RS

on the merits, in favor of the class."). In any event, BetterHelp's narrow construction of Section 632 should be rejected as contrary to the text of the statute and the California Supreme Court's directive that courts take a "functional rather than hyper-technical approach that broadly applies the statute to new technologies." *Smith v. Rack Room Shoes, Inc.*, 2026 WL 183852, at *3 (N.D. Cal. Jan. 23, 2026) (citing *Ribas v. Clark*, 38 Cal. 3d 355 (1985)).

Section 632 prohibits eavesdropping or recording "by means of a telegraph, telephone, or other device, except a radio[.]" Relying on its expert Sandeep Chatterjee, BetterHelp argues that computer and mobile device users connect to the internet via Wi-Fi or cellular networks, and because these networks function through *radio waves*, they constitute "radio" communications that fall within the exception to Section 632. Supp. Opp. at 5 (citing Chatterjee Decl.). As a threshold matter, the Court should reject BetterHelp's argument because Chatterjee's Declaration is nothing more than a series of legal conclusions focused on statutory interpretation that is inappropriate for expert testimony. *See, e.g.*, Chatterjee Decl. at 6-7, 28, 30-31, 36, 37. *see Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) ("[A]n expert witness cannot give an opinion as to her *legal conclusion,* i.e., an opinion on an ultimate issue of law.") (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (emphasis in original). "[S]tatutory interpretation falls under the purview of the Court" and the Court should either strike or disregard his Declaration on these grounds. *Oakley, Inc. v. Bugaboos Eyewear Corp.*, 757 F. Supp. 2d 1050, 1057 (S.D. Cal. 2010); *Polanco v. E. Chigago Mach. Tool Corp.*, 2012 WL 12886209, at *5 n.27 (C.D. Cal. June 26, 2012) ("[E]xpert opinion regarding the correct statutory interpretation is neither relevant nor appropriate.").

Regardless, BetterHelp's novel interpretation of Section 632 finds support in neither the text of the statute nor case law. Courts have consistently held that Section 632 applies to internet communications because the "statute's plain language reaches communications made through technology or means not enumerated since the statute includes communications made 'by means of . . . [an] *other device.*" *R.C. v. Sussex Publishers, LLC ("Sussex I")*, 2025 WL 948060, at *8 (N.D. Cal. Mar. 28, 2025) (emphasis and alterations in original). BetterHelp's insistence that Section 632 only applies to "wired" internet communications also ignores that Section 632 differs

PLAINTIFFS' SUPP. REPLY IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION REGARDING PENAL CODE SECTION 632 CLAIM    Case No. 3:23-cv-01033-RS

from Section 631 in that it "does *not* require an unauthorized *connection* to a transmission line[.]" *People v. Guzman*, 11 Cal. App. 5th 184, 192 n. 7 (2019) (emphasis in original). Construing the "radio" exclusion to mean Section 632 only applies to wired internet communications, as BetterHelp does, is both illogical and inconsistent with how California courts interpret the statute.[1]

Although courts have not addressed BetterHelp's argument in the CIPA context, BetterHelp does not acknowledge that the Ninth Circuit has squarely rejected a similar argument under the analogous federal Wiretap Act (ECPA). *See Joffe v. Google, Inc.*, 746 F.3d 920 (9th Cir. 2013). Like BetterHelp does here, Google argued in *Joffe* that data transmitted via a Wi-Fi network is a "radio communication" that is exempt under the ECPA. *Id.* at 926. The Ninth Circuit disagreed, explaining that while it is true that the "radio frequency portion of the electromagnetic spectrum covers not only WiFi transmissions, but also television broadcasts, Bluetooth devices, cordless and cellular phones, garage door openers," the ordinary understanding of "radio" does not encompass these technologies. *Id.* at 927. Importantly, the court found that "traditional radio technologies" like broadcast radio were excluded from the ECPA because they are public in nature. *Id.* at 931-32; *see also United States v. Rose*, 669 F.2d 23, 26 (1st Cir. 1982) (noting in case prior to ECPA's amendments to the Wiretap Act that there was no reasonable expectation of privacy in communications over ham radio frequency). It also makes no difference whether a computer or smartphone was used to connect to the Internet because while cellular phones were once quite similar to traditional radios, "technology has evolved and cellular communications are no longer as similar to CB broadcasts as they once were[.]" *Joffe*, 746 F.3d at 932. Congress therefore meant "'radio' to refer to traditional radio technologies" such as "AM/FM, Citizens Band (CB), 'walkie-talkie,' and shortwave transmissions" that are "predominantly auditory broadcast." *Joffe*, 746 F.3d at 928. Given that CIPA and the original Wiretap Act were passed in 1967 and 1968, respectively and how courts have interpreted CIPA and the ECPA under the same standards, Section 632's exception for "radio" communication should be similarly interpreted to refer to "traditional radio technologies" rather than data transmitted over a Wi-Fi network. *See In re Facebook, Inc. Internet*

---

[1]  Plaintiffs do not concede Chatterjee's description of the Tracking Tools is accurate. For the reasons stated above, however, that goes to the underlying merits of the dispute. Plaintiffs reserve the right to supplement any expert testimony on this point at the appropriate time, which is not now.

PLAINTIFFS' SUPP. REPLY IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION REGARDING PENAL CODE SECTION 632 CLAIM          Case No. 3:23-cv-01033-RS

*Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020) (construing CIPA and the Wiretap Act together).

Even if BetterHelp could show its interpretation of Section 632's "radio" exception is reasonable (it cannot), the Court should still reject it. "[W]hen faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection." *Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) (citing *Ribas,* 38 Cal. 3d at 360–61). The California Supreme Court "recognized that CIPA was intended to cover newer forms of communication" and should be interpreted broadly. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 938 (N.D. Cal. 2023) (citing *Flanagan v. Flanagan*, 27 Cal.4th 766, 774 (2002)); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) ("the California Supreme Court has also emphasized that all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA") (citations omitted). BetterHelp's sweeping interpretation of "radio" would arbitrarily exclude most modern internet communications—*e.g.,* 84% of traffic to BetterHelp's website (Supp. Opp. at 5)—thereby upending CIPA's "coherent statutory scheme." *R.C. v. Sussex Publishers, LLC* ("*Sussex II*"), 2026 WL 266450, at *4 (N.D. Cal. Feb. 2, 2026) (rejecting interpretation that would create "inconsistency" between CIPA's provisions) (quoting *Smith*, 11 Cal. 5th at 193).

BetterHelp nevertheless claims that Section 632 does not apply to the Tracking Tools because pixels and cookies neither "amplify" nor "record" confidential communications. Supp. Opp. at 8-9. Setting aside that this is again a merits question common to the class that also improperly relies on Chatterjee's legal conclusions, BetterHelp acknowledges that courts have held that Section 632 *does* apply to pixel and other tracking technologies. *Id.* at 8 n.7 (citing *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023)). BetterHelp suggests that these courts did not consider whether these technologies are "amplifying" or "recording" devices, but that is not true. *See, e.g., Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772, at *11 (C.D. Cal. Oct. 4, 2024) ("[T]he Court agrees with Plaintiff—there is nothing in Section 632 that excludes software from serving as an 'electronic amplifying or recording device'"). Contrary to BetterHelp's assertion (Supp. Opp at 5), nothing in these decisions suggests that the courts limited their holdings to only "wired connections to the Internet." *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5

PLAINTIFFS' SUPP. REPLY IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION REGARDING PENAL CODE SECTION 632 CLAIM          Case No. 3:23-cv-01033-RS

(N.D. Cal. Apr. 4, 2025) (concluding in a case involving pixels that software is a "device" under Section 632).[2] Lastly, BetterHelp's related argument that cookies and pixels do not "record" anything because they rely on data packets that cannot "be understood while in transit" grafts on the "in transit" language from Section 631 that does not appear in Section 632.

Section 632 applies to the internet communications and the Tracking Tools in this case.

### B.  Common Questions Predominate for the Section 632 Claim.

BetterHelp does not dispute that its liability for both aiding and abetting and class-wide damages under Section 632 are subject to common proof, which alone are central common questions that warrant class treatment. Instead, BetterHelp argues three issues are individualized: whether (1) Subclass members were in California when the eavesdropping or recording occurred; (2) any confidential communications were captured; and (3) a user consented. Supp. Opp. at 9-16. These arguments are either contrary to or unsupported by the record and should be rejected.

#### 1.  Whether Subclass Members' Private Communications Were Eavesdropped on or Recorded While in California is Subject to Common Proof.

BetterHelp argues there is no common evidence to determine whether a Subclass member was in California when his or her confidential communications were captured. Supp. Opp. at 6. As Plaintiffs explained in their class certification reply, (Dkt. 224-3 at 12), this argument ignores that a Subclass member's location at the time they signed up with BetterHelp can be cross-checked with their IP address based on BetterHelp's own records. As Professor Shafiq explained, an IP address encodes information about the location of a user (Shafiq Rpt. (Dkt. 176-5) ¶ 31 n.55).  He further details in his report how BetterHelp uniformly collected and shared IP addresses—among other data—for all class members (Dkt. 169-5 ¶ 49b). BetterHelp's own expert, Dr. Zhao, agreed that a user's IP address (which he includes under the label "Common Digital Information") "is routinely shared by websites as part of normal internet infrastructure," Zhao Rpt. (Dkt. 210-1) at ¶ 26, p. 12 ("Common Digital Information" definition), and that an IP address shows "geolocation," *id.* ¶ 25.

---

[2] *See also, e.g.*, *Libman v. Apple, Inc.*, 2024 WL 4314791, at *13 (N.D. Cal. Sept. 26, 2024) (app software on a cellphone is a "device"); *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 857 (W.D. Wash. 2024) (same); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 957 (E.D. Cal. 2025) (software that records calls is a "device"). *Cf., Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 956 (N.D. Cal. 2024) (software is considered a "device" under the federal ECPA).

6

BetterHelp could challenge the right of any Subclass member to recover based on an extraterritoriality defense in a later phase of the proceedings. *Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*, 2023 WL 3569981, at *7 (N.D. Cal. May 19, 2023) (Seeborg, C.J.) ("[I]f Defendant is able to mount an extraterritoriality defense to any absent class members, this can be handled 'in a manner similar to that used when individualized damages inquiries arise in class action proceedings.'") (quoting *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 313 (N.D. Cal. 2016)).

This Court's approach in *Bayer* is consistent with other courts that have rejected similar arguments in the CIPA context at class certification. *See Frasco v. Flo Health, Inc.* ("*Frasco II*"), 2025 WL 2680068, at *10 (N.D. Cal. Sept. 17, 2025) (declining to decertify Section 632 class because where class members were when they completed an onboarding survey could be handled during the claims process). Even in one of the cases BetterHelp cites the court certified a CIPA claim over defendant's objection that determining whether a class member was in California while their call was recorded precluded class certification. *Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, 2014 WL 4627271, at *6-7 (C.D. Cal. Sept. 8, 2014). The *Ades* court explained if a defendant had records of any calls that were not made within California, the court could later exclude them from the class. *See id.* at *7; *see also, Raffin v. Medicredit, Inc.*, 2017 WL 131745, at *3 (C.D. Cal. Jan. 3, 2017) ("If Medicredit believes that a putative class member was outside California during a call, it can offer evidence to disqualify the member."); *Zaklit v. Nationstar Mortg. LLC*, 2017 WL 3174901, at *9 (C.D. Cal. July 24, 2017) (same).

BetterHelp concedes that it has a list of California users, but then claims this only shows "a user's self-selected state of residence" that does not necessarily correlate with where they were located when signing up. Supp. Opp. at 6.[3] But courts have allowed plaintiffs to rely on similar evidence, such as IP addresses and phone number area codes, as reasonable proxies for being

---

[3] BetterHelp argues that class members who "accessed BetterHelp via a mobile app through cellular networks" would have "no 'IP address' [] involved." Supp. Opp. at 7 (citing Zhao Rpt., ¶¶ 29, 44). This is false. The part of Dr. Zhao's report BetterHelp cites acknowledges that a mobile phone on a cellular network has an IP address. Zhao Rpt. (Dkt. 210-1) at ¶ 29. And here, there is evidence in the record showing that an IP address is not only collected when the user was using a mobile device, but also can be used to match data with individual users for various purposes. *E.g*. Tusan Decl. (Dkt. 169-4) Ex. 41 (META_BETTERHELP_000000003).

7

located within California. *See Torres v. Prudential Fin., Inc.*, 2024 WL 4894289, at *8-9 (N.D. Cal. Nov. 26, 2024) (IP address); *Raffin*, 2017 WL 131745, at *3 (agreeing it is "more likely than not that a person with a California area code will have been located in California at the time of the call."); *accord Zaklit*, 2017 WL 3174901, at *9. BetterHelp does not identify any mismatch between an IP address and a Subclass member being in California at the time his or her information was captured or between their selected state of residence and location while registering for BetterHelp. *See Frasco II*, 2025 WL 2680068, at *10 (rejecting similar argument because "Meta did not present evidence indicating that any class members' circumstances would result in an extraterritorial application of Section 632."). And it is unlikely there will be significant disparities because users select their state of residence when signing up, and any mismatch between IP address and reported residence can be easily addressed. *See Torres*, 2024 WL 4894289, at *9 (any class members whose IP address indicates a different location than their reported state of residence "may be required to attest via affidavit to their location at the time they filled out the form" as part of a claims process). BetterHelp also argues that IP addresses are not a reasonable proxy for being within California because a third of all Internet users use VPNs that mask IP addresses, but BetterHelp does not substantiate the claim.[4] *See Torres*, 2024 WL 4894289, at *9 (rejecting same VPN argument); *Raffin*, 2017 WL 131745, at *3 (rejecting location challenge to CIPA claim at class certification because it was "not sufficiently articulated or supported to defeat certification").

The only case BetterHelp cites is inapposite and does not suggest that Plaintiffs' "proposal is contrary to law[.]" Supp. Opp. at 7-8 (citing *Aguirre v. Am. Honda Motor Corp., Inc.*, 2026 WL 608349, at *6 n.16 (N.D. Cal. Mar. 4, 2026)). The *Aguirre* plaintiff claimed that Honda violated California's Unfair Competition Law by refusing to identify his engine "head gasket" as an emissions part that is subject an emissions warranty. *Id.* at *1. Although Honda had told the plaintiff it would not warrant *his* head gasket failure, there was no class-wide evidence "establishing this

---

[4] For the assertion that 31% of internet users use VPNs, BetterHelp cites Dr. Zhao's report, which in turn cites a single webpage. Zhao Rpt. (Dkt. 210-1) at ¶ 29 n.33. But that webpage simply tracks changes in "daily VPN search volume by country," and at most provides a global figure. *See* https://www.top10vpn.com/research/vpn-demand-statistics/. Even if BetterHelp had quantified the number of all internet users who use VPNs, it would vastly overstate the portion of California Subclass members who used a VPN to access BetterHelp's website because much of the demand for VPNs occurs where "governments around the world try to control the populace by disrupting internet access." *Id.*

8

PLAINTIFFS' SUPP. REPLY IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION REGARDING PENAL CODE SECTION 632 CLAIM          Case No. 3:23-cv-01033-RS

same fact for other members of the class." *Id.* at \*15. Here, BetterHelp's liability turns on Tracking Tools that function in the same manner regardless of user settings, browser, or type of device. This situation is thus unlike *Aguirre*, where there was no "class-wide evidence supporting Plaintiff's causal theory for anyone other than himself." *Id.* n.16.

### 2.      There is No Evidence Consent Will be Individualized.

Once again focusing on consent, BetterHelp argues that its disclosures "clearly identified the use of pixels and cookies" (Supp. Opp. at 12).  BetterHelp still does not cite any language in its Privacy Policy, banners, or anywhere else that would have put a reasonable consumer on notice that the fact they completed BetterHelp's intake questionnaire—which reveals they were requesting mental health treatment—would be revealed. Nor has BetterHelp shown for purposes of its implied consent argument that even a single Subclass member was aware that their protected information was being disclosed to a third party but still signed up for BetterHelp's services. *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018) ("[W]e do not consider the consent defenses that McKesson might advance or for which it has presented no evidence."). BetterHelp has thus not carried its burden of showing that the defense of consent overwhelms the other common issues presented by the Section 632 claim. *See Calhoun v. Google, LLC,* 113 F.4th 1141, 1147 (9th Cir. 2024) (noting that consent is an affirmative defense for which the defendant has the burden of proof); *see also Rodriguez v. Google LLC*, 2024 WL 38302, at \*8 (N.D. Cal. Jan. 3, 2024) (Seeborg, C.J.) (consent did not defeat predominance).

BetterHelp's express consent argument also fails because there is no dispute that it failed to comply with the consent requirements for the disclosure of HIPAA-protected information under 45 C.F.R. § 164.501. Instead, it asserts it is not subject to HIPAA—an issue that even its counsel admitted raises a class-wide question.[5] Moreover, "[t]o be effective, consent must be . . . to the particular conduct, or substantially the same conduct," yet BetterHelp still cannot identify any disclosures revealing that Tracking Tools like the pixel will divulge to a third party that users are seeking mental health services. *Calhoun*, 113 F.4th at 1147 (citations omitted). BetterHelp

---

[5] Class Certification Hearing, Transcript, at 14:18-15:5 (BetterHelp counsel: We put in an expert that explained why we are not subject to HIPAA, and there is no witness at Betterhelp that's ever said they were subject to HIPAA . . . THE COURT: If there is such an issue, it can be answered on a class-wide basis, right? BetterHelp counsel: I Mean Yes, Yes.)

9

PLAINTIFFS' SUPP. REPLY IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION REGARDING PENAL CODE SECTION 632 CLAIM          Case No. 3:23-cv-01033-RS

continues to rely on generalized statements about data collection practices, including in a cookie and pixel manager, but merely mentioning the usage of cookies and web beacons is insufficient to put a reasonable consumer on notice that their outreach for mental health assistance will be disclosed. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022); *Torres*, 2024 WL 4894289, at *7.

BetterHelp, as it did in its prior briefing, again claims Plaintiffs' argument that its disclosures were uniform during the class period is "demonstrably false," yet makes no effort to show why it is false, only pointing to the fact that the policies were updated.  Supp. Opp. at 13-14. This point about purported revisions is irrelevant because it does not matter how many times the policies were revised if none of these revisions disclosed the "particular conduct" at issue. *Calhoun*, 113 F.4th at 1147. Because "there is little or no variation" in BetterHelp's policies that were insufficient to put Subclass members on notice, express consent can be determined on a class-wide basis. *True Health*, 896 F.3d at 932; *see Flowers v. Twilio, Inc.*, 2018 WL 10758024, at *5 (Cal. Super. Jan. 02, 2018) (rejecting consent challenge to predominance where there was no evidence that consent defense to CIPA claims could not be resolved through class-wide evidence).

For the Court to find that Subclass members gave implied consent, the evidence must "convincingly show that the party knew about and consented to the interception[.]" *Negro v. Superior Ct.*, 230 Cal. App. 4th 879, 892 (2014). In other words, there must have been "meaningful notice" to Subclass members that the fact they were seeking mental health assistance would be disclosed and evidence showing they still used BetterHelp's services. *People v. Windham*, 145 Cal. App. 4th 881, 888 (2006); *see Torres*, 2024 WL 4894289, at *4 (citing *Calhoun*, 113 F.4th at 1147)). BetterHelp still does not offer any proof that even a single class member was aware of what was occurring. Instead, BetterHelp relies on the same generic "online practices," taking Plaintiffs' deposition testimony out of context. Supp. Opp. at 9. BetterHelp also claims without evidentiary support that users who created a BetterHelp account using their Facebook or Google account would understand their information would be shared with these companies, but a general awareness that an entity can monitor a communication is not the same as consenting to it. *Torres*, 2024 WL 4894289, at *7 (citing *In re Google Inc.*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013)).

10

Unlike the defendants in its cited cases, BetterHelp has not provided evidence showing "several plausible consent theories that apply differently to different class members." *Sherman v. Yahoo! Inc.*, 2015 WL 5604400, at *10 (S.D. Cal. Sept. 23, 2015). For instance, in one case the defendant presented evidence that some class members consented through telephone calls involving "non-scripted, non-uniform interactions with Hilton." *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 578 (S.D. Cal. 2013). Others do not even discuss consent in the class certification context. *See Allen v. Shutterfly, Inc.*, 2020 WL 5517172, at *9 (N.D. Cal. Sept. 14, 2020) (arbitration motion); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 941 (N.D. Cal. 2024) (*rejecting* the defendant's consent argument for dismissing CIPA claim).

The remaining cases BetterHelp cites only highlight the infirmities of BetterHelp's Opposition. In *In re Google RTB Consumer Priv. Litigation*, not only did Google show that the precise data practices were explicitly disclosed, but also that the practice was widely covered by news entities, and it submitted a survey that showed many class members were likely aware of the challenged practice. 2024 WL 2242690, at *14 (N.D. Cal. Apr. 4, 2024). In *In re Google Inc. Gmail Litigation*, Google again provided evidence that it disclosed the practices at issue and that the information was also widely publicized in "various media sources." 2014 WL 1102660, at *17 (N.D. Cal. Mar. 18, 2014). In stark contrast to Google's evidentiary showing, BetterHelp only speculates that some Subclass members *might* have been aware. That is not enough. *See True Health*, 896 F.3d at 932 (courts do not consider speculative consent arguments).

### 3. Whether Subclass Members' Private Communications Were Captured Will be Determined Through the Same Evidence.

BetterHelp repackages several arguments from its opposition to Plaintiffs' class certification motion to argue that whether the Tracking Tools captured a confidential communication depends on individual privacy choices. Supp. Opp. at 8-10. These arguments still misstate the law, lack evidentiary support, and fail to rebut Professor Shafiq's analysis.

First, BetterHelp insists that whether Subclass members reasonably expected their communications to be confidential turns on what they "desired," but ignores the objective nature of the inquiry, as it did in the context of Plaintiffs' common law invasion of privacy claim. *Frasco*

11

*v. Flo Health, Inc.* ("*Frasco I*"), 349 F.R.D. 557, 582 (N.D. Cal. 2025) (rejecting similar argument in context of invasion of privacy claim). BetterHelp also does not offer any evidence that any Subclass members had differing expectations in the privacy of their communications. *See Frasco II*, 2025 WL 2680068, at *10 ("Meta does not attempt to explain, let alone support with evidence, what those individual circumstances might be for 'some class members' that could conceivably support a finding of different expectations of confidentiality."). Further, the disclosure of protected information here occurred when Subclass members were using BetterHelp's website and app to seek mental health treatment, and courts have repeatedly held that there is a reasonable expectation of privacy in the context of medical or health-related communications. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 798 (N.D. Cal. 2022); *Doe I v. Google LLC,* 2025 WL 1616720, at *4 (N.D. Cal. June 6, 2025). The question of whether there was a reasonable expectation of privacy is thus a common one.

Second, like its previous argument the Tracking Tools do not capture "contents" under Section 631, BetterHelp argues that the information captured here does not qualify as a "communication." Supp. Opp. at 9-11. The answer to this merits question will be the same for all class members. And the information is indeed a "communication." Professor Shafiq's analysis of the BetterHelp source code demonstrates that the pixels and other tracking technologies uniformly shared that users completed the BetterHelp intake questionnaire and/or paid for therapy and counseling services, thereby confirming they were seeking help with their mental health. Supp. Shafiq Rpt. (Dkt. 169-5) ¶¶ 1-3 9-11, 14-16, 19-21. These facts were shared in addition to identifying information about users. *Id*. The nature of this information is more revealing than the "non-content-based conduct coincident to the communication" BetterHelp cites. Supp. Opp. at 9.

BetterHelp primarily relies on *In re Apple Data Privacy Litigation*, where the plaintiffs alleged that Apple collected data associated with Apple apps almost all of which "is of the kind one would expect Apple would need to collect in order to respond to Plaintiffs' requests." 2026 WL 146025, at *6-7 (N.D. Cal. Jan. 20, 2026). Further, the plaintiffs in that case only alleged that Apple collected information pertaining "to *how*, not *what* information is relayed" and so Apple could not infer any concrete information about its users based on the information it did collect. *Id.* at *7. The

12

court concluded that some generic searches for app titles or stock symbols were not "communications," but distinguished those searches from a user's substantive information such as searching for "roommate," "LSAT," "screen time," and "used cars," which the court held were communications that "reveal[ed] [the Plaintiff's] inner thoughts and interests." *Id.* at \*7-8. Here, the fact that a user submitted a questionnaire seeking mental health services conveys at least as much of a user's "inner thoughts and ideas" as a search for "roommate" or "used cars." *Id.*

BetterHelp argues that even if website "events" were sent to third parties, "the fact of a user's registration on a website is not the substance or content of an exchange of ideas necessary for a communication under CIPA." Supp. Opp. at 10. Information from a website constitutes "contents" of a "communication" when it is sufficient to reveal "a user's personal interests." *In re Facebook*, 956 F.3d at 605.[6] Even the cases BetterHelp cites acknowledge that website actions constitute "communications" if they "convey the user's inner thoughts and ideas." *Apple*, 2026 WL 146025, at \*7 (citing *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022)) (a URL indicating a hospital page on ulcerative colitis disclosed substance of the communication).

BetterHelp is thus incorrect when it claims that revealing the fact an individual is seeking access to online mental health services is not a "communication." Supp. Opp. at 10. BetterHelp looks to *Hammerling v. Google* LLC, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) for support, but in that case, Google could not access content that its users input—only the duration and frequency of use of a fertility app—so Google could only make "educated guesses" about a user's traits and habits. *Id.* at 1093. Here, BetterHelp wrote bespoke source code to transmit to Meta, Google, and

[6] The Court should strike or disregard BetterHelp's additional argument that it did not violate Section 631's "in transit" requirement because internet transmissions are routed in packets. Supp. Opp. at 10 n.8. Not only does BetterHelp again rely on the improper legal conclusions from the Chatterjee Declaration, but the merits of the Section 631 claim are outside the scope of the parties' supplemental briefing. Dkt. 251 (permitting briefing only on certification of Section 632 claim). Plaintiffs will address this summary judgment argument at the appropriate time, after the parties have exchanged merits expert reports. But even if the Court is willing to entertain the argument now, the Court should reject it since Section 631 proscribes "*attempts* to read, or to learn" in addition to "read[ing]" or "learn[ing]" the contents of a communication. Capturing the fact that a user completed a BetterHelp intake questionnaire so that Meta or other third parties can use that information for advertising campaigns is at least an "attempt"—which under California law requires only a "slight act" in furtherance of the crime—to learn the contents of their communication. *See People v. Superior Ct. (Decker)*, 41 Cal. 4th 1, 8 (2007); *see also People v. Cain*, 10 Cal. 4th 1, 44 (1995) ("To attempt an act is to 'try' or 'endeavor to do or perform' the act."). Regardless of whether they are sent in packets, the "attempt" to read or learn occurred when Plaintiffs' communications were captured while in in transit and thereafter used. *See n.5 supra.*

13

Mixpanel an event confirming that a website visitor completed the intake questionnaire to request mental health services. Supp. Shafiq Rpt. ¶¶ 3, 5, 7(a), 13-15. No further inference is necessary because the disclosure confirms that a user completed a mental health care intake and just as in *Frasco*, that custom event itself conveys sensitive health information. *See Frasco I*, 349 F.R.D. at 582 ("whether health information was conveyed is answerable with common evidence" because the "Custom Events" itself "convey[ed] sensitive health information, demonstrate that they have a classwide method of resolving the merits questions").

Third, BetterHelp continues to argue that the question of whether confidential information was captured depends on a user's privacy choices. Supp. Opp. at 11. Undisputed evidence, which was fully addressed in the initial briefing, shows BetterHelp used first-party cookies that are not impacted by consumer privacy choices. *E.g.* Class Cert. Reply (Dkt. 224-3) at 4. But even setting aside that URLs and other information can be "contents" if they identify a user's personal interests, *In re Facebook¸* 956 F.3d at 605, BetterHelp's focus on IP addresses and device information is misplaced because Plaintiffs are not arguing that that this identifying information about a user's device alone constitutes a "communication" under Section 632. Supp. Shafiq Rpt. (Dkt. 200-3) ¶¶ 3, 11, 21. Rather, what matters for purposes of class certification is that BetterHelp uniformly transmitted (1) content information—that a user completed the intake questionnaire seeking mental health help—through website source code that is not impacted at all by privacy settings, *and* (2) identifying information sufficient to identify the user regardless of privacy settings, because at a minimum it includes data from first-party cookies and other non-cookie mechanisms. Shafiq Rpt. (Dkt. 169-5) ¶¶ 49-59; Supp. Shafiq Rpt. (Dkt. 200-3) ¶¶ 21-22. Instead of offering any evidence rebutting Professor Shafiq's analysis, BetterHelp continues to ignore it, instead disputing whether the cookies were "ghost-written," which does not matter since BetterHelp fails to dispute that they are first-party cookies and the significance of that fact. *See generally* Supp. Opp. at 11-12.

BetterHelp also continues to rely on the claim that Meta did not produce pixel data for two Plaintiffs to argue that Plaintiffs are only speculating about what information is transmitted. But as Plaintiffs explained in their class certification reply (Dkt. 224-3 at 5), the Third Amended Complaint alleges these two Plaintiffs visited BetterHelp's website in 2018 and 2019-20 and Meta

not only does not maintain data indefinitely. In fact, BetterHelp claims to have asked Meta to delete this data. *Id.* Professor Shafiq's analysis of BetterHelp's source code, Supp. Shafiq Rpt. (Dkt. 200-3) ¶¶ 3, 9-11, 14-16, 19-21, is the common evidence of what information was captured for all Subclass members. BetterHelp's expert, Dr. Zhao, acknowledges that the source code is the most reliable way to determine what data was shared. Tusan Reply Decl. (Dkt. 224-4) at Ex. 1, 176:17-23.

As with Plaintiffs' other claims, common issues predominate for the Section 632 claim.

**C.    Along With Plaintiffs' Other Claims, a Class Trial on the Section 632 Claim Is Both Manageable and Superior.**

BetterHelp acknowledges that a trial plan can show that a claim can be efficiently tried on a class-wide basis. Supp. Opp. at 16. It does not dispute that the elements of the Section 632 claim significantly overlap with Plaintiffs' other claims and beyond recycling its argument that common issues do not predominate, BetterHelp does not point to any deficiencies in Plaintiffs' trial plan (or verdict form). Thus, just as in *Frasco v. Flo Health, Inc.*, No. 21-cv-00757-JD (N.D. Cal.), the Court should conclude that a class trial is the superior means of resolving the Section 632 claim.

## III.    CONCLUSION

For these reasons and the reasons stated in all the supporting papers for the Motion for Class Certification, Plaintiffs request the Court certify the Section 632 claim of the California Subclass.

Dated: April 23, 2026                         Respectfully submitted,

                                              */s/ Gary M. Klinger*
                                              Gary. M. Klinger (*pro hac vice*)
                                              William J. Edelman (SBN 285177)
                                              **MILBERG, PLLC**
                                              227 W. Monroe Street, Suite 2100
                                              Chicago, Illinois 60606
                                              Telephone: (866) 252-0878
                                              Email: gklinger@milberg.com
                                              Email: wedelman@milberg.com

                                              *Plaintiffs' Co-Lead Interim Class Counsel*

15

/s/ Christina Tusan
Christina Tusan (SBN 192203)
**TUSAN LAW, PC**
680 E. Colorado Blvd. #180
Pasadena, CA 91101
Telephone: (626) 418-8203
Facsimile: (626) 619-8253
Email: ctusan@ctusanlaw.com

*Plaintiffs' Co-Lead Interim Class Counsel*

/s/ Maureen M. Brady
Maureen M. Brady (*pro hac vice*)
**McSHANE AND BRADY LLC**
1656 Washington Suite 140
Kansas City, MO 64108
Telephone: (816) 888-8010
Email: mbrady@mcshanebradylaw.com

*Plaintiffs' Co-Lead Interim Class Counsel*

/s/ Alan M. Mansfield
Alan M. Mansfield (SBN 125998)
**WHATLEY KALLAS LLP**
1 Sansome Street, 35th Floor, PMB #131
San Francisco, CA 94104 /
16870 West Bernardo Drive, Suite 400
San Diego, CA 92127
Telephone: (619) 308-5034
Facsimile: (888) 341-5048
Email: amansfield@whatleykallas.com

*Plaintiffs' Liaison Counsel*

/s/ Dena C. Sharp
Dena C. Sharp (SBN 245869)
Trevor T. Tan (SBN 281045)
Nina Gliozzo (SBN 333569)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: 415.981.4800
Email: dsharp@girardsharp.com
Email: ttan@girardsharp.com
Email: ngliozzo@girardsharp.com

*Plaintiffs' Trial Counsel*

16

PLAINTIFFS' SUPP. REPLY IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION REGARDING PENAL CODE SECTION 632 CLAIM          Case No. 3:23-cv-01033-RS